**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANATOLIY MIKITYUK, MITCH TALLUNGAN, and MICHAEL ESQUIBEL,** individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**CISION US INC. and CISION LTD.,**<br><br>**Defendants.** | **Case No.: 21-cv-00510-LJL** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**<u>COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY.......................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 2

     I.     Cision Employs Sales Representatives to Sell Its Products.................................... 2

     II.    Cision's Policies With Respect to Sales Representatives' Duties Are Uniform. ... 3

     III.    Cision's Compensation and Timekeeping Policies and Practices are Consistent... 6

ARGUMENT ............................................................................................................... 7

     I.     Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Goals....... 7

     II.    Plaintiffs Exceed the Low Burden for Sending Notice......................................... 8

          A.    Plaintiffs Face a Low Burden of Proof at the Notice Phase. ...................... 8

          B.    Plaintiffs Comfortably Meet Their Burden................................................. 9

               1.    Plaintiffs are Similarly Situated with Respect to Their FLSA Claims. .......................................................................................... 9

               2.    Plaintiffs are Similarly Situated with Respect to Their Job Duties. ........................................................................................ 11

               3.    At This Stage, the Court Does Not Resolve Factual Disputes or Address Merits Issues. ................................................................. 12

     III.    The Court Should Approve Plaintiffs' Proposed Notice and the Plan for Its Distribution. ...................................................................................................... 13

CONCLUSION.......................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amador v. Morgan Stanley & Co.*,
   No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ..................................................9

*Barry v. S.E.B. Serv. of N.Y., Inc.*,
   No. 11 Civ. 5089, 2013 WL 6150718 (E.D.N.Y. Nov. 22, 2013) .........................................12

*Beltran v. Interexchange, Inc.*,
   No. 14 Civ. 03074, 2017 WL 4418684 (D. Colo. Apr. 28, 2017) .........................................15

*Benavides v. Serenity Spa NY Inc.*,
   166 F. Supp. 3d 474 (S.D.N.Y. 2016) ....................................................................................16

*Bifulco v. Mortg. Zone, Inc.*,
   262 F.R.D. 209 (E.D.N.Y. 2009) ............................................................................................12

*Bijoux v. Amerigroup New York, LLC*,
   No. 14 Civ. 3891, 2015 WL 4505835 (E.D.N.Y. July 23, 2015) ...........................................9

*Braunstein v. E. Photographic Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1978)...........................................................................................7, 8, 11

*Campbell v. City of Los Angeles*,
   903 F.3d 1090 (9th Cir. 2018) ...............................................................................................12

*Cano v. Four M Food Corp.*,
   No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009)............................................13

*Cohen v. Gerson Lehrman Grp., Inc.*,
   686 F. Supp. 2d 317 (S.D.N.Y. 2010)....................................................................................11

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007)......................................................................................7

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ...........................................13

*Djurdjevich v. Flat Rate Movers, Ltd.*,
   No. 17 Civ. 261, 2019 WL 125888 (S.D.N.Y. Jan. 7, 2019)................................................14

*Djurdjevich v. Flat Rater Movers, Ltd.*,
   No. 17 Civ. 261, 2018 WL 5919519 (S.D.N.Y. Nov. 13, 2018) ...........................................12

*Emeterio v. A & P Rest. Corp.*,
   No. 20 Civ. 970, 2021 WL 101186 (S.D.N.Y. Jan. 12, 2021)..............................................16

*Francis v. A & E Stores, Inc.*,
No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) ..........................................11

*Franze v. Bimbo Foods Bakeries Distribution, LLC*,
No. 17 Civ. 3556, 2019 WL 1417125 (S.D.N.Y. Mar. 29, 2019) ............................2, 8, 11, 13

*Hernandez v. Merrill Lynch & Co., Inc.*,
No. 11 Civ. 8472, 2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012)...........................................10

*Hoffmann v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997)...................................................................................8

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989)..................................................................................................7, 14

*Huer Huang v. Shanghai City Corp*,
No. 19 Civ. 7702, 2020 WL 5849099 (S.D.N.Y. Oct. 1, 2020) ................................14, 15, 16

*Indergit v. Rite Aid Corp.*,
Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488 (S.D.N.Y. June 16,
2010) .........................................................................................................................12

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ....................................................................................9

*Jewell v. Aaron's, Inc.*,
No. 12 Civ. 563, 2012 WL 2477039 (N.D. Ga. June 28, 2012) ...........................................10

*Jones v. SuperMedia Inc.*,
281 F.R.D. 282 (N.D. Tex. 2012) ..................................................................................10

*Levy v. Verizon Info. Servs., Inc.*,
Nos. 06 Civ. 1583, 06 Civ. 5056, 2007 WL 1747104 (E.D.N.Y. June 11,
2007) .........................................................................................................................10

*Lu v. Purple Sushi Inc.*,
No. 19 Civ. 5828, 2020 WL 1303572 (S.D.N.Y. Mar. 19, 2020) ............................1, 8, 10, 14

*Mark v. Gawker Media LLC*,
No. 13 Civ. 4347, 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014) .........................................15

*Mason v. Lumber Liquidators, Inc.*,
No. 17 Civ. 4780, 2019 WL 2088609 (E.D.N.Y. May 13, 2019)..........................................13

*Masoud v. 1285 Bakery Inc.*,
No. 15 Civ. 7414, 2017 WL 448955 (S.D.N.Y. Jan. 26, 2017)............................................17

*Masson v. Ecolab, Inc.*,
   No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ..........................................11

*Mendoza v. Mo's Fisherman Exch., Inc.*,
   No. 15 Civ. 1427, 2016 WL 3440007 (D. Md. June 22, 2016) ................................................15

