**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ANATOLIY MIKITYUK** *et al.*, | : | **Case No.: 1:21-cv-00510 (LJL)** |
| **Plaintiffs,** | : : | |
| **-v-** | : : | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO** |
| **CISION US INC.** *et al.*, | : : | **29 U.S.C. § 216(b)** |
| **Defendants.** | : | |

**DEFENDANTS CISION US INC. AND CISION LTD.'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ..................3

      A.   Cision US Inc. and Cision Ltd............................................................3

      B.   The Plaintiffs .................................................................................3

      C.   Cision US's Timekeeping Policies ........................................................4

      D.   Meet-and-Confer Efforts on Plaintiffs' Motion. ....................................6

III.  ARGUMENT ...............................................................................................7

      A.   Approval for Sending a FLSA Opt-In Notice is Not Automatic or
           Mandatory, Plus Requires That Plaintiffs Demonstrate More Than Just
           Any Similarity. ...............................................................................7

      B.   Plaintiffs' Proposed Notice Group is Overbroad: Failing to Show That
           Sales Representatives Nationwide Are Similarly Situated, Any Notice
           Should Be Limited to the Three Locations Where Plaintiffs Worked. ...........10

      C.   Plaintiffs' Vague Reference to "Other Similar Roles" Must Be Removed
           as a Basis for Defining the Notice Group and From the Notice's Content. ........14

      D.   Plaintiffs' Proposed Notice and Consent to Join Should Be Rejected. ............15

           1.   General Requirements for FLSA Opt-In Notices. ...........................15

           2.   Plaintiffs' Proposed Notice Must be Rejected as an Improper and
                Biased Solicitation..........................................................16

           3.   Defendants' Notice is Neutral, Accurate, and Includes All
                Necessary Information........................................................18

           4.   The Court Should Not Authorize Any Reminder Notice. .....................21

           5.   The Court Should Approve Defendants' Proposed Consent to Join. .........22

      E.   Plaintiffs' Requested Means of Distributing the Notice Are Unwarranted
           and Undetermined, and Distribution Should be Limited to a Mailing and
           Handled by a Third Party Administrator. ..............................................23

IV.   CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ack v. Manhattan Beer Distribs., Inc.*,
  N0. 11-CV-5582, 2012 WL 1710985 (E.D.N.Y. May 15, 2012)............................................ 14

*Agerbrink v. Model Serv. LLC*,
  No. 14 Civ. 7841, 2016 WL 406385 (S.D.N.Y. Feb. 2, 2016)........................................ 20, 21

*Brown v. AvalonBay Communities, Inc.*,
  No. CV17-6897, 2019 WL 1507901 (E.D.N.Y. Mar. 29, 2019).......................................... 21

*Eng-Hatcher v. Sprint Nextel Corp.*,
  No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)......................................... 10

*Guzelgurgenli v. Prime Time Specials Inc.*,
  883 F. Supp. 2d 340 (E.D.N.Y. 2012)......................................................................... 9, 14, 21

*Hoffmann-La Roche v. Sperling*,
  493 U.S. 165 (1989) ................................................................................................. *passim*

*Huang v. Shanghai City Corp.*,
  No. 19-cv-7702, 2020 WL 5849099 (S.D.N.Y. Oct. 1, 2020) (Liman, J.),
  *clarified,* 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020) ................................................... *passim*

*Jibowu v. Target Corp.*,
  -- F. Supp. 3d –, 2020 WL 5820957 (E.D.N.Y. Sept. 30, 2020)......................................... 8, 9

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ........................................................................................... 8

*Korenblum v. Citigroup, Inc.*,
  195 F. Supp. 3d 475 (S.D.N.Y. 2016) ............................................................................... 9

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ............................................................................. 11

*McGlone v. Cont. Callers, Inc.*,
  867 F. Supp. 2d 438 (S.D.N.Y. 2012) ......................................................................... 11, 22

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ....................................................................................... *passim*

*Ruiz v. Truffa Pizzeria & Wine Room Corp.*,
  No. 20-cv-8645, 2021 WL 568249 (S.D.N.Y. Feb. 15, 2021)(Liman, J.) ...................... 8, 9, 20

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

**Cases**

*Sanchez v. JMP Ventures, L.L.C.*,
    No. 13 Civ. 7264, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ................................7

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020), *pet. for cert. filed,* No. 20-257 (U.S. Aug. 28,
    2020)................................................................................................................8, 9

*Sharma v. Burberry Ltd.*,
    52 F. Supp. 3d 443 (E.D.N.Y. 2014) ........................................................12, 21, 24

*Tanski v. AvalonBay Communities, Inc.*,
    No. CV15-6260, 2017 WL 10858910 (E.D.N.Y. Mar. 31, 2017)....................21, 24

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) ......................................................11

*Valerio v. RNC Indus., LLC*,
    314 F.R.D. 61 (E.D.N.Y. 2016)........................................................11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ..................................................20

Defendants Cision US Inc. ("Cision US") and Cision Ltd. do not contest the issuance of a Section 216(b) Notice—only the scope of distribution, the content, and proposed distribution "plan."  As to the scope of distribution, and as indicated in the initial conference, the Notice should only be distributed to the locations where the named Plaintiffs worked.  They have provided no specific allegation or evidence of an overtime issue in any other location.  As to the content of Plaintiffs' proposed Notice, it constitutes an improper solicitation and omits key elements— including a clear general denial by the Defendants, the ability to retain separate counsel, and the relevant criteria for being eligible to opt into the lawsuit and seek recovery for overtime allegedly due.  Finally, as to the distribution, Plaintiffs have not established circumstances warranting distribution other than by U.S. Mail, nor have they specified the process or content of the other communications they propose.

## I.   <u>INTRODUCTION</u>

Plaintiffs Anatoliy Mikityuk, Michael Esquibel, and Mitch Tallungan are former Sales Representatives[1] of Cision US and Falcon.io ("Falcon"), an affiliate of Cision US.  They assert claims under the federal Fair Labor Standards Act ("FLSA").  In particular, they allege they worked more than 40 hours in a workweek without payment of overtime.  (Dkt. No. 20, FAC ¶¶ 1, 9.)  In addition to their individual claims, Plaintiffs pursue similar claims on behalf of allegedly "similarly situated" Sales Representatives whom Cision US and its affiliates employed across the country.  (*Id.*; *see also ¶¶* 15-18.)

