UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ANATOLIY MIKITYUK, MITCH TALLUNGAN, and                           :
MICHAEL ESQUIBEL, individually and on behalf of all               :
others similarly situated,                                        :
                                                                  :
                              Plaintiffs,                         :
                                                                  :
              -v-                                                 :
                                                                  :
CISION US INC. and CISION LTD.,                                   :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____              │
│ DATE FILED:__5/4/2021____            │
└─────────────────────────────────────┘
```

21-cv-510 (LJL)

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

    Plaintiffs Anatoliy Mikityuk ("Mikityuk"), Mitch Tallungan ("Tallungan"), and Michael Esquibel ("Esquibel" and collectively with Mikityuk and Tallugan, "Plaintiffs") move, pursuant to 29 U.S.C. § 216(b), for the Court to conditionally certify this case as a collective action under the Fair Labor Standards Act ("FLSA") and to permit notice.

## BACKGROUND

    Plaintiffs are former sales representatives ("SRs") of Cision US, Inc. ("Cision" or "Cision US"), a global provider of public relations ("PR") software, media distribution, media intelligence, and related professional services.  Dkt. No. 20 ¶ 100 ("Amended Complaint" or "AC").  Until 2020, Cision US was a subsidiary of Cision Ltd., a publicly-traded holding company.  AC ¶¶ 73-74, 76, 101.  In January 2020, Cision Ltd. ceased trading on the New York Stock Exchange and became a subsidiary of Platinum Equity, a global investment firm; since then it has been an indirect affiliate of Cision US.  AC ¶¶ 75-76.

    The SRs perform non-exempt sales-related tasks, such as communicating with clients and

potential clients via phone and email, researching sales leads, booking sales meetings with prospective clients, and/or making sales of Cision products to current and/or prospective clients. AC ¶ 6.  They perform these tasks either from Cision's office or from another fixed location such as from their homes.  AC ¶ 7.  Mikityuk was employed by Cision in its New York, New York office from March 2019 to November 2019 as a Sales Development Representative, helping Cision make sales of its products and services, including sales of subscriptions to Cision's products and services.  AC ¶¶ 25-26.  Tallungan was employed by Cision in its Chicago, Illinois office from January 2016 to March 2018 as a Business Development Manager, performing similar services to those performed by Mikityuk in New York.  AC ¶¶ 35-36.  Esquibel was employed by Cision in its Beltsville, Maryland office from August 2018 to June 2019 as a Business Development Specialist, also with similar responsibilities.  AC ¶¶ 45-46.

Each Plaintiff alleges he or she regularly worked more than 40 hours in a workweek but was not paid for all hours worked over 40 and did not receive proper overtime compensation. AC ¶¶ 28-32 (Mikityuk), 38- 43 (Tallungan), 48-52 (Esquibel).  Each alleges that it was difficult to meet Cision's job requirements without working more than 40 hours per week and that Cision knew or should have known that each Plaintiff regularly worked more than 40 hours in a workweek but was not compensated for all overtime hours AC ¶¶ 31-32, 41-42, 51-52, 113. Plaintiffs further allege that Cision failed to keep accurate records of all the hours that Plaintiffs and other SRs worked and followed a "corporate policy or practice of minimizing labor costs by violating the FLSA and state wage and hour laws."  AC ¶¶ 114-115.

Plaintiffs bring claims on behalf of themselves "and other similarly situated current and former Sales Representatives" for failure to pay overtime in violation of FLSA, 29 U.S.C. § 201, *et seq*.  AC ¶ 176.  Each Plaintiff also brings individual and class action claims under Federal

Rule of Civil Procedure 23 on behalf of similarly situated current and former SRs for violations of the wage law in his respective state.  AC ¶¶ 182-195 (New York labor law); 196-203 (Illinois wage laws); 204-216 (Maryland wage and hour laws).

Plaintiffs submit 22 declarations in support of their motion for conditional certification. The declarations are from SRs in the New York, New York; Chicago, Illinois; and the Beltsville, Maryland offices.  The declarations are substantially identical.  The main difference among them is the identification of the supervisors for each of New York, Chicago, and Beltsville.  The declaration submitted by plaintiff Esquibel is representative.  Esqiubel swears that he was employed as a Business Development Specialist in the Beltsville, Maryland office from August 2018 to June 19, 2019.  Dkt. No. 14-1 ¶ 1.  According to his declaration, his primary duty was sales-related work and he performed his sales work via phone, email, and videoconference from Cision's office or from his home.  *Id*. ¶¶ 2-3.  He further swears that Cision required him to meet certain Key Performance Indicators ("KPIs"), such as sending a certain number of emails or making a certain number of calls each day, which Cision tracked through a customer relationship platform, *id.* ¶¶ 4-6, and that it was difficult for him to meet Cision's job requirements without working substantially more than 40 hours per week.  *Id.* ¶ 12.  He states that he did not receive overtime compensation for hours worked in excess of 40 per workweek.  *Id.* ¶ 13.  He also states that he does not recall being directed to record hours worked in a timekeeping system and does not recall recording his hours in a timekeeping system.  *Id.* ¶ 10.  He "regularly worked, on average, approximately 44 to 46 hours each week," *id.* ¶ 11, and was paid a base salary of $35,000 with eligibility to earn an additional $20,000 per year if he achieved 100% of his "commission plan." *Id.* ¶¶ 9, 11.

