## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**ANATOLIY MIKITYUK, MITCH TALLUNGAN, and WADE HONEY, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

v.

**CISION US INC. and CISION LTD.,**

**Defendants.**

**Case No.: 21 Civ. 510**

**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Anatoliy Mikityuk ("Plaintiff Mikityuk" or "New York Plaintiff"), Mitch Tallungan ("Plaintiff Tallungan" or "Illinois Plaintiff"), and Wade Honey ("Plaintiff Honey" or "Maryland Plaintiff") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys Outten & Golden LLP, allege, upon personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover unpaid overtime compensation and other damages for Plaintiffs and similarly situated individuals who have worked for Defendants Cision US Inc. and Cision Ltd. (collectively, "Defendants" or "Cision"), as inside salespeople, including in the job titles of Account Executive, Account Executive (SAAS), Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative, Sales Associate, Sales Development Representative, Senior Sales Development Representative, Sales Executive, Midmarket Sales Executive, Sales Representative, Senior Sales Representative, and other similar

roles, however variously titled (together, "Sales Representatives").

2.      Cision is a public relations software and services provider with approximately 16 offices in the United States, including in New York.[1]

3.      Cision sells software products that identify influencers, create and distribute content, and measure the impact of communications.

4.      Cision sells several software products and/or services, including Bulletin Intelligence, PR Newswire, and Falcon.io, among others.

5.      Cision employs Sales Representatives to sell its products and services.

6.      Sales Representatives perform non-exempt sales-related tasks, including communicating with clients and potential clients via phone and email, researching sales leads, booking sales meetings with prospective clients, and/or makings sales of Cision's products to current and/or prospective clients.

7.      Sales Representatives primarily perform these tasks from Cision's office or another fixed location, such as from their homes.

8.      Cision requires Sales Representatives to work long hours, often in excess of 40 hours per workweek, in order to complete required tasks.

9.      While employed by Cision, Plaintiffs consistently worked more than 40 hours per workweek without receiving overtime compensation for all the hours they worked.

10.     During the relevant period, it was Cision's policy to deprive Sales Representatives of their lawfully earned overtime wages.

---

[1]     _See_ Cision Form 10-K for the year ending December 31, 2018, https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=112784956&type=PDF&symbol=CISN&companyName=Cision+Ltd.&formType=10-K&dateFiled=2019-03-01&CK=1701040 ("Cision 2018 10-K"), at 35; Ex. A (Gopalan Compl.) ¶¶ 2-3.

11.     Upon information and belief, Cision uniformly failed to record all of Sales Representatives' overtime hours or compensate them for all overtime hours worked.

12.     The primary duties of Sales Representatives are non-exempt.  These primary inside sales duties do not vary significantly from one Sales Representative to another.

13.     The primary duties of Sales Representatives do not fall under any federal or state law overtime exemption.

14.     Sales Representatives have worked overtime hours and are entitled to overtime premium compensation for all overtime hours worked.

15.     Plaintiffs bring this action on behalf of themselves and similarly situated employees as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

16.     Plaintiff Mikityuk also brings this action on behalf of himself and similarly situated New York employees as a Fed. R. Civ. P. 23 class action under the New York Labor Law, Article 6, §§ 190 *et seq*. and Article 19, §§ 650 *et seq*. ("NYLL") and supporting New York State Department of Labor regulations (collectively, the "New York Wage Laws").

17.     Plaintiff Tallungan also brings this action on behalf of himself and similarly situated Illinois employees as a Fed. R. Civ. P. 23 class action under the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. and supporting regulations (collectively, the "Illinois Wage Laws").

18.     Plaintiff Honey also brings this action on behalf of himself and similarly situated Maryland employees as a Fed. R. Civ. P. 23 class action under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*., and supporting regulations (collectively, the "Maryland Wage Laws").

19.     The parties entered tolling agreements on September 21, 2020 and February 26, 2021.

## JURISDICTION & VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

22.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

23.     Venue is proper in this District because Cision Ltd. and Cision US Inc. transact a substantial amount of business in this District and own and/or operate offices and/or principal places of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

***Plaintiff Anatoliy Mikityuk***

24.     Plaintiff Mikityuk is an adult individual who is a resident of Jersey City, New Jersey.

25.     Plaintiff Mikityuk was employed by Cision in its New York, New York office from March 2019 to November 2019 as a Sales Development Representative.

26.     As a Sales Development Representative, Plaintiff Mikityuk performed sales-related tasks to help Cision make sales of its products and services, including sales of subscriptions to Cision's products and services.

27.     Plaintiff Mikityuk was an "employee" within the meaning of all applicable

statutes.

28.     Plaintiff Mikityuk regularly worked more than 40 hours in a workweek but was not paid for all hours worked over 40.

29.     To the best of his recollection, during his employment with Cision, Plaintiff Mikityuk regularly arrived at Cision's office at approximately 9:00 a.m. each morning and worked until approximately 6:00 p.m., 7:00 p.m., or 7:30 p.m.  Plaintiff Mikityuk sometimes took a one-hour lunch break, and other times worked through lunch.  In addition, several times over the course of Plaintiff Mikityuk's nine months of employment at Cision, he worked an additional 3 to 4 hours over the weekend.

30.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in or around the week of April 8, 2019, Plaintiff Mikityuk worked approximately 10 to 15 overtime hours, or a total of 50-55 hours, without receiving any overtime compensation for hours worked over 40.

31.     It was difficult to meet Cision's job requirements without working substantially more than 40 hours per week.  For example, in order to meet Cision's quotas and metrics, Plaintiff Mikityuk often had to work late or over the weekend to conduct research to identify potential customers, prepare for sales calls, and organize his sales pipeline so that he could focus on making calls and sending emails to potential customers to meet Cision's quotas and metrics during normal business hours.

32.     Cision knew or should have known that Plaintiff Mikityuk regularly worked more than 40 hours in a workweek but was not compensated for all overtime hours.  For example, Scott Domareck, Vice President of Sales – Americas, was frequently present at Cision's office until 7:00 p.m., 7:30 p.m., or later and could see Plaintiff Mikityuk at his workstation from where

he sat, and thus observed or should have observed Plaintiff Mikityuk working more than 40 hours per workweek.

33.     Plaintiff Mikityuk's written consent to join this action was filed on the docket as Exhibit A with the initial complaint. *See* ECF No. 1-1

***Plaintiff Mitch Tallungan***

34.     Plaintiff Tallungan is an adult individual who is a resident of Crystal Lake, Illinois.

35.     Plaintiff Tallungan was employed by Cision in its Chicago, Illinois office from January 2016 to March 2018 as a Business Development Manager.

36.     As a Business Development Manager, Plaintiff Tallungan performed sales-related tasks to make sales of Cision's products and services, including sales of subscriptions to Cision's products and services.

