UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                   :

ANATOLIY MIKITYUK, et al.,             :

                      Plaintiffs,      :

                               :           21-cv-510 (LJL)

       -v-                    :

                               :      OPINION & ORDER

CISION US INC. and CISION LTD.,      :

                               :

                   Defendants.     :

                               :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiffs move for a protective order in this case, brought under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, limiting the discovery to be taken by Defendants Cision

US Inc. and Cision Ltd. (collectively "Defendants" or "Cision") of the opt-in plaintiffs. Dkt. No.

163.

      Plaintiffs are former sales representatives ("SRs") of Cision US Inc, a global provider of

public relations ("PR") software, media distribution, media intelligence, and related professional

services. Dkt. No. 88. They allege that Cision violated the overtime pay provisions of the FLSA

by establishing a policy and practice pursuant to which work requirements were set that had the

effect of requiring Cision SRs to work in excess of forty hours a week without paying the SRs

for all of the hours worked in excess of forty and without paying them overtime. *Id.* ¶¶ 112–16,

122. They further allege that Cision knew or should have known that each plaintiff worked in

excess of forty hours a week but nonetheless failed to compensate them for the overtime hours

worked. *Id.* ¶ 113. By order of May 4, 2021, the Court conditionally certified the case as a

collective action under the FLSA and permitted notice to SRs in all of Cision's offices

nationwide, including in its offices in Chicago, Maryland, and Texas.  Dkt. No. 48.  Following

the sending of notice, thirty-seven individuals filed consents to join the case as opt-ins.  There

are three named plaintiffs.

Plaintiffs ask that Defendants be limited to taking discovery from a sample of the opt-in

plaintiffs.  *See* Dkt. No. 163.  Specifically, Plaintiffs propose that Defendants be limited to taking

written discovery from a sample of no more than nineteen opt-in plaintiffs chosen at random on a

proportionate geographic basis (with eight opt-ins from Chicago, eight from Maryland (inclusive

of Mr. Michael Esquibel, who has already completed written discovery), and three from Texas)

and that Defendants be limited to a maximum of four interrogatories and ten document requests

of each of those persons.  *Id.* at 3–4.  If an opt-in does not respond to the requests, Plaintiffs

propose that the non-responsive opt-in be replaced by another opt-in and that, so long as Cision

receives discovery from nineteen opt-in plaintiffs, no opt-in should be dismissed for failure to

provide a discovery response.[1]  *Id.* at 4.  Plaintiffs propose that Defendants be limited to no more

than thirteen videoconference depositions (inclusive of Mr. Esquibel who has already been

deposed) to last no more than three hours each and that eight of the deponents will be chosen by

Defendants from the written discovery sample and five deponents will be chosen by Plaintiffs.

*Id.* at 4.  As with the written discovery, Plaintiffs suggest that if an opt-in is not responsive, a

replacement will be chosen in the same way as the opt-in who is being replaced and that no non-

responsive opt-in be dismissed as long as Cision is given the opportunity to depose thirteen opt-

ins.[2]  *Id.* at 5.  Plaintiffs contend that any larger sample or greater discovery of the opt-in

---

[1] Plaintiffs also propose that no more than four or five individuals per month be required to respond to the written discovery.  *Id.* at 4.

[2] Plaintiffs also propose phasing of the depositions and that the depositions not take place until after Cision has produced documents for those opt-ins.  *Id.* at 5.  The Court previously has ruled that Defendants are entitled to take the deposition of a named plaintiff prior to the production of

plaintiffs would be inconsistent with the goals of the FLSA collective action to lower the

individual costs for plaintiffs and "to vindicate rights by the pooling of resources." *Hoffmann-La*

*Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); Dkt. No. 163 at 1.

