## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANATOLIY MIKITYUK, MITCH TALLUNGAN, and WADE HONEY, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CISION US INC., CISION LTD., and FALCON SOCIAL INC., and FALCON.IO US, INC.**<br><br>**Defendants.** | **Case No.: 21 Civ. 510**<br><br>**THIRD AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Anatoliy Mikityuk ("Plaintiff Mikityuk" or "New York Plaintiff"), Mitch Tallungan ("Plaintiff Tallungan" or "Illinois Plaintiff"), and Wade Honey ("Plaintiff Honey" or "Maryland Plaintiff") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Outten & Golden LLP, allege, upon personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.     This lawsuit seeks to recover unpaid compensation, including unpaid overtime owed, and other damages for Plaintiffs and similarly situated individuals who have worked for Defendants Cision US Inc. and Cision Ltd. (collectively, "Cision") and/or for defendants Falcon Social, Inc. and Falcon.io US, Inc., (collectively, "Falcon.io") (together with Cision, "Defendants"), as inside salespeople, including in the job titles of Account Executive, Account Executive (SAAS), Account Executive – Falcon.io, Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative,  Sales Associate,

Sales Development Representative, Sales Development Representative – Falcon.io, Senior Sales

Development Representative, Sales Executive, Midmarket Sales Executive, Sales

Representative, Senior Sales Representative, and other similar roles, however variously titled

(together, "Sales Representatives").

2.      Cision is a public relations software and services provider with approximately 16

offices in the United States, including in New York.[1]

3.      Cision sells software products that identify influencers, create and distribute

content, manage social media, and measure the impact of communications.

4.      Cision has acquired and/or merged with several companies that create and sell or

created and sold similar software products, including Bulletin Intelligence, PR Newswire,

TrendKite, and Falcon.io, among others.

5.      Falcon.io is a social media management platform that provides a unified SaaS

platform for social media listening, engaging, publishing, and managing customer data.

6.      On January 3, 2019, Cision acquired Falcon.io,[2] and Falcon.io became an affiliate

and/or subsidiary of Cision.

7.      Cision sells and/or jointly sells with its subsidiaries and/or affiliates, including

Falcon.io, several software products and/or services, including, among others, Bulletin

Intelligence, PR Newswire, and Falcon.io.

8.      Cision and/or Falcon.io jointly and severally employ Sales Representatives to sell

products and services.

---

[1]      *See* Cision Form 10-K for the year ending December 31, 2018,
https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=112784956&type=
PDF&symbol=CISN&companyName=Cision+Ltd.&formType=10-K&dateFiled=2019-03-
01&CK=1701040 ("Cision 2018 10-K") at 35; Ex. A (Gopalan Compl.) ¶¶ 2-3.
[2]      Cision 2018 10-K at 4, 39.

9.     Sales Representatives perform non-exempt sales-related tasks, including communicating with clients and potential clients via phone and email, researching sales leads, booking sales meetings with prospective clients, and/or making sales of Cision's products and/or Falcon.io's products to current and/or prospective clients.

10.     Sales Representatives primarily perform these tasks from Cision's and/or Falcon.io's offices or another fixed location, such as from their homes.

11.     Cision and/or Falcon.io jointly and severally require Sales Representatives to work long hours, often in excess of 40 hours per workweek, in order to complete required tasks.

12.     While employed by Cision and/or Falcon.io, Plaintiffs consistently worked more than 40 hours per workweek without receiving proper overtime compensation for all the hours they worked.

13.     Cision and/or Falcon.io agreed to compensate Plaintiffs and Sales Representatives straight time wages for all hours worked under 40 in a week (separate and apart from paid time off ("PTO"), company-paid holidays, and/or any form of paid leave) as required by state law, and overtime wages for all hours worked over 40 in a week as required by federal and state law.

14.     During the relevant period, it was each Defendant's policy and/or Defendants' joint policy to deprive Sales Representatives of their lawfully earned overtime wages.

15.     During the relevant period, it was each Defendant's policy and/or Defendants' joint policy to fail to pay Sales Representatives owed wages for all hours worked.

16.     Upon information and belief, each Defendant and/or Defendants jointly failed to record all of Sales Representatives' hours of work, including overtime and straight time hours, or properly compensate them for all hours, including overtime hours, worked.

17.     The primary duties of Sales Representatives are non-exempt.  These primary

inside sales duties do not vary significantly from one Sales Representative to another.

18.     The primary duties of Sales Representatives do not fall under any federal or state law overtime exemption.

19.     Sales Representatives have worked unrecorded hours for which they have not been paid, and are entitled to compensation, including overtime premium compensation for hours worked above forty hours in a workweek, and compensation for all hours worked.

20.     Plaintiffs bring this action on behalf of themselves and similarly situated employees as a collective action against Cision under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

21.     Plaintiff Mikityuk also brings this action on behalf of himself and similarly situated employees as a collective action against Defendants under the FLSA.

22.     Plaintiff Mikityuk also brings this action against Defendants on behalf of himself and similarly situated New York employees who worked for Cision and/or Falcon.io as a Fed. R. Civ. P. 23 class action under the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq*. and Article 19, §§ 650 *et seq*. and supporting New York State Department of Labor regulations (collectively, the "New York Wage Laws").

23.     Plaintiff Tallungan also brings this action against Cision on behalf of himself and similarly situated Illinois employees as a Fed. R. Civ. P. 23 class action under the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*., and supporting regulations (collectively, the "Illinois Wage Laws").

24.     Plaintiff Honey also brings this action against Cision on behalf of himself and similarly situated Maryland employees as a Fed. R. Civ. P. 23 class action under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the

Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*. and supporting regulations (collectively, the "Maryland Wage Laws").

25.     The parties entered tolling agreements on September 21, 2020, February 26, 2021, and March 16, 2021.

## JURISDICTION & VENUE

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

27.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

29.     Venue is proper in this District because Cision Ltd., Cision US Inc., and Falcon.io transact a substantial amount of business in this District and own and/or operate offices and/or principal places of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

*Plaintiff Anatoliy Mikityuk*

30.     Plaintiff Mikityuk is an adult individual who is a resident of Happy Valley, Oregon.

31.     Plaintiff Mikityuk was employed and jointly employed by Cision and Falcon.io in their joint New York, New York office from March 2019 to November 2019 as a Sales Development Representative.

32.     As a Sales Development Representative, Plaintiff Mikityuk performed sales-

related tasks to help Cision and Falcon.io make sales of products and services, including sales of subscriptions to Falcon.io's products and services.

33.     Plaintiff Mikityuk was an "employee" of Cision US Inc., Cision Ltd., and/or Falcon.io within the meaning of all applicable statutes.

34.     Plaintiff Mikityuk regularly worked more than 40 hours in a workweek but was not paid for all hours worked over 40.

35.     Plaintiff Mikityuk regularly worked more than 8 hours per day without straight time compensation for all hours worked under 40 in a week.

36.     To the best of his recollection, during his employment with Cision and/or Falcon.io, Plaintiff Mikityuk regularly arrived at the office at approximately 9:00 a.m. each morning and worked until approximately 6:00 p.m., 7:00 p.m., or 7:30 p.m.  Plaintiff Mikityuk sometimes took a one-hour lunch break, and other times worked through lunch.  In addition, several times over the course of Plaintiff Mikityuk's nine months of employment, he worked an additional 3 to 4 hours over the weekend.

37.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in or around the week of April 8, 2019, Plaintiff Mikityuk worked approximately 10 to 15 overtime hours, or a total of 50-55 hours, without receiving proper overtime compensation for hours worked over 40.

38.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in or around the week of August 19, 2019, Plaintiff Mikityuk took one day of PTO, but Plaintiff Mikityuk worked at least eight hours per day three days that week and, on at least one day, worked at least nine hours.  However, Plaintiff Mikityuk was only paid for one day of PTO and four eight-hour workdays.

39.    It was difficult to meet Defendants' job requirements without working substantially more than 40 hours per week.  For example, in order to meet quotas and metrics, Plaintiff Mikityuk often had to work late or over the weekend to conduct research to identify potential customers, prepare for sales calls, and organize his sales pipeline so that he could focus on making calls and sending emails to potential customers to meet quotas and metrics during normal business hours.

40.    Defendants knew or should have known that Plaintiff Mikityuk regularly worked more than 40 hours in a workweek and/or more than 8 hours in a day during workweeks during which Plaintiff Mikityuk took PTO, which included a company paid-holiday, and/or during which Plaintiff Mikityuk took any form of paid leave, but was not compensated for all hours worked, including straight time and/or overtime hours worked.  For example, Scott Domareck, Vice President of Sales – Americas, for Defendants, was frequently present at the office until 7:00 p.m., 7:30 p.m., or later and could see Plaintiff Mikityuk at his workstation from where he sat, and thus observed or should have observed Plaintiff Mikityuk working more than 40 hours per workweek.

41.    Plaintiff Mikityuk's written consent to join this action was filed on the docket as Exhibit A with the initial complaint.  *See* ECF No. 1-1.

***Plaintiff Mitch Tallungan***

42.    Plaintiff Tallungan is an adult individual who is a resident of Crystal Lake, Illinois.

43.    Plaintiff Tallungan was employed by Cision in its Chicago, Illinois office from January 2016 to March 2018 as a Business Development Manager.

44.    As a Business Development Manager, Plaintiff Tallungan performed sales-related

tasks to make sales of Cision's products and services, including sales of subscriptions to Cision's products and services.

45.    Plaintiff Tallungan was an "employee" within the meaning of all applicable statutes.

46.    Plaintiff Tallungan regularly worked more than 40 hours in a workweek but was not paid for all hours worked over 40.

47.    Plaintiff Tallungan regularly worked more than 8 hours per day without straight time compensation for all hours worked under 40 in a week.