*Morgan v. Family Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir. 2008) .............................................................................................12

*Murray v. Transportation Media, Inc.*,
   No. 19 Civ. 180, 2019 WL 2939251 (D. Or. May 7, 2019)....................................................10

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)............................................................................................1, 7, 8

*O'Conner v. Agilant Sols., Inc.*,
   419 F. Supp. 3d 739 (S.D.N.Y. 2019).....................................................................................12

*Panora v. Deenora Corp*,
   No. 19 Civ. 7267, 2020 WL 7246439 (E.D.N.Y. Dec. 9, 2020) ............................................14

*In re Penthouse Exec. Club Comp. Litig.*,
   No. 10 Civ. 1145, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ...........................................11

*Presson v. Recovery Connections Comm.*,
   No. 18 Civ. 466, 2019 WL 3047114 (E.D.N.C. July 11, 2019) ..............................................15

*Raimundi v. Astellas U.S. LLC*,
   No. 10 Civ. 5240, 2011 WL 5117030 (S.D.N.Y. Oct. 27, 2011) ...........................................12

*Raniere v. Citigroup, Inc.*,
   No. 11 Civ. 2448, 2011 WL 5881926 (S.D.N.Y. Nov. 22, 2011) ..........................................13

*Rubery v. Buth-Na-Bodhaige, Inc.*,
   569 F. Supp. 2d 334 (W.D.N.Y. 2008) .....................................................................................8

*Sanchez v. Salsa Con Fuego, Inc.*,
   No. 16 Civ. 473, 2016 WL 4533574 (S.D.N.Y. Aug. 24, 2016) ......................................14, 15

*Schear v. Food Scope Am., Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) .............................................................................................17

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020)..................................................................................7, 8, 9, 12

*Shajan v. Barolo, Ltd.*,
   No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010)................................................8

*Sipas v. Sammy's Fishbox, Inc.*,
   No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006)..........................................11

*Varghese v. JP Morgan Chase & Co.*,
   No. 14 Civ. 1718, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) .................................................16

*Winfield v. Citibank, N.A.*,
   843 F. Supp. 2d 397 (S.D.N.Y. 2012)...............................................................................10, 12

*Wood v. Mike Bloomberg 2020, Inc.*,
   No. 20 Civ., 2020 WL 5240262 (S.D.N.Y. Sept. 3, 2020).......................................................11

*Woods v. Vector Mktg. Corp.*,
   No. 14 Civ. 0264, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015)...........................................15

*Yuefeng Shi v. TL & CG Inc.*,
   No. 19 Civ. 08502, 2020 WL 4586359 (S.D.N.Y. Aug. 10, 2020) ..........................................15

*Zhang v. Ichiban Grp., LLC,*
   No. 117 Civ. 148, 2020 WL 1030651 (N.D.N.Y. Mar. 3, 2020) ...............................................16

**Statutes**

29 U.S.C. § 216(b) ...............................................................................................................7

## PRELIMINARY STATEMENT

Plaintiffs Anatoliy Mikityuk, Mitch Tallungan, and Michael Esquibel, on behalf of themselves and all others similarly situated, allege that Cision unlawfully denied Sales Representatives proper overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

Cision's Sales Representatives[1] sell its products and services.  To meet the company's performance expectations – including sales quotas and metrics Cision sets – Sales Representatives routinely work more than 40 hours in a workweek.  Although Cision's Sales Representatives perform non-exempt sales work, Cision does not accurately track Sales Representatives' work hours or pay them overtime for all hours worked above 40 in a workweek.

Through this motion, Plaintiffs seek to send Court-approved notice of this action to all similarly-situated Sales Representatives, so they can decide whether to join the case and seek to recover their unpaid overtime wages.  Plaintiffs far exceed the "low" standard to prevail on this motion.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Through the declarations of eight Sales Representatives from Cision's offices in three states, job postings from four states consistently describing inside sales duties, and the well-pled allegations in the Complaint, Plaintiffs demonstrate that Cision subjected Sales Representatives to the same policy or practice of failing to pay overtime for all hours worked above 40 each week.  Courts in New York and around the country routinely authorize notice based on substantially less evidence.  *See, e.g.*, *Lu v. Purple*

---

[1]     "Sales Representatives" includes individuals who have worked as inside salespeople, including in the job titles of Account Executive, Account Executive (SAAS), Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative, Sales Associate, Sales Development Representative, Senior Sales Development Representative, Sales Executive, Midmarket Sales Executive, Sales Representative, Senior Sales Representative, and other similar roles, however variously titled.

*Sushi Inc.*, No. 19 Civ. 5828, 2020 WL 1303572, at *1 (S.D.N.Y. Mar. 19, 2020); *Franze v.*

*Bimbo Foods Bakeries Distribution, LLC*, No. 17 Civ. 3556, 2019 WL 1417125, at *1 (S.D.N.Y.

Mar. 29, 2019).

Plaintiffs respectfully request that the Court authorize notice to collective members so

that they may act to protect their rights.

## PROCEDURAL HISTORY

On January 20, 2020, Plaintiffs Anatoliy Mikityuk, Mitch Tallungan, and Michael

Esquibel filed this class and collective action alleging violations of the FLSA and several state laws.

ECF No. 1.  In addition to Plaintiffs, five other Sales Representatives have joined this action as opt-

in plaintiffs to date.  ECF No. 4.

In total, eight Sales Representatives from three states have submitted declarations of support

with this motion.[2]  No formal discovery has taken place.  Stewart Decl. ¶ 6.