---

[1] Except for the vague reference to "other similar roles, however variously titled," Defendants adopt the definition of "Sales Representatives" that Plaintiffs use for the putative collective group in their First Amended Complaint (Dkt. No. 20) and Memorandum of Law supporting their Motion (Dkt. No. 13).  Defendants do so for the purpose of identifying the specific job classifications whose employees would receive notice within the broad term "Sales Representatives."  In doing so, Defendants do not concede that individuals in the group collectively, or in each of the included job titles, are similarly situated or qualify for inclusion in the putative collective group.  Nor do Defendants concede any issue that may arise concerning any class certification motion under Federal Rule of Civil Procedure 23.

As noted, Defendants do not oppose Plaintiffs' Motion entirely.  Under current legal authority, Plaintiffs may be allowed to send a notice at least to some individuals (as long as they are "similarly situated") and in some form at this stage—as long as the language and approach are neutral, accurate, and not amounting to a solicitation.  Here, the Court should deny the Motion insofar as Plaintiffs seek to send a Notice to a nationwide group.  Instead, such Notice can be disseminated only to employees at the locations where the three named Plaintiffs worked.  Put simply, Plaintiffs have failed to carry their burden of showing that employees beyond those three locations may be "similarly situated."  As discussed below, the definition of who could be within the collective group and receive Notice also must be narrowed by removing the impermissibly vague term "other similar roles, however variously titled" in Plaintiffs' proposed Notice.

In addition, the Court should reject the content of Plaintiffs' proposed Notice entirely, and instead approve Defendants' proposed Notice.  Plaintiffs' proposed document is an improper solicitation, and contrary to the requirements that the United States Supreme Court set for opt-in notices.  Further, the Court should approve the Consent to Join form as modified by Defendants, including so that it contains an affirmation that anyone joining the lawsuit in fact worked unpaid overtime hours.

Further, the Court should reject Plaintiffs' request for a reminder notice.  They have failed to justify such notice, as well as neglected to let the Court know the language or form of any such notice.  Moreover, the Court should reject dissemination of any Notice through various means other than U.S. Mail delivery.  Plaintiffs again failed to show any circumstances warranting the use of such methods, how they would work, whether risks with such methods could be alleviated, or what communications would be disseminated through those methods.

In the end, as discussed below, the Court should order that any Notice be sent only through U.S. mail delivery, with a neutral third-party administrator sending such Notice.

## II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Cision US Inc. and Cision Ltd.

Cision US is a leading global provider of public relations ("PR") software, media distribution, media intelligence, and related professional services. (Jackson Decl., Ex. 3 ¶ 2.) Until 2020, Cision US was a subsidiary of Cision Ltd., a publicly-traded holding company. (*Id.*)  In January 2020, Cision Ltd. became a privately-held company. (*Id.*)  Since then, it has been an indirect affiliate of Cision US. (*Id.*)  As a holding company, Cision Ltd. never had any employees. (*Id.*)

In the United States, Cision US and its affiliated entities have offices in New York, NY; Los Angeles, CA; San Francisco, CA; Albuquerque, NM; Chicago, IL; Cleveland, OH; Denver, CO; Reston, VA; Beltsville, MD; Ann Arbor, MI; and Austin, TX. (*Id.*)  A number of Cision US's employees work remotely and do not perform work in any of Cision's office locations. (*Id.*)

### B.   The Plaintiffs

Plaintiff Mikityuk was employed by Falcon as a Sales Development Representative in its New York office from March 2019 to November 2019. (FAC ¶ 25.)  Plaintiff Tallungan was employed by Cision US as a Business Development Manager in its Chicago office from January 2016 to March 2018. (*Id.* ¶ 35.)  Plaintiff Esquibel was employed by Cision US as a Business Development Specialist in its Beltsville office from August 2018 to June 2019 . (*Id.* ¶ 45.)  Each named plaintiff alleges that he performed non-exempt, sales-related duties to sell Cision's products and services. (*Id.* ¶¶ 6, 26, 36, 46.)  They claim that they worked more than 40 hours in a workweek, but were not paid for all overtime hours. (*Id.* ¶¶ 28, 38, 48.)

Beyond their own declarations, the three Plaintiffs submit declarations from five other former Sales Representatives.  (*See* Dkt. No. 14-1, Stewart Decl., Exs. A–E.)  They also worked in the same New York, Chicago, or Beltsville offices.  (*Id.*, Exs. A ¶ 1, B ¶ 1, C ¶ 1, D ¶ 1, E ¶ 1.)

All eight declarants purport to identify other Sales Representatives whom they allege are "similarly situated" to themselves with respect to their FLSA claims.  (*Id.*, Exs. A ¶¶ 14–16, B ¶¶ 14–15, C ¶¶ 14–15, D ¶¶ 14–15, E ¶¶ 14–15.)  Each individual so identified also worked in Cision's New York, Chicago, or Beltsville offices.  (*Id.*)

Significantly, neither Plaintiffs' FAC nor any of their declarations contain any specific reference or particular information concerning any location other than the New York, Chicago, or Beltsville offices.

## C.      Cision US's Timekeeping Policies

Contrary to Plaintiffs' claims, Cision US has required all overtime non-exempt employees to record all hours worked.  (Jackson Decl., Ex. 3 ¶ 3.)  Those employees have had to enter their hours worked into the UltiPro system, a software timekeeping program.  (*Id.*)  These non-exempt employees also have had to record all time worked, regardless of whether salaried or paid hourly. (*Id.* ¶ 4)    While non-exempt employees have been asked to get pre-approval before working overtime, they still have been paid for all time worked (including overtime) regardless, as long as they recorded the time or Cision US had knowledge of the time worked.  (*Id.*)

Moreover, the Cision Handbook makes clear that employees must record all hours worked. It instructs employees immediately to report any supervisor or manager who suggests or requires they submit a timesheet that does not accurately reflect all time, including overtime, for which employees must be paid.  (*Id.*)  Cision US took extensive steps for non-exempt employees to complete their timesheets in a timely manner, to know how to do so, to add additional time and overtime worked, and to review and approve their timesheets.  (*Id.* ¶¶ 4–7.)