Esquibel further swears that other Sales representatives, several of whom he identifies by

name and title, performed the same mix of sales duties that he performed and also regularly worked more than 40 hours per week. *Id.* ¶¶ 14-15.

The other two named Plaintiffs have submitted similar declarations, also swearing that they worked overtime without recording their hours and without being paid for that work. Dkt. Nos. 14-5, 14-8. They swear that there were others in their respective offices who also regularly worked more than 40 hours per week. Other SRs from New York, Chicago, and Beltsville have submitted similar declarations.

Cision submits three declarations in partial opposition to the motion for conditional certification. Dkt. Nos. 39-3, 39-4, 39-5. The Vice President of Human Resources—Americas of Cision US Inc., Amanda Lee, swears that Cision requires all employees who are classified as non-exempt under FLSA or applicable state law to record all hours they work during each workweek and to enter their hours worked into Cision's UltiPro System, a software program used for timekeeping and recording employees' use of paid time off, among other things. Dkt. No. 39-3 ¶ 3. She attaches to her declaration pages from Cision's Handbook that requires employees to record all hours worked and instructs employees to immediately report any supervisor or manager who suggests or requires them to submit a time sheet that does not accurately reflect all time worked including overtime, a copy of the instructions provided to non-exempt employees regarding how to record their time including additional overtime hours they worked, and the "Cision Time-Management – Employee Quick Resource Guide" available to employees on the Cision intranet site which explains the time entry process for non-exempt employees. *Id*. Exs. A, B, C. She also attaches a sample version of the email sent to all non-exempt employees each pay period reminding them to review and submit their time sheets. *Id.* Ex. D.

Cision also submits the declaration of Ryan Haggerty, who currently holds the title Sales Manager, New Sales, but who has worked in various sales roles from 2010 to 2016, when he was promoted to a sales manager role. Dkt. No. 39-4 ¶ 1. Haggerty was the Sales Manager for a New Key Sales Team of business development specialists in Beltsville, Maryland—one of the three locations at issue in this lawsuit. *Id.* ¶ 2. Haggerty supervised Esquibel. *Id.* Haggerty swears that members of his team were required to record overtime hours they worked and that there were several meetings in the sales department where the fact that sales representatives were eligible for overtime was discussed. *Id.* ¶ 3. He also states that when he served in various sales roles, he heard from other employees in sales roles that they recorded overtime hours. *Id.* ¶ 4. Finally, he disputes Esquibel's declaration, stating that he does not recall Esquibel working late or starting work early or expressing confusion about whether they were eligible for overtime pay. *Id.* ¶ 5. He states he approved timesheets from other members of his team who worked and recovered overtime hours. *Id.*

Finally, Sophia Rosenthal, who also worked in the Beltsville, Maryland office, also states her belief that other team members were aware of their eligibility for overtime and of the requirement to record all hours worked, including overtime hours. Dkt. No. 39-5 ¶ 3. She also states that she does not recall any times when she saw Equibel coming in early or staying late. *Id*. ¶ 4.

## PROCEDURAL HISTORY

This action was commenced by filing of a complaint on January 20, 2021. Dkt. No. 1. Plaintiffs filed their motion for conditional certification on February 16, 2021. Dkt. No. 12. Defendants filed the memorandum in opposition on March 30, 2021, Dkt. No. 38, and Plaintiffs replied on April 13, 2021, Dkt. No. 43. Plaintiffs filed an amended complaint on March 9, 2021.

Dkt. No. 20.

## DISCUSSION

Plaintiffs move for certification of a FLSA collective comprised of SRs from all of
Cision's offices in the United States. They also seek approval of their proposed notice and
consent form and for their plan of distribution. Defendants object to the motion only in part.
Defendants agree that Plaintiffs have satisfied the standards for conditional certification with
respect to SRs in the New York, Chicago, and Beltsville offices. However, they argue that the
collective should be limited to SRs only in those offices. They also object to portions of the
notice and consent form and submit their own proposed forms of notice and consent. Finally,
they object to portions of the plan of distribution.

A. Plaintiffs' motion for conditional certification

Plaintiffs move the Court to certify conditionally a FLSA collective and to authorize the
issuance of notice to a collective including "inside salespeople, or 'Sales Representatives.'" Dkt.