37.     Plaintiff Tallungan was an "employee" within the meaning of all applicable statutes.

38.     Plaintiff Tallungan regularly worked more than 40 hours in a workweek but was not paid for all hours worked over 40.

39.     To the best of his recollection, Plaintiff Tallungan regularly arrived at Cision's office between approximately 7:00 a.m. and 7:30 a.m. and worked until approximately 3:45 or 4:45 p.m., with a 15 to 45 minute break for lunch.  Plaintiff Tallungan frequently performed additional work during his train commute, including by responding to emails or taking calls.  In addition, approximately once or twice per month, Plaintiff Tallungan performed product demonstrations via webinar for potential clients from his home, which lasted approximately half an hour to an hour.  In addition, about two to three times per month, Plaintiff Tallungan made

initial calls to potential clients from his home after normal business hours, which lasted approximately 15 to 30 minutes.

40.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in a week in or around October 2017, Plaintiff Tallungan worked approximately 4.5 to 7 overtime hours in a week, or 44.5 to 47 hours, without receiving proper overtime compensation for all hours over 40.

41.     It was difficult to meet Cision's job requirements without working more than 40 hours per week.  For example, Plaintiff Tallugnan's supervisor, Kurt Hankin, expected Plaintiff Tallungan to be responsive to potential clients at all hours and to work hard to close sales deals, even if that meant taking calls outside of normal business hours.

42.     Cision knew or should have known that Plaintiff Tallungan regularly worked more than 40 hours in a workweek but was not compensated for all overtime hours.  For example, Plaintiff Tallungan's supervisor knew that Plaintiff Tallungan worked at least 40 hours each week in Cision's office, but also expected Plaintiff Tallungan to close as many deals as possible, and knew or should have known that this required taking client calls and giving product demonstrations after normal business hours as requested by potential clients, which would cause Plaintiff Tallungan to work more than 40 hours in a workweek.

43.     Plaintiff Tallungan's written consent to join this action was filed on the docket as Exhibit B with the initial complaint. *See* ECF No. 1-2.

***Plaintiff Wade Honey***

44.     Plaintiff Honey is an adult individual who is a resident of Sykesville, Maryland.

45.     Plaintiff Honey was employed by Cision in its Beltsville, Maryland office from April 2017 to February 2018 as a Business Development Specialist.

7

46.     As a Business Development Specialist, Plaintiff Honey performed sales-related tasks to make sales of Cision's products and services, including sales of subscriptions to Cision's products and services.

47.     Plaintiff Honey was an "employee" within the meaning of all applicable statutes.

48.     Plaintiff Honey regularly worked more than 40 hours in a workweek, but was not paid for all hours worked over 40.

49.     To the best of his recollection, Plaintiff Honey regularly arrived at Cision's office between 7:00 a.m. and 7:30 a.m., and worked at Cision's office until approximately 5:30 p.m. Plaintiff Honey rarely took a lunch break, and usually ate lunch while working.  In addition, approximately three times per week Plaintiff Honey spent 15 to 30 minutes responding to emails that came in after 5:30pm from his desktop computer at home.

50.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in a week in or around December 11, 2017, Plaintiff Honey worked approximately 8 overtime hours in a week, or a total of approximately between 45 to 48  hours, without receiving proper overtime compensation for all hours over 40.

51.     It was difficult to meet Cision's job requirements without working substantially more than 40 hours per week.  For example, it was difficult for Plaintiff Honey to meet Cision's quotas and metrics without arriving early in the morning to increase his chance of being the first Sales Representative to contact a potential client to establish the exclusive right to sell to that customer and earn a commission.  Plaintiff Honey's supervisor, Ryan Haggerty, encouraged Plaintiff Honey and other Sales Representatives to arrive early to increase their chances of establishing the exclusive right to contact "warm leads" that came in overnight.

52.     Cision knew or should have known that Plaintiff Honey regularly worked more

than 40 in a workweek but was not compensated for all overtime hours.  For example, Plaintiff's

Honey's manager Ryan Haggerty, Sales Director, encouraged Plaintiff Honey and other Sales

Representatives to arrive at work at 7:00 a.m. or 7:30 a.m. to contact sales leads that came in

through Cision's website overnight, and to continue to work until 5:30 p.m.  When Ryan

Haggerty arrived at Cision's office, generally between 7:30 a.m. and 8:00 a.m., he observed or

should have observed Plaintiff Honey and others already working, and knew or should have

known that Plaintiff Honey and others came in early to contact sales leads consistent with his

encouragement.

53.     Plaintiff Honey's written consent to join this action was filed on the docket on

January 20, 2021.  *See* ECF No. 4-1.

**Defendants**

54.     Defendants do business jointly under the brand name, trade name, or mark

"Cision."

55.     Defendants share or have shared the same headquarters, located at 130 East

Randolph Street, 7th Floor, Chicago, Illinois, 60601.[2]

56.     Upon information and belief, Defendants share or have shared additional offices,

including additional U.S.-based principal places of businesses, in Beltsville, Maryland and New

York, New York.[3]

---

[2]     Cision 2018 10-K, at 3, 4, 35 (noting that "[o]ur corporate headquarters is located in
Chicago, Illinois and consists of approximately 46,000 square feet of leased space" where "our"
is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries");
Cision Form 10-K for the year ending December 31, 2017,
https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=100530798&type=
PDF&symbol=CISN&companyName=Cision+Ltd.&formType=10-K&dateFiled=2018-03-
13&CK=1701040 ("Cision 2017 10-K"), at 3, 4, 36 (same).
[3]     Cision 2018 10-K, at 35 ("We also lease approximately 16 other offices throughout the
United States[.]"); Cision 2017 10-K at 36 ("We also lease approximately 13 other offices

57.     Upon information and belief, Defendants share or have shared the same Board of Directors.[4]

58.     Upon information and belief, Defendants share or have shared the same Executive Officers.[5]

59.     Defendants jointly hold themselves out as employers of Sales Representatives nationwide.[6]

60.     Upon information and belief, Defendants maintain joint control over human resources and compensation policies that apply to Sales Representatives nationwide.[7]

---

throughout the United States[.]"); Ex. A (Gopalan Compl.) ¶¶ 2-3; *see also* Ex. B (Gopalan Verification for Cision Ltd. by Jack Pearlstein, Executive Vice President and Chief Financial Officer of Cision Ltd.); Ex. C (Gopalan Verification for Cision US Inc., by Jack Pearlstein, Executive Vice President and Chief Financial Officer of Cision US Inc.).

[4]     *See generally* Cision 2018 10-K (referring to "our board of directors" where "our" is shorthand for "Cision" and "Cision" is defined as "Cision Ltd. and its subsidiaries"); Cision 2017 10-K (same).