Defendants argue that they should be entitled to serve written discovery on and take

depositions of each of the thirty-seven individuals who joined as opt-in plaintiffs, that the

requests should be limited to twenty-five document requests and ten interrogatories for each opt-

in plaintiff, that the depositions should be limited to three hours of questioning by defense

counsel with plaintiffs' counsel allowed up to two hours, and that opt-in plaintiffs who fail to

respond should be dismissed. *See* Dkt. No. 164. Defendants argue that they intend to seek

decertification and that because the case involves employees who worked at different locations,

with different managers, the variation in circumstances warrants individualized discovery. *Id.*

Federal Rule of Civil Procedure 26(b)(1) and 26(b)(2)(C) give the Court authority to limit

the frequency and extent of discovery otherwise allowed by the Federal Rules if, among other

reasons, the discovery is not proportional to the needs of the case, if the burden or expense of the

proposed discovery outweighs its likely benefit, and if it is unreasonably cumulative or

duplicative. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C); *see Flood v. Carlson Rests. Inc.*, 2016 WL

3221146, at *4 (S.D.N.Y. June 7, 2016). "In determining how much discovery should be

---

documents for that plaintiff so long as the deposition is left open for plaintiff's counsel to ask
questions after the documents are produced. Dkt. No. 134 at 25–26. In reaching that conclusion,
the Court was presented with Defendants' arguments that named plaintiffs are "in a very
different position than [] opt-in[s]" and that it was important for Defendants to understand what
the "independent recollection of [the named plaintiff's] experience was." *Id.* at 17. Balancing
the importance of taking the deposition of a witness with an unrefreshed recollection with the
burden that accompanies an opt-in plaintiff being faced with multiple depositions, the Court rules
that, for opt-in plaintiffs, Defendants must produce at least the opt-in's personnel files and any
other documents that Defendants have agreed to produce with respect to that opt-in plaintiff at
least three days prior to the deposition.

permitted, courts must balance the need for information, the information's importance in resolving the issues and the relief requested with the burden of discovery." *Lloyd v. J.P. Morgan Chase & Co.*, 2015 WL 1283681, at *4 (S.D.N.Y. Mar. 20, 2015).  At the same time, "[a] party 'must be afforded a meaningful opportunity to establish the facts necessary to support [its] claim.'" *Flood*, 2016 WL 3221146, at *4 (quoting *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)).

"Generally, there are two lines of cases regarding individualized discovery in opt-in class actions: one allowing all opt-in plaintiffs to be subject to discovery and one allowing only a sample of opt-in plaintiffs to be subject to discovery.  Courts that have allowed individualized discovery treat opt-in plaintiffs in a[] FLSA collective action as ordinary party plaintiffs subject to the full range of discovery permitted by the Federal Rules of Civil Procedure." *Lloyd*, 2015 WL 1283681, at *2 (internal quotation marks omitted) (citing *Forauer v. Vt. Country Store, Inc.*, 2014 WL 2612044, at *2 (D. Vt. June 11, 2014)).  On the other hand, "[c]ourts that have declined to allow individualized discovery in FLSA actions have concluded that collective actions under the FLSA should be governed by the same standards as govern discovery in Fed. R. Civ. P. 23 class actions and should be limited to only class wide and class based discovery because to permit individualized discovery would undermine the purpose and utility of both class and collective actions." *Lloyd*, 2015 WL 1283681, at *3 (internal quotation marks omitted) (citing *Forauer*, 2014 WL 2612044, at *2).  "Most courts . . . strike a balance between the two approaches based on ordinary discovery principles and in consideration of the burdens and benefits to both sides." *Privette v. Waste Pro of North Carolina, Inc.*, 2020 WL 6292633, at *1 (D.S.C. Oct. 27, 2020).  The number of opt-ins and the practicality of taking discovery from each opt-in is a relevant factor.  "When courts have authorized discovery for only a representative

4

sample of plaintiffs, they have generally done so in [cases] in which it would be impracticable, if not impossible, to depose each plaintiff." *Forauer*, 2014 WL 2612044, at *4; *cf. Frisbie v. Feast Am. Diners, LLC,* 2020 WL 2305083, at *3 (W.D.N.Y. May 8, 2020); *Lloyd*, 2015 WL 1283681, at *4.  The purpose for which the discovery is sought, including whether it is sought "to mount a 'scorched earth' defense," *Lloyd*, 2015 WL 1283681 at *4, or is "'undertaken with the purpose or effect of harassment of absent class members or of altering the membership'" of the collective, is also relevant.  *See Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 450 (S.D.N.Y. 1995) (quoting *United States v. Trucking Employers, Inc.*, 72 F.R.D. 101, 104 (D.D.C. 1976)); *see also Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 71 (S.D.N.Y. 2020) (same).