48.    To the best of his recollection, Plaintiff Tallungan regularly arrived at Cision's office between approximately 7:00 a.m. and 7:30 a.m. and worked until approximately 3:45 or 4:45 p.m., with a 15- to 45-minute break for lunch.  Plaintiff Tallungan frequently performed additional work during his train commute, including by responding to emails or taking calls.  In addition, approximately once or twice per month, Plaintiff Tallungan performed product demonstrations via webinar for potential clients from his home, which lasted approximately half an hour to an hour.  In addition, about two to three times per month, Plaintiff Tallungan made initial calls to potential clients from his home after normal business hours, which lasted approximately 15 to 30 minutes.

49.    By way of example and as a representative workweek from his employment, to the best of his knowledge, in a week in or around October 2017, Plaintiff Tallungan worked approximately 4.5 to 7 overtime hours, or 44.5 to 47 hours, without receiving proper overtime compensation for all hours over 40.

50.    By way of example and as a representative workweek from his employment, to the best of his knowledge, in or around the week of February 12, 2018, Plaintiff Tallungan took

one day of PTO, but worked approximately nine or more hours on the days he did not take PTO. However, Plaintiff Tallungan was only paid for one day of PTO and for four eight-hour days.

51.     It was difficult to meet Cision's job requirements without working more than 40 hours per week.  For example, Plaintiff Tallungan's supervisor, Kurt Hankin, expected Plaintiff Tallungan to be responsive to potential clients at all hours and to work hard to close sales deals, even if that meant taking calls outside of normal business hours.

52.     Cision knew or should have known that Plaintiff Tallungan regularly worked more than 40 hours in a workweek and/or more than eight hours in a day during workweeks during which Plaintiff Tallungan took PTO, which included a company paid-holiday, and/or during which Plaintiff Tallungan took any form of paid leave, but was not compensated for all hours, worked, including straight time and/or overtime hours worked.  For example, Plaintiff Tallungan's supervisor knew that Plaintiff Tallungan worked at least 40 hours each week in Cision's office, but also expected Plaintiff Tallungan to close as many deals as possible, and knew or should have known that this required taking client calls and giving product demonstrations after normal business hours as requested by potential clients, which would cause Plaintiff Tallungan to work more than 40 hours in a workweek.

53.     Plaintiff Tallungan's written consent to join this action was filed on the docket as Exhibit B with the initial complaint.  *See* ECF No. 1-2.

***Plaintiff Wade Honey***

54.     Plaintiff Honey is an adult individual who is a resident of Sykesville, Maryland.

55.     Plaintiff Honey was employed by Cision in its Beltsville, Maryland office from April 2017 to February 2018 as a Business Development Specialist.

56.     As a Business Development Specialist, Plaintiff Honey performed sales-related

tasks to make sales of Cision's products and services, including sales of subscriptions to Cision's products and services.

57.     Plaintiff Honey was an "employee" within the meaning of all applicable statutes.

58.     Plaintiff Honey regularly worked more than 40 hours in a workweek, but was not paid for all hours worked over 40.

59.     Plaintiff Tallungan regularly worked more than eight hours per day without straight time compensation for all hours worked under 40 in a week.

60.     To the best of his recollection, Plaintiff Honey regularly arrived at Cision's office between 7:00 a.m. and 7:30 a.m., and worked at Cision's office until approximately 5:30 p.m. Plaintiff Honey rarely took a lunch break, and usually ate lunch while working.  In addition, approximately three times per week Plaintiff Honey spent 15 to 30 minutes responding to emails that came in after 5:30 p.m. from his desktop computer at home.

61.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in a week in or around December 11, 2017, Plaintiff Honey worked approximately eight overtime hours in a week, or a total of approximately 45 to 48 hours, without receiving proper overtime compensation for all hours over 40.

62.     By way of example and as a representative workweek from his employment, to the best of his knowledge, in or around the week of July 3, 2017, Plaintiff Honey took one day of PTO, but worked approximately 9-10 hours on the days he did not take PTO.  Plaintiff Honey was only paid for one day of PTO and for four eight-hour workdays.

63.     It was difficult to meet Cision's job requirements without working substantially more than 40 hours per week.  For example, it was difficult for Plaintiff Honey to meet Cision's quotas and metrics without arriving early in the morning to increase his chance of being the first

Sales Representative to contact a potential client to establish the exclusive right to sell to that customer and earn a commission.  Plaintiff Honey's supervisor, Ryan Haggerty, encouraged Plaintiff Honey and other Sales Representatives to arrive early to increase their chances of establishing the exclusive right to contact "warm leads" that came in overnight.

64.     Cision knew or should have known that Plaintiff Honey regularly worked more than 40 hours in a workweek and/or more than eight hours in a day during workweeks during which Plaintiff Honey took PTO, which included a company paid-holiday, and/or during which Plaintiff Honey took any form of paid leave, but was not compensated for all hours worked, including straight time and/or overtime hours worked.  For example, Plaintiff's Honey's manager, Ryan Haggerty, Sales Director, encouraged Plaintiff Honey and other Sales Representatives to arrive at work at 7:00 a.m. or 7:30 a.m. to contact sales leads that came in through Cision's website overnight, and to continue to work until 5:30 p.m.  When Ryan Haggerty arrived at Cision's office, generally between 7:30 a.m. and 8:00 a.m., he observed or should have observed Plaintiff Honey and others already working and knew or should have known that Plaintiff Honey and others came in early to contact sales leads consistent with his encouragement.

65.      Plaintiff Honey's written consent to join this action was filed on the docket on January 20, 2021.  *See* ECF No. 4-1.

**Defendants Cision US Inc. and Cision Ltd.**

66.     Defendants Cision US Inc. and Cision Ltd. do business jointly under the brand name, trade name, or mark "Cision."

67.     Defendants Cision US Inc. and Cision Ltd. share or have shared the same

headquarters, located at 130 East Randolph Street, 7th Floor, Chicago, Illinois, 60601.[3]

68.     Upon information and belief, Defendants Cision US Inc. and Cision Ltd. share or

have shared additional offices, including additional U.S.-based principal places of businesses, in

Beltsville, Maryland and New York, New York.[4]

69.     Mary Ann Sigler serves as Director for both Cision Ltd. and Cision US Inc.[5]

70.     During the relevant period, Kevin Akeroyd served as a Director for both Cision

US Inc. and Cision Ltd.[6]

71.     During the relevant period, Defendants Cision US Inc. and Cision Ltd. shared

common officers: Kevin Akeroyd, Jack Pearlstein, and Steve Solomon.[7]

72.     Defendants Cision US Inc. and Cision Ltd. jointly hold themselves out as

employers of Sales Representatives nationwide, including as the employers of Sales

Representatives who sell Falcon-branded products.[8]

---

[3]     Cision 2018 10-K at 3, 4, 35 (noting that "[o]ur corporate headquarters is located in Chicago, Illinois and consists of approximately 46,000 square feet of leased space" where "our" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries"); Cision Form 10-K for the year ending December 31, 2017, https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=100530798&type=PDF&symbol=CISN&companyName=Cision+Ltd.&formType=10-K&dateFiled=2018-03-13&CK=1701040 ("Cision 2017 10-K") at 3, 4, 36 (same).

[4]     Cision 2018 10-K at 35 ("We also lease approximately 16 other offices throughout the United States . . . ."); Cision 2017 10-K at 36 ("We also lease approximately 13 other offices throughout the United States . . . ."); Ex. A (Gopalan Compl.) ¶¶ 2-3.

[5]     Ex. B (Cision's Responses to Plaintiff's First Set of Interrogatories) at 3 (Response to Interrogatory No. 1).

[6]     *Id.*

[7]     *Id.* at 4 (Response to Interrogatory No. 2).

[8]     *See, e.g.*, Cision 2018 10-K at 3, 4, 12 (noting that "[a]s of December 31, 2018, we had approximately 4,500 global employees, with approximately 1,500 employees located in the U.S," where "we" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries"); Cision 2017 10-K at 3, 4, 12 (noting that "[a]s of December 31, 2017, we had approximately 3,500 global employees, with approximately 1,400 employees located in the U.S.," where "we" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries"); *see also* Ex. C (Falcon.io Job Posting for Chicago Account Executive) at 1

73.     Defendants Cision US Inc. and Cision Ltd. maintain joint control over human resources and compensation policies that apply to Sales Representatives nationwide, including Sales Representatives who sell Falcon-branded products.[9]

74.     Defendant Cision Ltd. has held itself out as the employer of sales employees, together with Defendant Cision US Inc., in sworn litigation filings.  For example, in a verified complaint filed in *Cision Ltd. v. Gopalan*, No. 2020-0501 (Del. Ct. Ch.), attached hereto as Exhibit A ("Gopalan Compl."), Defendant Cision Ltd. alleges that defendant Gopalan was a "Cision employee," *id.* ¶ 9 (defining "Cision" collectively as "Cision Ltd. and Cision US, Inc.," and the complaint is verified by Jack Pearlstein, Executive Vice President and Chief Financial Officer, on behalf of both Cision Ltd. and Cision US Inc.), and that after his employment terminated, he "began to solicit Cision employees who had worked within his organization while he was employed by Cision," including employees who directly supervised and managed teams of Sales Representatives.  *See id.* ¶¶ 25-32.

75.     Defendants Cision US Inc. and Cision Ltd. share control over the terms and conditions of Sales Representatives' employment, including the terms and conditions of the employment of Sales Representatives who sell Falcon-branded products.