## STATEMENT OF FACTS

**I.     Cision Employs Sales Representatives to Sell Its Products.**

Cision is a media intelligence company which sells software products and services that

identify influencers, create and distribute content, and measure the impact of communications.[3]

Cision employs Sales Representatives to sell its products and services.  Sales

Representatives work at Cision's headquarters in Chicago, Illinois and in offices in several other

cities, including Beltsville, Maryland; New York, New York; Cleveland, Ohio; Albuquerque,

---

[2]     All exhibits are attached to the Decl. of Melissa L. Stewart in Supp. of Pls.' Mot. for
Conditional Certification and Authorization of Notice Pursuant to 29 U.S.C. § 216(b) ("Stewart
Declaration").  *See* Ex. A (Esquibel Decl.) ¶ 1; Ex. B (Gutierrez Decl.) ¶ 1; Ex. C (Honey Decl.)
¶ 1; Ex. D (McTighe Decl.) ¶ 1; Ex. E (Mikityuk Decl.) ¶ 1; Ex. F (Northern Decl.) ¶ 1; Ex. G
(Tabiri Decl.) ¶ 1; Ex. H (Tallungan Decl.) ¶ 1.

[3]     Compl. ¶ 3.

New Mexico; and Austin, Texas.[4]

## II.   Cision's Policies With Respect to Sales Representatives' Duties Are Uniform.

Cision's policies with respect to its Sales Representatives' duties are uniform across

offices and job titles.  All Sales Representatives perform the same primary job duty: selling

Cision's products.[5]  Sales Representatives may focus on a discrete part of the sales cycle (for

example, some primarily research new potential customers, make cold calls, and book product

demonstration meetings[6]) or handle the entire sales cycle from researching new customers to

---

[4]    Ex. A (Esquibel Decl.) ¶ 1; Ex. B (Gutierrez Decl.) ¶ 1; Ex. C (Honey Decl.) ¶ 1; Ex. D (McTighe Decl.) ¶ 1; Ex. E (Mikityuk Decl.) ¶ 1; Ex. F (Northern Decl.) ¶ 1; Ex. G (Tabiri Decl.) ¶ 1; Ex. H (Tallungan Decl.) ¶ 1; Ex. I (job description, Account Executive (SAAS), Cleveland); Ex. J (job description, Inside New Business Development Representative, Cleveland).

[5]    Ex. A (Esquibel Decl.) ¶¶ 2, 14 (Business Development Specialist, Business Development Manager, Business Development Representative); Ex. B (Gutierrez Decl.) ¶¶ 2, 14 (Business Development Manager, Sales Representative, Business Development Executive); Ex. C (Honey Decl.) ¶¶ 2, 14 (Business Development Specialist, Business Development Manager); Ex. D (McTighe Decl.) ¶¶ 2, 14 (Business Development Specialist, Business Development Manager, Business Development Associate); Ex. E (Mikityuk Decl.) ¶¶ 2, 14 (Sales Development Representative, Account Executive); Ex. F (Northern Decl.) ¶¶ 2, 14 (Sales Development Representative); Ex. G (Tabiri Decl.) ¶¶ 2, 14 (Business Development Specialist); Ex. H (Tallungan Decl.) ¶¶ 2, 14 (Business Development Manager, Business Development Executive, Sales Representative); Ex. K (job description, Account Executive (SAAS), Beltsville); Ex. L (job description, Account Executive (SAAS), Chicago); Ex. I (job description, Account Executive (SAAS), Cleveland); Ex. M (job description, Account Executive (SAAS), New York); Ex. N (job description, Business Development Associate, Beltsville); Ex. O (job description, Business Development Manager, Chicago); Ex. P (job description, Business Development Specialist, Chicago); Ex. J (job description, Inside New Business Development Representative, Cleveland); Ex. Q (job description, Sales Development Representative, Beltsville); Ex. R (job description, Sales Development Representative, Chicago); Ex. S (job description, Sales Development Representative, New York).

[6]    For example, these include Sales Development Representatives, Business Development Associates, and other similar titles.  Ex. E (Mikityuk Decl.) ¶¶ 1-2 (Sales Development Representative); Ex. F (Northern Decl.) ¶¶ 1-2 (Sales Development Representative); Ex. R (job description, Sales Development Representative, Chicago) (job duties include prospecting sales leads, making outbound calls and emails, and scheduling demonstrations); Ex. Q (job description, Sales Development Representative, Beltsville) (same); Ex. S (job description, Sales Development Representative, New York) (same); Ex. N (job description, Business Development Associate, Beltsville) (job duties include "convert[ing] cold and warm leads into new business opportunities").

closing deals.[7]  Regardless of focus, all Sales Representatives perform, as their primary duty, a similar mix of sales tasks, including researching potential customers, making calls to potential customers, sending emails to potential customers, and speaking to potential customers about Cision's products and services.