Cision US's non-exempt employees have been required and continue to be required to complete their timesheets by specified payroll deadlines each pay period.  (*Id.* ¶ 5.)  For non-exempt employees who are salaried, UltiPro automatically populates their timesheets with their regularly scheduled hours each pay period.  (*Id.*)  Non-exempt, salaried employees must then log into UltiPro and record any additional hours they worked during that pay period.  (*Id.*)  All non-exempt employees must then submit their timesheets to their supervisor for approval.  (*Id.*)  Before employees submit their timesheets, they must certify that all of the information in their timesheet is correct.  (*Id.*)  Finally, non-exempt employees have received auto-generated emails each pay period reminding them to review and submit their timesheets.  (*Id.* ¶ 6.)  The email includes a link to instructions on how to properly record time, including any overtime worked.  (*Id.*)

In their FAC, as well as in their declarations, the three Plaintiffs fail to say whether their positions were classified as overtime exempt or non-exempt, or if they even had any understanding or belief in that respect.  They are inconsistent in describing their experiences—or whether they are similarly situated.  Plaintiffs Mikityuk and Esquibel declared that they did "not recall being directed to record [their] hours worked in a timekeeping system, and [they did] not recall recording [their] hours worked in a timekeeping system."  (Dkt. No. 14-1, Stewart Decl., Exs. A ¶ 10, E ¶ 10.)  In contrast, Plaintiff Tallungan declares that his supervisor told him "that Cision wanted [him] to record [his] hours" for at least part of his employment.  (*Id.*, Ex. H ¶ 10.)

Esquibel's supervisor, Ryan Haggerty, always understood the Sales Representatives under his supervision to be eligible for overtime after 40 hours in a workweek.  (Jackson Decl., Ex. 4 ¶ 3.)  Before becoming a manager, Haggerty understood he was eligible for overtime and had to record any overtime hours worked.  (*Id.* ¶ 4.)

5

Haggerty recalls several meetings in the sales department that discussed the fact that Sales Representatives were eligible for overtime.  (*Id.* ¶¶ 3, 4.)  Haggerty had to review and approve the time records for each member of his team.  (*Id.* ¶ 3.)   Haggerty always approved all of the hours that employees recorded in their timesheets, including any overtime.  (*Id.*)

Sophia Rosenthal, who has served in several sales roles, further confirms Cision US's policy and practice.  She always understood that she was eligible for overtime pay after 40 hours in a workweek.  (Jackson Decl., Ex. 5 ¶¶ 1, 3.)  Rosenthal believed that other team members were aware of this fact as well, having discussed the issue with another colleague on at least one occasion.  (*Id.* ¶ 3.)  She further received e-mail reminders about her timesheets, which included a direct link for employees to record any overtime hours.  (*Id.*)

### D.     Meet-and-Confer Efforts on Plaintiffs' Motion.

After Plaintiffs filed their Motion, counsel for the parties engaged in meet-and-confer discussions in an effort to resolve all or some of the issues the Motion presents.  They included telephone conferences between counsel on March 12 and 24, 2021.  (Jackson Decl. ¶ 4.)  Defense counsel provided Plaintiffs' counsel with two revised versions of Plaintiffs' proposed Notice and one revised version of Plaintiffs' proposed Consent to Join.  In between those proposals, Plaintiffs' counsel sent defense counsel some possible proposed changes.[2]  (*Id.*)  Defendants' counsel sent their second revised draft Notice to Plaintiffs' counsel on March 26, 2021.  (*Id.*)  Since the call on March 24, 2021, Plaintiffs' counsel has responded to defense counsel on the Notice and Consent to Join issues only once.  On March 30, 2021, the deadline for Defendants' to file their Opposition, Plaintiffs' counsel e-mailed to say that they were still were reviewing Defendants' last version. (*Id.*)

---

[2] Plaintiffs' proposed changes addressed certain components of Defendants' concerns, but failed to negate a number of key concerns, including that Plaintiffs' proposed notice went far beyond being a proper neutral notice.

During the conference call on March 24, 2021, Plaintiffs' counsel addressed the proposals in their Motion to distribute a Notice and a later reminder notice electronically and through social media.  (*Id.* ¶ 5.)  Plaintiffs' counsel stated that Plaintiffs have not decided which social media platforms that they might use.  They also stated that Plaintiffs may engage a "claims administrator" or a "digital marketing expert."  (*Id.*)  Plaintiffs' counsel acknowledged that Plaintiffs may look at advertising or direct messages, but also could not address the form of any website Plaintiffs might use.  (*Id.*)

On that call, Plaintiffs' counsel stated they had not yet determined what any reminder notice would say, including whether it would be based upon the original Notice approved by the Court, contain part of that Notice, or include a link to the approved Notice.  Plaintiffs' counsel suggested the answer would depend on the type of media, including the amount of space available, such as the number of characters.  (*Id.* ¶ 6.)

Finally, given Plaintiffs' counsel's mention of possibly using a "claims administrator," defense counsel asked if the parties might agree to use a third-party administrator to handle the notice process and send notices.  Plaintiffs' counsel has not responded to defense counsel further on that suggestion.  (*Id.* ¶ 7.)

## III.   **ARGUMENT**

### A.   **Approval for Sending a FLSA Opt-In Notice is Not Automatic or Mandatory, And Requires That Plaintiffs Demonstrate More Than Just Any Similarity.**

Contrary to Plaintiffs' arguments, approval of their request to send a notice seeking opt-in consents is not mandatory or automatic.  Nor is just any asserted similarity sufficient to cause notice to be sent to individuals allegedly "similarly situated" as a group—much less on a nationwide basis or beyond the locations where the three current Plaintiffs worked.

Approval for sending notice of a FLSA lawsuit and the opportunity to consent to join is **not** automatic or mandatory. *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014). Rather, "district courts have discretion, in appropriate cases, to implement [Section 216(b)] by facilitating notice to potential plaintiffs." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989). The Second Circuit expressly recognized that district courts may authorize the sending of notice to putative opt-in plaintiffs, but at the same time noted "they are not required to do so by [the] FLSA." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). Indeed, *Hoffmann-La Roche* "nowhere suggests that employees have a right to receive notice of potential FLSA claims." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019).[3]

The Second Circuit adopted a two-step method to determine whether a case may proceed as a collective action under the FLSA. *Myers,* 624 F.3d at 554–55. The first step involves "making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. The second step comes later when the court determines ultimately whether the case can proceed as a collective action, "by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs" or subject to decertification. *Id.*

Here, at the first step, Plaintiffs must make "a modest factual showing" that they and the potential opt-in plaintiffs are similarly situated in a common manner that violated the FLSA. *Id.* As this Court recognized very recently, while Plaintiffs' burden at this stage may be modest, "it is