No. 12-1 at 1. The proposed collective would include all individuals who held one of seventeen
different titles and also those serving in "other similar roles, however variously titled, for Cision
nationwide at any time between September 21, 2017 and the present." *Id.* Defendants do not
contest the issuance of a Section 216(b) notice as a general matter, instead opposing the
collective only to the extent that it would be sent to SRs nationwide, rather than only to SRs
working in the same offices as the named Plaintiffs. They also argue that the language "other
similar roles" is vague and should not be included in the notice.

1. The Applicable Standards

Section 216(b) of the FLSA permits an employee aggrieved by a violation of the statute
to maintain an action against any employer "for and in behalf of himself or themselves and other

employees similarly situated." 29 U.S.C. § 216(b). The statute further provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The Supreme Court has held that "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 n.1 (2013) (characterizing section 216(b) as a "joinder process."). "[D]istrict courts have discretion, in appropriate cases, to implement [Section 216(b)] by facilitating notice to potential plaintiffs." *Sperling*, 493 U.S. at 169. Construing that language, the Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA. *Meyers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). In the first step, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs." *Id.* at 555. At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*

The first step of the *Hertz* analysis requires the plaintiffs to show there exist potential opt-in plaintiffs who are "similarly situated" to them. In order to succeed at the first step of the *Hertz* analysis, plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). The "similarly

situated" analysis is "quite distinct" from "the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes." *Hertz*, 624 F.3d at 555-56.  Mere "unsupported assertions" are not sufficient to pass the first step, but it "should remain a low standard of proof because the purpose of the first stage is to merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id*. (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

Plaintiffs' burden at the conditional certification stage is "minimal." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013).  "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Hertz*, 624 F.3d at 555); *see also Sbarro*, 982 F. Supp. at 261 ("The burden on plaintiffs [at stage one] is not a stringent one, and the [c]ourt need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'") (Sotomayor, J.).  However, "while plaintiff's burden at this stage is modest it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011).

Additionally, the fact that different employees performed different jobs does not necessarily preclude them from being considered "similarly situated" where "the fundamental allegation . . . is common to all the . . . plaintiffs . . . and dominates each of their claims." *Heagney v. Eur. Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988).  "It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs. . . . [a]s long as they were all similarly situated with *respect to being subject to the*

*same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs." *Cano v. Four M Food Corp.*, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification where affidavits showed "an identifiable factual nexus linking the named plaintiffs with putative collecti[ve] action members").

If the Court determines that "similarly situated" employees exist, it will conditionally certify the collective and order that appropriate notice be given to members of the FLSA collective to afford them the opportunity to opt into the action. *Cunningham v. Elec. Data Sys. Corp.*, 2010 WL 5076703 at *5 (S.D.N.Y. Dec. 13, 2021); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process").   At the second stage, after discovery is completed, this Court will, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," and "[t]he action may be 'decertified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Hertz*, 624 F.3d at 555.

2.   Application of the Standards

Defendants argue that, while Plaintiffs have met the standards for conditional certification with respect to the New York, Chicago and Beltsville offices, they have offered no evidence or information that employees at locations other than their own were subjected to the same allegedly unlawful policy or practice.  Dkt No. 38 at 14-15.  Plaintiffs offer no evidence to determine whether SRs outside the three offices were or were not eligible for overtime, worked overtime, whether their managers approved such overtime, whether they recorded overtime, whether the managers knew or should have known of any unpaid overtime, or whether the other

employees were paid overtime.  *Id*. at 14.  Defendants assert that courts deny conditional certification of purported FLSA nationwide collective actions where plaintiffs present evidence regarding employees at only a few of the employer's locations and that should be particularly so here "in light of the clear corporate policies with respect to recording and paying overtime."  *Id*.

Plaintiffs respond that they have alleged uniform policies or practices nationwide.  Cision does not ask salaried employees such as SRs to record time contemporaneously, and the system automatically populates timesheets with regularly scheduled hours each pay period, which employees have to alter if they work overtime.  Moreover, Cision has no system for employees to clock in or track time each date; rather, it instructs employees to review the auto-populated hours at the end of each two-week pay period.  Employees can enter only total hours per day, not specific clock in and out times.  "Cision also requires overtime pre-approval, a practice which, together with productivity quotas, often leads to off-the-clock violations."  Dkt. No. 43 at 10 (internal citations omitted).  Combined with the evidence that employees from the three offices were discouraged from reporting overtime, Plaintiffs argue they have satisfied their burden with respect to a nationwide class.  Dkt. No. 43 at 9-10.