[5]     *See, e.g.*, Cision 2018 10-K, at 3, 4, 13 (listing "our executive officers as of February 28, 2019" where "our" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries"); Cision 2017 10-K at 3, 4, 13 (same, but as of February 1, 2018); *see also* Global Leadership Team, Cision, https://www.cision.com/about/global-leadership-team/ (last accessed Feb. 24, 2021) (listing and providing biographies for members of Cision's "Global Leadership Team" and not specifying whether members are leaders of Cision Ltd., Cision US Inc., or other subsidiaries); *see also* Ex. B (Gopalan Verification for Cision Ltd. by Jack Pearlstein, Executive Vice President and Chief Financial Officer of Cision Ltd.); Ex. C (Gopalan Verification for Cision US Inc., by Jack Pearlstein, Executive Vice President and Chief Financial Officer of Cision US Inc.).

[6]     *See, e.g.*, Cision 2018 10-K at 3, 4, 12 (noting that "[a]s of December 31, 2018, we had approximately 4,500 global employees, with approximately 1,500 employees located in the U.S," where "we" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries"); Cision 2017 10-K at 3, 4, 12 (noting that "[a]s of December 31, 2017, we had approximately 3,500 global employees, with approximately 1,400 employees located in the U.S.," where "we" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries").

[7]     *See, e.g.*, Cision 2017 10-K at 3, 4, 13 ("Ms. Benner has served as our Chief Human Resources Officer since 2016" and "is responsible for human resources strategy in support of the overall business plan and strategic direction of the organization" including "training" and "compensation" where "our" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries").

61.     Defendants share control over the terms and conditions of Sales Representatives' employment.

62.     Each Defendant, directly or indirectly and jointly or severally, directed the terms of employment and compensation of Plaintiffs and other similarly situated current and former Sales Representatives employed by Defendants nationwide.

63.     Upon information and belief, Defendants operate in concert in a common enterprise and through related activities so that the actions of one may be imputed to the other and/or so that they each act as employers and operate as joint employers within the meaning of the FLSA.

64.     Upon information and belief, Defendants each act directly or indirectly in the interest of the other in relation to Sales Representatives, and Defendants share control of Sales Representatives, directly or indirectly, by reason of the fact that one defendant controls and/or is controlled by the other defendant.

65.     Each Defendant has had the power to control the terms and conditions of employment of Plaintiffs and other similarly situated current and former Sales Representatives nationwide, including without limitation, those terms and conditions related to the claims alleged herein.

66.     Upon information and belief, in September 2014, Cision merged with Vocus, adding Vocus's products and services to Cision's suite of client offerings for Sales Representatives to sell.[8]

67.     Upon information and belief, in March 2015, Cision acquired Viralheat, Inc.

---

[8]     Press Release, Cision, Cision and Vocus Announce Acquisition of Visible Technologies (Sept. 15, 2014), https://www.cision.com/about/news/2014-press-releases-2/cision-and-vocus-announce-acquisition-of-visible-technologies/.

("Viralheat"), adding Viralheat's products and services to Cision's suite of client offerings for

Sales Representatives to sell.[9]

68.    Upon information in belief, in June 2016, Cision acquired PR Newswire

Association, LLC ("PR Newswire"), adding PR Newswire's products and services to Cision's

suite of client offerings, which Cision markets as "Cision: PR Newswire," for Sales

Representatives to sell.[10]

69.    Upon information and belief, in March 2017, Cision acquired Bulletin

Intelligence, LLC, adding its products and services to Cision's suite of client offerings, which

Cision markets as "BulletinIntelligence: A Cision Insights Solution," for Sales Representatives to

sell.[11]

70.    Upon information and belief, in January 2018, Cision acquired Prime Research,

LP ("Prime"), adding Prime's products and services to Cision's suite of client offerings, for Sales

Representatives to sell.[12]

71.    Upon information and belief, in January 2019, Cision acquired Falcon.io

("Falcon"), adding Falcon's products and services to Cision's suite of client offerings, which

---

[9]    Press Release, Cision, Cision Acquires Viralheat to Provide the Industry's Most Comprehensive Social Suite (Mar. 23, 2015), https://www.cision.com/us/about/news/2015-press-releases/cision-acquires-viralheat-to-provide-the-industrys-most-comprehensive-social-suite/.

[10]    Press Release, Cision, Cision Completes Acquisition of PR Newswire (June 16, 2016), https://www.cision.com/us/2016/06/cision-completes-acquisition-of-pr-newswire/.

[11]    Press Release, Cision, Cision Acquires Bulletin Intelligence to Expand Decision-Making Support for Senior Leaders (Mar. 28, 2017), https://www.prnewswire.com/news-releases/cision-acquires-bulletin-intelligence-to-expand-decision-making-support-for-senior-leaders-300429995.html.

[12]    Press Release, Cision, Cision Completes Acquisition of PRIME Research (Jan. 24, 2018), https://www.cision.com/us/about/news/2018-press-releases/cision-completes-acquisition-of-prime-research-670876283/.

Cision markets as "Falcon.io," for Sales Representatives to sell.[13]

72.     Upon information and belief, in January 2019, Cision acquired Trendkite, adding

Trendkite's products and services to Cision's suite of client offerings, for Sales Representatives

to sell.[14]

***Defendant Cision Ltd.***

73.     Upon information and belief, Defendant Cision Ltd. is a corporation formed under

the laws of the Cayman Islands with its United States headquarters in Chicago, Illinois, and

additional principal places of business in Beltsville, Maryland, and New York, New York.

74.     On approximately June 30, 2017, Defendant Cision Ltd. began trading as a public

company on the New York Stock Exchange.[15]

75.     On approximately January 31, 2020, Defendant Cision Ltd. ceased trading on the

New York Stock Exchange and became a subsidiary of Platinum Equity, a global investment

firm.[16]

76.     Defendant Cision Ltd. is the parent company of defendant Cision US Inc.[17]

77.     Defendant Cision Ltd. holds itself out as the employer of Sales Representatives

---

[13]     Press Release, Cision, Cision® Acquires Leading Social Media Company Falcon.io (Jan. 3, 2019), https://www.prnewswire.com/news-releases/cision-acquires-leading-social-media-company-falconio-300772225.html.

[14]     Press Release, Cision, Cision® Acquires TrendKite, Extending Its Leadership in Measurement & Attribution (Jan. 23, 2019), https://www.prnewswire.com/news-releases/cision-acquires-trendkite-extending-its-leadership-in-measurement--attribution-300782846.html.

[15]     Kevin Akeroyd, Cision Goes Public: Ringing in the New Age of Earned Media and Communications in the Cloud at the NYSE, (June 30, 2017), https://www.cision.com/2017/06/cision-goes-public/.