Defendants articulate two grounds for the requested discovery: (1) they intend to move to decertify the collective, and (2) they are entitled to individualized discovery on damages. Defendants argue forcefully that the viability of this collective action (and of its FLSA claim) depends on the testimony of each individual collective member that overtime was not recorded for that employee either because he or she did not know to record it or was not allowed to do so. Dkt. No. 164 at 4.  They also note that the thirty-seven opt-in plaintiffs were spread among four locations in New York (2), Maryland (12), Illinois (17), Texas (5), and Virginia (one who worked remotely) and that the opt-ins had different managers.  *Id.*

The Court will permit Defendants to serve written discovery on each of the thirty-seven opt-in plaintiffs.  The size of the collective is not so large that the service of written discovery on all class members would be impracticable or overly burdensome.  *See Frisbie*, 2020 WL 2305083, at *3 (approving discovery of twenty individuals and citing cases where courts have permitted individualized discovery of up to 162 class members); *Lloyd*, 2015 WL 1283681, at *4 (permitting discovery of all 100 opt-ins who had not signed arbitration agreements).  Nor will it

unduly delay the case.  Importantly, the claims of the individual members of the collective are "not insubstantial." *Krueger*, 163 F.R.D. at 450 (quoting *Robertson v. Nat'l Basketball Assoc.*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975)).  Allowance of the limited written discovery of each of the opt-ins is not harassing and would not, on the facts of this case, serve to deter others either from joining this action or from joining similar such actions in the future.  Discovery of the members of the collective, each of whom has affirmatively indicated a desire to participate in the case, is "entirely appropriate." *Krueger*, 163 F.R.D. at 451.  Defendants may serve up to ten requests for production and fifteen interrogatories on each of the opt-ins. *See Martinez v. First Class Interiors of Naples, LLC*, 2020 WL 7027504, at \*9 (M.D. Tenn. Nov. 30, 2020) (limiting written discovery for opt-in plaintiffs to ten requests for production and fifteen interrogatories).

The Court is not convinced, however, that at this stage of the case the depositions of each of the thirty-seven opt-ins is necessary or that the benefit of such depositions would not be substantially outweighed by the burden placed on the individual litigants and on the collective as a whole.  In particular, the question at the time of decertification will be whether the "named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  The Circuit has specifically rejected the "ad hoc" approach to determining whether the plaintiffs in a conditionally certified FLSA collective action are similarly situated—an approach which considers the differences between collective plaintiffs and could thus justify broad discovery. *Id.* at 517; *see also id.* at 522–24 (Sullivan J., concurring in part and dissenting in part) (asserting that the district court should weigh individualized similarities and dissimilarities of collective plaintiffs, which it could do in this case given the "volumes of record evidence after years of discovery.").  Thus, the challenge of meeting the "ad hoc" test for decertification, which has

been invoked for broad discovery of opt-ins in other cases, is not applicable in this case. *See, e.g.*, *Gandhi v. Dell*, 2010 WL 11506555, at *5–*6 (W.D. Tex. July 28, 2010) (explaining that the second step of the "ad hoc" analysis—the analysis used at the decertification stage— "illustrates the need for individualized discovery" in FLSA case with over 900 plaintiffs); *cf. Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166–67 (D. Kan. 2006) (concluding that second-stage "ad hoc" determination is inappropriate where parties had engaged in "limited" discovery of opt-in plaintiffs and where "[t]he evidence before the court is not extensive").   Although Defendants have raised substantial questions regarding whether Plaintiffs will be able to satisfy the similarly situated standard, they have not demonstrated that they need the depositions of each of the thirty-seven opt-ins to show the absence of like issues with respect to members of the collective, particularly since they will have the responses to written discovery from these opt-ins. *See Higueros v. N.Y.S. Catholic Health Plan*, 2009 WL 3463765, at *2–*3 (E.D.N.Y. Oct. 21, 2009) (denying request for additional depositions where each opt-in plaintiff provided detailed interrogatories and a detailed statement of damages and where defendants deposed thirteen of forty-one plaintiffs).   Indeed, Plaintiffs themselves concede that whether a collective satisfies the stage two question of decertification can be tested with discovery from fewer than all of the members of the collective.  Dkt. No. 166 at 2.  Nor have Defendants shown that, in order to gather information for their defense, they would even need a statistically significant sampling of the collective.  *See Indegrit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 525 (S.D.N.Y. 2014) (explaining, in response to defendant's argument that "there must be a statistical basis for [a] sample [of deposition testimony] to be representative" that "the focus in *Reich*[ *v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997)] was simply upon