76.     Cision US Inc. and Cision Ltd. each, directly or indirectly and jointly or severally,

---

(stating that "Falcon is part of Cision Ltd—a leading global provider of innovative earned media software and services to public relations and marketing communications professionals."); Ex. D (Falcon.io Job Posting for New York Account Executive) at 1 (same); Ex. E (Falcon.io Job Posting for New York Sales Development Representative) at 1 (same); *see also* Ex. F (Cision Job Posting for Chicago Sales Development Representative) at 1 (mentioning Cision Ltd.).

[9]     *See, e.g.*, Cision 2017 10-K at 3, 4, 13 ("Ms. Benner has served as our Chief Human Resources Officer since 2016" and "is responsible for human resources strategy in support of the overall business plan and strategic direction of the organization" including "training" and "compensation" where "our" is shorthand for "Cision" and "Cision" is defined to include "Cision Ltd. and its subsidiaries").

directed the terms of employment and compensation of Plaintiffs and other similarly situated current and former Sales Representatives employed by Cision nationwide, including the terms of employment and compensation of Sales Representatives who sell Falcon-branded products.

77.     Upon information and belief, Defendants Cision US Inc. and Cision Ltd. operate in concert, in a common enterprise and through related activities so that the actions of one may be imputed to the other and/or so that they each act as employers and operate as joint employers within the meaning of the FLSA.

78.     Upon information and belief, Defendants Cision US Inc. and Cision Ltd. each act directly or indirectly in the interest of the other in relation to Sales Representatives, and Defendants share control of Sales Representatives, directly or indirectly, by reason of the fact that one Defendant controls and/or is controlled by the other Defendant.

79.     Cision US Inc. and Cision Ltd. each has had the power to control the terms and conditions of the employment of Plaintiffs and other similarly situated current and former Sales Representatives nationwide, including Sales Representatives who sell Falcon-branded products, including without limitation, those terms and conditions related to the claims alleged herein.

80.     Upon information and belief, in September 2014, Cision merged with Vocus, adding Vocus's products and services to Cision's suite of client offerings for Sales Representatives to sell.[10]

81.     Following the merger, Cision became the employer and/or joint employer of employees who sold Vocus products.

82.     Upon information and belief, in March 2015, Cision acquired Viralheat, Inc.

---

[10]     Press Release, Cision, Cision and Vocus Announce Acquisition of Visible Technologies (Sept. 15, 2014), https://www.cision.com/about/news/2014-press-releases-2/cision-and-vocus-announce-acquisition-of-visible-technologies/.

("Viralheat"), adding Viralheat's products and services to Cision's suite of client offerings for Sales Representatives to sell.[11]

83.    Following the acquisition, Cision became the employer and/or joint employer of employees who sold Viralheat products.

84.    Upon information in belief, in June 2016, Cision acquired PR Newswire Association, LLC ("PR Newswire"), adding PR Newswire's products and services to Cision's suite of client offerings, which Cision markets as "Cision: PR Newswire," for Sales Representatives to sell.[12]

85.    Following the acquisition, Cision became the employer and/or joint employer of employees who sold PR Newswire products.

86.    Upon information and belief, in March 2017, Cision acquired Bulletin Intelligence, LLC, adding its products and services to Cision's suite of client offerings, which Cision markets as "BulletinIntelligence: A Cision Insights Solution," for Sales Representatives to sell.[13]

87.    Following the acquisition, Cision became the employer and/or joint employer of employees who sold Bulletin Intelligence products.

88.    Upon information and belief, in January 2018, Cision acquired Prime Research, LP ("Prime"), adding Prime's products and services to Cision's suite of client offerings, for Sales

---

[11]    Press Release, Cision, Cision Acquires Viralheat to Provide the Industry's Most Comprehensive Social Suite (Mar. 23, 2015), https://www.cision.com/us/about/news/2015-press-releases/cision-acquires-viralheat-to-provide-the-industrys-most-comprehensive-social-suite/.
[12]    Press Release, Cision, Cision Completes Acquisition of PR Newswire (June 16, 2016), https://www.cision.com/us/2016/06/cision-completes-acquisition-of-pr-newswire/.
[13]    Press Release, Cision, Cision Acquires Bulletin Intelligence to Expand Decision-Making Support for Senior Leaders (Mar. 28, 2017), https://www.prnewswire.com/news-releases/cision-acquires-bulletin-intelligence-to-expand-decision-making-support-for-senior-leaders-300429995.html.

Representatives to sell.[14]

89.     Following the acquisition, Cision became the employer and/or joint employer of employees who sold Prime products.

90.     Upon information and belief, in January 2019, Cision acquired Falcon.io, adding Falcon.io's products and services to Cision's suite of client offerings, which Cision markets as "Falcon.io," for Sales Representatives to sell.[15]

91.     Following the acquisition, Cision became the employer and/or joint employer of employees who sold Falcon.io products.

92.     Upon information and belief, in January 2019, Cision acquired Trendkite, adding Trendkite's products and services to Cision's suite of client offerings, for Sales Representatives to sell.[16]

93.     Following the acquisition, Cision became the employer and/or joint employer of employees who sold TrendKite products.

***Defendant Cision Ltd.***

94.     Upon information and belief, Defendant Cision Ltd. is a corporation formed under the laws of the Cayman Islands with its United States headquarters in Chicago, Illinois, and additional principal places of business in Beltsville, Maryland, and New York, New York.

---

[14]     Press Release, Cision, Cision Completes Acquisition of PRIME Research (Jan. 24, 2018), https://www.cision.com/us/about/news/2018-press-releases/cision-completes-acquisition-of-prime-research-670876283/.

[15]     Press Release, Cision, Cision® Acquires Leading Social Media Company Falcon.io (Jan. 3, 2019), https://www.prnewswire.com/news-releases/cision-acquires-leading-social-media-company-falconio-300772225.html.

[16]     Press Release, Cision, Cision® Acquires TrendKite, Extending Its Leadership in Measurement & Attribution (Jan. 23, 2019), https://www.prnewswire.com/news-releases/cision-acquires-trendkite-extending-its-leadership-in-measurement--attribution-300782846.html.

95.     Defendant Cision Ltd. is the parent company of Defendant Cision US Inc.[17]

96.     On approximately June 30, 2017, Defendant Cision Ltd. began trading as a public company on the New York Stock Exchange.[18]

97.     On January 3, 2019, Defendant Cision Ltd. acquired Falcon.io, Inc. and, upon information and belief, Falcon.io, became a subsidiary of Defendant Cision Ltd.[19]

98.     On approximately January 31, 2020, Defendant Cision Ltd. ceased trading on the New York Stock Exchange and became a subsidiary of Platinum Equity, a global investment firm.[20]

99.     Defendant Cision Ltd. holds itself out as the employer and hires Sales Representatives nationwide, including Sales Representatives who sell Falcon-branded products.

100.     Defendant Cision Ltd.'s 2018 Form 10-K filing states that "[a]s of December 31, 2018, we [defined as "Cision Ltd. and its subsidiaries"] had approximately 4,500 global employees, with approximately 1,500 employees located in the United States . . . ."[21]  Defendant Cision Ltd.'s 2017 Form 10-K states that "[a]s of December 31, 2017, we [defined as "Cision Ltd. and its subsidiaries"] had approximately 3,500 global employees, with approximately 1,400

---

[17]     *See* Cision 2018 10-K, at Ex. 21.1 (listing Cision US Inc. as one of Cision Ltd.'s subsidiaries as of December 31, 2018); Cision 2017 10-K, at Ex. 21.1 (same, as of December 31, 2017).

[18]     Kevin Akeroyd, Cision Goes Public: Ringing in the New Age of Earned Media and Communications in the Cloud at the NYSE, (June 30, 2017), https://www.cision.com/2017/06/cision-goes-public/.

[19]     Cision 2018 10-K, at 4, 39; *see also* Press Release, As Cision – Falcon.io's Parent Company – Acquires Brandwatch, Falcon's Social Listening Capabilities Will Transform (June, 1, 2021), https://www.falcon.io/press-all/as-cision-falcon-ios-parent-company-acquires-brandwatch-falcons-social-listening-capabilities-will-transform/ (observing that Cision is Falcon.io's parent company).

[20]     Press Release, Cision, Platinum Equity Completes $2.7 Billion Acquisition Of Cision Ltd. (Jan. 31, 2020), https://www.prnewswire.com/news-releases/platinum-equity-completes-2-7-billion-acquisition-of-cision-ltd-300997002.html.

[21]     Cision 2018 10-K at 3, 4, 12.

employees located in the U.S."[22]  These Form 10-K filings cover periods during which Plaintiffs Tallungan and Honey and members of the proposed Classes and Collective worked for Defendants.

101.    In its 2018 and 2017 Form 10-K filings, Defendant Cision Ltd. stated that it "attract[s], recruit[s], develop[s] and retain[s] personnel," including its "sales force."[23]

102.     "Cision Ltd." is named in job postings for Sales Representative positions on Cision's website.  These job postings include statements such as: "Cision Ltd. is a leading global provider of innovative earned media software and services to public relations and marketing communications professionals. . . . Cision employs the brightest, most passionate people in the tech industry.  We'd love for you to join that group!"  *See* Ex. F (job posting, Sales Development Representative, Chicago).

103.    Job postings for Falcon.io Sales Representative positions are posted on Cision's website, and state that "Falcon is part of Cision Ltd—a leading global provider of innovative earned media software and services to public relations and marketing communications professionals."  *See* Ex. C (Falcon.io Job Posting for Chicago Account Executive); Ex. D (Falcon.io Job Posting for New York Account Executive); Ex. E (Falcon.io Job Posting for New York Sales Development Representative).

104.    Upon information and belief, Defendant Cision Ltd. has the authority to discipline Sales Representatives and terminate Sales Representatives' employment.