By Cision's own categorization, Sales Representative positions are "inside sales" positions.[8]  Sales Representatives primarily perform their sales duties from Cision's offices, and also work remotely using their cell phones and laptops.  Sales Representatives rarely (if ever)

---

[7]      For example, these include Business Development Specialists, Inside New Business Development Representatives, Business Development Managers, Business Development Executives, Account Executives, and other similar titles.  Ex. A (Esquibel Decl.) ¶¶ 1-2 (Business Development Specialist); Ex. B (Gutierrez Decl.) ¶¶ 1-2 (Business Development Manager); Ex. C (Honey Decl.) ¶¶ 1-2 (Business Development Specialist); Ex. D (McTighe Decl.) ¶¶ 1-2 (Business Development Specialist, Business Development Manager); Ex. G (Tabiri Decl.) ¶¶ 1-2 (Business Development Specialist); Ex. H (Tallungan Decl.) ¶¶ 1-2 (Business Development Manager); Ex. L (job description, Account Executive (SAAS), Chicago) ("[o]wn an end-to-end inside sales cycle from prospecting to close"); Ex. K (job description, Account Executive (SAAS), Beltsville) (same); Ex. I (job description, Account Executive (SAAS), Cleveland) (same); Ex. J (job description, Inside New Business Development Representative, Cleveland) (job duties include performing cold calls to generate sales leads, qualifying leads, performing follow-up calls, and negotiating and closing deals); Ex. O (job description, Business Development Manager, Chicago) (job duties include "[m]anaging complex sales-cycles," "[i]ntroducing Cision products and services to new and existing client[s]," and "[m]eet[ing] monthly account goal[s]"); Ex. P (job description, Business Development Specialist, Chicago) (job duties include "[m]anaging the sales-cycles," "[i]ntroducing Cision products and services to new and existing clients," and "[m]eeting monthly account goal[s]").

[8]      Ex. T (screenshot of Cision's "careers" page listing open positions with titles "Account Executive (SAAS)," "Account Executive," "Associate Account Executive (SAAS)", and "Sales Development Representative" under the heading "Inside Sales"); Ex. K (job description, Account Executive (SAAS), Beltsville) (categorizing job as "USA Inside Sales"); Ex. L (job description, Account Executive (SAAS), Chicago) (same); Ex. I (job description, Account Executive (SAAS), Cleveland) (same); Ex. M (job description, Account Executive (SAAS), New York) (same); Ex. J (job description, Inside New Business Development Representative, Cleveland) (same); Ex. Q (job description, Sales Development Representative, Beltsville) (same); Ex. R (job description, Sales Development Representative, Chicago) (same); Ex. S (job description, Sales Development Representative, New York) (same).

meet with potential customers in person.[9]

Cision subjects Sales Representatives to the same rules and policies that govern their working conditions and job performance.  For example, Cision requires its Sales Representatives to follow its "Rules of Engagement," a sales manual which proscribes policies such as what type of customers Sales Representatives can sell to and how long a Sales Representative maintains the exclusive right to contact a potential sales customer after a "sales touch" (such as a call or email contact) before another Sales Representative is allowed to contact that customer.[10]

Cision closely supervises its Sales Representatives' conduct.  For example, Cision requires Sales Representatives to track sales activity in "SalesForce," a customer relationship management ("CRM") platform.[11]  Cision requires Sales Representatives to meet sales quotas and other "Key Performance Indicators," such as sending a certain number of emails or making a certain number of calls.[12]  Cision monitors sales activity through SalesForce and requires Sales

---

[9]     Ex. A (Esquibel Decl.) ¶ 3; Ex. B (Gutierrez Decl.) ¶ 3; Ex. C (Honey Decl.) ¶ 3; Ex. D (McTighe Decl.) ¶ 3; Ex. E (Mikityuk Decl.) ¶ 3; Ex. F (Northern Decl.) ¶ 3; Ex. G (Tabiri Decl.) ¶ 3; Ex. H (Tallungan Decl.) ¶ 3.

[10]     Ex. A (Esquibel Decl.) ¶ 7; Ex. B (Gutierrez Decl.) ¶ 7; Ex. C (Honey Decl.) ¶ 7; Ex. D (McTighe Decl.) ¶ 7; Ex. E (Mikityuk Decl.) ¶ 7; Ex. F (Northern Decl.) ¶ 7; Ex. G (Tabiri Decl.) ¶ 7; Ex. H (Tallungan Decl.) ¶ 7.

[11]     Ex. A (Esquibel Decl.) ¶ 4; Ex. B (Gutierrez Decl.) ¶ 4; Ex. C (Honey Decl.) ¶ 4; Ex. D (McTighe Decl.) ¶ 4; Ex. E (Mikityuk Decl.) ¶ 4; Ex. F (Northern Decl.) ¶ 4; Ex. G (Tabiri Decl.) ¶ 4; Ex. H (Tallungan Decl.) ¶ 4.

[12]     Ex. A (Esquibel Decl.) ¶¶ 5-6; Ex. B (Gutierrez Decl.) ¶¶ 5-6; Ex. C (Honey Decl.) ¶¶ 5-6; Ex. D (McTighe Decl.) ¶¶ 5-6; Ex. E (Mikityuk Decl.) ¶¶ 5-6; Ex. F (Northern Decl.) ¶¶ 5-6; Ex. G (Tabiri Decl.) ¶¶ 5-6; Ex. H (Tallungan Decl.) ¶¶ 5-6; *see also, e.g.*, Ex. K (job description, Account Executive (SAAS), Beltsville) (job duties include "hit[ting] and exceed[ing] monthly sales quotas"); Ex. L (job description, Account Executive (SAAS), Chicago) (job duties include "hit[ting] and exceed[ing] monthly, quarterly, and annual sales goals"); Ex. I (job description, Account Executive (SAAS), Cleveland) (same); Ex. M (job description, Account Executive (SAAS), New York) (job duties include "[m]eet[ing] and exceed[ing] quarterly targets"); Ex. Q (job description, Sales Development Representative, Beltsville) (duties include "[h]itting or exceeding a monthly quota"); Ex. R (job description, Sales Development Representative, Chicago) (same); Ex. S (job description, Sales Development Representative, New York) (duties include "[m]eeting and exceed[ing] quarterly targets").