---

[3] The Second Circuit's most recent decision on FLSA collective actions is **not** to the contrary, despite Plaintiffs' suggestion otherwise. (*See* Dkt. No. 13, Pl. Mem. of Law, at 7.) While recognizing that Section 216(b) establishes a "right" to bring an action under the FLSA and to become a party plaintiff "so long as certain preconditions are met," the Second Circuit did **not** recognize any right to receive notice as part of any conditional certification or first step. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020), *pet. for cert. filed,* No. 20-257 (U.S. Aug. 28, 2020).

not non-existent." *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, No. 20-cv-8645, 2021 WL 568249, at *3 (S.D.N.Y. Feb. 15, 2021) (Liman, J.).  Thus, for example, "[m]ere unsupported assertions" are insufficient. *Id.* (internal quotation marks omitted); *see also Myers*, 624 F.3d at 555.  The lack of sufficient evidence covering particular locations also has led this Court and others to limit notice to employees who worked at certain locations.  *See, e.g., Huang v. Shanghai City Corp.*, No. 19-cv-7702, 2020 WL 5849099, at *10–12 (S.D.N.Y. Oct. 1, 2020) (Liman, J.), *clarified,* 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020); *Jibowu v. Target Corp.*, __ F. Supp. 3d __, 2020 WL 5820957, at *17–25 (E.D.N.Y. Sept. 30, 2020).

At the first step, not just any alleged similarity is enough to show employees are "similarly situated."  Rather, Plaintiffs must establish that they and the individuals whom they seek to send notice "together were victims of a common policy or plan that violated the law."  *Myers,* 624 F.3d at 555.  Put another way, at the first step, the key element that Plaintiffs must show "is a shared unlawful policy; that is, while the proposed collective need not be identical in every possible respect, its potential members must be similarly situated with respect to the allegedly unlawful policy or practice."  *Korenblum v. Citigroup, Inc.,* 195 F. Supp. 3d 475, 479, 480 (S.D.N.Y. 2016) (internal quotation marks omitted).[4]

Finally, in exercising its discretion on whether to send notice and how, the Court must prevent any notice process from "devolving into a fishing expedition or imposing undue burdens

---

[4] Incorrectly citing to *Scott*, Plaintiffs wrongly argue that the relevant standard on step one essentially is whether there is any similarity whatsoever between the members of a potential collective.  They claim the first step requires only that the current named Plaintiffs and the prospective opt-in plaintiffs "are alike with regard to some material aspect of their litigation."  (*See* Dkt. No. 13, Pl. Mem. of Law, at 8, citing to *Scott,* 954 F.3d at 516.)  However, *Scott* was clear that this standard is a consideration at the <u>second</u> step, not the first, given that the focus of that decision was the second step and the standard for decertification at that later point, and it did not modify the step one process.  *Id.* at 515–17.  Indeed, later courts recognized this holding in *Scott* as limited to the second step.  *See, e.g., Jibowu*, 2020 WL 5820957, at *21 n.35 (holding that *Scott* concerned only the second step).  Subsequent to the *Scott* decision in 2020, this Court also continued to apply the step one standard discussed above, rather than modifying it as Plaintiffs claim was done by the *Scott* court.  *Ruiz*, 2021 WL 568249, at *3.

on the defendants." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012).

  **B.**   <u>**Plaintiffs' Proposed Notice Group is Overbroad: Failing to Show That Sales Representatives Nationwide Are Similarly Situated, Any Notice Should Be Limited to the Three Locations Where Plaintiffs Worked.**</u>

  Plaintiffs move this Court to authorize and facilitate the sending of "opt-in notices" and "consents to join" to Sales Representatives from all of Cision US and Cision Ltd.'s offices across the United States.  Plaintiffs assert that this nationwide group somehow is "similarly situated" as required, but fail to carry their burden on that point.  As a result, the Court should deny Plaintiffs' Motion insofar as it seeks nationwide notice, with any notice limited to the three locations where Plaintiffs worked—which are the only three locations on which they offer any evidence that Sales Representative might be "similarly situated."

  Put simply, Plaintiffs' FAC and the evidence in support of their Motion are **<u>entirely devoid</u>** of any information or points concerning Sales Representatives outside of the Chicago, New York, and Beltsville offices.  Plaintiffs failed to provide any evidence or any common basis on which to determine whether Sales Representatives outside of those three offices were or were not eligible for overtime, worked overtime (or when, how much, or why they may have worked overtime), whether their managers approved such overtime, whether they recorded overtime in the UltiPro system, whether their managers knew or should have known of any unpaid overtime, or—very importantly—whether those other employees were paid overtime.  Federal courts, including this Court, have regularly denied conditional certification of purported nationwide collective actions where, as here, plaintiffs present evidence regarding employees at only a few of an employer's locations, and without any factual basis to believe putative class members who worked at other locations were "similarly situated" to the named plaintiffs.  The same should happen here, particularly in light of the clear corporate policies with respect to recording and paying overtime.

While Plaintiffs' burden at this stage may not be overly stringent, they do not get a pass. The law is clear that nationwide or company-wide notice is not appropriate where plaintiffs fail to present any evidence that employees at locations other than their own were subjected to the same allegedly unlawful policy or practice.  Specifically, where an employer has a facially lawful company-wide policy, courts will not conditionally certify a company-wide collective action where plaintiffs provide evidence that the policy was unlawfully applied only in certain locations or other limited circumstances.  *See, e.g., Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (rejecting notice to a nationwide group, where defendant had a company-wide policy mandating that all overtime be paid and plaintiff provided insufficient evidence "to impute [her] own limited experience to a nationwide class").

Indeed, courts regularly refuse to authorize notice to a nationwide or company-wide group where—as here—the plaintiffs' evidence is limited to a select number of locations.  *See, e.g., Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) ("Although all Pret stores in New York City are owned by the same parent company, plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation."); *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012) (declining to order notice nationwide where the employer had a company-wide policy of automatically deducting unpaid meal breaks from employee pay, but plaintiffs did not show "that an unlawful policy or plan was applied outside their own facility"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 71 (E.D.N.Y. 2016) ("In addition, the affidavits and declarations submitted show only that Plaintiff and Opt-In Plaintiffs worked at two locations on Long Island.  Therefore, a class definition encompassing any broader geographic scope is likewise unsupported by Plaintiff's submissions."); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355–56 (E.D.N.Y. 2008) (granting

11

conditional certification only as to locations where plaintiffs worked because allegations about conditions at other locations were based on hearsay and unreliable statements).