"In this Circuit, courts have regularly found Plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice."  *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013).  With respect to certification across multiple locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management."  *Id*. at 662-63; *see also Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479-480 (S.D.N.Y. 2016) (Plaintiffs must show "a shared unlawful policy; that

is, while the proposed collective need not be identical in every possible respect, its potential

members must be similarly situated with respect to the allegedly unlawful policy or practice”);

*Capsolas v. Pasta Res., Inc.*, 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (holding that

employees at separate locations were similarly situated where the “facts support[ed] a reasonable

inference that there was a uniform policy across the eight restaurants, all of which share a

common ownership, are supervised by the same individuals, and are administered by the same

company”).

The courts have addressed on a number of occasions the question whether a nationwide

collective should be certified at the initial stage based on the allegation that the defendant

employs a policy of strictly limiting the number of overtime hours that can be worked or

discourages employees from working overtime while at the same time requiring them to meet

strict sales quotas that cannot reasonably be accomplished in a forty-hour work week.  *See, e.g.*,

*Amador v. Morgan Stanley & Co., LLC*, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) (Sullivan, J.)

(certifying conditional collective of all employees who worked for the defendant as client service

associates where “three plaintiffs, five opt-in plaintiffs, and three declarants each allege[d] that

he or she was employed as a CSA, . . . and was not always compensated for time worked in

excess of forty hours per week” and where those plaintiffs worked at different branches and had

“submitted evidence that CSAs generally had uniform duties and responsibilities.”); *Winfield v.*

*Citibank, N.A.*, 843 F. Supp. 2d 397, 407 (S.D.N.Y. 2012) (certifying nationwide class where

“[t]he five plaintiffs, one opt-in plaintiff, and four declarants have worked, collectively, in

thirteen different branches in six of the thirteen states where the defendant operates, as well as

the District of Columbia, and allege[d] that they were not properly compensated for overtime

worked at these locations.”); *compare Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at

11

*3 (S.D.N.Y. Nov. 13, 2009) (denying nationwide conditional certification where plaintiff only "identifie[d] five other Retail Consultants by name, employed at the same stores as Plaintiff, that she claim[ed] told her that they also did not receive pay for overtime worked.").

This case presents a more difficult issue than *Amador, Winfield*, or *Eng-Hatcher* did.  In *Amador*, plaintiffs made allegations regarding thirteen branches in nine different states, and also put forth evidence that plaintiffs holding the same job title had the same responsibilities across locations.  *Amador*, 2013 WL 494020, at *5.  And in *Winfield*, the Court found that the evidence thirteen plaintiffs put forth evidence regarding a common practice in thirteen different branches in six different states was sufficient to support an inference that the defendant had a nationwide practice.  *Winfield*, 843 F. Supp. 2d at 407.  In *Eng-Hatcher*, by contrast, allegations regarding a single location, without more, were not sufficient to support an inference warranting nationwide notice.  *Eng-Hatcher*, 2009 WL 7311383, at *3.

This case falls between these two poles.  On consideration, however, the difference between this case and *Amador* or *Winfield* is one of degree and not of kind.  In the Court's view, Plaintiffs' showing is sufficient to support a nationwide conditional class.  The alleged violations stem from a nationwide practice that put pressure on both managers and non-exempt employees nationwide to underreport or not report overtime hours.  The plaintiffs and declarants here have testified that managers tied their actions in some instances to an overarching policy by the defendant of minimizing the accrual of overtime.  There is no evidence that the three offices involved were idiosyncratic in their compensation practices, nor is there any basis to infer that if the policies resulted in the underreporting or failure to report in Chicago, New York, and Maryland, that the same pressures and the same underreporting did not also occur elsewhere with the knowledge of Cision.  "It would risk prejudging the merits of these allegations for the Court

12

to conclude at this preliminary stage that each of these managers was acting in an 'errant' or 'rogue' fashion.  If further discovery reveals that [Plaintiffs'] managers were . . . acting aberrantly, [Defendants] remains free to renew this argument by bringing a motion to decertify the class following the close of discovery."  *Winfield*, 843 F. Supp. 2d at 409.

Defendants point to this Court's decision in *Huang v. Shanghai City Corp.*, 2020 WL 5849099 (S.D.N.Y. Oct. 1, 2020) in support of their contention.  But *Shanghai City Corp.* bears little resemblance to this case.  In *Shanghai City Corp.*, plaintiffs sought to certify a collective action of employees who worked at one of two restaurants that shared the same name.  Though the two locations shared the same name and had originally been owned and operated by the same persons, during the time period relevant to the collective action, the restaurants were separate operations, owned and run by distinct legal entities and different individuals.  *Id*. at *7.  The uncontradicted evidence showed that the two restaurants were "separately and independently owned, managed, and operated and there [was] no centralized control over employment relations in the two restaurants."  *Id*.  Because the restaurants at issue in *Shanghai City Corp*. did not operate under common control, unlike Defendant's locations here, this case does not fall within the holding of *Shanghai City Corp*.