[16]     Press Release, Cision, Platinum Equity Completes $2.7 Billion Acquisition Of Cision Ltd. (Jan. 31, 2020), https://www.prnewswire.com/news-releases/platinum-equity-completes-2-7-billion-acquisition-of-cision-ltd-300997002.html.

[17]     *See* Cision 2018 10-K, at Ex. 21.1 (listing Cision US Inc. as one of Cision Ltd.'s subsidiaries as of December 31, 2018); Cision 2017 10-K, at Ex. 21.1 (same, as of December 31, 2017).

nationwide.

78.    For example, Defendant Cision Ltd.'s 2018 Form 10-K filing states that "[a]s of December 31, 2018, we [defined as "Cision Ltd. and its subsidiaries"] had approximately 4,500 global employees, with approximately 1,500 employees located in the United States[.]"[18] Defendant Cision Ltd.'s 2017 Form 10-K states that "[a]s of December 31, 2017, we [defined as "Cision Ltd. and its subsidiaries"] had approximately 3,500 global employees, with approximately 1,400 employees located in the U.S."[19]  These Form 10-K filings cover periods during which Plaintiffs Tallungan and Honey and members of the proposed Classes and Collective worked.

79.    Defendant Cision Ltd. hires Sales Representatives.

80.    For example, "Cision Ltd." is named in job postings for Sales Representative positions on Cision's website.  These job postings include statements such as: "Cision Ltd is a leading global provider of innovative earned media software and services to public relations and marketing communications professionals. . . . Cision employs the brightest, most passionate people in the tech industry.  We'd love for you to join that group!"  *See*, Ex. D (job posting, Sales Development Representative, Chicago).

81.    In addition, in its 2018 and 2017 Form 10-K filings, Defendant Cision Ltd. stated that it "attract[s], recruit[s], develop[s] and retain[s] personnel," including its "sales force."[20]

82.    Upon information and belief, Defendant Cision Ltd. has the authority to discipline Sales Representatives and terminate Sales Representatives' employment.

83.    Upon information and belief, at all relevant times, Defendant Cision Ltd.

---

[18]    Cision 2018 10-K, at 3, 4, 12.
[19]    Cision 2017 10-K, at 3, 4, 12.
[20]    Cision 2018 10-K, at 29; Cision 2017 10-K, at 29.

maintained control and oversight over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

84.     Upon information and belief, Defendant Cision Ltd. applies the same employment policies, practices, and procedures to Sales Representatives nationwide, including policies, practices, and procedures with respect to the payment of overtime compensation.

85.     Defendant Cision Ltd. employs the administrative and human resources staff that hire, train and retain Sales Representatives.[21]

86.     Defendant Cision Ltd. controls the terms and conditions of Sales Representatives' work, including by setting the sales strategy that Sales Representatives must follow.

87.     For example, Sales Representatives focus primarily on selling subscriptions and packages of Cision products, and long-term contracts for Cision's services because, as indicated in Cision Ltd.'s 2018 10-K filing, Cision follows a "SaaS[22] delivery model" which "provides a stable recurring revenue base," with "approximately 85% [of revenue] generated by customers purchasing services on a subscription or recurring basis."[23]

88.     Defendant Cision Ltd. also determines the content of subscription contracts that Sales Representatives can offer to potential customers.[24]

---

[21]     *See* Cision 2018 10-K, at 41; Cision 2017 10-K, at 41.

[22]     "SaaS" stands for "Software as-a Service," and refers to "a software licensing model in which access to the software is provided on a subscription basis, with the software being located on external servers rather than on servers located in-house."  Mitchell Grant, *Software-as-a Service (SaaS)*, Investopia (Feb. 2, 2020), https://www.investopedia.com/terms/s/software-as-a-service-saas.asp.  "Software-as-a-Service is typically accessed through a web browser, with users logging into the system using a username and password[,] [i]nstead of each user having to install the software on their computer[.]"  *Id.*

[23]     Cision 2018 10-K, at 4; *see also* Cision 2017 10-K, at 4 (making the same statement).

[24]     *See* Cision 2018 10-K, at 40 ("Our subscription agreements are one year in length and are typically non-cancelable with customers having the right to terminate their agreements only if we materially breach our obligations under the agreement.").

89.     In addition, Defendant Cision Ltd. promulgated a "Policy on Insider Trading," adopted on June 29, 2017, Ex. E, which applies to all of its "directors, officers, and employees." Defendant Cision Ltd. requires Sales Representatives to agree to the Policy on Insider Trading as a condition of employment.

90.     Defendant Cision Ltd. also promulgated an "Anti-Corruption Policy," adopted on June 29, 2017, Ex. F, which applies to all of the Company's (defined as "Cision Ltd.") "directors, officers, and employees."  The Anti-Corruption Policy provides that "Company [Cision Ltd.] employees and agents must be familiar with and perform their duties according to the requirements set out in this Policy[,]" and that "Company employees or agents who violate this Policy are subject to disciplinary action up to and including dismissal."  The Anti-Corruption Policy further provides that Cision Ltd. "shall provide anti-corruption training and resources to [its] Company employees and agents, as appropriate."  Defendant Cision Ltd. requires Sales Representatives to agree to the Anti-Corruption Policy as a condition of employment.

91.     Defendant Cision Ltd. also promulgated a Code of Ethics, adopted on June 29, 2017, which applies to all "directors, officers, and employees."  Ex. G.  Defendant Cision Ltd. requires Sales Representatives to agree to the Code of Ethics as a condition of employment.

92.     Defendant Cision Ltd.'s Chief Human Resources Officer determines or has determined Sales Representatives' method and rate of pay.[25]

93.     Upon information and belief, Defendant Cision Ltd. pays or has paid Sales

---

[25]     *See, e.g.*, Cision 2017 10-K at 3, 4, 13 ("Ms. Benner has served as our Chief Human Resources Officer since 2016" and "is responsible for human resources strategy in support of the overall business plan and strategic direction of the organization" including "training" and "compensation" where "our" is shorthand for "Cision" and "Cision" is defined as "Cision Ltd. and its subsidiaries").