whether the sample had qualitative factors that could give rise to a reasonable inference of a violation or damages.").

Defendants do make substantial points that, before a plaintiff is entitled to recover damages, Defendants should have the opportunity to have further discovery both with respect to liability and with respect to damages.  There are countervailing arguments.  The Second Circuit has held that "not all employees need testify in order to prove FLSA violations."  *See* *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003); *see also Reich*, 121 F.3d 58, 67–68 (explaining that "testimony from each underpaid employee" is not required and that "a very small sample of representational evidence can suffice.").  And Defendants will have the opportunity to obtain information related to damages through written discovery of all opt-in plaintiffs.  But whatever the merit of Defendants' argument, it is somewhat undercut at this stage by their argument that the collective will likely be decertified.  If that is the case, some, if not all, of the opt-ins will no longer have claims to adjudicate.  Forcing each of the opt-ins now to go through a deposition when it has not been finally determined that the case may proceed as a FLSA collective and when, on issues of decertification, their testimony may be cumulative, would be overly burdensome and disproportionate to the needs of the case.  It could also send an *in terrorem* message to future members of would-be FLSA collectives that each and every potential opt-in would be subject to a deposition by joining a FLSA collective even before it is finally certified as a FLSA collective—a message inimical to the objectives of FLSA.

The Court is convinced that Defendants are entitled to more than the presumptive ten depositions permitted by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i).  Defendants will be permitted to take the depositions of up to fifteen opt-ins (not including Mr. Esquibel) of their choosing.  That number will be sufficient for Defendants to take

at least depositions of opt-ins from each of Cision's offices.  The Court will not prescribe which depositions Defendants may take or whether the depositions must be of SRs from a particular office.  The depositions may be taken remotely, may include questions related to damages, and Defendants will be permitted to question each opt-in for up to three hours, with an additional minute of deposition time for each minute over two hours that Plaintiff may go in questioning the witness (if Plaintiff chooses to ask questions).  The Court will not phase the depositions.  This order is without prejudice to Defendants seeking leave to take additional depositions if (1) the collective is not decertified or (2) Plaintiffs designate a witness for trial or submit an affidavit of a witness in opposition to summary judgment whom Defendants have not had the opportunity to depose.

If any opt-in fails to respond to the written discovery or fails to appear for deposition, Defendants may move for sanctions under Rule 37, up to and including dismissal of the opt-in's claim.  Each opt-in is a party plaintiff.  29 U.S.C. § 216(b).  Each has also been advised that he or she might have to appear or respond to discovery if he or she opted into the case.  Dkt. No. 59-1 ¶ 5.  The Court will not prescribe in advance (and without any further factual development) the consequences for any particular opt-in for his or her failure to respond to discovery.[3]

---

[3] To the extent Defendants cite *Julian v. Metro. Life Ins. Co.*, 2020 WL 1699983 (S.D.N.Y. Apr. 7, 2020) for the proposition that dismissal is a mandatory sanction for failure to comply with a discovery demand, that is incorrect.  *Julian* recognized—as the Court does here—that dismissal is an *available* sanction for a plaintiff who willfully fails to participate in discovery, but that whether that sanction is *appropriate* is a fact-dependent inquiry.

The motion is GRANTED IN PART and DENIED IN PART.  The Clerk of Court is respectfully directed to close Dkt. Nos. 163 and 164.

SO ORDERED.

Dated: November 22, 2021
      New York, New York

LEWIS J. LIMAN
United States District Judge