105.    Upon information and belief, at all relevant times, Defendant Cision Ltd. maintained control and oversight over Plaintiffs and similarly situated Sales Representatives,

---

[22]     Cision 2017 10-K at 3, 4, 12.
[23]     Cision 2018 10-K at 29; Cision 2017 10-K at 29.

including timekeeping, payroll, and other employment practices that applied to them.

106.    Upon information and belief, Defendant Cision Ltd. applies the same employment policies, practices, and procedures to Sales Representatives nationwide, including policies, practices, and procedures with respect to the payment of overtime compensation.

107.    Defendant Cision Ltd. employs the administrative and human resources staff that hire, train, and retain Sales Representatives.[24]

108.    Defendant Cision Ltd. controls the terms and conditions of Sales Representatives' work, including by setting the sales strategy that Sales Representatives must follow.

109.    For example, Sales Representatives focus primarily on selling subscriptions and packages of Cision and Falcon.io products and long-term contracts for Cision's services because, as indicated in Cision Ltd.'s 2018 10-K filing, Cision follows a "SaaS[25] delivery model" which "provides a stable recurring revenue base," with "approximately 85% [of revenue] generated by customers purchasing services on a subscription or recurring basis."[26]

110.    Defendant Cision Ltd. also determines the content of subscription contracts that Sales Representatives can offer to potential customers.[27]

111.    In addition, Defendant Cision Ltd. promulgated a "Policy on Insider Trading,"

---

[24]    *See* Cision 2018 10-K at 41; Cision 2017 10-K at 41.

[25]    "SaaS" stands for "Software as a Service," and refers to "a software licensing model in which access to the software is provided on a subscription basis, with the software being located on external servers rather than on servers located in-house."  Mitchell Grant, *Software-as-a Service (SaaS)*, Investopia (Feb. 2, 2020), https://www.investopedia.com/terms/s/software-as-a-service-saas.asp.  "Software-as-a-Service is typically accessed through a web browser, with users logging into the system using a username and password[,] [i]nstead of each user having to install the software on their computer . . . ." *Id.*

[26]    Cision 2018 10-K at 4; *see also* Cision 2017 10-K at 4 (making the same statement).

[27]    *See* Cision 2018 10-K at 40 ("Our subscription agreements are one year in length and are typically non-cancelable with customers having the right to terminate their agreements only if we materially breach our obligations under the agreement.").

adopted on June 29, 2017, which applies to all of its "directors, officers, and employees." Ex. G. Upon information and belief, Defendant Cision Ltd. requires Sales Representatives to agree to the Policy on Insider Trading as a condition of employment.

112.   Defendant Cision Ltd. also promulgated an "Anti-Corruption Policy," adopted on June 29, 2017, which applies to all of the Company's (defined as "Cision Ltd.") "directors, officers, and employees." Ex. H.  The Anti-Corruption Policy provides that "Company [Cision Ltd.] employees and agents must be familiar with and perform their duties according to the requirements set out in this Policy[,]" and that "Company employees or agents who violate this Policy are subject to disciplinary action up to and including dismissal." *Id.*  The Anti-Corruption Policy further provides that Cision Ltd. "shall provide anti-corruption training and resources to [its] Company employees and agents, as appropriate." *Id.*  Upon information and belief, Defendant Cision Ltd. requires Sales Representatives to agree to the Anti-Corruption Policy as a condition of employment.

113.   Defendant Cision Ltd. also promulgated a Code of Ethics, adopted on June 29, 2017, which applies to all "directors, officers, and employees." Ex. I.  Upon information and belief, Defendant Cision Ltd. requires Sales Representatives to agree to the Code of Ethics as a condition of employment.

114.   Defendant Cision Ltd.'s Chief Human Resources Officer determines or has determined Sales Representatives' method and rate of pay.[28]

115.   Upon information and belief, Defendant Cision Ltd. pays or has paid Sales

---

[28]   *See, e.g.*, Cision 2017 10-K at 3, 4, 13 ("Ms. Benner has served as our Chief Human Resources Officer since 2016" and "is responsible for human resources strategy in support of the overall business plan and strategic direction of the organization" including "training" and "compensation" where "our" is shorthand for "Cision" and "Cision" is defined as "Cision Ltd. and its subsidiaries").

Representatives' salaries, sales commissions, and travel expenses.[29]

116.    Upon information and belief, Defendant Cision Ltd. pays income taxes related to

Sales Representatives' salaries.[30]

117.    Defendant Cision Ltd. maintains or has maintained employment records with

respect to Sales Representatives.  For example, Cision's 2018 and 2017 Form 10-K filings reflect

information about Sales Representatives normally maintained in employment records, including

the total number of Cision employees employed in the United States and operating costs for sales

and marketing, which includes the costs of Sales Representatives' salaries and commissions.[31]

118.    Defendant Cision Ltd. leases the offices where Sales Representatives perform

their work.[32]

119.    Defendant Cision Ltd. is a covered employer within the meaning of the FLSA

and, at all times relevant, employed Plaintiffs and similarly situated employees, including Sales

Representatives who sold Falcon-branded products.

120.    Upon information and belief, Defendant Cision Ltd. agreed to pay or provide

vacation benefits and company paid holidays to employees, including Sales Representatives,

separate from straight time wages for hours worked.

121.    Upon information and belief, at all relevant times, Defendant Cision Ltd.'s annual

---

[29]     Cision 2018 10-K at 40 ("Our [defined as Cision Ltd. and its subsidiaries'] sales and marketing expenses consist primarily of compensation for our sales and marketing personnel, related travel costs, [and] sales commissions [among other costs]."); Cision 2017 10-K, at 40 (same).

[30]     Cision 2018 10-K at 37 (listing amounts for loss before income taxes and provision for (benefit from) income taxes).

[31]     Cision 2018 10-K at 29, 40, 42; Cision 2017 10-K at 29, 40, 42.

[32]     *See* Cision 2018 10-K at 35 ("Our corporate headquarters is located in Chicago, Illinois and consists of approximately 46,000 square feet of leased space. We also lease approximately 16 other offices throughout the United States . . . ."); Cision 2017 10-K, at 36 (same, except Cision leased 13 offices throughout the United States).

gross volume of sales made or business done was not less than $500,000.00.

***Defendant Cision US Inc.***

122.    Defendant Cision US Inc. is a corporation formed under the laws of Delaware with its headquarters in Chicago, Illinois, and additional principal places of business in New York, New York, and Beltsville, Maryland.

123.    Defendant Cision US Inc. is a wholly-owned subsidiary of Defendant Cision Ltd.[33]

124.    Upon information and belief, Defendant Cision US Inc. holds itself out as the employer of Sales Representatives nationwide, including as the employer of Sales Representatives who sell Falcon-branded products.

125.    Defendant Cision US Inc. is a covered employer within the meaning of the FLSA and, at all times relevant, employed Plaintiffs and similarly situated employees, including Sales Representative who sell Falcon-branded products.

126.    At all relevant times, Defendant Cision US Inc. maintained control and oversight over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

127.    Upon information and belief, Defendant Cision US Inc. hires Sales Representatives and issues onboarding documents.

128.    Upon information and belief, Defendant Cision US Inc. has the authority to discipline Sales Representatives and terminate Sales Representatives' employment.

129.    Defendant Cision US Inc. issued all paychecks for Plaintiffs Mikityuk, Tallungan,

---

[33]    Cision 2018 10-K at Ex. 21.1 (listing Cision US Inc. as one of Cision Ltd.'s subsidiaries as of December 31, 2018); Cision 2017 10-K at Ex. 21.1 (same, as of December 31, 2017).

and Honey and, upon information and belief, issues paychecks for all Sales Representatives, including to Sales Representative who primarily sell Falcon-branded products.

130.    Defendant Cision US Inc. promulgates a "Cision US Employee Handbook" that, upon information and belief, it distributes to Sales Representatives nationwide, including to Sales Representative who primarily sell Falcon-branded products.

131.    Defendant Cision US Inc. applies the same employment policies, practices, and procedures to Sales Representatives nationwide, including policies, practices, and procedures with respect to the payment of overtime compensation.

132.    Defendant Cision US Inc. controls the terms and conditions of Sales Representatives' work.  For example, upon information and belief, Cision US Inc. promulgates the "Rules of Engagement," a manual that determines, among other things, what types of potential clients Sales Representatives can contact, and how long and under what circumstances a Sales Representative retains the exclusive right to pursue a potential client before another Sales Representative can attempt to sell Cision and/or Falcon.io products to that potential client.

133.    Defendant Cision US Inc. agreed to pay or provide vacation benefits and company paid holidays to employees, including Sales Representatives, separate from straight time wages for hours worked.

134.    Upon information and belief, at all relevant times, Defendant Cision US Inc.'s annual gross volume of sales made or business done was not less than $500,000.00.

*Falcon.io*

135.    Defendant Falcon Social Inc. was a corporation formed under the laws of Delaware with its headquarters in New York, New York.

136.    Defendant Falcon.io US, Inc. is a corporation formed under the laws of Delaware

with its headquarters in New York, New York.

137.    Upon information and belief, on or around December 31, 2020, Falcon Social Inc.

merged with another entity and/or dissolved as a legal entity.

138.    Defendant Cision Ltd., the parent company of both Falcon Social Inc. and

Falcon.io US Inc., and Defendant Cision US Inc, upon information and belief, an affiliated

company of both Falcon Social Inc., and Defendant Falcon.io US, Inc., had notice of Plaintiffs'

claims before Falcon Social Inc.'s merger and/or dissolution.

139.    Upon information and belief, Falcon Social Inc. is unable to provide full and

adequate relief for Plaintiffs' claims.

140.    Upon information and belief, Falcon.io US, Inc. substantially continues Falcon

Social Inc.'s business operations.

141.    Upon information and belief, Falcon.io US, Inc. employs the same or

substantially the same work force and supervisory personnel as Falcon Social Inc.