Representatives to attend weekly one-on-one meetings with their supervisors to discuss progress towards sales goals.[13]

### III.   Cision's Compensation and Timekeeping Policies and Practices are Consistent.

Cision's policies and practices with respect to Sales Representatives' compensation and timekeeping are consistent across offices and job titles.  Specifically, all Sales Representatives are paid a base salary and are eligible to earn commissions.[14]  Cision does not accurately track Sales Representatives' time worked,[15] and does not pay Sales Representative an overtime premium for all hours worked over forty in a workweek.[16]

Sales Representatives work long hours to meet Cision's job requirements and make sales.[17]  For example, Sales Representatives frequently work outside of normal business hours to secure the chance to establish the exclusive rights to sell to particular customers (and earn a commission); to meet supervisors' expectations to be responsive and to make sales to potential customers at all hours and at the potential customer's convenience; and to conduct research to identify potential customers or prepare for sales calls, while focusing normal business hours on making calls and sending emails to potential customers in order to meet the quotas Cision sets.[18]

---

[13]     Ex. A (Esquibel Decl.) ¶¶ 5-6; Ex. B (Gutierrez Decl.) ¶¶ 5-6; Ex. C (Honey Decl.) ¶¶ 5-6; Ex. D (McTighe Decl.) ¶¶ 5-6; Ex. E (Mikityuk Decl.) ¶¶ 5-6; Ex. F (Northern Decl.) ¶¶ 5-6; Ex. G (Tabiri Decl.) ¶¶ 5-6; Ex. H (Tallungan Decl.) ¶¶ 5-6.

[14]     Ex. A (Esquibel Decl.) ¶ 9; Ex. B (Gutierrez Decl.) ¶ 9; Ex. C (Honey Decl.) ¶ 9; Ex. D (McTighe Decl.) ¶ 9; Ex. E (Mikityuk Decl.) ¶ 9; Ex. F (Northern Decl.) ¶ 9; Ex. G (Tabiri Decl.) ¶ 9; Ex. H (Tallungan Decl.) ¶ 9.

[15]     Ex. A (Esquibel Decl.) ¶ 10; Ex. B (Gutierrez Decl.) ¶ 10; Ex. C (Honey Decl.) ¶ 10; Ex. D (McTighe Decl.) ¶ 10; Ex. E (Mikityuk Decl.) ¶ 10; Ex. F (Northern Decl.) ¶ 10; Ex. G (Tabiri Decl.) ¶ 10; Ex. H (Tallungan Decl.) ¶ 10.

[16]     Ex. A (Esquibel Decl.) ¶ 13; Ex. B (Gutierrez Decl.) ¶ 13; Ex. C (Honey Decl.) ¶ 13; Ex. D (McTighe Decl.) ¶ 13; Ex. E (Mikityuk Decl.) ¶ 13; Ex. F (Northern Decl.) ¶ 13; Ex. G (Tabiri Decl.) ¶ 13; Ex. H (Tallungan Decl.) ¶ 13.

[17]     Ex. A (Esquibel Decl.) ¶ 11; Ex. B (Gutierrez Decl.) ¶ 11; Ex. C (Honey Decl.) ¶ 11; Ex. D (McTighe Decl.) ¶ 11; Ex. E (Mikityuk Decl.) ¶ 11; Ex. F (Northern Decl.) ¶ 11; Ex. G (Tabiri Decl.) ¶ 11; Ex. H (Tallungan Decl.) ¶ 11.

[18]     Ex. A (Esquibel Decl.) ¶ 12; Ex. B (Gutierrez Decl.) ¶ 12; Ex. C (Honey Decl.) ¶ 12; Ex.

## ARGUMENT

**I.      Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Goals.**

The FLSA authorizes private parties to bring an overtime claim "on behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).  As the Second Circuit recently recognized, "[r]ather than providing for a mere procedural mechanism, as is the case with Rule 23, § 216(b) establishes a 'right . . . to bring an action by or on behalf of any employee, and [a] right of any employee to become a party plaintiff to any such action,' so long as certain preconditions are met."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (quoting 29 U.S.C. § 216(b)).  In furtherance of the FLSA's "broad remedial purpose[,]" *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), courts have discretion to implement Section 216(b) by facilitating notice to potential collective members.  *See Myers*, 624 F.3d at 554 ("[D]istrict courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" (alteration in original) (citation and quotation marks omitted)).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by . . . pooling . . . resources," and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide notice here will provide collective members with a single forum in which to determine whether Cision unlawfully denied Sales Representatives proper overtime pay.

Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue[.]" *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y.

---

D (McTighe Decl.) ¶ 12; Ex. E (Mikityuk Decl.) ¶ 12; Ex. F (Northern Decl.) ¶ 12; Ex. G (Tabiri Decl.) ¶ 12; Ex. H (Tallungan Decl.) ¶ 12.

2007).  The FLSA statute of limitations runs until an employee files a consent form.  *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  Time is of the essence because Sales Representatives' claims are diminished or extinguished every day.  Timely notice "will facilitate swift and economic justice," *Purple Sushi*, 2020 WL 1303572, at *2, and is necessary to effectuate the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336.

## II.   Plaintiffs Exceed the Low Burden for Sending Notice.

### A.   Plaintiffs Face a Low Burden of Proof at the Notice Phase.

Courts in the Second Circuit employ a two-step approach in collective action cases. *Chipotle*, 954 F.3d at 515; *Myers*, 624 F.3d at 554-55.  At the initial "notice stage," plaintiffs must establish that other employees "may be similarly situated" to them.  *Myers*, 624 F.3d at 555.  "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."  *Chipotle*, 954 F.3d at 516.  "Nothing more is needed at this stage of the litigation."  *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).