This Court has made that same determination and rejected notice across all of an employer's locations.  In *Huang v. Shanghai City Corp.*, No. 19-cv-7702, 2020 WL 5849099 (S.D.N.Y. Oct. 1, 2020) (Liman, J.), plaintiffs sought opt-in notice to employees who worked at two New York City restaurants, with one location in Midtown Manhattan and the other in Flushing, Queens.  *Id.* at *1, *6.  In evaluating whether employees at the two locations were similarly situated, this Court noted that such a determination allowing notice across multiple locations requires "an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and [that] the locations share common ownership or management."  *Id.* at *6.  This Court then observed that although the named plaintiffs who worked at one location provided evidence of at least one co-worker who was subjected to unlawful pay practices, that individual worked at the same location as the plaintiffs.  In fact, the Court emphasized that the "Midtown Restaurant employees say nothing in their affidavits about the Flushing Restaurant; nor do Flushing Restaurant employees say anything about the Midtown Restaurant."  *Id.* at *7.  Because those plaintiffs' submissions were devoid of evidence "that the same managers subjected the employees to illegal treatment across locations," there were no facts alleged "that would support the existence of a common policy across restaurants."  *Id.*  As a result, the Court limited notice to a group consisting of workers only from the one restaurant for which the plaintiffs provided evidence.  *Id.* Other courts regularly take the same approach.  *See, e.g., Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443 (E.D.N.Y. 2014) (holding that because the plaintiffs' declarations "articulate[d] that [the employer] had a policy of requiring [sales associates] to work uncompensated overtime at these two New York locations," but did not offer declarations or any other evidence from employees at

other stores, the court conditionally certified a collective action consisting of employees at only two New York stores).

The facts in the case at bar are remarkably similar to those in *Huer Huang* and *Sharma*. Here, Cision US had a nationwide policy of paying overtime for all hours worked over 40 in a workweek; although employees were required to obtain advance supervisor approval prior to working overtime hours, Cision US's policy was to pay for all hours worked regardless of whether or not they were preapproved.  (Jackson Decl., Ex. 3 ¶ 4.)  Cision US's handbook made clear that employees were required to record all hours worked, and that they should report any supervisor who suggests, encourages, or requires them to submit inaccurate timesheets.  (*Id.*)  As such, in order to show that the putative collective members are "similarly situated" in that they were subjected to a common unlawful policy or practice, conditional certification turns on whether plaintiffs have made an adequate showing that Cision US's policy was unlawfully applied in practice.

The declarations Plaintiffs submitted in support of their Motion allege that Sales Representatives at Cision US's Chicago, New York, and Beltsville locations worked overtime hours for which they were not paid, and about which their supervisors knew or should have known. But Plaintiffs have not identified any Sales Representatives outside of those locations who worked uncompensated overtime, nor have they provided any evidence that supports an inference that Sales Representatives at other locations were subjected to the same or similar unlawful practice. Although Plaintiffs allege that they could not perform their job duties by working only 40 hours per workweek, and were encouraged by their managers to come in early or stay late, there is no evidence in the record on these issues with respect to supervisors or employees at other locations. And, although Plaintiffs submitted one job posting for a Sales Representative position at Cision

US's Cleveland office, there is no evidence in the record regarding the circumstances in which Sales Representatives at the Cleveland office performed their jobs.

For these reasons, plaintiffs have failed to carry even their modest burden of showing that Sales Representatives outside of Cision US's Chicago, New York, and Beltsville locations are "similarly situated" and should receive opt-in notice.

C.     **Plaintiffs' Vague Reference to "Other Similar Roles" Must Be Removed as a Basis for Defining the Notice Group and From the Notice's Content.**

While defining the purported collective action group based on a litany of 17 specific sales job titles, Plaintiffs include at the end any "other similar roles, however variously titled."  (*See* Dkt. No. 14-21, Ex. U, at 1.)  This term is impermissibly vague and must be disregarded.

When a plaintiff has proposed job titles or terms that are overly vague, courts have excluded that language from the definition of the collective group, as well as for purposes of determining who receives opt-in notice.  *See, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) ("persons in similar positions" was too vague); *Ack v. Manhattan Beer Distribs., Inc.*, N0. 11-CV-5582, 2012 WL 1710985, at *2 n.6 (E.D.N.Y. May 15, 2012) ("other persons in similar positions" too vague).

Here, Plaintiffs' attempt to include "other similar roles, however variously titled" to define the group also fails.  The term is far too vague to be of any use and would likely only sow confusion.  Plaintiffs identify numerous specific job titles, and have not identified any other job categories or individuals that might be in "other similar roles, however variously titled."  Simply put, it is impermissibly vague, unnecessary, and should be removed from the Notice and eliminated from the definition used to determine the collective group entitled to Notice.

**D.** **Plaintiffs' Proposed Notice and Consent to Join Should Be Rejected.**

Plaintiffs' proposed Notice is improper, and the Court should reject it as a whole.  Put simply, rather than a neutral or accurate notice designed to inform potential opt-in plaintiffs of the lawsuit, Plaintiffs' notice is a blatant solicitation and affront to the basic guiding standards the Supreme Court set in *Hoffmann-La Roche*.  In addition, Plaintiffs' proposed Consent to Join lacks critical and necessary language—again, with Plaintiffs' counsel wrongly focusing solely on signing up another client.  In place of Plaintiffs' proposed documents, Defendants provide neutral alternative versions, as discussed below.

**1.** **General Requirements for FLSA Opt-In Notices.**

Any opt-in notices sent in a collective action must be neutral, accurate, and not designed as a tool for soliciting or stirring up litigation.  In *Hoffmann-La Roche*, the Supreme Court established basic guidelines for such notices.  The district courts have a "managerial responsibility" to oversee the joinder of any opt-in plaintiffs "in an efficient and proper way." *Hoffmann-La Roche,* 493 U.S. at 170–71.  However, the Supreme Court emphasized that courts lack "unbridled discretion" regarding notices to potential opt-in plaintiffs.  *Id.* at 174.

Courts must ensure that opt-in consent notices are "timely, accurate, and informative."  *Id.* at 172.  While  notices inform employees of their eligibility to join a lawsuit as additional plaintiffs, the Court's involvement cannot devolve into "the solicitation of claims."  *Id.* at 174.  A court's involvement "in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims."  *Id.*; *see also Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430, 434 (5th Cir. 2021) (while court may facilitate notice for case management purposes, "it cannot signal approval of the merits or otherwise stir up litigation.").