B.  Reference to "other similar roles, however variously titled"

Defendants object to the reference in the notice to "other similar roles, however variously titled" at the end of the list of 17 specific sales job titles, Dkt. No. 14-21, Ex U at 1, as impermissibly vague.  Plaintiffs respond that limiting the collective to the 17 specific titles is "likely incomplete" because the list was compiled without the benefit of formal discovery and "[a]rtificially excluding" persons not holding one of the 17 titles would "depriv[e] them of their right to proceed collectively."  Dkt No. 43 at 13-14.

The notice should be directed only to employees holding one of the 17 specific sales job titles.  The language "other similar roles" is impermissible vague and not helpful.  *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) (striking language "all other persons in similar positions" as too vague and not helpful).  It does not guide an employee in knowing whether he or she is a potential member of the collective action.  It also is not sufficiently specific to inform Defendants of the identifying information they should provide to Plaintiffs so Plaintiffs can arrange for notice to be sent.  There is no basis on this record to believe that the list of 17 titles based on Plaintiffs' investigation is anything less than exhaustive or that there are any job titles that are omitted.

C.  Form of Notice and Consent

Defendants argue that Plaintiffs' proposed notice is an improper solicitation and should be rejected; they submit an alternative version.  In particular, Defendants object to the following parts of the notice: (1) the reference twice in the notice in all caps bold that the document is a "court-authorized" notice—Defendants say that the language suggests that the Court endorses the solicitation; (2) the conflation of the two separate Defendants with distinct corporate identities in the single term "Cision"; (3) the inaccurate statement that "[a]dditional opt-in plaintiffs from several states have joined this case"; (4) the omission of the information that individuals who join the lawsuit may be subject to having their depositions taken, having to respond to discovery, or having to testify at trial as a party; (5) the omission from the description of a plaintiffs' rights and options in the lawsuit of the information that if an employee joins she will not only be able to share in any monetary recovery that might come from a trial or settlement, but that she will also suffer the consequences of a negative outcome; (6) the failure to inform employees that they have a right to use counsel of their choice if they join the action; (7)

the omission of language that the Court would have the discretion to determine the amount of an attorneys fee award if there were a settlement or money judgment; (8) allegedly "overboard" anti-retaliation language; and (9) the failure to mention that defendants deny the claims or to identify defendants' counsel.   Dkt No. 38 at 15-23.

In response, Plaintiff has added language making clear that the lawsuit is brought against two parties, describing class members' potential discovery obligations, clarifying that collective members may retain their own counsel, and making other changes.  Dkt. No. 44-1.

"[T]he district court maintains 'broad discretion' over the form and content of the notice."  *Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (quoting *Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at \*15 (S.D.N.Y. Jan. 4, 2016) (internal quotation marks omitted)).   The job of the court is to make sure that notice "is timely, accurate, and informative."  *Sperling*, 493 U.S. at 171.  Courts are "guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants."  *Elmajdoub v. MDO Dev. Corp.*, 2013 WL 6620685, at \*4 (S.D.N.Y. Dec. 11, 2013) (quoting *Guzelgurgenli*, 883 F. Supp. 2d at 356).  At the same time, "the notice process for case management purposes is distinguishable in form and function from the solicitation of claims" and "courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Sperling*, 493 U.S. at 174.  The Court must avoid "notices that are 'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading."  *Shanghai City Corp.*, 2020 WL 5849099, at \*17 (quoting *Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 664 (S.D.N.Y. 2017)).  The form of notice submitted by Plaintiffs with their Supplemental Declaration, Dkt No. 44-1, is preferable because it is easier to read.  That said, edits to that document are needed.  The

Court considers the issues in turn:

1. The notice should indicate only once, but in all capital language, that the document is a "court-authorized" notice.  The language conveys the dignity to which the document is entitled—it has been approved by the Court and it does affect the recipient's rights; it is not an ordinary communication.  At the same time, it is not a solicitation.  The Court will approve Plaintiffs' revised language with the following revisions: the language "please read this notice" should be replaced by the more neutral "this notice is addressed to you" and the language in italics should be revised to state simply "This is not a solicitation" to eliminate the second reference to "court-authorized notice" and to make clear that it is not a solicitation either from a lawyer or from the Court.

2. With respect to the alleged conflation of the two separate Defendants, Plaintiffs' revised notice should be further revised to state in the first bullet point:  "A lawsuit was brought by three former employees of Cision US Inc. and Cision Ltd. (together, 'Cision') who claim that their employer failed to pay them and other salespeople overtime for the hours they worked over 40 in a workweek as required by the Fair Labor Standards Act ('FLSA')."

3. The notice should state that "[a]dditional opt-in plaintiffs have joined this case."  It is relevant that there are more than three members of the collective.  It is not relevant and not supported and would constitute a solicitation to add the point that they are from additional states.