Representatives' salaries, sales commissions, and travel expenses.[26]

94.     Upon information and belief, Defendant Cision Ltd. pays income taxes related to Sales Representatives' salaries.[27]

95.     Defendant Cision Ltd. maintains or has maintained employment records with respect to Sales Representatives.  For example, Cision's 2018 and 2017 Form 10-K filings reflect information about Sales Representatives normally maintained in employment records, including the total number of Cision employees employed in the United States and operating costs for sales and marketing, which includes the costs of Sales Representatives' salaries and commissions.[28]

96.     Defendant Cision Ltd. leases the offices where Sales Representatives perform their work.[29]

97.     Defendant Cision Ltd. has also held itself out as the employer of Cision sales employees, together with Defendant Cision US Inc., in sworn litigation filings.  For example, in a verified complaint filed in *Cision Ltd. v. Gopalan*, No. 2020-0501 (Del. Ct. Ch.), Ex. A, Defendant Cision Ltd. alleges that defendant Gopalan was a "Cision employee," *id.* ¶ 9, ("Cision" is defined collectively as "Cision Ltd. and Cision US, Inc.[,]" and the complaint is verified by Jack Pearlstein, Executive Vice President and Chief Financial Officer, on behalf of Cision Ltd.), and that after his employment terminated, he "began to solicit Cision employees

---

[26]     Cision 2018 10-K, at 40 ("Our [defined as Cision Ltd. and its subsidiaries'] sales and marketing expenses consist primarily of compensation for our sales and marketing personnel, related travel costs, [and] sales commissions [among other costs]."); Cision 2017 10-K, at 40 (same).

[27]     Cision 2018 10-K, at 37 (listing amounts for loss before income taxes and provision for (benefit from) income taxes).

[28]     Cision 2018 10-K, at 29, 40, 42; Cision 2017 10-K at 29, 40, 42.

[29]     *See* Cision 2018 10-K, at 35 ("Our corporate headquarters is located in Chicago, Illinois and consists of approximately 46,000 square feet of leased space. We also lease approximately 16 other offices throughout the United States[.]"); Cision 2017 10-K, at 36 (same, except Cision leased 13 offices throughout the United States).

who had worked within his organization while he was employed by Cision[,]" including employees who directly supervised and managed teams of Sales Representatives. *See id.* ¶¶ 25-32.

98.     Defendant Cision Ltd. is a covered employer within the meaning of the FLSA and, at all times relevant, employed Plaintiffs and similarly situated employees.

99.     Upon information and belief, at all relevant times, Defendant Cision Ltd.'s annual gross volume of sales made or business done was not less than $500,000.00.

***Defendant Cision US Inc.***

100.     Defendant Cision US Inc., is a corporation formed under the laws of Delaware with its headquarters in Chicago, Illinois, and additional principal places of business in New York, New York and Beltsville, Maryland.

101.     Defendant Cision US Inc. is a wholly-owned subsidiary of Defendant Cision Ltd.[30]

102.     Upon information and belief, Defendant Cision US Inc. holds itself out as the employer of Sales Representatives nationwide.

103.     Defendant Cision US Inc. is a covered employer within the meaning of the FLSA and, at all times relevant, employed Plaintiffs and similarly situated employees.

104.     At all relevant times, Defendant Cision US Inc. maintained control and oversight over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

105.     Upon information and belief, Defendant Cision US Inc. hires Sales

---

[30]     Cision 2018 10-K, at Ex. 21.1 (listing Cision US Inc. as one of Cision Ltd.'s subsidiaries as of December 31, 2018); Cision 2017 10-K, at Ex. 21.1 (same, as of December 31, 2017).

Representatives and issues onboarding documents.

106.    Upon information and belief, Defendant Cision US Inc. has the authority to discipline Sales Representatives and terminate Sales Representatives' employment.

107.    Defendant Cision US Inc. issued all paychecks for Plaintiffs Mikityuk, Tallungan, and Honey, and upon information and belief, issues paychecks for all Sales Representatives.

108.    Defendant Cision US Inc. promulgates a "Cision US Employee Handbook" that, upon information and belief, it distributes to Sales Representatives nationwide.

109.    Defendant Cision US Inc. applies the same employment policies, practices, and procedures to Sales Representatives nationwide, including policies, practices, and procedures with respect to the payment of overtime compensation.

110.    Defendant Cision US Inc. controls the terms and conditions of Sales Representatives' work.  For example, upon information and belief, Cision US Inc. promulgates the "Rules of Engagement," a manual that determines, among other things, what types of potential clients Sales Representatives can contact, and how long and under what circumstances a Sales Representative retains the exclusive right to pursue a potential client before another Sales Representative can attempt to sell Cision's products to that potential client.

111.    Upon information and belief, at all relevant times, Defendant Cision US Inc.'s annual gross volume of sales made or business done was not less than $500,000.00.

## COMMON FACTUAL ALLEGATIONS

112.    Throughout their employment with Cision, Plaintiffs and other Sales Representatives regularly work or have worked in excess of 40 hours per week.

113.    Cision knew or had reason to know that Plaintiffs and other Sales Representatives worked more than 40 hours per workweek, yet Cision failed to pay them overtime compensation

for all hours worked over 40 in a workweek.

114.    Cision failed to keep accurate records of all the hours that Plaintiffs and other Sales Representatives worked.

115.    Upon information and belief, Cision's unlawful conduct has been pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and state wage and hour laws.

116.    Cision was aware, or should have been aware, that federal and state wage and hour laws required it to pay Plaintiffs and other Sales Representatives overtime compensation for all hours worked in excess of 40 per week.

117.    Cision was aware, or should have been aware, that Plaintiffs and other Sales Representatives' primary duties were sales-related tasks, including communicating with clients and potential clients via phone and email, researching sales leads, booking sales meetings with prospective clients, and/or makings sales of Cision's products to current and/or prospective clients, and that these duties do not fall within any overtime exemption under the FLSA or state wage and hour laws.

118.    Cision's failure to pay Plaintiffs and other Sales Representatives overtime was willful.  Cision did not ensure that its compensation practices with respect to Plaintiffs and other Sales Representatives complied with federal or state law.

119.    Cision's unlawful conduct has been widespread, repeated, and consistent.

## COLLECTIVE ACTION ALLEGATIONS

120.    Plaintiffs bring the First Cause of Action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for Cision as Sales Representatives in the United States, who elect to opt in to this action (the

"FLSA Collective").

121.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Cision, and/or Cision was aware of or should have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

122.    As part of its regular business practice, Cision intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

> a.    willfully failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for all hours that they worked in excess of 40 hours per workweek; and
>
> b.    willfully failing to record all of the time that Plaintiffs and the FLSA Collective have worked for the benefit of Cision.

123.    Cision was aware or should have been aware that federal law required it to pay employees performing non-exempt duties, including Plaintiffs and members of the FLSA Collective, an overtime premium for all hours worked in excess of 40 per workweek.

124.    Plaintiffs and the FLSA Collective perform or performed the same primary inside sales duties.

125.    Cision's unlawful conduct has been widespread, repeated, and consistent.

## NEW YORK CLASS ACTION ALLEGATIONS

126.    The New York Plaintiff brings the Second, Third, and Fourth Causes of Action, the New York Wage Law Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated persons who work or have worked for Cision as Sales Representatives in New York on or after September 21, 2014 (the "New York Class").

127.    Plaintiffs define the New York Class as follows:

> All persons who have worked for Cision as Sales Representatives at offices in the State of New York at any time from September 21, 2014

through the date of final judgment in this matter (the "New York Class Period").