142.    Upon information and belief, Falcon.io US, Inc. employs Sales Representatives

under substantially the same working conditions as did Falcon Social Inc.

143.    Upon information and belief, Falcon.io US, Inc. produces the same products as

Falcon Social Inc.

144.    Falcon.io is a wholly-owned subsidiary of Defendant Cision Ltd.[34]

145.    Falcon.io holds itself out as the employer and/or joint employer with Cision of

Sales Representative who sell Falcon-branded products.

146.    Falcon.io is a covered employer within the meaning of the FLSA and, at all

---

[34]    *See* Press Release, Cision, Cision® Acquires Leading Social Media Company Falcon.io
(Jan. 3, 2019), https://www.prnewswire.com/news-releases/cision-acquires-leading-social-
media-company-falconio-300772225.html.

relevant times, employed Plaintiff Mikityuk and similarly situated employees.  *See, e.g.*, ECF No. 120 ¶ 25 (asserting that Falcon.io employed Plaintiff Mikityuk as a Sales Development Representative).

147.    At all relevant times, Falcon.io, together with Cision, maintained control and oversight over Plaintiff Mikityuk and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

148.    Upon information and belief, Falcon.io hires Sales Representatives and issues onboarding documents, together with Cision.

149.    Upon information and belief, Falcon.io has the authority to discipline Sales Representatives and, together with Cision, to terminate Sales Representatives' employment.

150.    Falcon.io applies the same employment policies, practices, and procedures to Sales Representatives nationwide, including policies, practices, and procedures with respect to the payment of overtime compensation.

151.    Falcon.io agreed to pay or provide vacation benefits and company paid holidays to employees, including Sales Representatives, separate from straight time wages for hours worked.

152.    Upon information and belief, at all relevant times, Falcon.io's annual gross volume of sales made or business done was not less than $500,000.00.

**Defendants Cision and Falcon.io**

153.    Following Cision's acquisition of Falcon.io, Defendants Cision Ltd, Cision US Inc., and Falcon.io began to operate as a single integrated enterprise, sharing an interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

154.    Defendant Cision US Inc. and Falcon.io are organized within Cision's "OneCision" global structure.  Ex. J (CIS001325-26).

155.    As part of its acquisition of Falcon.io, Cision Ltd. acquired all of Falcon.io's assets and liabilities.[35]

156.    Following the acquisition, Falcon.io became a "Business Unit" or Division of Cision US Inc.  Ex. K (Mikityuk Personnel Action Form for Hiring signed by and sent to individuals with Cision and Falcon.io titles); Ex. L (same, with respect to Northern Personnel Action Form for Re-Hire); Ex. M (Mikityuk Paystub); Ex. N (Northern Paystub) Ex. O (Notice Regarding Mikityuk Termination Date).

157.    Following the acquisition, Defendant Falcon.io merged office spaces with Cision.

158.    Prior to the acquisition, Falcon.io staff interviewed Plaintiff Mikityuk for his position as a Sales Development Representative and issued him onboarding documents, including an offer letter and an employment agreement signed by Falcon.io.

159.    Following the acquisition, Falcon.io employment opportunities, including Sales Representative employment opportunities, were and are posted on Cision's website, and candidates must apply through Cision's online employment portal.

160.    Candidates for Falcon.io employment opportunities must acknowledge that they have read and understand the Cision Global Candidate Data Policy before they submit their applications.

161.    After the acquisition, many Falcon.io employees, including Sales Representatives and their supervisors, continued to use Falcon.io titles in their signature blocks in emails.

162.    After the acquisition, managers with Falcon.io titles supervised Plaintiff

---

[35]    Cision 2018 10-K at 34.

Mikityuk's day-to-day work and had the authority to, and did, subject Plaintiff Mikityuk to discipline for his work performance.

163.    After the acquisition, Plaintiff Mikityuk and others represented themselves to potential customers as working for "Falcon.io, a Cision company."  Ex. P (Mikityuk Dep. Excerpts) at 36:4-37:13.

164.    Shortly after Cision's acquisition of Falcon.io, Cision began to jointly direct terms and conditions of employment for Sales Representatives who sold Falcon-branded products.

165.    Following the acquisition, Falcon.io Sales Representatives became subject to Cision's Paid Time Office ("PTO") policy, and were and are offered medical and dental benefits through Cision.

166.    Following the acquisition, Defendant Cision US Inc. began to issue all paychecks to Falcon.io Sales Representatives, including Plaintiff Mikityuk and Opt-In Plaintiff Northern, and Sales Representatives.  Ex. M (Mikityuk Paystubs); Ex. N (Northern Paystubs).

167.    Following the acquisition, Cision changed Falcon.io Sales Representatives' compensation structure.  Cision currently sets and/or jointly sets with Falcon.io the compensation structure for Sales Representatives who sell Falcon-branded products.  Ex. P (Mikityuk Dep. Excerpts) at 26:11-27:21; 28:6-25.

168.    Following Cision's acquisition of Falcon.io, Defendant Cision US Inc. issued a wage notice to Plaintiff Mikityuk and, upon information and belief, to other similarly situated Sales Representatives sold Falcon-branded products and worked in New York.  Ex. Q (CIS000860).

169.    Following Cision's acquisition of Falcon.io, Defendant Cision US Inc. issued W-2 forms to Plaintiff Mikityuk, Opt-in Plaintiff Northern and, upon information and belief, to

other similarly situated Sales Representatives who sell or sold Falcon-branded products.  Ex. R (Mikityuk W-2); Ex. S (Northern W-2).

170.    Following the acquisition, Cision and Falcon.io jointly processed and process onboarding and termination paperwork for Sales Representatives who sell Falcon-branded products.  *See* Ex. K (Mikityuk Personnel Action Form for Hiring signed by and sent to individuals with Cision and Falcon.io titles); Ex. T (same, with respect to Mikityuk Personnel Action Form for Termination); Ex. L (same, with respect to Northern Personnel Action Form for Re-Hire); Ex. U (same, with respect to Northern Personnel Action Form for Termination).

171.    Following the acquisition, Falcon.io and Cision merged their human resources and IT staff.  Ex. P (Mikityuk Dep. Excerpts) at 31:6-14; 128:15-24 (IT support); 127:21-128:14 (HR), Ex. V (email from Cision HR to Plaintiff Mikityuk providing exit information and stating that "Cision and Falcon are sad to see you go.").

172.    Following the acquisition, Falcon.io and Cision began to jointly maintain employment records related to Sales Representatives who primarily sell Falcon-branded products.  *See, e.g.*, Ex. K, Ex. T, Ex. L, Ex. U.

173.    Following the acquisition, Falcon.io and Cision jointly required Sales Representatives to complete training on the Miller Heiman sales strategy.

174.    Following the acquisition, Falcon.io and Cision jointly provided Sales Representative with sales training including call and email scripts.

175.    Following the acquisition, Falcon.io and Cision jointly required Sales Representatives to follow Cision's "Rules of Engagement."

176.    Following the acquisition, Falcon.io and Cision jointly required Sales Representatives to record their sales activity in Salesforce.

177.    Following the acquisition, Falcon.io and Cision jointly directed Sales Representatives who held "Cision" job titles and who held "Falcon.io" job titles to make sales of Falcon.io products.  For example, Falcon.io and Cision provided training to Sales Representatives with "Cision" job titles on Falcon.io products and encouraged them to promote these products to potential customers.  If a potential customer was interested in a Falcon.io product, Cision and Falcon.io instructed Sales Representatives with "Cision" job titles to connect the customer with a Sales Representative with a "Falcon.io" job title.  If the customer purchased a Falcon.io product, the referring Sales Representative with a "Cision" job title would earn a commission and/or spiff.

178.    Defendants Cision and Falcon.io do business jointly under the brand names, trade names or marks "Cision" and "Falcon.io."

179.    Defendants Cision and Falcon.io share control over the terms and conditions of Sales Representatives' employment, including the terms and conditions of the employment of Sales Representatives who sell Falcon-branded products.

180.    Cision and Falcon.io each, directly or indirectly and jointly or severally, directed the terms of employment and compensation of Plaintiffs and other similarly situated current and former Sales Representatives employed by Defendants nationwide, including the terms of employment and compensation of Sales Representatives who sell Falcon-branded products.

181.    Upon information and belief, Defendants Cision and Falcon.io operate in concert in a common enterprise and through related activities so that the actions of one may be imputed to the other and/or so that they each act as employers and operate as joint employers within the meaning of the FLSA.

182.    Upon information and belief, Defendants Cision and Falcon.io each act, directly

or indirectly, in the interest of the other in relation to Sales Representatives, including Sales Representatives who sell Falcon-branded products, and Defendants share control of Sales Representatives, directly or indirectly, by reason of the fact that one Defendant controls and/or is controlled by the other Defendant.

## COMMON FACTUAL ALLEGATIONS

183.    Throughout their employment with Cision and/or Falcon.io, Plaintiffs and other Sales Representatives regularly work or have worked in excess of 40 hours per week.

184.    Plaintiffs and Sales Representatives regularly worked more than eight hours per day without straight time wages for all hours worked under 40 in a week, separate and apart from PTO, holiday pay, and/or any form of paid leave.

185.    Cision and/or Falcon.io knew or had reason to know that Plaintiffs and other Sales Representatives worked more than 40 hours per workweek and/or more than eight hours per day during workweeks during which Plaintiffs and Sales Representatives took PTO and/or which included a company paid-holiday and/or during which Sales Representatives took any form of paid leave, yet Cision and/or Falcon.io failed to pay them compensation for all hours worked, including straight time compensation for hours under 40 and proper overtime compensation for hours worked over 40 in a workweek.