At this initial stage, Plaintiffs face a "low standard of proof" and need only make a "modest factual showing" that they and others are similarly situated.  *Myers*, 624 F.3d at 555.  This is because "the purpose of [the] first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  *Id.*  Accordingly, at this stage, "before discovery is complete, the evidentiary standard is lenient and the Court does not decide issues on the merits or resolve factual disputes." *Bimbo Foods*, 2019 WL 1417125, at *1 (citation omitted) (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008)); *see also Shajan*, 2010 WL 2218095, at *1 (at this stage, "[w]eighing of the merits is absolutely inappropriate").  At the second stage, based on a "fuller record," the district court may determine that the plaintiffs who opted in are in fact not similarly situated and can then decertify the collective.  *Myers*, 624 F.3d at 555.  Accordingly,

"courts generally grant conditional certification" because "the determination that plaintiffs are similarly situated is merely a preliminary one." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158-59 (S.D.N.Y. 2014).

**B.     Plaintiffs Comfortably Meet Their Burden.**

**1.     Plaintiffs are Similarly Situated with Respect to Their FLSA Claims.**

Plaintiffs challenge Cision's failure to pay Sales Representatives overtime as required under 29 U.S.C. § 207(a)(1). Plaintiffs present evidence with this motion which exceeds a "modest factual showing" that Sales Representatives "share a similar issue of law or fact material to the disposition of their FLSA claims." *Chipotle*, 954 F.3d at 516 (citation omitted). Plaintiffs support their allegations with the declarations of eight Sales Representatives with similar experiences at Cision's offices in three different states. The declarants state that Cision's job requirements and sales quotas forced them to work overtime hours. *See supra* Statement of Facts ("SOF") § III. However, Cision failed to accurately record their time or pay an overtime premium for all hours worked over forty per week. *Id.* Instead, Cision paid them the same base salary each pay period, regardless of the total number of overtime hours they worked, plus commissions. *Id.*

Courts in this Circuit routinely authorize notice based on evidence that an employer encouraged overtime work to meet performance targets while failing to compensate employees for overtime worked. *See Bijoux v. Amerigroup New York, LLC*, No. 14 Civ. 3891, 2015 WL 4505835, at *9 (E.D.N.Y. July 23, 2015) (plaintiffs similarly situated where they alleged that as a result of defendant's productivity goals, they regularly performed work in excess of 40 hours per week and were not paid overtime), *report and recommendation adopted*, No. 14 Civ. 3891, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015); *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *5 (S.D.N.Y. Feb. 7, 2013) (company's policy of setting sales quotas and strictly limiting overtime hours resulted in a *de facto* pattern of FLSA violations that

supported conditional certification); *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) (granting conditional certification in light of common allegations that the employer encouraged personal bankers to work unpaid overtime by requiring them to meet sales quotas that could not reasonably be accomplished in a forty-hour work week); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 1193836, at *2 (S.D.N.Y. Apr. 6, 2012) (granting conditional certification where plaintiffs alleged they were required to work overtime hours to meet employer's performance goals and employer limited the amount of overtime hours that they could record); *Levy v. Verizon Info. Servs., Inc.*, Nos. 06 Civ. 1583, 06 Civ. 5056, 2007 WL 1747104, at *2, *4 (E.D.N.Y. June 11, 2007) (finding telephone sales representatives similarly situated where they alleged that they were encouraged to work overtime to meet sales quotas but that overtime rarely was pre-approved, resulting in a failure to pay overtime hours worked).[19]

Plaintiffs' evidentiary submission – job descriptions and eight declarations – is more than sufficient to meet their "low" burden at this initial stage.  Courts in this Circuit regularly grant conditional certification based on this type of evidence, including the allegations of the complaint and employee declarations.  *See, e.g.*, *Purple Sushi*, 2020 WL 1303572, at *3 ("In keeping with the minimal showing standard, FLSA collective actions have been conditionally certified upon a

---

[19] *See also Murray v. Transportation Media, Inc.*, No. 19 Civ. 180, 2019 WL 2939251, at *4 (D. Or. May 7, 2019) (granting conditional certification based on productivity metric in sales representatives' job description, common allegations of a high pressure environment, and a written policy requiring preapproval and discipline for failure to obtain such approval), *report and recommendation adopted*, No. 19 Civ. 180, 2019 WL 2928753 (D. Or. July 8, 2019); *Jewell v. Aaron's, Inc.*, No. 12 Civ. 563, 2012 WL 2477039, at *6 (N.D. Ga. June 28, 2012) (granting conditional certification based on common allegations that the defendant required employees to meet certain sales requirements that could not reasonably be accomplished in a forty-hour work week); *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 291 (N.D. Tex. 2012) (same, based on four declarations).

single plaintiff's affidavit.") (collecting cases and conditionally certifying collective based on

two declarations); *Bimbo Foods*, 2019 WL 1417125, at *2 (conditionally certifying collective

based on four declarations); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2010

WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) (requiring any more than the pleadings and concise

affidavits "would undermine the purpose of the FLSA and . . . be inconsistent with the level of

specificity that courts consistently require at the notice stage" (citation omitted) (citing

*Braunstein*, 600 F.3d at 336)); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331

(S.D.N.Y. 2010) (conditionally certifying collective based on complaint and plaintiff's declaration);

*Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 & n.2 (S.D.N.Y. Oct. 16,

2008) (same based upon a single affidavit and deposition testimony); *Sipas v. Sammy's Fishbox,*

*Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (same with three

affidavits and complaint's allegations); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 WL

2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (same with three affidavits).