2.    **Plaintiffs' Proposed Notice Must be Rejected as an Improper and Biased Solicitation.**

Rather than being neutral as required by *Hoffmann-La Roche*, Plaintiffs' Notice as a whole reads as a one-sided solicitation of additional plaintiffs. (*See* Dkt. No. 14-21, Ex. U.)  At the outset, Plaintiffs' proposed notice seeks to take advantage of the Court's role in approving and facilitating notice by announcing twice (in all caps bold) that the document is a "court-authorized" notice. (*Id.* at 1.)  This gloss puts the Court in the untenable position of appearing to endorse the solicitation if its approves Plaintiffs' proposed version.  The Court should decline that invitation.

Among its defects, Plaintiffs' proposed Notice improperly encompasses employees nationwide and includes the impermissibly vague term "other similar roles" in defining the collective group and who should receive notice. (*Id.*)  As discussed above, the Notice should be limited to the three locations where the three current Plaintiffs worked and that their proffered evidence covers, with the language "other similar roles, however variously titled" excluded from the definition and scope of the notice group.

Despite the requirement that opt-in notices be "accurate," *Hoffmann-La Roche*, 493 U.S. at 172, Plaintiffs' proposed Notice is not accurate in two major respects.  First, Plaintiffs' draft confuses and inaccurately refers to "Cision" generally as the employer of the collective group. (Dkt. No. 14-21, Ex. U, at 1.)  However, this ignores the two separate defendants, the issue of who employed particular individuals, and the fact (as discussed above) that one defendant is a holding company that never has had any employees.  Second, Plaintiffs' proposal misrepresents that "[a]dditional opt-in plaintiffs from several states have joined this case." (*Id.*)  Plaintiffs offer no such evidence.  While they offer five declarations from non-plaintiff former employees (each of whom worked at the same location as the named Plaintiffs), there is no indication that any of those individuals have opted into the lawsuit as additional plaintiffs.  Moreover, while the FLSA requires

16

that an individual file written consent with the Court to join a case as an opt-in plaintiff, no consents beyond the three named Plaintiffs have been filed.  Plaintiffs' statement about additional opt-in plaintiffs already existing is not only inaccurate, but is simply a further effort to build up their solicitation by claiming that others already have joined and that anyone else receiving the Notice should do so, too.

Among its further defects, Plaintiffs' proposed Notice avoids even using the case caption or putting the case name, number, and court up front.  Instead, Plaintiffs bury this information on the second page.  (*Id.* at 1–2.)  Nor do they ever mention that individuals who join the lawsuit may be subject to having their depositions taken, having to respond to discovery, or testify at trial as a party.  (*Id.* at 1–3.)  While soliciting additional plaintiffs, however, Plaintiffs thus fail to present accurately that individuals who opt in, in fact, will become plaintiffs in a court case and have to participate, with all of the associated responsibilities.

Plaintiffs' proposed Notice purports to explain "Your Legal Rights and Options in This Lawsuit," but again does not do so fully or accurately.  (*Id.* at 1.)  It promises that "[i]f you choose to be included, you will share in any monetary recovery that might come from a trial or a settlement in this lawsuit."  (*Id.*)  However, it does not mention that any negative outcome would be binding, or that an individual still may not prevail on his or her own claims, instead focusing on a promise to "share in any monetary recovery" generally as a solicitation.  On the other hand, if an employee does not join the lawsuit, it "means that you give up the possibility of a monetary recovery that may come from a trial or settlement if those bringing the lawsuit are successful."  (*Id.*)

Plaintiffs' version of the Notice never lets employees know they have the right to use counsel of their own choice if they join this action.  Rather, it states that every opt-in plaintiff "will be represented by Plaintiffs' counsel, Outten & Golden LLP."  (*Id.* at 3.)  Although the proposed

notice discloses contingency fee details that may apply, Plaintiffs' Notice then backtracks by claiming that attorneys' fees may be covered as "part of a settlement obtained or money judgment" or that the Court may order Cision to pay them.  (*Id.*)  It neglects to mention that the Court would determine any award of attorney's fees within its discretion, as this Court has required.  *See Huang*, 2020 WL 5849099, at *18.

Section 5, concerning retaliation protections, goes overboard beyond the first two sentences generally referring to FLSA retaliation protections, when it directs recipients to "please contact Plaintiffs' lawyers listed below" concerning any alleged retaliation claim.  (Dkt. No. 14-21, Ex. U, at 3.)  This latter sentence is a direct and improper solicitation of new claims of alleged retaliation, which go beyond the current FLSA overtime claim that is the topic of any notice.

Finally, as a whole, Plaintiffs' proposed Notice refers to the FLSA overtime claims generally as involving whether an employee worked over 40 hours in a workweek, giving bare acknowledgement to the fact that Defendants deny the claims.  (*Id.* at 1–3.)  It also directs all questions to Plaintiffs' counsel, again ignoring the fact that employees have the right to retain their own counsel.  (*Id.*)  The document also never identifies Defendants' counsel.  (*Id.*)

Accordingly, because of the repeated defects in Plaintiffs' proposed Notice, and the fact that it would serve as an improper solicitation rather than a proper notice under *Hoffmann-La Roche*, the Court should reject Plaintiffs' proposed Notice entirely.

> **3.**    **Defendants' Notice is Neutral, Accurate, and Includes All Necessary Information.**

In contrast, Defendants proposed Notice is neutral, does  not seek to dissuade anyone from joining the collective action, and is accurate and includes all necessary information.  Because of the overall nature of Plaintiffs' proposed Notice, and the near impossibility of curing its defects

line by line, Defendants take the step here of submitting their own proposed version, which addresses and corrects the Plaintiffs' shortcomings.  (*See* Jackson Decl., Ex. 1.)

In addition to noting that the Plaintiffs bring the case as a collective action, the notice explains that such an action "allows an individual with the same claims to join, or 'opt into,' a lawsuit as an additional plaintiff."  (*Id.* at 2.)  It also informs employees that Plaintiffs bring the case on behalf of "inside salespeople" in the same numerous job titles and for the same time period on which Plaintiffs rely.  (*Id.*)

Importantly, to be accurate and informative, Defendants' proposed Notice further informs individuals that employees eligible to recover under Plaintiffs' overtime claim would be people: (i) employed in the listed positions during the relevant time period; (ii) who are, or have been classified as overtime non-exempt and thus eligible for overtime pay under the FLSA, or who allegedly were classified incorrectly as exempt from overtime pay requirements under the FLSA; (iii) who worked over 40 hours in a workweek; (iv) who recorded the time they worked over 40 hours in a workweek, or who contend that they worked over 40 hours in a week and that Defendants knew or should have known of such work; and (v) who did not receive overtime compensation for any hours worked over 40 in a workweek.  (*Id.*)

This information is critical at this step for identifying who, among the possible recipients of the Notice, may have a claim and should opt into the case if he or she wishes to do so.  An individual who does not meet these criteria (e.g., any individual who did not work more than 40 hours in a workweek) would not have an overtime claim—and thus is not "similarly situated" and should not be an opt-in plaintiff.  The Notice thus should provide sufficient information so that individuals who do not have a claim for unpaid overtime do not join the action.  *See Myers,* 624

F.3d at 555 (purpose in first step is "to determine *whether* 'similarly situated' plaintiffs do in fact exist") (emphasis in original).