4. The differences between the parties as to the notice with respect to discovery obligations are miniscule.  Plaintiffs' revised notice would state:  "While this suit is pending, you may be asked to provide documents or information relating to your employment, or otherwise participate in written discovery, depositions, and/or in a trial of this matter in the United States District Court for the Southern District of New York."  Dkt. No. 44-1 at 4.  Defendants' proposed notice would state: "While this lawsuit is pending, as part of the discovery process, you may have your deposition taken, you may have to respond to written questions or have to produce documents, and you may also have to testify at trial. For this reason, if you join the lawsuit, you should preserve all documents relating to the Defendants currently in your possession. Any trial or other court proceedings would take place at the federal courthouse for the Southern District of New York in Manhattan." Dkt. No. 39-1 at 5.  The notice should state: "While this suit is pending, you may be required to provide documents or information relating to your employment, or otherwise participate in written discovery, depositions, and/or in a trial of this matter in the United States District Court for the Southern District of New York.  For this reason, you should preserve all documents relating to your employment by Cision."

5. The Court accepts the language in Plaintiffs' revised notice informing potential collective members of the fact that, if they join the lawsuit, they will be bound by any ruling, monetary settlement, or judgment, whether favorable or unfavorable.

6. The language in Plaintiff's revised notice informing potential plaintiffs of their right to use counsel of their choice if they join the action is acceptable as is the language in the revised notice that indicates the Court has discretion with respect to the amount of any

attorneys fee award with the exception that the notice should indicate plaintiffs also have the right to proceed pro se.  *See Gomez v. Terri Vegetarian LLC*, 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017).

7. The Revised Notice should simply indicate that Defendants deny the allegations and identify the lawyers whom Defendants have retained to identify them in this lawsuit.  It should also indicate that the Court has not decided who is right or who is wrong.  There is no need for the incomplete description of Defendants' defenses.  The notice should track the language approved by this Court in *Shanghai City Corp.*, 2020 WL 5849099, at *17.

8. The language regarding anti-retaliation in Plaintiffs' notices is overboard.  The Court will include language that "It is a violation of federal law to in any manner retaliate against you for participating in this lawsuit."  No more is necessary.  The notice already will provide the contact information regarding Plaintiffs' counsel and the language thus appropriately balances the interest in ensuring that potential plaintiffs are aware of their rights to join the lawsuit and that they will not be retaliated against for doing so against the concern that the notice not be used as a solicitation or advice to potential plaintiffs as to what they "should" do in the event of retaliation.  Although Defendants argue that there is no evidence that they have retaliated or will retaliate, the Court need not wait until there is such evidence to inform potential plaintiffs that they need not fear retaliation.  *See Aguilo v. Vails Gate Cleaners Inc.*, 2020 WL 3545558, at *9 (S.D.N.Y. June 30, 2020) (rejecting similar argument that anti-retaliation language be included only when there is evidence of retaliation); *Keawsri v. Ramen-Ya*, 2018 WL 279756, at *7 (S.D.N.Y. Jan. 2, 2018) (notice may include references to anti-retaliation laws) *Bittencourt v. Ferrar Bakery & Café Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) ("[a] statement concerns the prohibition on retaliation … is appropriate") (citing *Salomon v. Adderly Indus., Inc.*, 847 F. Supp.2d 561, 566 (S.D.N.Y. Mar. 6, 2012)).

9. Finally, the notice should include the language proposed by Defendants regarding the limitations period, stating: "The Court may ultimately determine that you do not have a claim if you were not employed by Defendants within the applicable two-year period before you joined this lawsuit."  Dkt. No. 38 at 24.

D.  Method of Distribution

Plaintiffs propose three methods of distribution of the FLSA notice: U.S. mail, email, and text messages.  Defendants object to distribution by email and text message, expressing the concern that such means of distribution can serve as a backdoor way for Plaintiff to disseminate the message about the lawsuit to individuals other than the intended recipients.  Without discounting the risk that distribution by email can result in the notice being "more broadly circulated than the parties intended," the Court agrees that "given the reality of communications

today, email notification is more effective at notifying potential opt-in plaintiffs than mailed notice alone." *Park v. FDM Group Inc.*, 2019 WL 2205715, at *6 (S.D.N.Y. 2019) (quoting *Knox*, 282 F. Supp. 3d at 667) (internal citations and quotations omitted); *see Knox*, 282 F. Supp. 3d at 667 (noting that "courts in this District routinely allow notice and consent forms to be distributed by email").

The Court reaches a different conclusion with respect to text messages.  "Generally, courts allow such dissemination where 'the nature of the employer's business facilitated a high turnover rate among employees.'"  *Park*, 2019 WL 2205715, at *6. (quoting *Kucher v. Domino's Pizza, Inc.*, 2017 WL 2987216, at *6 (S.D.N.Y. May 22, 2017)).  Plaintiffs make no argument here that the turnover is such that text messaging is required or appropriate.[1]

E.   Consent Forms

The parties raise two issues with respect to the consent forms:  the language of the forms and the person to whom recipients of the notice should mail their completed forms.  The Court takes them in turn.