128.    Excluded from the New York Class are Cision's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Cision; the Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the New York Class.

129.    The members of the New York Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of such persons, the facts on which the calculation of that number can be based are presently within the sole control of Cision.

130.    Upon information and belief, the size of the New York Class is at least 40 individuals.

131.    Cision has acted or refused to act on grounds generally applicable to the New York Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the New York Class as a whole.

132.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

     a.     whether Cision violated the New York Wage Laws;

     b.     whether Cision failed to compensate the New York Plaintiff and the New York Class for all hours worked in excess of 40 hours per workweek;

     c.     whether Cision failed to keep true and accurate time records for all hours worked by the New York Plaintiff and the New York Class;

     d.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

22

e.    whether Cision complied with the NYLL's wage statement requirement with respect to the New York Plaintiff and the New York Class;

f.    whether Cision failed to provide the New York Plaintiff and the New York Class with accurate wage statements;

g.    whether Cision complied with the NYLL's wage notice requirement with respect to the New York Plaintiff and the New York Class;

h.    whether Cision failed to provide the New York Plaintiff and the New York Class with accurate wage notices; and

i.    the nature and extent of New York Class-wide injury and the appropriate measure of damages for the New York Class.

133.    The claims of the New York Plaintiff are typical of the claims of the New York Class they seek to represent.

134.    Plaintiff and the New York Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to pay overtime wages for all hours worked in excess of 40 hours per workweek.

135.    The New York Plaintiff and the New York Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to provide accurate wage statements.

136.    The New York Plaintiff and the New York Class members enjoy the same statutory rights under the New York Wage Laws, including the right to be paid overtime wages for all overtime hours worked.  The New York Plaintiff and the New York Class members have all sustained similar types of damages as a result of Cision's failure to comply with the New York Wage Laws.  The New York Plaintiff and the New York Class members have all been injured in that Cision has undercompensated them due to Cision's common policies, practices, and patterns of conduct.

137.    The New York Plaintiff will fairly and adequately represent and protect the

interests of the members of the New York Class.  The New York Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the New York Class to represent its interests fairly and adequately.  The New York Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the New York Class just as he would represent and consider his own interests.  The New York Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the New York Class.  The New York Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New York Class.  The New York Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

138.   The New York Plaintiff has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between the New York Plaintiff and the New York Class members.

139.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision damaged the members of the New York Class and the New York Class is entitled to recovery as a result of Cision's common and uniform policies, practices, and procedures.  Although the damages individual members of the New York Class have suffered are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in

inconsistent judgments about Cision's practices.

140.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## ILLINOIS CLASS ACTION ALLEGATIONS

141.    The Illinois Plaintiff brings the Fifth Cause of Action, the Illinois Wage Law Claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated persons who work or have worked for Cision as Sales Representatives in Illinois on or after September 21, 2017 (the "Illinois Class").

142.    Plaintiffs define the Illinois Class as follows:

> All persons who have worked for Cision as Sales Representatives at offices in the State of Illinois at any time from September 21, 2017 through the date of final judgment in this matter (the "Illinois Class Period").

143.    Excluded from the Illinois Class are Cision's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Cision; the Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Illinois Class.

144.    The members of the Illinois Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of such persons, the facts on which the calculation of that number can be based are presently within the sole control of Cision.

145.    Upon information and belief, the size of the Illinois Class is at least 40 individuals.

146.    Cision has acted or refused to act on grounds generally applicable to the Illinois

Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Illinois Class as a whole.

147.     Common questions of law and fact exist as to the Illinois Class that predominate over any questions solely affecting individual members of the Illinois Class, including but not limited to:

       a.     whether Cision violated the Illinois Wage Laws;

       b.     whether Cision failed to compensate the Illinois Plaintiff and the Illinois Class for all hours worked in excess of 40 hours per workweek;

       c.     whether Cision failed to keep true and accurate time records for all hours worked by the Illinois Plaintiff and the Illinois Class;

       d.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

       e.     the nature and extent of Illinois Class-wide injury and the appropriate measure of damages for the Illinois Class.

148.     The claims of the Illinois Plaintiff are typical of the claims of the Illinois Class he seeks to represent.

149.     The Illinois Plaintiff and the Illinois Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to pay overtime wages for all hours worked in excess of 40 hours per workweek.

150.     The Illinois Plaintiff and the Illinois Class members enjoy the same statutory rights under the Illinois Wage Laws, including the right to be paid overtime wages for all overtime hours worked.  The Illinois Plaintiff and the Illinois Class members have all sustained similar types of damages as a result of Cision's failure to comply with the Illinois Wage Laws. The Illinois Plaintiff and the Illinois Class members have all been injured in that Cision has undercompensated them due to Cision's common policies, practices, and patterns of conduct.

151.     The Illinois Plaintiff will fairly and adequately represent and protect the interests

of the members of the Illinois Class.  The Illinois Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the Illinois Class to represent its interests fairly and adequately.  The Illinois Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the Illinois Class just as he would represent and consider his own interests.  The Illinois Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Illinois Class.  The Illinois Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. The Illinois Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

152.    The Illinois Plaintiff has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between the Illinois Plaintiff and the Illinois Class members.

153.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision damaged the members of the Illinois Class, and the Illinois Class is entitled to recovery as a result of Cision's common and uniform policies, practices, and procedures.  Although the damages individual members of the Illinois Class have suffered are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent

judgments about Cision's practices.

154.    This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

## MARYLAND CLASS ACTION ALLEGATIONS

155.    The Maryland Plaintiff brings the Sixth and Seventh Causes of Action, Maryland

Wage Law Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself

and all similarly situated persons who work or have worked for Cision as Sales Representatives

in Maryland on or after September 21, 2017 (the "Maryland Class").

156.    Plaintiffs define the Maryland Class as follows:

> All persons who have worked for Cision as Sales Representatives at
> offices in the State of Maryland at any time from September 21, 2017
> through the date of final judgment in this matter (the "Maryland Class
> Period").

157.    Excluded from the Maryland Class are Cision's legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Cision; the Judge(s) to whom this case is assigned and

any member of the Judge(s)' immediate family; and all persons who submit timely and otherwise

proper requests for exclusion from the Maryland Class.

158.    The members of the Maryland Class identified above are so numerous that joinder

of all members is impracticable.  Although Plaintiffs do not know the precise number of such

persons, the facts on which the calculation of that number can be based are presently within the

sole control of Cision.

159.    Upon information and belief, the size of the Maryland Class is at least 40

individuals.

160.    Cision has acted or refused to act on grounds generally applicable to the Maryland Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Maryland Class as a whole.