186.    When Cision and/or Falcon.io do pay overtime, they pay at an improper rate that fails to account for the value of incentive pay, including commissions, in the regular rate.

187.    Cision and/or Falcon.io failed to keep accurate records of all the hours that Plaintiffs and other Sales Representatives worked.

188.    Upon information and belief, Cision and/or Falcon.io's unlawful conduct has been pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and

state wage and hour laws.

189.   Cision and/or Falcon.io were aware, or should have been aware, that federal and state wage and hour laws required them to pay Plaintiffs and other Sales Representatives for all hours worked, including proper overtime compensation for all hours worked in excess of 40 per week.

190.   Upon information and belief, for example, managers had the capability to monitor Sales Representatives' work activities in SalesForce and/or other data systems.

191.   Upon information and belief, for example, managers routinely monitored Sales Representatives' work activities in SalesForce and/or other data systems.

192.   Sales Representatives' work activities in SalesForce and/or other data systems show some, but not all, of the hours Sales Representatives worked in excess of 40 hours per workweek.

193.   Cision and/or Falcon.io were aware, or should have been aware, that Plaintiffs and other Sales Representatives' primary duties were sales-related tasks, including communicating with clients and potential clients via phone and email, researching sales leads, booking sales meetings with prospective clients, and/or makings sales of products and services to current and/or prospective clients, and that these duties do not fall within any overtime exemption under the FLSA or state wage and hour laws.

194.   Cision and/or Falcon.io's failure to pay Plaintiffs and other Sales Representatives overtime was willful.  Cision and/or Falcon.io did not ensure that their compensation practices with respect to Plaintiffs and other Sales Representatives complied with federal or state law.

195.   Cision and/or Falcon.io's unlawful conduct has been widespread, repeated, and consistent.

## COLLECTIVE ACTION ALLEGATIONS

196.    Plaintiffs bring the First Cause of Action pursuant to the FLSA, 29 U.S.C.

§ 216(b), on behalf of themselves and all similarly situated persons who work or have worked

for Cision and/or Falcon.io as Sales Representatives in the United States, who elect to opt in to

this action (the "FLSA Collective").

197.    All of the work that Plaintiffs and the FLSA Collective have performed has been

assigned by Cision and/or Falcon.io.

198.    Cision and/or Falcon.io were aware of or should have been aware of all of the

work that Plaintiffs and the FLSA Collective have performed.

199.    As part of their regular business practices, Cision and/or Falcon.io intentionally,

willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with

respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is

not limited to:

        a.    willfully failing to pay Plaintiffs and the members of the FLSA Collective proper overtime wages for all hours that they worked in excess of 40 hours per workweek; and

        b.    willfully failing to record all of the time that Plaintiffs and the FLSA Collective have worked for the benefit of Cision and/or Falcon.io.

200.    Cision and/or Falcon.io were aware or should have been aware that federal law

required them to pay employees performing non-exempt duties, including Plaintiffs and

members of the FLSA Collective, an overtime premium for all hours worked in excess of 40 per

workweek.

201.    Plaintiffs and the FLSA Collective perform or performed the same primary inside

sales duties.

202.    Cision and/or Falcon.io's unlawful conduct has been widespread, repeated, and

consistent.

## **NEW YORK CLASS ACTION ALLEGATIONS**

203.    The New York Plaintiff brings the Second, Third, Fourth, and Fifth Causes of

Action, the New York Wage Law Claims, under Rule 23 of the Federal Rules of Civil Procedure,

on behalf of himself and all similarly situated persons who work or have worked for Cision

and/or Falcon.io as Sales Representatives in New York on or after September 21, 2014 (the

"New York Class").

204.    Plaintiffs define the New York Class as follows:

> All persons who have worked for Cision and/or Falcon.io as Sales
> Representatives at offices in the State of New York at any time from
> September 21, 2014 through the date of final judgment in this matter (the
> "New York Class Period").

205.    Excluded from the New York Class are Cision and/or Falcon.io's legal

representatives, officers, directors, assigns, and successors, or any individual who has, or who at

any time during the class period has had, a controlling interest in Cision and/or Falcon.io; the

Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and

all persons who submit timely and otherwise proper requests for exclusion from the New York

Class.

206.    The members of the New York Class identified above are so numerous that

joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of

such persons, the facts on which the calculation of that number can be based are presently within

the sole control of Cision and/or Falcon.io.

207.    Upon information and belief, the size of the New York Class is at least 40

individuals.

208.    Cision and/or Falcon.io have acted or refused to act on grounds generally

33

applicable to the New York Class, thereby making final injunctive relief or corresponding

declaratory relief appropriate with respect to the New York Class as a whole.

209.    Common questions of law and fact exist as to the New York Class that

predominate over any questions solely affecting individual members of the New York Class,

including but not limited to:

      a.    whether Cision and/or Falcon.io violated the New York Wage Laws;

      b.    whether Cision and/or Falcon.io failed to properly compensate the New York Plaintiff and the New York Class for all hours worked, including all hours worked in excess of 40 hours per workweek and straight time hours worked under 40 in a workweek;

      c.    whether Cision and/or Falcon.io failed to keep true and accurate time records for all hours worked by the New York Plaintiff and the New York Class;

      d.    what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

      e.    whether Cision and/or Falcon.io complied with the NYLL's wage statement requirement with respect to the New York Plaintiff and the New York Class;

      f.    whether Cision and/or Falcon.io failed to provide the New York Plaintiff and the New York Class with accurate wage statements;

      g.    whether Cision and/or Falcon.io complied with the NYLL's wage notice requirement with respect to the New York Plaintiff and the New York Class;

      h.    whether Cision and/or Falcon.io failed to provide the New York Plaintiff and the New York Class with accurate wage notices; and

      i.    the nature and extent of New York Class-wide injury and the appropriate measure of damages for the New York Class.

210.    The claims of the New York Plaintiff are typical of the claims of the New York

Class he seeks to represent.

211.    Plaintiff and the New York Class members work, or have worked, for Cision

and/or Falcon.io as Sales Representatives and have been subjected to their policy and pattern or

practice of failing to pay compensation for all hours worked, including proper overtime wages for all hours worked in excess of 40 hours per workweek.

212.    The New York Plaintiff and the New York Class members work, or have worked, for Cision and/or Falcon.io as Sales Representatives and have been subjected to their policy and pattern or practice of failing to provide accurate wage statements and/or wage notices.

213.    The New York Plaintiff and the New York Class members enjoy the same statutory rights under the New York Wage Laws, including the right to be paid for all hours worked, including overtime wages for all overtime hours worked.  The New York Plaintiff and the New York Class members have all sustained similar types of damages as a result of Cision and/or Falcon.io's failure to comply with the New York Wage Laws.  The New York Plaintiff and the New York Class members have all been injured in that Cision and/or Falcon.io has undercompensated them due to Cision and/or Falcon.io's common policies, practices, and patterns of conduct.

214.    The New York Plaintiff will fairly and adequately represent and protect the interests of the members of the New York Class.  The New York Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the New York Class to represent its interests fairly and adequately.  The New York Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the New York Class just as he would represent and consider his own interests.  The New York Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the New York Class.  The New York Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New York Class.  The New York Plaintiff understands that in order to provide adequate

representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

215.    The New York Plaintiff has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between the New York Plaintiff and the New York Class members.

216.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision and/or Falcon.io damaged the members of the New York Class and the New York Class is entitled to recovery as a result of Cision and/or Falcon.io's common and uniform policies, practices, and procedures.  Although the damages individual members of the New York Class have suffered are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Cision and/or Falcon.io's practices.

217.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

### ILLINOIS CLASS ACTION ALLEGATIONS

218.    The Illinois Plaintiff brings the Fifth Cause of Action, the Illinois Wage Law Claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated persons who work or have worked for Cision as Sales Representatives in Illinois on or after September 21, 2017 (the "Illinois Class").

36

219.    Plaintiffs define the Illinois Class as follows:

> All persons who have worked for Cision as Sales Representatives at offices in the State of Illinois at any time from September 21, 2017 through the date of final judgment in this matter (the "Illinois Class Period").

220.    Excluded from the Illinois Class are Cision's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Cision; the Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Illinois Class.

221.    The members of the Illinois Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of such persons, the facts on which the calculation of that number can be based are presently within the sole control of Cision.

222.    Upon information and belief, the size of the Illinois Class is at least 40 individuals.

223.    Cision has acted or refused to act on grounds generally applicable to the Illinois Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Illinois Class as a whole.

224.    Common questions of law and fact exist as to the Illinois Class that predominate over any questions solely affecting individual members of the Illinois Class, including but not limited to:

a.    whether Cision violated the Illinois Wage Laws;

b.    whether Cision failed to properly compensate the Illinois Plaintiff and the Illinois Class for all hours worked, including all hours worked in excess of 40 hours per workweek and all straight time hours worked under 40 in a workweek;

37

c.      whether Cision failed to keep true and accurate time records for all hours worked by the Illinois Plaintiff and the Illinois Class;

d.      what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

e.      the nature and extent of Illinois Class-wide injury and the appropriate measure of damages for the Illinois Class.

225.    The claims of the Illinois Plaintiff are typical of the claims of the Illinois Class he seeks to represent.

226.    The Illinois Plaintiff and the Illinois Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to pay compensation it agreed to pay for all hours worked, including proper overtime wages for all hours worked in excess of 40 hours per workweek and straight time hours worked under 40 in a workweek.

227.    The Illinois Plaintiff and the Illinois Class members enjoy the same statutory rights under the Illinois Wage Laws, including the right to be paid all compensation Cision agreed to pay, and proper overtime wages for all overtime hours worked.  The Illinois Plaintiff and the Illinois Class members have all sustained similar types of damages as a result of Cision's failure to comply with the Illinois Wage Laws.  The Illinois Plaintiff and the Illinois Class members have all been injured in that Cision has undercompensated them due to Cision's common policies, practices, and patterns of conduct.