### 2.      Plaintiffs are Similarly Situated with Respect to Their Job Duties.

Plaintiffs additionally satisfy their burden of establishing at this early stage that they and

other Sales Representatives share similar job duties.  In addition to their allegations in the

Complaint, Plaintiffs provide uniform job descriptions and the declarations of eight Sales

Representatives in three different states, who state that they all performed the same non-exempt

sales duties – specifically, selling Cision's products from a fixed location.  *See supra* SOF §§ I-III.

Courts routinely authorize notice where job descriptions and declarations describe a

common core of similar duties.  *See e.g.*, *Wood v. Mike Bloomberg 2020, Inc.*, No. 20 Civ., 2020

WL 5240262, at *5-6 (S.D.N.Y. Sept. 3, 2020) (authorizing notice based on declarations and job

posting that was "consistent with the duties described by the declarants") (collecting cases); *Bimbo*

*Foods*, 2019 WL 1417125, at *2 (plaintiffs established that collective members had "similar job

requirements" with four declarations); *Djurdjevich v. Flat Rater Movers, Ltd.*, No. 17 Civ. 261, 2018 WL 5919519, at *3 (S.D.N.Y. Nov. 13, 2018) (same); *Raimundi v. Astellas U.S. LLC*, No. 10 Civ. 5240, 2011 WL 5117030, at *1 (S.D.N.Y. Oct. 27, 2011) (sales representatives similarly situated based on "similar job requirements and pay provisions"); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 213, 217 (E.D.N.Y. 2009) (granting conditional certification based on nine declarations where plaintiffs described "similar job duties, including the primary job duty of selling residential home loans" and common compensation practices).

### 3.   At This Stage, the Court Does Not Resolve Factual Disputes or Address Merits Issues.

Cision may argue that purported differences between putative collective members preclude collective notice or that resolving liability questions requires fact-specific inquiries regarding specific Sales Representatives.  However, "[t]his argument ignores the purposes of the FLSA." *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010).  Even at the second stage, the Second Circuit recently noted "that if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims [and therefore may proceed as a collective], 'dissimilarities in other respects should not defeat collective treatment.'"  *Chipotle*, 954 F.3d at 516 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).  "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits."  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263 (11th Cir. 2008); *see also O'Conner v. Agilant Sols., Inc.*, 419 F. Supp. 3d 739, 739 (S.D.N.Y. 2019) (rejecting argument "that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable" as courts "put these issues off until the decertification stage, when discovery is complete" (quoting *Barry v. S.E.B. Serv. of N.Y., Inc.*, No. 11 Civ. 5089, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013))); *Winfield*, 843 F. Supp. 2d at 404 (issue is

"not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week" (quoting *Raniere v. Citigroup, Inc.*, No. 11 Civ. 2448, 2011 WL 5881926, at *25 (S.D.N.Y. Nov. 22, 2011))); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (collecting cases and explaining that conditional certification is appropriate where collective members "were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation," and shared a "factual nexus," even if they did not all "perform[] the same duties," "work[] during the same time periods," "or work[] at the same locations as the named plaintiffs").

The proper focus here is on Plaintiffs' submissions and whether they meet the low burden required for notice to issue.  *See Bimbo Foods*, 2019 WL 1417125, at *3 (rejecting defendants' argument that more is required "beyond the pleadings and affidavits submitted by Plaintiffs" at the conditional certification stage).  Later in this case, at the second stage, Cision "may move for decertification, at which point the court will determine on a fuller record" whether collective members are, in fact, similarly situated.  *Mason v. Lumber Liquidators, Inc.*, No. 17 Civ. 4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019); *see also Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *7 (S.D.N.Y. Oct. 5, 2006) ("[A]fter close of discovery, defendant will have ample opportunity to try to . . . demonstrate that plaintiffs' case should not proceed as a collective action.").  Because Plaintiffs have more than satisfied their minimal burden at this stage, Plaintiffs respectfully request that the Court authorize notice to issue to the collective of Sales Representatives.

### III.   The Court Should Approve Plaintiffs' Proposed Notice and the Plan for Its Distribution.

Plaintiffs request that the Court authorize them to send the Proposed Notice, attached to the

Stewart Declaration as Exhibit U, to all individuals who have worked at Cision as Sales Representatives nationwide between September 21, 2017 and the present.[20]  The Proposed Notice is "timely, accurate, and informative," and therefore should be approved.  *Hoffmann-La Roche*, 493 U.S. at 172.  The Proposed Notice gives Collective Members 60 days to opt in to the collective (or 60 days from a re-mailing).

Plaintiffs ask that the Court authorize notice to be sent via U.S. mail, e-mail, text message, and social media.  *See Huer Huang v. Shanghai City Corp*, No. 19 Civ. 7702, 2020 WL 5849099, at *15-16 (S.D.N.Y. Oct. 1, 2020) (Liman, J.) (approving notice by mail, email, text message, and social media); *Purple Sushi Inc.*, 447 F. Supp. 3d at 97 (approving notice by mail, e-mail, text message, and social media); *Djurdjevich v. Flat Rate Movers, Ltd.*, No. 17 Civ. 261, 2019 WL 125888, at *3 (S.D.N.Y. Jan. 7, 2019) (approving e-mail notice and noting that "[c]ourts in this district regularly permit notice . . . by email"); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16 Civ. 473, 2016 WL 4533574, at *6 (S.D.N.Y. Aug. 24, 2016) ("Email addresses and telephone numbers are efficient methods of providing notice, and in this day and age, they are often more effective than traditional mail.").  Sending notice by e-mail and text message, in addition to U.S. Mail, is particularly appropriate here given the unprecedented impact of the Coronavirus pandemic on individuals' lives and living arrangements.  *See, e.g.*, *Panora v. Deenora Corp*, No. 19 Civ. 7267, 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020) (observing that "[t]he COVID-19 public health crisis favors some form of electronic dissemination" and approving notice by e-mail, text message,