Among the other necessary points that Defendants include—but Plaintiffs overlooked:

- **Court's Neutrality:** In addition to making clear that Defendants deny Plaintiffs' allegations and are defending against the lawsuit, and the Court "has not decided who is right and who is wrong," (Jackson Decl., Ex. 1, at 2), Defendants include language to confirm the Court's neutrality: "By allowing this notice to be sent, the Court is not endorsing the lawsuit or any of the allegations in it.  It has not made any determination that you or anyone else are owed any money."  (*Id.*)

- **Limitations Period:**  Defendants' proposed Notice lets employees know that it would go to employees within a three-year limitations period, while Defendants maintain a two-year limitations period should apply under the FLSA.  It further informs employees that the Court will determine that issue, which could exclude some employees: "The Court may ultimately determine that you do not have a claim if you were not employed by Defendants within the applicable two-year period before you joined this lawsuit." (*Id.* at 2.)  In these respects, Defendants' proposed Notice uses language that this Court previously required.  *Ruiz,* 2021 WL 568249, at *6.

- **What happens if an individual joins the lawsuit:** In addition to noting that an opt-in plaintiff could share in any recovery or settlement, Defendants' proposed Notice informs individuals that they also may have their depositions taken, may have to respond to written discovery, may have to testify at trial, and that court proceedings would be in Manhattan.  (Jackson Decl., Ex. 1 at 4.)  Plaintiffs completely avoid these important points, which courts hold should be included.  *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).

- **Not limited to Plaintiffs' counsel:** Defendants' proposed notice informs potential opt-in plaintiffs that they have the right to retain their own counsel instead of having to be represented by Plaintiffs' counsel, with the further ability to submit an opt-in consent to the Court's clerk in that situation.  (Jackson Decl., Ex. 1, at 5.)  Plaintiffs' proposed notice failed to include this necessary information.  *See, e.g., Whitehorn,* 767 F. Supp. 2d at 450–51; *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841, 2016 WL 406385, at *5 (S.D.N.Y. Feb. 2, 2016).

- **Information on Defendants' counsel:** Defendants' proposed notice includes the name and contact information for Defendants' counsel.  Jackson Decl., Ex. 1, at 5.)  Courts hold that this information should be included.  *See, e.g., Whitehorn,* 767 F. Supp. 2d at 451; *Huang,* 2020 WL 5849099, at *17.

20

Overall, Defendants' proposed Notice is neutral, accurate, and informative.  It includes vital points that Plaintiffs' proposed Notice—or, in reality, their counsel's solicitation to provide legal services—ignored.  Accordingly, given a choice between the two proposed notices, the Court should approve the version that Defendants offer.

### 4.   The Court Should Not Authorize Any Reminder Notice.

In addition to sending an approved Notice, Plaintiffs seek to send potential opt-in plaintiffs a reminder notice to return Consent to Join forms halfway through the response period.  (*See* Dkt. No. 13, Pl. Mem. of Law, at 15–16.)  The Court should not authorize any reminder notice here.

Although some courts have allowed reminder notices, **no** authority holds that a court automatically must permit them.  In some cases, reminder notices happen not as a matter of course or because of any intrinsic value, but rather because the defendant does not object.  *See, e.g. Sharma,* 52 F. Supp. 3d at 466.  Defendants do not assent to a reminder notice in this case.  Here, for three reasons, the Court should not approve one.

First, as several courts have held, reminder notices might appear to amount to encouragement or solicitation to join a lawsuit, or at least favoring it.  *Guzelgurgenli,* 883 F. Supp. 2d at 357.  Even worse, a second notice designated as court-approved might be viewed as a pressure tactic.  To avoid impermissibly encouraging or soliciting employees to join the lawsuit, the Court should reject a reminder notice here.

Second, where courts have approved a reminder notice, they at least had a proposed notice to consider as a basic requisite.  *Brown v. AvalonBay Communities, Inc.*, No. CV17-6897, 2019 WL 1507901, at *13–14 (E.D.N.Y. Mar. 29, 2019); *Agerbrink,* 2016 WL 406385, at *8.  Here, Plaintiffs have failed to provide any reminder notice, nor have they indicated what the language of

the reminder notice might be.  (*See* Dkt. No. 13, Pl. Mem. of Law, at 15–16.)  Simply put, the Court cannot authorize any reminder notice without knowing what it would be authorizing.

Third, Plaintiffs have not shown any reason for a reminder notice, which courts regularly require.  *See, e.g., Guzelgurgenli,* 883 F. Supp. 2d at 358 (denying request when plaintiffs failed to identify any reason why reminder notice was "necessary in this particular case"); *Tanski v. AvalonBay Communities, Inc.*, No. CV15-6260, 2017 WL 10858910, at *21 (E.D.N.Y. Mar. 31, 2017) (no reminder notice where plaintiffs "fail to discuss the particular circumstances of the instant case which would . . . necessitate such notice," with the court and "therefore unconvinced that the notice is necessary").  Here, Plaintiffs' statement that reminder notices are "common" and purportedly cause defendants "no prejudice" is insufficient.  (Dkt. No. 13, Pl. Mem. of Law, at 15–16.)

Accordingly, the Court should deny Plaintiffs' Motion with respect to a reminder notice.

## 5.      **The Court Should Approve Defendants' Proposed Consent to Join.**

Defendants propose three changes to Plaintiffs' Consent to Join form.  (*See* Jackson Decl., Ex 1 at 6.)  The Court should approve Defendants' Consent to Join, and reject Plaintiffs' version.