1.   The Language of the Consent Form

With respect to the language of the consent forms, the Court rules that the language regarding "any separate or subsequent actions" should be stricken.  The purpose of the 216(b) notice is to notify potential members of the collective of their right to file a joinder in the collective action.  It is not to give counsel for the named plaintiffs the more general right to represent the would-be potential plaintiffs in any separate or subsequent actions for violations of

---

[1] In *Shanghai City Corp.*, the Court permitted notice by social media.  Although not specifically addressed by the Court's decision, the population at issue there was transient and unlikely to receive notice unless it was delivered in part by social media.  No similar showing has been made here.

the FLSA. *Cf. Palma v. MetroPCSWireless, Inc.*, 2014 WL 9872805, at *2 (M.D. Fla. Feb. 18, 2014) (consent form should not be used to collect information for use in the defense).

The Court will not add the language requested by Defendants that requires persons opting into the collective action to attest that they are eligible to join the lawsuit and that they "worked over 40 hours in a workweek while being employed by Defendants without being paid overtime for time worked beyond 40 hours in a workweek." Dkt. No. 38 at 26-27. The language of Section 216(b) permits a potential plaintiff to join the collective simply by giving "his consent in writing to become such a party and [filing the consent] in the court in which such action is brought." 29 U.S.C. § 216(b). It is not intended as a discovery tool or a form of interrogatory. The Court shares the concern expressed by Judge Koeltl in *Ramirez v. Riverbay Corp.*, 2014 WL 349498, at *2 (S.D.N.Y. Jan. 30, 2014), that a consent form requiring the potential plaintiff to certify their eligibility to participate in the collective could be perceived as a "scare tactic that may deter plaintiffs with possibly valid claims from joining the lawsuit." It also "imposes an unfair burden on would-be plaintiffs, who may not have had the opportunity to consult counsel and who have not had access to any of their employer's records regarding compensation." *Id.* Defendants will have the opportunity to take discovery of any plaintiff who joins the action prior to stage two of the collective and can test their eligibility to participate in the case at that point. *See id.* ("Certification at this stage is conditional and can be revisited after more substantial discovery has been conducted."); *see also Barbato v. Knightsbridge Properties*, 2015 WL 5884134, at *6 (E.D.N.Y. Oct. 8, 2015) ("courts have denied similar efforts to use consent forms for discovery purposes."); *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014) (holding that "the Consent form is not a discovery device" and rejecting request that plaintiffs state that they worked in excess of forty hours per week and were not properly

compensated for overtime when "[t]he documents sufficiently inform potential opt-in plaintiffs about the nature of the action, the potential general outcomes, and the types of allegations are being asserted"); *Wass v. NPC Int'l, Inc.* 2011 WL 1118774, at *9 (D. Kan. Mar. 28, 2011) ("Section 216(b) requires only written consent to become a party"); *Gieseke v. Fist Horizon Home Loan Corp.*, 2006 WL 2919076, at *2 (D. Kan. Oct. 11, 2006) (holding that it is unnecessary for consent to join form to include certification of dates of plaintiff's employment and that plaintiff worked over forty hours a week without being paid overtime); *Shajan v. Barolo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).[2]

Defendants also request that the consent form add language to the effect that any individual choosing to have Plaintiffs' counsel represent them will be represented by them "in all respects (including any strategic choices and amendments to the operative complaint in the litigation)" and concerning "any litigation strategies, [and] any amendments to the operative complaint in the lawsuit."  Plaintiffs oppose the request, arguing that "Cision's proposed additions to the designation of counsel paragraph are superfluous, unnecessarily wordy, and contrary to FJC principles."  Dkt. No. 43 at 13.  The Court agrees with Plaintiffs.  It is sufficient that the consent form indicate that Plaintiffs' counsel will represent persons who opt in and do not have their own counsel without singling out any particular aspects of the representation.

2.   Mailing to counsel

The parties also disagree on an issue that might seem technical but that is of some

---

[2] In *McGlone v. Contract Callers, Inc.*, 867 F. Supp.2d 438, 443 (S.D.N.Y. 2012), the court required potential opt-ins to affirm on their opt-in form that they either had time automatically deducted from break time when in fact on at least some occasions the opt in was unable to take an uninterrupted break or that they performed work-related responsibilities before closing in or after punching out.  It did so, however, without analysis and Defendants have cited no decision since *McGlone* in 2012 that has followed that portion of the opinion.