161.    Common questions of law and fact exist as to the Maryland Class that predominate over any questions solely affecting individual members of the Maryland Class, including but not limited to:

a.    whether Cision violated the Maryland Wage Laws;

b.    whether Cision failed to compensate the Maryland Plaintiff and the Maryland Class for all hours worked in excess of 40 hours per workweek;

c.    whether Cision acted in good faith and with a reasonable belief that the wages paid to the Maryland Plaintiff and Members of the Maryland Class were not less than the wages required under the MWHL;

d.    whether Cision failed and/or refused to timely pay the Maryland Plaintiff and Members of the Maryland Class all wages due, including overtime wages, on their regular paydays;

e.    whether Cision failed and/or refused to pay the Maryland Plaintiff and Members of the Maryland Class all wages due for work performed prior to the termination of their employment;

f.    whether Cision's failure and/or refusal to timely pay wages to the Maryland Plaintiff and Members of the Maryland Class was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of their claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute;

g.    whether Cision failed to keep true and accurate timekeeping and payroll records by the Maryland Plaintiff and the Maryland Class;

h.    what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

i.    the nature and extent of Maryland Class-wide injury and the appropriate measure of damages for the Maryland Class.

162.    The claims of the Maryland Plaintiff are typical of the claims of the Maryland Class he seeks to represent.

163.    Plaintiff and the Maryland Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to pay overtime wages for all hours worked in excess of 40 hours per workweek.

164.    The Maryland Plaintiff and the Maryland Class members enjoy the same statutory rights under the Maryland Wage Laws, including the right to be paid overtime wages for all overtime hours worked.  The Maryland Plaintiff and the Maryland Class members have all sustained similar types of damages as a result of Cision's failure to comply with the Maryland Wage Laws.  The Maryland Plaintiff and the Maryland Class members have all been injured in that Cision has undercompensated them due to Cision's common policies, practices, and patterns of conduct.

165.    The Maryland Plaintiff will fairly and adequately represent and protect the interests of the members of the Maryland Class.  The Maryland Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the Maryland Class to represent its interests fairly and adequately.  The Maryland Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the Maryland Class just as he would represent and consider his own interests.  The Maryland Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Maryland Class.  The Maryland Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Maryland Class.  The Maryland Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

166.    The Maryland Plaintiff has retained counsel competent and experienced in

complex class action employment litigation.  There is no conflict between the Maryland Plaintiff and the Maryland Class members.

167.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision damaged the members of the Maryland Class and the Maryland Class is entitled to recovery as a result of Cision's common and uniform policies, practices, and procedures.  Although the damages individual members of the Maryland Class have suffered are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Cision's practices.

168.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

169.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

170.    Cision engaged in a widespread pattern and practice of violating the FLSA, as described in this Collective and Class Action Complaint.

171.    Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

172.    At all relevant times, Plaintiffs and other similarly situated current and former

Sales Representatives were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

173.    The overtime wage provisions set forth in §§ 201 *et seq*. of the FLSA apply to Cision.

174.    Cision is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

175.    At all relevant times, Plaintiffs and other similarly situated current and former Sales Representatives are, or were, employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

176.    Cision failed to pay Plaintiffs and other similarly situated current and former Sales Representatives the overtime wages to which they were entitled under the FLSA.

177.    Cision's violations of the FLSA, as described in this Collective and Class Action Complaint, have been willful and intentional.

178.    Cision failed to make a good-faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former Sales Representatives.

179.    Because Cision's violations of the FLSA have been willful, a three-year statute of limitations applies to this Cause of Action, pursuant to 29 U.S.C. § 255.

180.    As a result of Cision's willful violations of the FLSA, Plaintiffs and all other current and formerly similarly situated Sales Representatives have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

181.    As a result of the unlawful acts of Cision, Plaintiffs and other similarly situated current and former Sales Representatives have been deprived of overtime compensation and

other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Wage Laws – Unpaid Overtime
### NYLL §§ 190, *et seq.*; 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2
### (Brought by the New York Plaintiff Individually and on Behalf of the New York Class)

182.    The New York Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

183.    Cision employed the New York Plaintiff and members of the New York Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and the New York Class for all of their time worked in excess of 40 hours per week, at a rate of at least one and one-half times their regular hourly rate, in violation of the requirements of the New York Wage Laws.

184.    By the course of conduct set forth above, Cision has violated NYLL §§ 190, *et seq.*, *id.* §§ 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

185.    Cision failed to keep, make, preserve, maintain, and/or furnish accurate records of time worked by the New York Plaintiff and members of the New York Class.

186.    Cision has a policy and practice of refusing to pay overtime compensation for all hours worked to the New York Plaintiff and members of the New York Class.

187.    Cision's failure to pay proper overtime compensation to the New York Plaintiff and members of the New York Class was willful within the meaning of NYLL §§ 198, 663.

188.    As a consequence of the willful underpayment of wages, alleged above, the New York Plaintiff and the New York Class have incurred damages and Cision is indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to

the Cision's unlawful and willful conduct, as the Court deems just and proper.

189.    The New York Plaintiff and the New York Class members seek recovery of liquidated damages, interest, attorneys' fees, and costs, and other damages to be paid by Cision as provided by the New York Wage Laws.

### THIRD CAUSE OF ACTION
**NYLL, Article 6, §§ 190 *et seq.* – Failure to Provide Accurate Wage Statements**
**(Brought by the New York Plaintiff Individually and on Behalf of the New York Class)**

190.    The New York Plaintiff realleges and incorporates by reference herein all allegations in all preceding paragraphs.

191.    On information and belief, Cision failed to supply the New York Plaintiff and members of the New York Class with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular hourly rate or rates of pay; the number of hours worked, including regular hours and overtime hours worked if applicable; deductions; and net wages.

192.    Due to Cision's violations of NYLL § 195(3), for the period after February 27, 2015, the New York Plaintiff and members of the New York Class are each entitled to damages of $250 for each work day that Cision failed to provide accurate wage statements, or a total of $5,000 per class member, as provided for by NYLL § 198(1-d), reasonable attorneys' fees, costs, and injunctive and declaratory relief.  For the period prior to February 27, 2015, members of the New York Class are each entitled to $100 per workweek for each workweek that Cision failed to provide accurate wage statements, up to a maximum of $2,500 per class member, plus

34

reasonable attorneys fees, costs, and other injunctive and declaratory relief.

### FOURTH CAUSE OF ACTION
**NYLL, Article 6, §§ 190 *et seq*. – Failure to Provide Compliant Wage Notice**
**(Brought by the New York Plaintiff Individually and on Behalf of the New York Class)**

193.    The New York Plaintiff realleges and incorporates by reference herein all allegations in all preceding paragraphs.