228.    The Illinois Plaintiff will fairly and adequately represent and protect the interests of the members of the Illinois Class.  The Illinois Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the Illinois Class to represent its interests fairly and adequately.  The Illinois Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the Illinois Class just as he would represent and consider

his own interests.  The Illinois Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Illinois Class.  The Illinois Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. The Illinois Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

229.    The Illinois Plaintiff has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between the Illinois Plaintiff and the Illinois Class members.

230.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision damaged the members of the Illinois Class, and the Illinois Class is entitled to recovery as a result of Cision's common and uniform policies, practices, and procedures.  Although the damages individual members of the Illinois Class have suffered are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Cision's practices.

231.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## MARYLAND CLASS ACTION ALLEGATIONS

232.    The Maryland Plaintiff brings the Sixth and Seventh Causes of Action, Maryland

Wage Law Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself

and all similarly situated persons who work or have worked for Cision as Sales Representatives

in Maryland on or after September 21, 2017 (the "Maryland Class").

233.    Plaintiffs define the Maryland Class as follows:

> All persons who have worked for Cision as Sales Representatives at
> offices in the State of Maryland at any time from September 21, 2017
> through the date of final judgment in this matter (the "Maryland Class
> Period").

234.    Excluded from the Maryland Class are Cision's legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Cision; the Judge(s) to whom this case is assigned and

any member of the Judge(s)' immediate family; and all persons who submit timely and otherwise

proper requests for exclusion from the Maryland Class.

235.    The members of the Maryland Class identified above are so numerous that joinder

of all members is impracticable.  Although Plaintiffs do not know the precise number of such

persons, the facts on which the calculation of that number can be based are presently within the

sole control of Cision.

236.    Upon information and belief, the size of the Maryland Class is at least 40

individuals.

237.    Cision has acted or refused to act on grounds generally applicable to the Maryland

Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with

respect to the Maryland Class as a whole.

238.    Common questions of law and fact exist as to the Maryland Class that

predominate over any questions solely affecting individual members of the Maryland Class, including but not limited to:

a.  whether Cision violated the Maryland Wage Laws;

b.  whether Cision failed to properly compensate the Maryland Plaintiff and the Maryland Class for all hours worked, including for all hours worked in excess of 40 hours per workweek and straight time hours worked under 40 in a workweek;

c.  whether Cision acted in good faith and with a reasonable belief that the wages paid to the Maryland Plaintiff and Members of the Maryland Class were not less than the wages required under the MWHL;

d.  whether Cision failed and/or refused to timely pay the Maryland Plaintiff and Members of the Maryland Class all wages due, including proper overtime wages, on their regular paydays;

e.  whether Cision failed and/or refused to pay the Maryland Plaintiff and Members of the Maryland Class all wages due for work performed prior to the termination of their employment;

f.  whether Cision's failure and/or refusal to timely pay wages to the Maryland Plaintiff and Members of the Maryland Class was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of their claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute;

g.  whether Cision failed to keep true and accurate timekeeping and payroll records by the Maryland Plaintiff and the Maryland Class;

h.  what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

i.  the nature and extent of Maryland Class-wide injury and the appropriate measure of damages for the Maryland Class.

239.  The claims of the Maryland Plaintiff are typical of the claims of the Maryland Class he seeks to represent.

240.  Plaintiff and the Maryland Class members work, or have worked, for Cision as Sales Representatives and have been subjected to its policy and pattern or practice of failing to pay compensation for all hours worked, including proper overtime wages for all hours worked in

excess of 40 hours per workweek and straight time hours worked under 40 in a workweek.

241.   The Maryland Plaintiff and the Maryland Class members enjoy the same statutory rights under the Maryland Wage Laws, including the right to be paid for all hours worked, including proper overtime wages for all overtime hours worked and straight time hours worked under 40 in a workweek.  The Maryland Plaintiff and the Maryland Class members have all sustained similar types of damages as a result of Cision's failure to comply with the Maryland Wage Laws.  The Maryland Plaintiff and the Maryland Class members have all been injured in that Cision has undercompensated them due to Cision's common policies, practices, and patterns of conduct.

242.   The Maryland Plaintiff will fairly and adequately represent and protect the interests of the members of the Maryland Class.  The Maryland Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the Maryland Class to represent its interests fairly and adequately.  The Maryland Plaintiff recognizes that, as a class representative, he must represent and consider the interests of the Maryland Class just as he would represent and consider his own interests.  The Maryland Plaintiff understands that, in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Maryland Class.  The Maryland Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Maryland Class.  The Maryland Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel, and testify, if required, at a deposition and/or trial.

243.   The Maryland Plaintiff has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between the Maryland Plaintiff

and the Maryland Class members.

244.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Cision damaged the members of the Maryland Class and the Maryland Class is entitled to recovery as a result of Cision's common and uniform policies, practices, and procedures.  Although the damages individual members of the Maryland Class have suffered are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Cision's practices.

245.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

246.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

247.    Cision and/or Falcon.io engaged in a widespread pattern and practice of violating the FLSA, as described in this Collective and Class Action Complaint.

248.    Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

249.    At all relevant times, Plaintiffs and other similarly situated current and former Sales Representatives were engaged in commerce and/or the production of goods for commerce

within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

250.   The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Cision.

251.    The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Falcon.io.

252.   Defendant Cision Ltd. is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

253.   Defendant Cision US Inc. is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

254.   Falcon.io is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

255.   At all relevant times, Plaintiffs and other similarly situated current and former Sales Representatives are, or were, employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

256.   Cision and/or Falcon.io failed to pay Plaintiffs and other similarly situated current and former Sales Representatives the overtime wages to which they were entitled under the FLSA.

257.   Cision and/or Falcon.io's violations of the FLSA, as described in this Collective and Class Action Complaint, have been willful and intentional.

258.   Cision and/or Falcon.io failed to make a good-faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former Sales Representatives.

259.   Because Cision and/or Falcon.io's violations of the FLSA have been willful, a

three-year statute of limitations applies to this Cause of Action, pursuant to 29 U.S.C. § 255.

260.     As a result of Cision and/or Falcon.io's willful violations of the FLSA, Plaintiffs and all other current and former similarly situated Sales Representatives have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq.*

261.     As a result of the unlawful acts of Cision and/or Falcon.io, Plaintiffs and other similarly situated current and former Sales Representatives have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Wage Laws – Unpaid Overtime
### NYLL §§ 190, *et seq.*; 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2
### (Brought by the New York Plaintiff Individually and on Behalf of the New York Class)

262.     The New York Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

263.     Cision and/or Falcon.io employed the New York Plaintiff and members of the New York Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and the New York Class for all of their time worked in excess of 40 hours per week, at a proper rate of at least one and one-half times their regular hourly rate, in violation of the requirements of the New York Wage Laws, including the value of incentive pay.

264.     By the course of conduct set forth above, Cision and/or Falcon.io have violated NYLL §§ 190 *et seq.*, id. §§ 650 *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

265.     Cision and/or Falcon.io failed to keep, make, preserve, maintain, and/or furnish accurate records of time worked by the New York Plaintiff and members of the New York Class.

266.     Cision and/or Falcon.io have a policy and practice of refusing to pay overtime

compensation for all hours worked to the New York Plaintiff and members of the New York Class.

267.    Cision and/or Falcon.io's failure to pay proper overtime compensation to the New York Plaintiff and members of the New York Class was willful within the meaning of NYLL §§ 198, 663.

268.    As a consequence of the willful underpayment of wages, alleged above, the New York Plaintiff and the New York Class have incurred damages and Cision and/or Falcon.io are indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Cision and/or Falcon.io's unlawful and willful conduct, as the Court deems just and proper.

269.    The New York Plaintiff and the New York Class members seek recovery of liquidated damages, interest, attorneys' fees, and costs, and other damages to be paid by Cision as provided by the New York Wage Laws.

### THIRD CAUSE OF ACTION
**New York Wage Laws – Unpaid Straight Time**
**NYLL §§ 190,** *et seq.***; 650,** *et seq.***; 12 N.Y.C.R.R. Part 142-2.2**
**(Brought by the New York Plaintiff Individually and on Behalf of the New York Class)**

270.    The New York Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

271.    Cision and/or Falcon.io failed to compensate the New York Plaintiff and members of the New York Class for all wages to which they were entitled by failing to compensate them for all hours worked.

272.    By the course of conduct set forth above, Cision and/or Falcon.io have violated NYLL §§ 190 *et seq.*, id. §§ 650 *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

273.    Cision and/or Falcon's failure to pay the New York Plaintiff and members of the

New York Class the wages to which they were entitled for all hours worked violate NYLL § 663(1).

274.     Cision and/or Falcon.io's failure to pay all wages to which the New York Plaintiff and members of the New York Class were entitled was willful within the meaning of NYLL §§ 198, 663.

275.     As a consequence of the willful underpayment of wages, alleged above, the New York Plaintiff and the New York Class have incurred damages and Cision and/or Falcon.io are indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Cision and/or Falcon.io's unlawful and willful conduct, as the Court deems just and proper.

276.     The New York Plaintiff and the New York Class members seek recovery of liquidated damages, interest, attorneys' fees, and costs, and other damages to be paid by Cision as provided by the New York Wage Laws.

## FOURTH CAUSE OF ACTION
**NYLL, Article 6, §§ 190 *et seq.* – Failure to Provide Accurate Wage Statements**
**(Brought by the New York Plaintiff Individually and on Behalf of the New York Class)**

277.     The New York Plaintiff realleges and incorporates by reference herein all allegations in all preceding paragraphs.