---

[20]     Before Plaintiffs initiated this litigation, on September 21, 2020, Plaintiffs and Defendant Cision US Inc., on behalf of itself and related entities, entered into an agreement to toll statute of limitations for FLSA and related state law claims of "Business Development Specialists, Business Development Representatives, Account Executives, Business Development Managers, Business Development Executives, Sales Development Representatives, and employees in substantively similar job positions with different titles, employed at any time by Cision in the United States."

and social media channels).  Posting notice via social media is appropriate because "[s]ocial media is now used to convey all kinds of important messages to the populace and has become an important means of receiving information," and "potential opt-in plaintiffs should [not] be deprived of that means of notice and communication." *Huer Huang*, 2020 WL 5849099, at *16; *see also Presson v. Recovery Connections Comm.*, No. 18 Civ. 466, 2019 WL 3047114, at *4 (E.D.N.C. July 11, 2019) (approving notice plan proposed in plaintiffs' memorandum (ECF No. 54 in that case), including social media); *Beltran v. Interexchange, Inc*., No. 14 Civ. 03074, 2017 WL 4418684, at *6 (D. Colo. Apr. 28, 2017) (noting that "[r]ecent opinions recognize the efficiency of the internet in communicating to class members" and authorizing plaintiffs to distribute notice through social media channels); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. 15 Civ. 1427, 2016 WL 3440007, at *22 (D. Md. June 22, 2016) (authorizing social media as a "reasonable method[]" for distribution of notice); *Woods v. Vector Mktg. Corp*., No. 14 Civ. 0264, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) ("The Court finds that using a Facebook ad is a particularly useful form of ensuring actual notice in this case."); *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, at *1, *5 (S.D.N.Y. Nov. 3, 2014) (authorizing use of social media to provide notice).

Plaintiffs also request that the Court authorize a reminder notice, via postcard, e-mail, and text (i.e., the same methods of communication) to be sent to Collective Members who have not yet returned Consent to Join Forms halfway through the notice period.  *See* Ex. V (Proposed Reminder Notice).  Reminder notices are common and cause defendants no prejudice.  *See, e.g.*, *Yuefeng Shi v. TL & CG Inc.*, No. 19 Civ. 08502, 2020 WL 4586359, at *6 (S.D.N.Y. Aug. 10, 2020) ("A reminder notice is appropriate given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." (citation, internal quotations, and alteration omitted)); *Salsa Con Fuego*, 2016 WL 4533574, at *8 (approving

reminder notice and collecting cases approving same).

Plaintiffs further request that the Court authorize notice to be posted on a standalone website through which opt-ins can electronically submit consent to join forms.  Courts allow this to provide opt-ins with easy access to information and an easy method by which to opt-in if they so choose. *See, e.g.*, *Zhang v. Ichiban Grp., LLC,* No. 117 Civ. 148, 2020 WL 1030651, at *10 (N.D.N.Y. Mar. 3, 2020) (approving notice website and collecting cases); *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718, 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) (same, given that the "same logic supports dissemination of notice via website" as by email "given the reality of communications today" (citation omitted)).

Finally, Plaintiffs ask the Court to order Cision to produce, in a computer-readable format, the names, last known mailing addresses, last known telephone numbers, last known personal email addresses, work locations, and dates of employment at each location, for all Collective Members, and the last four digits of Social Security numbers for those members whose notices are returned undeliverable.  Production of such information is standard in FLSA cases in the Second Circuit because it facilitates locating collective members and ensuring that they receive timely notice.  *See, e.g.*, *Huer Huang*, 2020 WL 5849099, at *15 ("[I]n furtherance of the general purposes of FLSA, '[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.'" (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016))); *see also Emeterio v. A & P Rest. Corp.*, No. 20 Civ. 970, 2021 WL 101186, at *2 (S.D.N.Y. Jan. 12, 2021) (requiring defendants to produce an Excel file with the names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, all known telephone numbers, and the social security numbers for members whose

notices were returned undeliverable); *Masoud v. 1285 Bakery Inc.*, No. 15 Civ. 7414 , 2017 WL 448955, at *8 (S.D.N.Y. Jan. 26, 2017) (requiring defendants to produce "all known telephone numbers, e-mail addresses, social security numbers, and dates of employment of individuals"); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (requiring defendants to produce "all names, last known addresses, alternate addresses, known telephone numbers, known e-mail addresses, social security numbers (where applicable), dates of employment and job titles").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should: (1) authorize the issuance of notice to Collective Members; (2) order Cision to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known personal email addresses, last four digits of Collective Members' Social Security numbers (for those notices returned undeliverable), and work locations and dates of employment at each location for all Collective Members; and (3) approve Plaintiffs' Proposed Notice and the plan for its distribution.

Dated: February 16, 2021      Respectfully submitted,
   New York, NY       */s/ Melissa L. Stewart*
                **OUTTEN & GOLDEN LLP**
                Melissa L. Stewart
                Eliana J. Theodorou
                685 Third Avenue, 25th Floor
                New York, NY 10017
                Telephone: (212) 245-1000
                Facsimile:  (646) 509-2060

                Hannah Cole-Chu*
                601 Massachusetts Avenue NW,
                Suite 200W
                Washington, D.C. 20001
                Telephone: (202) 847-4400
                Facsimile: (202) 847-4010

                *Attorneys for Plaintiffs and the Putative*
                *Classes*

*Pro hac vice* motion forthcoming