The first change removes the language "or any separate or subsequent action(s)," so that it is clear that opt-in plaintiffs only consent to join the current action.  (*Id.*)  The second change adds language that the individuals choosing to have Plaintiffs' counsel represent them will be represented by them "in all respects (including any strategic choices and amendments to the operative complaint in the litigation)" and further again concerning "any litigation strategies, [and] any amendments to the operative complaint in the lawsuit."  (*Id.*)

Finally, Defendants added an affirmation as a new second paragraph.  It affirms: "By signing and returning this consent form, I state that I am eligible to join this lawsuit.  I further state that I worked over 40 hours in a workweek while being employed by Defendants, without being

paid overtime for time worked beyond 40 hours in a workweek." (*Id.*)  This simple affirmation statement should be included so that only eligible and "similarly situated" individuals possibly owed overtime pay join the lawsuit.

Opt-in consent forms requiring an employee to "affirm" eligibility to be part of the collective action have been used in the Southern District.  *See McGlone*, 867 F. Supp. 2d at 443 (conditional certification granted for narrowed group, where opt-in form required, "in order to be eligible to participate in the lawsuit," each individual to "affirm" on opt-in form that he or she had automatic deductions for meal period time not taken or that the employee worked off the clock). Not only should employees without possible overtime claims not be allowed to join, but a proper time to identify them is at the start during the first step in the collective action process.  *See Myers,* 624 F.3d at 555 (purpose in first step is "to determine *whether* 'similarly situated' plaintiffs do in fact exist") (emphasis in original).

Accordingly, for these reasons, the Court should reject Plaintiffs' Consent to Join form and approve Defendants' version.

### E.       **Plaintiffs' Requested Means of Distributing the Notice Are Unwarranted and Undetermined, and Distribution Should be Limited to a Mailing and Handled by a Third Party Administrator.**

Finally, Plaintiffs' requested means for distributing Notice are unwarranted and undetermined.  Because of the nature of Plaintiffs' proposed Notice, and their failure to justify the means of distribution they seek or to provide any language or details for alternative methods, dissemination of the Notice should be limited to U.S. mail sent by a third-party administrator.

Plaintiffs generally move for authorization to disseminate notice "by U.S. mail, e-mail, text message, and social media." (*See* Dkt. No. 13, Pl. Mem. of Law, at 14.)  Again, they offer no details on what social media would be used, whether the notice conveyed by each means would be the same as what the Court approves, what notice would look like with each method, or any

specific justification or circumstance warranting going beyond traditional U.S. mail delivery in this case.  (*Id.* at 14–15.)   Indeed, they offer no language for any other form of notice—a shortcoming that precludes approval, because "the Court should control the content of the message."  *Huang,* 2020 WL 5849099, at *16.  Similarly, Plaintiffs further seek approval for a "standalone website," again without any specific detail justifying such a step or any proposal concerning notice language there.  (*See* Dkt. No. 13, Pl. Mem. of Law, at 16.)

Moreover, as Plaintiffs' counsel confirmed, Plaintiffs have not determined what social media platform or website may be used, have not figured out who to retain for such a plan, and do not know what further forms of notice in the different mediums would say or look like.  (*See* Jackson Decl. ¶ 5.)  Essentially, for all of their references in their Motion to a "plan" for which they seek approval, the reality is that Plaintiffs in fact have no plan.  Thus, because of Plaintiffs' failure again to support their Motion in these respects, the Court should deny their Motion.

In addition to only a general reference to COVID-19 as a reason for going beyond traditional U.S. mail delivery, Plaintiffs offer no justification for why the circumstances here warrant going into e-mail, text messages, unspecified social media, and an undetermined website to disseminate the Notice.  With a long 60-day notice and opt-in period, and mail delivery at home, U.S. mail delivery should not be a problem—even speculating about small delays in delivery.

Plaintiffs also ignore the different circumstances in which the other methods have been allowed—or not.  Courts have rejected e-mail and text message delivery based on concerns about the risks of distortion or misleading communications involving modification of the notice, the addition of improper commentary, and copying and wider dissemination with commentary to distort the notice as approved.  *Sharma,* 52 F. Supp. 3d at 462–63; *Tanski,* 2017 WL 10858910, at *19–20.  As for websites, the use of a website has been rejected when a court refused to allow

24

sending notice to a nationwide group, with notice limited to only three locations—as should be the same result here. *Sharma,* 52 F. Supp. 3d at 464.  Not only do these legitimate points apply in this case as well, but Plaintiffs' have offered nothing to try to address them in their cursory and conclusory Motion seeking dissemination by these methods.  Given the nature of Plaintiffs' initial proposed Notice, the lack of particularity here is concerning.

Ultimately, dissemination should be left to traditional U.S. mail delivery, which would be sufficient in this situation and with a 60-day notice and response period.  In this case, however, the Notice should be handled and sent by a third-party administrator, with the mailed envelopes appearing to come from the third-party administrator.  Because the nature of Plaintiffs' proposed Notice was so strongly over the line of being a solicitation, mailing by a third-party administrator further would help ensure a fair and neutral notice and opt-in response process.  As discussed above, Plaintiffs' counsel indicated an interest in using an administrator for the notice and response process—an issue that remains unresolved, but must be considered further.

IV.   <u>**CONCLUSION**</u>

For all of the above reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion at least in part.  If the Court authorizes and facilitates the sending of opt-in Notice, Defendants respectfully request that any notice be limited to the three locations where the named Plaintiffs worked; the Court deny Plaintiffs' effort to include vaguely referenced "other similar roles, however variously titled" among the jobs that the Notice distribution would cover, with distribution limited to the job classifications expressly; the Court reject Plaintiffs' proposed Notice and Consent to Join and approve Defendants' versions; and that the Court reject Plaintiffs' proposed methods of distribution, with distribution limited to mailing by a neutral third-party administrator and no reminder notice authorized; and any discovery limited to the locations and job positions with respect to which the Court may authorize the sending of the Notice.

Dated: March 30, 2021

Respectfully Submitted,

By: */s/ Linda M. Jackson*
Linda M. Jackson (*pro hac vice*)
Alexandra M. Romero (*pro hac vice*)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel.: (202) 857-6000
linda.jackson@arentfox.com

Genaira L. Tyce (Bar No. 4863437)
ARENT FOX LLP
1301 Avenue of the Americas, 42 Floor
New York, NY 10019
Tel.: (212) 457-3900
Fax: (212) 484-3990
genaira.tyce@arentfox.com

Paul R. Lynd (*pro hac vice*)
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: (415) 805-7968
Fax: (415) 757-5501
paul.lynd@arentfox.com

*Counsel for Defendants Cision US Inc. and Cision Ltd.*