moment: where persons who wish to opt into the litigation should send their consent forms. Plaintiffs, citing a number of decisions in this District and the Eastern District of New York, as well from other districts, argue that it is more convenient administratively for the consent forms to be sent to Plaintiffs' counsel and for Plaintiffs' counsel to file the forms with the Court. "Courts in this Circuit are split on whether the opt-in plaintiffs should mail their consent forms to the named plaintiffs' counsel or to the Clerk of Court." *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 271 (D. Conn. 2020); *see Chen v. Kicho Corp.*, 2020 WL 1900582, at *13 (S.D.N.Y. Apr. 17, 2020) (noting "intra-Circuit split on whether notices should direct potential opt-in plaintiffs to return consent forms to Plaintiff's counsel or to the Clerk of the Court"); *Keaswri*, 2018 WL 279756, at *7.  The Court invited supplemental briefing on the issue.  Dkt. No. 45.

Section 256(b) treats an action as having been "commenced" on "the subsequent date on which [a] written consent is filed in the court."  29 U.S.C. § 256(b).  Thus, only when the written consent is filed with the Court, and not when it is received by plaintiffs' counsel, is an action deemed to have commenced, and does the limitations period stop running.  The rule has the virtue of setting a certain, recognizable, and verifiable date from which the measure the limitations period for a specific plaintiff.  It also protects the plaintiff's autonomy but putting it in the hands of the plaintiff, and not the person who will be counsel for the plaintiff, to determine when to file the consent and thus when to stop the statute of limitations from running.

In response to the Court's order, Plaintiffs' counsel committed to filing consent forms in daily batches to avoid delay.  Dkt. No. 46 at 1 n.1.  That commitment allays only a portion of the Court's concern.  The issue was highlighted for the Court by Plaintiffs' counsel's initial statement that it would file a consent form it received only when it had received all of the

consent forms and when the deadline for consents had expired.  But the concern was not limited to counsel delaying the filing of earlier received consents until the deadline.  The Court was also concerned about (1) counsel not filing each consent form on the day it received that form (a commitment counsel has not yet made) and (2) disputes as to when the consent was actually received by counsel and thus the ability to rely on anything other than counsel's assurance that the consents were filed on the day they were received.  *Gomez v. Terri Vegetarian LLC*, 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) ("To avoid disputes over timeliness, potential opt-in plaintiffs shall be required to send their consent forms directly to the Clerk of Court rather than to Plaintiff's counsel."); *Robles v. Liberty Restaurant Supply Corp.*, 2013 WL 6684954, at *9 (E.D.N.Y. Dec. 18, 2013) ("Sending the Consent to Join form to the Clerk of Court avoids the risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as a result of the turnaround time occasioned between receipt of a consent form by Plaintiff's counsel and the need to file the form with the Court.  Thus, this practice is in the best interest of any opt-in plaintiff."); *Brabham v. Mega Tempering & Glass Corp.*, 2013 WL 3357722, at *7 (E.D.N.Y. July 3, 2013) (same).

It is more consistent with the statute to have opt-in Plaintiffs send their consent forms to the Clerk of Court—the person to whom the forms are addressed and whose receipt of them has legal significance.  Accordingly, opt-in Plaintiffs should send their consent forms to the Clerk of Court.  The notice should be updated to reflect this change.

3.  Reminder Notice

Plaintiffs request permission to send a reminder postcard to potential opt-in plaintiffs at some point during the opt-in period.  Dkt. No. 13 at 22–23.  Defendant objects, arguing that a reminder notice "could be interpreted as encouragement by the court to join the lawsuit."  Dkt.

22

No. 38 at 23.

"[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA."  *Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at *13 (E.D.N.Y. 2019) (citing cases); *see also Diaz*, 340 F. Supp. 3d at 387 ("courts in this district have permitted sending a reminder notice in similar cases of class certification"); *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (authorizing reminder notice).  The Court is convinced that the modern-day volume of information to which even ordinary citizens are subject makes such a notice helpful and mitigates the risk that it will be perceived as badgering.  Given that "notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt in," *Park*, 2019 WL 2205715, at *7 (quoting *Chhab v. Darden Restaurants Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013)), the Court will permit such a reminder notice provided (1) that Plaintiffs' counsel meet and confer with the Defendants about its content; and (2) Plaintiffs' counsel submit the proposed language to the Court for its approval one week before mailing.  Defendants' concern can be addressed by requiring that the reminder notice "include language specifically stating that the court neither encourages nor discourages participation in the lawsuit." *Guzelgurgenli*, 883 F. Supp. 2d at 358 (E.D.N.Y. 2012) (noting that some courts have required such language but denying request to send reminder notice without prejudice).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for Section 216(b) notice is GRANTED subject to the modifications outlined above.  Plaintiffs shall submit a revised form of notice and a revised consent form to the Court for its approval within two weeks of the date of this Order.

23

Plaintiffs' request for reminder notice is GRANTED.


        SO ORDERED.


Dated: May 4, 2021
        New York, New York                    _____
                                                        LEWIS J. LIMAN
                                                 United States District Judge