194.    On information and belief, to the best of the New York Plaintiff's recollection, Cision failed to supply the New York Plaintiff and members of the New York Class proper notice as required by NYLL § 195(1) and (2), in English or in the language identified by Class members as their primary language, containing New York Class members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL§ 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

195.    Due to Cision's violations of NYLL § 195, for the period after February 27, 2015, the New York Plaintiff and members of the New York Class are each entitled to damages of $50 for each work day that Cision failed to provide a wage notice, or a total of $5,000 per class member, as provided for by NYLL § 198(1-b), reasonable attorneys' fees, costs, and injunctive and declaratory relief.  For the period before February 27, 2015, members of the New York Class are each entitled to damages of $50 per workweek for each workweek that Cision failed to provide a statutorily required wage notice, up to a maximum of $2,500 per class member, plus reasonable attorneys' fees, costs, and other injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
### Illinois Wage Laws – Unpaid Overtime Wages
**(Brought by the Illinois Plaintiff Individually and on Behalf of the Illinois Class)**

196.    The Illinois Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

197.    At all times relevant, the Illinois Plaintiff and the members of the Illinois Class have been employees within the meaning of 820 ILCS 105/3(d) and Defendants were employers within the meaning of 820 ILCS 105/3(c).

198.    The Illinois Plaintiff and the members of the Illinois Class are covered by the Illinois Wage Laws, 820 ILCS 105/1 *et seq*., and their implementing regulations.

199.    Defendants employed the Illinois Plaintiff and the members of the Illinois Class as employers and/or joint employers.

200.    Cision failed to pay the Illinois Plaintiff and the members of the Illinois Class wages to which they are entitled under the Illinois Wage Laws.  Cision failed to pay the Illinois Plaintiff and the members of the Illinois Class for overtime at a wage rate of one and one-half times their regular rate of pay for all hours worked over 40 each week.

201.    Cision failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Illinois Plaintiff and the Illinois Class members.

202.    By the course of conduct set forth above, Cision has violated 820 ILCS 105/4 and 820 ILCS 105/8.

203.    Due to Cision's intentional and willful violations of the Illinois Wage Laws, the Illinois Plaintiff and the members of the Illinois Class are entitled to recover from Cision unpaid wages, treble damages, reasonable attorneys' fees and costs of the action, five-percent interest per month in accordance with 820 ILCS 105/12(a), pre-judgment interest of five percent per

36

annum pursuant 815 Ill. Comp. Stat. Ann. 205/2, and such other relief as provided by law.

## SIXTH CAUSE OF ACTION
### Maryland Wage & Hour Law – Unpaid Overtime Wages
### (Brought by the Maryland Plaintiff Individually and on Behalf of the Maryland Class)

204.    The Maryland Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

205.    At all times relevant, the Maryland Plaintiff and the members of the Maryland Class have been employees and Defendants were employers within the meaning of the MWHL.

206.    The Maryland Plaintiff and the members of the Maryland Class are covered by the MWHL.

207.    Defendants employed the Maryland Plaintiff and the members of the Maryland Class as employers and/or joint employers.

208.    Cision failed to pay the Maryland Plaintiff and the members of the Maryland Class wages to which they are entitled under the MWHL, in violation of Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a), and 3-420.  Cision failed to pay the Maryland Plaintiff and the members of the Maryland Class for overtime at a wage rate of one and one-half times their regular rate of pay for all hours worked over 40 each week.

209.    Cision failed to maintain keep true and accurate timekeeping and payroll records, showing, *inter alia*, the amount paid to each employee per pay period and the hours that each employee works each day and workweek, as required by the MWHL, Md. Code Ann., Lab. & Empl. § 3-424.

210.    Cision did not act in good faith and with a reasonable belief that the wages paid to the Maryland Plaintiff and Members of the Maryland Class were not less than the wages required under the MWHL.

211.     Cision is liable to the Maryland Plaintiff and members of the Maryland Class

pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid overtime wages, an additional

equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other

relief deemed appropriate by the Court.

### SEVENTH CAUSE OF ACTION
**Maryland Wage Payment & Collection Law – Timely Payment of Wages**
**(Brought by the Maryland Plaintiff Individually and on Behalf of the Maryland Class)**

212.     The Maryland Plaintiff realleges and incorporates by reference all allegations in

all preceding paragraphs.

213.     Cision failed and/or refused to timely pay the Maryland Plaintiff and Members of

the Maryland Class all wages due, including overtime wages, on their regular paydays in

violation of the MWPCL, Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a).

214.     Cision failed and/or refused to pay the Maryland Plaintiff and Members of the

Maryland Class all wages due for work performed prior to the termination of their employment,

on or before the day they would have been paid had their employment not terminated, as

required by Md. Code Ann., Lab. & Empl. § 3-505(a).

215.     Cision's unlawful failure or refusal to timely pay the Maryland Plaintiff and

Members of the Maryland Class all their earned wages was not in good faith, was not reasonable,

did not result from a legitimate dispute over the validity of their claims or the amounts they were

owed, and was not otherwise the result of a bona fide dispute.

216.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, the Maryland Plaintiff and

Members of the Maryland Class seek their unpaid wages, an additional award of double

damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate

by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated current and former Sales Representatives, pray for the following relief:

A.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action to the FLSA Collective members.  Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B.      Unpaid overtime pay, liquidated damages, treble damages, penalties, statutory damages, and other damages owed pursuant to the FLSA, New York Wage laws, Illinois Wage Laws, and/or Maryland Wage Laws;

C.      Pre-judgment interest and post-judgment interest as provided by law;

D.      Appropriate equitable and injunctive relief to remedy violations, including an order enjoining Cision from continuing its unlawful practices;

E.      Certification of the New York Class, the Illinois Class, and the Maryland Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.      Designation of the New York Plaintiff as Class Representative for the New York Class, the Illinois Plaintiff as Class Representative for the Illinois Class, and the Maryland Plaintiff as Class Representative for the Maryland Class;

G.      Designation of Plaintiffs' counsel of record as Class Counsel;

H.      A reasonable service award for Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other Sales Representatives, and the risks they have undertaken in doing so;

I.      Attorneys' fees and costs of the action; and

J.      Such other relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 19, 2021                     Respectfully submitted,
New York, New York

                                                 */s/ Melissa Stewart*

                                                 **OUTTEN & GOLDEN LLP**
                                                 Melissa L. Stewart
                                                 Eliana J. Theodorou
                                                 685 Third Avenue, 25th Floor
                                                 New York, NY 10017
                                                 Telephone: (212) 245-1000
                                                 Facsimile:  (646) 509-2060

                                                 Hannah Cole-Chu*
                                                 601 Massachusetts Avenue NW
                                                 Suite 200W
                                                 Washington, D.C. 20001
                                                 Telephone: (202) 847-4400
                                                 Facsimile: (202) 847-4010

                                                 ***Attorneys for Plaintiffs, the Putative***
                                                 ***Collective, and the Putative Classes***

                                                 *Pro hac vice* motion forthcoming