278.     On information and belief, Cision and/or Falcon.io failed to supply the New York Plaintiff and members of the New York Class with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular hourly rate or rates of pay; the number of hours worked, including regular hours and

overtime hours worked if applicable; deductions; and net wages.

279.    Due to Cision and/or Falcon.io's violations of NYLL § 195(3), for the period after February 27, 2015, the New York Plaintiff and members of the New York Class are each entitled to damages of $250 for each work day that Cision and/or Falcon.io failed to provide accurate wage statements, or a total of $5,000 per class member, as provided for by NYLL § 198(1-d), reasonable attorneys' fees, costs, and injunctive and declaratory relief.  For the period prior to February 27, 2015, members of the New York Class are each entitled to $100 per workweek for each workweek that Cision and/or Falcon.io failed to provide accurate wage statements, up to a maximum of $2,500 per class member, plus reasonable attorneys' fees, costs, and other injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
### NYLL, Article 6, §§ 190 *et seq*. – Failure to Provide Compliant Wage Notice
### (Brought by the New York Plaintiff Individually and on Behalf of the New York Class)

280.    The New York Plaintiff realleges and incorporates by reference herein all allegations in all preceding paragraphs.

281.    On information and belief, to the best of the New York Plaintiff's recollection, Cision and/or Falcon.io failed to supply the New York Plaintiff and members of the New York Class proper notice as required by NYLL § 195(1) and (2), in English or in the language identified by Class members as their primary language, containing New York Class members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the

48

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

282.    Due to Cision and/or Falcon.io's violations of NYLL § 195, for the period after February 27, 2015, the New York Plaintiff and members of the New York Class are each entitled to damages of $50 for each work day that Cision and/or Falcon.io failed to provide a wage notice, or a total of $5,000 per class member, as provided for by NYLL § 198(1-b), reasonable attorneys' fees, costs, and injunctive and declaratory relief.  For the period before February 27, 2015, members of the New York Class are each entitled to damages of $50 per workweek for each workweek that Cision and/or Falcon.io failed to provide a statutorily required wage notice, up to a maximum of $2,500 per class member, plus reasonable attorneys' fees, costs, and other injunctive and declaratory relief.

### SIXTH CAUSE OF ACTION
**Illinois Wage Laws – Unpaid Overtime Wages**
**(Brought by the Illinois Plaintiff Individually and on Behalf of the Illinois Class)**

283.    The Illinois Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

284.    At all times relevant, the Illinois Plaintiff and the members of the Illinois Class have been employees within the meaning of 820 ILCS 105/3(d) and Defendants were employers within the meaning of 820 ILCS 105/3(c).

285.    The Illinois Plaintiff and the members of the Illinois Class are covered by the Illinois Wage Laws, 820 ILCS 105/1 et seq., and their implementing regulations.

286.    Defendants employed the Illinois Plaintiff and the members of the Illinois Class as employers and/or joint employers.

287.    Cision failed to pay the Illinois Plaintiff and the members of the Illinois Class

wages to which they are entitled under the Illinois Wage Laws.

288.    Cision failed to pay all compensation it agreed to pay the Illinois Plaintiff and members of the Illinois Class, including compensation for PTO, compensation for company paid holidays, and compensation for all hours worked under 40 in a week.

289.    In addition, Cision failed to pay the Illinois Plaintiff and the members of the Illinois Class overtime at a proper wage rate of one and one-half times their regular rate of pay for all hours worked over 40 each week, including the value of incentive pay.

290.    Cision failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Illinois Plaintiff and the Illinois Class members.

291.    By the course of conduct set forth above, Cision has violated 820 ILCS 105/4a and 820 ILCS 105/8.

292.    Due to Cision's intentional and willful violations of the Illinois Wage Laws, the Illinois Plaintiff and the members of the Illinois Class are entitled to recover from Cision unpaid wages, treble damages, reasonable attorneys' fees and costs of the action, five-percent interest per month in accordance with 820 ILCS 105/12(a), pre-judgment interest of five percent per annum pursuant 815 Ill. Comp. Stat. Ann. 205/2, and such other relief as provided by law.

## SEVENTH CAUSE OF ACTION
### Illinois Wage Laws –Straight Time Wages
### (Brought by the Illinois Plaintiff Individually and on Behalf of the Illinois Class)

293.    The Illinois Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

294.    Cision agreed to pay the Illinois Plaintiff and members of the Illinois Class the straight time rate for all PTO hours, company paid holidays, and/or any form of paid leave. Cision agreed to pay the Illinois Plaintiff and members of the Illinois Class additional

compensation at a straight time rate for hours worked under 40 in a week, during weeks in which the Illinois Plaintiff and members of the Illinois Class were paid PTO hours and/or any form of paid leave, and to pay the Illinois Plaintiff and members of the Illinois Class compensation at their straight time rate for hours worked on a company paid holiday.

295.    Cision failed to pay all compensation it agreed to pay the Illinois Plaintiff and members of the Illinois Class, including compensation for all straight hours worked during workweeks in which PTO and/or any form of paid leave was recorded, and compensation for work performed on company paid holidays.

296.    Cision failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Illinois Plaintiff and the Illinois Class members.

297.    By the course of conduct set forth above, Cision has violated 820 ILCS 10/3, 820 ILCS 105/4 and 820 ILCS 105/8.

298.    Due to Cision's intentional and willful violations of the Illinois Wage Laws, the Illinois Plaintiff and the members of the Illinois Class are entitled to recover from Cision unpaid wages, treble damages, reasonable attorneys' fees and costs of the action, five-percent interest per month in accordance with 820 ILCS 105/12(a), pre-judgment interest of five percent per annum pursuant 815 Ill. Comp. Stat. Ann. 205/2, and such other relief as provided by law.

## EIGHTH CAUSE OF ACTION
### Maryland Wage & Hour Law – Unpaid Overtime Wages
### (Brought by the Maryland Plaintiff Individually and on Behalf of the Maryland Class)

299.    The Maryland Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

300.    At all times relevant, the Maryland Plaintiff and the members of the Maryland Class have been employees and Defendants were employers within the meaning of the MWHL.

301.     The Maryland Plaintiff and the members of the Maryland Class are covered by the MWHL.

302.     Defendants employed the Maryland Plaintiff and the members of the Maryland Class as employers and/or joint employers.

303.     Cision failed to pay the Maryland Plaintiff and the members of the Maryland Class wages to which they are entitled under the MWHL, in violation of Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a), and 3-420.  Cision failed to pay the Maryland Plaintiff and the members of the Maryland Class for overtime at a proper wage rate of one and one-half times their regular rate of pay for all hours worked over 40 each week, including the value of incentive pay.

304.     Cision failed to maintain keep true and accurate timekeeping and payroll records, showing, inter alia, the amount paid to each employee per pay period and the hours that each employee works each day and workweek, as required by the MWHL, Md. Code Ann., Lab. & Empl. § 3-424.

305.     Cision did not act in good faith and with a reasonable belief that the wages paid to the Maryland Plaintiff and Members of the Maryland Class were not less than the wages required under the MWHL.

306.     Cision is liable to the Maryland Plaintiff and members of the Maryland Class pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

**NINTH CAUSE OF ACTION**
**Maryland Wage Payment & Collection Law – Timely Payment of Wages**
**(Brought by the Maryland Plaintiff Individually and on Behalf of the Maryland Class)**

307.     The Maryland Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

308.     Cision failed and/or refused to timely pay the Maryland Plaintiff and Members of the Maryland Class all wages due, including compensation for all straight hours worked during workweeks in which PTO and/or any form of paid leave was recorded, and compensation for work performed on company paid holidays and overtime wages, on their regular paydays in violation of the MWPCL, Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a).

309.     Cision failed and/or refused to pay the Maryland Plaintiff and Members of the Maryland Class all wages due for work performed prior to the termination of their employment, on or before the day they would have been paid had their employment not terminated, as required by Md. Code Ann., Lab. & Empl. § 3-505(a).

310.     Cision's unlawful failure or refusal to timely pay the Maryland Plaintiff and Members of the Maryland Class all their earned wages was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of their claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute.

311.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, the Maryland Plaintiff and Members of the Maryland Class seek their unpaid wages, an additional award of double damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated current and former Sales Representatives, pray for the following relief:

A.     That, at the earliest possible time, Plaintiffs be allowed to give notice of this

collective action to the FLSA Collective members.  Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B.      Unpaid straight time pay, unpaid overtime pay, liquidated damages, treble damages, penalties, statutory damages, and other damages owed pursuant to the FLSA, New York Wage laws, Illinois Wage Laws, and/or Maryland Wage Laws;

C.      Pre-judgment interest and post-judgment interest as provided by law;

D.      Appropriate equitable and injunctive relief to remedy violations, including an order enjoining Cision and/or Falcon.io from continuing their unlawful practices;

E.      Certification of the New York Class, the Illinois Class, and the Maryland Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.      Designation of the New York Plaintiff as Class Representative for the New York Class, the Illinois Plaintiff as Class Representative for the Illinois Class, and the Maryland Plaintiff as Class Representative for the Maryland Class;

G.      Designation of Plaintiffs' counsel of record as Class Counsel;

H.      A reasonable service award for Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other Sales Representatives, and the risks they have undertaken in doing so;

I.      Attorneys' fees and costs of the action; and

J.      Such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  December 1, 2021
New York, New York

Respectfully submitted,

*/s/ Melissa Stewart*

**OUTTEN & GOLDEN LLP**
Melissa L. Stewart
Eliana J. Theodorou
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060

Daniel Stromberg
Hannah Cole-Chu*
601 Massachusetts Avenue NW
Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4010

*Attorneys for Plaintiffs, the Putative
Collective, and the Putative Classes*

*Admitted *pro hac vice*