## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANATOLIY MIKITYUK, MITCH TALLUNGAN, and WADE HONEY, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   -against-<br><br>CISION US INC., CISION LTD., and FALCON SOCIAL INC., and FALCON.IO US, INC.,<br><br>     Defendants. | Civ. No.: 21-cv-510 (LJL) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
## <u>COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS'</u>
## <u>FEES AND COSTS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

    A.    Factual Allegations ...................................................................................... 2

    B.    Overview of Investigation, Litigation, and Settlement Negotiations .................... 3

        1.    Presuit Investigation...................................................................... 3

        2.    Presuit Discussions ....................................................................... 3

        3.    Potential Rule 12(b)(6) Motion and Section 216(b) Motion ..................... 3

        4.    The Court's 216(b) Order and Additional Briefing Regarding Notice....... 4

        5.    The Notice Period and Additional Briefing........................................ 5

        6.    Plaintiffs' Motion to File a Third Amended Complaint ......................... 6

        7.    Cision's Requests for Discovery from Plaintiffs .................................. 7

        8.    Plaintiffs' Requests for Discovery from Defendants .............................. 8

        9.    Settlement Discussions ................................................................. 10

II.   Summary of the Settlement Terms .............................................................. 11

    A.    The Settlement Fund and Eligible Employees.......................................... 11

    B.    Notice and Distribution Process........................................................... 12

    C.    Allocation Formula ......................................................................... 13

    D.    Releases....................................................................................... 14

    E.    Service Awards .............................................................................. 14

    F.    Settlement Administration ................................................................. 14

    G.    Attorneys' Fees and Costs ................................................................. 15

III.  Argument ............................................................................................... 15

    A.    A One-Step Approval Process Is Standard for FLSA Settlements. ....................... 15

    B.    The Settlement Is Fair and Should Be Approved. .................................... 16

    C.    The Service Awards Should Be Approved as Fair and Reasonable. ................... 21

IV.   The Court Should Approve Plaintiffs' Attorneys' Fees and Costs as
Fair and Reasonable .................................................................................. 28

    A.    The Court Should Award Attorneys' Fees as a Percentage of the Fund ............ 28

    B.    Analysis of the Market for Legal Services Supports Plaintiffs' Request ............ 30

    C.    Plaintiffs' Requested Fee Award Is Reasonable.................................... 31

      D.      Plaintiffs' Counsel's Actual Lodestar Far Exceeds Their Request......................... 32

      E.      Plaintiffs Are Entitled to Reimbursement of Costs................................................ 35

V.      REDISTRIBUTION TO PROPOSED *CY PRES* DESIGNEE MFJ LEGAL SERVICES IS APPROPRIATE. ........................................................................................................ 37

CONCLUSION..................................................................................................................... 38

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                **Page(s)**

*Aguilar v. N & A Prods.*,
    No. 19 Civ. 1703, 2019 U.S. Dist. LEXIS 185030 (S.D.N.Y. Oct. 24, 2019) .........................17

*Aguilar* v. *N & A Prods.*,
    No. 19 Civ. 1703, 2019 U.S. Dist. LEXIS 222761 (S.D.N.Y. Dec. 30, 2019).........................17

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. (E.D.N.Y. 2010) ...........................................................................................31

*Alli v. Bos. Mkt. Corp.*,
    No. 10 Civ. 4, 2011 U.S. Dist. LEXIS 143303 (D. Conn. Dec. 8, 2011) ...............................20

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 (S.D.N.Y. Apr. 2, 2013) ...........................26

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany*
    *Cty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008).............................................................................................34

*Aros v. United Rentals, Inc.*,
    No. 10 Civ. 73, 2012 U.S. Dist. LEXIS 104429 (D. Conn. July 26, 2012)...........................21

*Barbour v. City of White Plains*,
    788 F. Supp. 2d 216 (S.D.N.Y. 2011).............................................................................33

*Beckert v. Rubinov*,
    No. 15 Civ. 1951, 2015 U.S. Dist. LEXIS 167052 (S.D.N.Y. Dec. 14, 2015).........................18

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................16, 31, 32

*Beebe v. V&J Nat'l Enters., LLC*,
    No. 17 Civ. 6075, 2020 U.S. Dist. LEXIS 96059 (W.D.N.Y. June 1, 2020) .........................37

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989).........................................................................................................34

*Blum v. Merrill Lynch & Co.*,
    Nos. 15 Civ. 1636, 15 Civ. 2960, 2016 U.S. Dist. LEXIS 197385 (S.D.N.Y.
    May 4, 2016).................................................................................................................32

*Blum v. Stenson*,
    465 U.S. 886 (1984).......................................................................................................34

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)........................................................................................28

*Bozak v. FedEx Ground Package Sys., Inc*.,
    No. 11 Civ. 738, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014)....................15, 20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................30

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
    No. 15 Civ. 10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016)................15, 31

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ..............................................................................19

*Caprile v. Harabel Inc.*,
    No. 14 Civ. 6386, 2015 U.S. Dist. LEXIS 127332 (S.D.N.Y. Sep. 16, 2015) .......................31

*Capsolas v. Pasta Res., Inc.*,
    No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ..........................16

*Castillo v. Noodles & Co.*,
    No. 16 Civ. 3036, 2016 U.S. Dist. LEXIS 178977 (N.D. Ill. Dec. 23, 2016) ........................30

*Ceka v. PBM/CMSI Inc.*,
    No. 12 Civ. 1711, 2014 U.S. Dist. LEXIS 168169 (S.D.N.Y. Dec. 2, 2014)..............25, 26, 27

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ......................................................................31

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015)...............................................................................16, 17

*Clem v. KeyBank, N.A.*,
    No. 13 Civ. 789, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014)..........................32

*Cohan v. Columbia Sussex Mgmt., LLC*,
    No. 12. Civ. 3203, 2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018)....................31

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................28

*Contreras v. Rosann Landscape Corp.*,
    No. 17 Civ. 6453, 2021 U.S. Dist. LEXIS 54115 (S.D.N.Y. Mar. 19, 2021)........................26

*Deas v. Alba Carting & Demolition Inc.*,
    No. 17 Civ. 3947, 2021 U.S. Dist. LEXIS 38803 (S.D.N.Y. Mar. 2, 2021) ........................26

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015)......................24, 25

*DeSilva v. N. Shore-Long Island Jewish Health System*,
    27 F. Supp. 3d 313 (E.D.N.Y. 2014) ....................................................................................19

*Diaz v. E. Locating Serv.*,
    No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) ................35, 36

*Felix v. Breakroom Burgers & Tacos*,
    No. 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050 (S.D.N.Y. Mar. 8, 2016) ...........................17

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................................15

*Florin v. Nationsbank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ..................................................................................................29

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).....................................................................................22, 25

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013)................................................................................................................16

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)....................................................................................................33

*Guippone v. BH S & B Holdings, LLC*,
    No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) .......................22

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1993) (Easterbrook, J.)....................................................................35

*Henry v. Little Mint, Inc.*,
    No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014).........................20

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)..............................................................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)...................................................................................35

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ................................................................................................34

*Kahlil v. Original Old Homestead Rest., Inc.*,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009)...................................................................................33

*Kassman v. KPMG LLP*,
    No. 11 Civ. 3743, 2021 U.S. Dist. LEXIS 71243 (S.D.N.Y. Apr. 12, 2021) ........................15

*Kirchoff v. Flynn*,
    786 F. 2d 320 (7th Cir. 1986) .................................................................................................30

*Knox v. Jones Grp.*,
    No. 15 Civ. 1738, 2017 U.S. Dist. LEXIS 146049 (S.D. Ind. Aug. 31, 2017)......................15

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17 Civ. 10219, 2017 U.S. Dist. LEXIS 87928 (D. Mass. June 8, 2017) .........................15

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ........................30

*Louzau v. FedEx Package Sys.*,
    No. 05 Civ. 538, 2017 U.S. Dist. LEXIS 64930 (N.D. Ind. Apr. 28, 2017)...........................38

*Lovaglio v. W & E Hosp. Inc.*,
    No. 10 Civ. 7351, 2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 5, 2012) ...........................27

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ..............................................................................................16

*M.H.v. N.Y.C. Dep't of Educ.*,
    No. 20 Civ. 1923, 2021 U.S. Dist. LEXIS 190419 (S.D.N.Y. Oct. 1, 2021) .........................36

*Martignago v. Merrill Lynch & Co.*,
    No. 11 Civ. 3923, 2013 U.S. Dist. LEXIS 205935 (S.D.N.Y. Oct. 3, 2013) .........................18

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ................................................................................................16

*Medley v. Am. Cancer Soc'y*,
    No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010) .........................15

*Millea v. Metro-North R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)....................................................................................................33

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012).................................................................17, 18, 20, 37

*Oleniak v. Time Warner Cable*,
    No. 12 Civ. 3971, 2013 U.S. Dist. LEXIS 207945 (S.D.N.Y. Dec. 17, 2013)......................18

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ....................22, 27

*In re Penthouse Exec. Club Comp. Litig.*,
No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864 (S.D.N.Y. Jan. 14, 2014)............................35

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)...................................................................................................................32

*Puglisi v. TD Bank, N.A.*,
No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) .........................27

*Quow v. Accurate Mech. Inc.*,
No. 15 Civ. 9852, 2018 U.S. Dist. LEXIS 114524 (S.D.N.Y. July 10, 2018).......................17

*Reyes v. Altamarea Grp., LLC*,
No. 10 Civ. 6451, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ...........16, 22, 27

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3rd Cir. 2005) ...................................................................................................28

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) .....................................................................................22, 23

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008).......................................................................................35

*Santos v. Yellowstone Props.*,
15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994 (S.D.N.Y. May 10, 2016).................................31

*Scott v. Chipotle Mexican Grill, Inc.*,
954 F.3d 502 (2d Cir. 2020)......................................................................................................19

*Sewell v. Bovis Lend Lease LMB, Inc.*,
No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ................. *passim*

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011).......................................................................................................22

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) .....................................................................................................29

*Solis v. Orthonet LLC*,
No. 19 Civ. 4678, 2021 U.S. Dist. LEXIS 122512 (S.D.N.Y. June 30, 2021).......................31

*Stock v. Xerox Corp.*,
516 F. Supp. 3d 308 (W.D.N.Y. 2021) .....................................................................................15

*Sukhnandan v. Royal Health Care of Long Island, LLC*,
No. 12 Civ. 4216, 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014).............26, 27, 28

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999).................................................................................30

*Thind v. Healthfirst Mgmt. Servs., LLC*,
    No. 14 Civ. 9539, 2016 U.S. Dist. LEXIS 170503 (S.D.N.Y. Dec. 9, 2016)........................19

*In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig*,
    56 F.3d 295 (1st Cir. 1995)................................................................................................29

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890 (S.D.N.Y. Aug. 6, 2012).......................33

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012).......................25

*In re Veeco Instruments Sec. Litig.*,
    No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007)......................37

*Velez v. Majik Cleaning Serv.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007).......................21

*Wal-Mart Stores v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................28, 29

*Weston v. TechSol, LLC*,
    No. 17 Civ. 141, 2018 U.S. Dist. LEXIS 166574 (E.D.N.Y. Sept. 26, 2018).................15, 20

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011).......................27

*Zivali v. AT & T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)................................................................................19

*Zorrilla v. Carlson Rests., Inc.*,
    No. 14 Civ. 2740, 2018 U.S. Dist. LEXIS 60772 (S.D.N.Y. Apr. 9, 2018).........................26

*In re Zyprexa Prods. Liab. Litig.*,
    594 F.3d 113 (2d Cir. 2010)..............................................................................................28

**Statutes**

29 U.S.C. § 216(b) ...................................................................................................3, 4, 28

Fair Labor Standards Act .................................................................................... *passim*

**Other Authorities**

Kathleen Dailey, *Cision Facing Sales Employee Class Suit for Unpaid Overtime*,
    Bloomberg Law (Jan. 21, 2021, 12:49 PM),
    https://news.bloomberglaw.com/daily-labor-report/cision-facing-sales-
    employee-class-suit-for-unpaid-overtime. ..............................................................23

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive
    Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
    10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ..............................................................21

Sean Czarnecki, *Public Relations Tech Giant Cision Faces a Collective Action
    Lawsuit over Overtime Pay,* Business Insider (May 17, 2021, 11:01 AM),
    https://www.businessinsider.com/cision-faces-collective-action-lawsuit-
    alleging-unpaid-overtime-2021-5 ..............................................................23

Workplace Justice, Mobilization for Justice,
    https://mobilizationforjustice.org/projects/workplace-justice-project/ (last
    visited May 31, 2022) ..............................................................38

## INTRODUCTION

Plaintiffs Anatoliy Mikityuk, Mitch Tallungan, and Wade Honey ("Plaintiffs") and Defendants Cision US Inc., Cision Ltd., Falcon Social Inc., and Falcon.io US, Inc. (collectively, "Defendants" or "Cision," and together with Plaintiffs, the "Parties"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit for the thirty-eight Plaintiffs and Opt-in Plaintiffs for $325,000. The settlement, which followed a thorough investigation and a year and a half of contested litigation including formal discovery and significant motion practice, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations, and provides good value to the workers whom it will benefit.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the $325,000 settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Melissa L. Stewart ("Stewart Decl.")[1]; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving Service Awards to three Named Plaintiffs, one Opt-in Deponent, and four Opt-in Declarants; (4) approving Plaintiffs' request for one-third of the settlement for attorneys' fees plus reimbursement of costs and expenses; (5) approving the Settlement Administrator's fees and costs; (6) incorporating the terms of the Settlement Agreement; (7) dismissing this case with prejudice, with leave to reinstate if necessary to enforce the terms of the Settlement; and (8) retaining jurisdiction to enforce the Settlement Agreement.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Stewart Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement.

# I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

## A.    Factual Allegations

Cision is a public relations software and services provider.  *See* ECF No. 174 (Third Amended Complaint ("TAC")) ¶ 2; ECF No. 48 (Opinion and Order Granting § 216(b) Notice ("§ 216(b) Order")), at 1.  Cision employs Sales Representatives[2] to sell its software products and services.  TAC ¶ 8.  Plaintiffs allege that Cision violated the FLSA by failing to pay them proper overtime wages for all hours worked above 40 in a workweek.  *See* TAC ¶ 246-61.  Plaintiff Mikityuk alleges parallel and derivative claims, and claims for unpaid straight time, on behalf of New York Sales Representatives under the New York Labor Law ("NYLL").  *See id.* ¶¶ 262-82.  Plaintiff Tallungan alleges parallel claims, and claims for unpaid straight time, on behalf of Illinois Sales Representatives under the Illinois Wage Payment and Collection Act.  *See id.* ¶¶ 283-98.  Plaintiff Honey alleges parallel claims, and claims for unpaid straight time, on behalf of Maryland Sales Representatives under the Maryland Wage and Hour Law, *id.* ¶¶ 299-306, and the Maryland Wage Payment and Collection Law, *id.* ¶¶ 307-11.

Cision denies these allegations.  *See generally* ECF No. 181 (Answer to TAC).

---

[2]    "Sales Representatives" includes the following job titles: Account Executive, Account Executive (EX), Account Executive (SAAS), Account Executive – Falcon.io, Account Executive (NE), Account Executive II (SAAS), Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative, Sales Associate, Sales Development Representative, Sales Development Representative – Falcon.io, Sales Development Representative – TrendKite, Sales Development Representative TrendKite (NE), Sales Development Representative II (NE), Senior Account Executive 1 (NE), Senior Account Executive 2 (NE), Senior Sales Development Representative, Sales Executive, Midmarket Sales Executive, Sales Representative, and Senior Sales Representative.  Ex A (Settlement Agreement) ¶ 1.8.

**B.    Overview of Investigation, Litigation, and Settlement Negotiations**

**1.    Presuit Investigation**

Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple Sales Representatives, including Plaintiffs, Opt-in Deponent, Opt-in Declarants, and other former employees.  Stewart Decl. ¶ 14.

**2.    Presuit Discussions**

Prior to filing suit, Plaintiffs' Counsel contacted Defendants to invite them to explore pre-litigation settlement discussions regarding the claims.  *Id.* ¶ 15.  Defendants agreed to enter into a tolling agreement and counsel for the Parties met-and-conferred by telephone several times about the possibility of settlement discussions, but the Parties were not able to agree to pursue information exchange or mediation to facilitate a class-wide settlement dialogue.  *Id.*  ¶ 16.

**3.    Potential Rule 12(b)(6) Motion and Section 216(b) Motion**

Plaintiffs[3] filed a class and collective action on behalf of themselves and other Sales Representatives.  ECF No. 1.  The litigation was hotly contested from the beginning.  Stewart Decl. ¶ 17.  Defendant Cision US Inc. stated by letter that it intended to move to dismiss the complaint (Defendant Cision Ltd. had not accepted service).  ECF No. 10; Stewart Decl. ¶ 18.  Through a series of meet-and-confers, the Parties discussed the allegations, Plaintiffs revised the complaint to address the purported deficiencies Defendants' Counsel raised, and Defendants consented to the filing of the First Amended Complaint.  Stewart Decl. ¶ 19; ECF No. 16; ECF No. 19; ECF No. 20 (First Amended Complaint).

---

[3]    The original Complaint in this matter was filed by Plaintiffs Mikityuk, Tallungan, and former named plaintiff and Opt-in Deponent Michael Esquibel.  ECF No. 1.  Plaintiff Honey's consent to join, and the consent-to-join forms of the Opt-in Declarants, were filed contemporaneously.  *See* ECF No. 4.

In parallel, Plaintiffs moved for Court-authorized notice of the lawsuit to Sales
Representatives nationwide pursuant to Section 216(b).  ECF No. 12; Stewart Decl. ¶ 20. The
Parties met-and-conferred to attempt to narrow the scope of their dispute regarding the issuance
of notice.  *Id.* ¶ 21.  Defendants ultimately opposed various aspects of the 216(b) Motion,
including: (1) nationwide notice, arguing that notice should be limited to Sales Representatives
in New York, Illinois, and Maryland, where Plaintiffs worked; (2) notice to Sales
Representatives in job titles not specifically enumerated in the complaint; (3) certain aspects of
the content and format of Plaintiffs' proposed notice, and (4) dissemination of the notice by
means other than U.S. Mail, including email.  ECF No. 38.  Following Plaintiffs' reply, ECF No.
43, the Court invited the Parties to submit supplemental briefing on an additional topic, raised by
the Court *sua sponte*: Plaintiffs' proposal to receive and file consent to join forms on behalf of
putative collective members.  ECF No. 45; *see* ECF No. 43; ECF Nos. 46-47.

### 4.    The Court's 216(b) Order and Additional Briefing Regarding Notice

The Court granted Plaintiffs' request to send notice to the putative collective nationwide
and authorized notice by email over Cision's objections.  ECF No. 48.  The Court requested
certain modifications to the notice and required putative collective members to send their consent
forms to the Clerk of Court.  ECF No. 48, at 20-22.  The Parties also disputed various aspects of
Plaintiffs' proposed email notice.  *See* ECF Nos. 57, 62, 65, 70, 72.  The Court approved
Plaintiffs' proposed email notice, ECF No. 74, including Plaintiffs' request to include a
hyperlink to a fillable PDF for putative collective members to print and mail to the Clerk to
facilitate the participation of opt-ins who might only receive notice by email (if mail was
returned as undeliverable), *see* ECF No. 65, which Defendants' opposed, *see* ECF No. 70.  The

4

Court also approved Plaintiffs' request to retain a notice administrator in the event it proved cost effective, ECF No. 74, which Defendants had opposed, *see* ECF No. 70.

### 5. The Notice Period and Additional Briefing

Notice to the collective issued on July 6, 2021. Stewart Decl. ¶ 22. Additional disputes arose during the notice period. *Id.* ¶ 23. The Parties disagreed about whether the Court's order permitted a remailing and corresponding extension of the notice period to collective members whose notices were returned as undeliverable by U.S. mail or email, or only to collective members whose notices were returned as undeliverable by both methods. *Id.* ¶ 24; *see* ECF Nos. 115; 119. Plaintiffs also raised a dispute about Defendants' exclusion of Sales Representatives who sold Falcon.io-branded products, whom Plaintiffs alleged were employed by Cision. ECF No. 117;[4] ECF No. 1, ¶¶ 4-5. The Court held that Plaintiffs could send a remailing only to putative collective members whose notices had been returned as undeliverable by both U.S. Mail and email, though the Court recognized that "the revised notice approved by the Court admittedly is somewhat ambiguous." ECF No. 127, at 3. The Court also denied Plaintiffs' motion to compel the production of collective list information for New York Sales Representatives who sold Falcon.io-branded products. ECF No. 127, at 6-7. Plaintiffs raised with the Court issues regarding the Clerk of Court's processing of consent to join forms, including the filing of personal identifying information on the docket and the Clerk's office's misplacement of envelopes showing the postmark date of a consent form. ECF No. 90. Plaintiffs' Counsel communicated with the ECF Helpdesk and the Clerk's Office to resolve these issues. Stewart Decl. ¶ 25. Plaintiffs' Counsel also interviewed a collective member and

---

[4]     Plaintiffs also moved to compel the production of discovery about Cision's relationships with its affiliates. *See* ECF No. 117.

conferred with Defendants regarding a dispute Defendants raised over whether a consent to join was timely filed, because the envelope was not postmarked due to a postal error. *Id.* ¶ 26.

The notice period closed for the vast majority of the putative collective on September 4, 2021. *Id.* ¶ 27. A total of forty-one individuals submitted consent to join forms, counting Plaintiffs and the original Opt-in Plaintiffs. *See* ECF Nos. 1, 4, 84, 93-101, 103-05, 107-09, 112-14, 116-, 122-25, 131-33, 139-41. During the course of the litigation, three Opt-in Plaintiffs subsequently withdrew their consent forms, *see* ECF Nos. 160, 182, 183, leaving a total of thirty-eight individuals.

### 6.    Plaintiffs' Motion to File a Third Amended Complaint[5]

Following the Court's order denying production of contact information for Sales Representatives who sold Falcon.io-branded products and for discovery on Cision's relationships with its affiliates, *see* ECF No. 127, at 6-7, on October 21, 2021, Plaintiffs moved to amend the complaint to bolster their allegations that the existing defendants directly employed these individuals, and to add Falcon.io entities as additional defendants. ECF No. 147. Plaintiffs also added allegations for straight time overtime and regular rate violations. ECF No. 174, ¶¶ 13, 16, 35, 40, 47, 52, 59, 64, 186, 263, 289, 303; *see also* ECF No. 148, at 1 n.1. Defendants opposed amendment of the complaint, ECF No. 161, Plaintiffs replied, ECF No. 169, and the Court granted Plaintiffs' motion. ECF No. 172.

---

[5]    On July 15, 2021, Plaintiffs filed a joint stipulation on behalf of the Parties indicating Defendants' consent to Plaintiffs Mikityuk, Tallungan, and Honey filing a Second Amended Complaint, which substituted Plaintiff Honey as a Named Plaintiff in the place of former named plaintiff and Opt-in Deponent Michael Esquibel. ECF No. 83, ¶ 1. The Parties also stipulated to former Named Plaintiff Michael Esquibel becoming an Opt-in Plaintiff, but not a Named Plaintiff or class representative for the putative Maryland class or representative for the FLSA collective. *Id.* ¶ 2. The Court so-ordered the Stipulation on July 16, 2021, ECF No. 85, and Plaintiffs filed the Second Amended Complaint on July 19, 2021, ECF No. 88.

### 7.    Cision's Requests for Discovery from Plaintiffs

The Parties engaged in extensive formal discovery.[6]  Stewart Decl. ¶ 28.  Defendants served 110 document requests and 9 interrogatories each on Plaintiffs Mikityuk, Tallungan, and Honey, and 85 requests for production of documents and 4 interrogatories on Opt-in Deponent Esquibel.  *Id.* ¶ 29.  Plaintiffs collected and reviewed 34,923 documents and produced 1,363 pages of documents on behalf of these four plaintiffs.  *Id.* ¶ 30.  The Parties also met-and-conferred about several disputes raised by Cision, all of which the Parties were able to resolve without resorting to Court intervention.  *Id.* ¶ 31.

Defendants deposed the three Named Plaintiffs and Opt-in Deponent Plaintiff Esquibel. *Id.* ¶ 32.  Plaintiffs moved to compel the production of documents relating to the Named Plaintiffs prior to their depositions, ECF No. 78, which Defendants opposed because they sought to obtain Plaintiffs' "'unrefreshed' recollection[s.]'"  ECF No. 80, at 3.  The Court ordered Defendants to produce all documents they intended to use during the Plaintiffs' depositions at least 72 hours before the depositions.[7]  ECF No. 134, at 27:2-13, 28:22-23.

The Parties conferred at length over the scope of opt-in discovery and submitted competing proposals to the Court.  Stewart Decl. ¶ 34; ECF No. 163; 164.  The Court granted Defendants' request to serve written discovery on all Opt-in Plaintiffs but denied Defendants' request to depose all Opt-in Plaintiffs, instead limiting Defendants to deposing 15 Opt-in Plaintiffs, in addition to the 4 plaintiff depositions that had already taken place, for a total of 19 plaintiff depositions.  ECF No. 168, at 5-8.

---

[6]    The Parties negotiated an ESI Stipulation, ECF No. 62; ECF No. 73, and protective order, ECF No. 75; ECF. No. 76.

[7]    During this conference, the Court also ordered Former Named Plaintiff and Opt-in Deponent Michael Esquibel to appear for his deposition by September 15.  Due to scheduling conflicts and with the Court's permission, Esquibel was deposed on September 21, 2021. Stewart Decl. ¶ 33; ECF No. 139.

Defendants served three tranches of written discovery requests on Opt-in Plaintiffs, consisting of thirteen interrogatories and ten requests for production of documents, on fifteen Opt-in Plaintiffs.  Stewart Decl. ¶ 35.  By the time the Parties settled, Plaintiffs' Counsel had served discovery responses on behalf of five Opt-in Plaintiffs and collected 226,119 documents, which they were reviewing and preparing for production.  *Id.* ¶ 36.  Plaintiffs' Counsel had prepared discovery responses on behalf of additional Opt-in Plaintiffs for service in early May,[8] and had begun to gather information from the remaining Opt-in Plaintiffs to prepare their discovery responses.  *Id.* ¶ 37.

### 8.    Plaintiffs' Requests for Discovery from Defendants

As in most employment and wage-and-hour cases, Defendants had the vast majority of discovery Plaintiffs required to prove their claims, including personnel data showing collective members' exemption statuses, time records showing hours of work recorded, sources of proxy time data showing hours of work in the absence of accurate time records, policies relating to the recording of time and payment of overtime wages, communications between collective members and their supervisors regarding hours of work, communications among supervisors and management regarding exemption status and collective members' hours of work and time recording practices, collective-wide pay data, job descriptions, and sales goals and sales plans. *Id*. ¶ 40.  These documents and data were necessary for Plaintiffs to prove that they primarily performed non-exempt job duties; that they worked more than forty hours in a workweek; that Defendants suffered or permitted this work; that Defendants did not pay them proper overtime

---

[8]    Plaintiffs' Counsel served discovery responses on behalf of Opt-in Declarants Matthew McTighe and Kane Tabiri on April 4, 2022.  *Id*. ¶ 38.  When the Parties reached their settlement in principle, Plaintiffs' Counsel had prepared and were ready to serve discovery responses, including verified interrogatories, on behalf of Opt-in Declarants Eliyyas Northern and Jordan Gutierrez on May 5, 2022.  *Id.* ¶ 39.

for all hours worked; and the amount of Plaintiffs' damages. *Id.* ¶ 41. Plaintiffs served eighty-six requests for production of documents on Defendants Cision US Inc. and Cision Ltd. and eighty-eight requests for production of documents on the Falcon entities, and eight interrogatories each on all defendants to obtain this and other discovery. *Id.* ¶ 42.

Numerous disputes arose regarding Defendants' production of discovery. The Parties addressed these disputes through letters and email correspondence, and briefed or prepared to brief several issues to the Court, relating to: (1) proxy time data that showed collective members' hours of work, from sources such as swipe card readers and Salesforce (a database used to log sales activity); (2) collective-wide payroll and hours data in a useable spreadsheet format; (3) information about collective members' managers to allow Plaintiffs to identify potential custodians and witnesses; (4) personnel data reflecting collective members' exemption statuses; (5) information about collective members' commission eligibility, sales goals, and key performance indicator metrics (to contextualize the hours Sales Representatives worked and the incentives for working long hours); (5) discovery relevant to Defendants' state-of-mind defenses; and (6) following the filing of the Third Amended Complaint, discovery about Cision US Inc. and Cision Ltd.'s relationship with other affiliated entities. *Id.* ¶ 43. Plaintiffs' Counsel drafted numerous deficiency letters and attempted to meet and confer with Defendants by phone on numerous occasions to attempt to obtain the discovery necessary to prove Plaintiffs' claims. *Id.* ¶ 44. When Plaintiffs raised several disputes with the Court, ECF No. 152, which Cision opposed, ECF No. 155, the Court declined to decide the issues, denied the request without prejudice, and ordered the Parties to continue meeting and conferring to attempt to resolve the disputes. ECF No. 166. Plaintiffs continued to press these issues with Defendants, but progress

was slow; for example, Defendants did not respond to a January 20, 2022 letter raising additional deficiencies about database production until March 24, 2022.  Stewart Decl. ¶ 45.

The Parties also engaged in protracted negotiations regarding ESI custodians, search terms, and search methodology.  *Id.* ¶ 46.  Defendants first produced an initial tranche of email and other ESI relating primarily to the Named Plaintiffs in August 2021.  *Id.* ¶ 47.  On October 28, 2021, after reviewing the initial production, Plaintiffs proposed search terms, custodians, and a search process for collective-wide ESI discovery.[9]  *Id.* ¶ 48.  Cision opposed many of Plaintiffs' proposed search terms and custodians, and the Parties exchanged numerous rounds of correspondence negotiating these parameters.  *Id.* ¶ 50.  On February 3, 2022, more than three months after the Parties began discussing ESI searches, Cision stated for the first time that it intended to use technology-assisted review (TAR) in addition to search terms, and the Parties exchanged another round of detailed letters relating to this new proposal.  *Id.* ¶ 51.

By the time the Parties reached a settlement in principle, in spite of the extensive meet-and-confers, Defendants had produced only 6,248 documents, a far smaller production compared with other cases of similar complexity and size, in Plaintiffs' Counsel's experience.  *Id.* ¶ 52.

### 9.    Settlement Discussions

In October 2021 and again in February 2022, in parallel with discovery, Plaintiffs contacted Defendants about the possibility of exploring settlement discussions before the Parties incurred significant additional expenses related to corporate email discovery, additional written Opt-in Plaintiff discovery, and the taking and defending of Opt-in Plaintiff depositions, Rule

---

[9]    For each proposed custodian, Plaintiffs cited documents produced by Cision demonstrating that the proposed custodian possessed relevant and responsive documents, such as documents with content referencing the proposed custodian or metadata indicating the proposed custodian authored or possessed the document.  *Id.* ¶ 49.

30(b)(6) depositions, and other corporate employee witness depositions. *Id.* ¶ 53. Following Plaintiffs' October 2021 settlement overture, counsel exchanged correspondence about the possibility of discussing settlement, but the discussions that resulted in the Settlement Agreement began in earnest only in February 2022, after Plaintiffs' Counsel reached out again. *Id.* ¶ 54. Plaintiffs' Counsel created a damages model based on pay and time data produced in December 2021 and January 2022, as well as information from Plaintiffs and Opt-in Plaintiffs about their hours worked, and communicated a settlement demand. *Id.* ¶ 55. After extensive negotiations between counsel by phone and letter (in parallel with ongoing discovery), the Parties reached an agreement in principle on May 2, 2022, *id.* ¶ 56, and notified the Court of the Agreement on May 4, 2022. ECF No. 186. The Parties then negotiated the Settlement Agreement and executed on May 31, 2022. Stewart Decl. ¶ 57; Ex. 1 (Settlement Agreement).

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund and Eligible Employees

The Settlement Agreement establishes a Gross Settlement Amount of $325,000 to settle claims of the thirty-eight Plaintiffs and Opt-in Plaintiffs. Ex. 1 (Settlement Agreement) §§ 1.14, 3.1(A). The Gross Settlement Amount covers individual Settlement Amounts to Eligible Settlement Participants, the costs of settlement administration, any Court-approved Service Awards, and any Court-approved attorneys' fees and costs. *See id.* §§ 3.1(A). Employer Payroll taxes will be calculated by the Settlement Administrator and paid separately by Defendants, in addition to the Gross Settlement Fund. Ex. 1 (Settlement Agreement) ¶¶ 1.13; 3.4(C)(iii).

Eligible Settlement Participants are the thirty-eight individuals who filed consent to join forms to join this matter, including the Named Plaintiffs and Opt-in Plaintiffs, who have not withdrawn or been dismissed. *Id.* § 1.12.

B.    **Notice and Distribution Process**

Within seven (7) days of the Court's approval of the Settlement Agreement, Defendants will provide the Settlement Administrator with a list, in electronic form, of Eligible Settlement Participants' names, Last Known Addresses, Last Known Telephone Numbers, Social Security Numbers, and dates of employment in a Covered Job Title. *Id.* §§ 1.28, 2.7. Plaintiffs' Counsel will provide updated contact information received from Eligible Settlement Participants. *Id.* § 2.8.

The Parties negotiated a distribution process with no barriers to participation. The Settlement Administrator will mail Settlement Notices enclosing Settlement Checks to all Eligible Settlement Participants no later than twenty-one (21) days after the Effective Date of the Settlement Agreement. *Id.* § 2.9; *see id.* at Ex. B (Settlement Notice). The proposed Settlement Notice will remind collective members of the nature of the dispute, and inform them of the terms of the settlement, the gross amount of their Settlement Checks, and the scope of the release. *Id.* at Ex. B (Settlement Notice). The Settlement Administrator will also send email and text messages notices seven (7) days later to Eligible Settlement Participants informing them of the Settlement Check and Settlement Notice mailings. Ex. 1 (Settlement Agreement) § 2.9; *id.* at Ex. C (Email and Text Message Notices). The Settlement Administrator will take all reasonable steps to obtain the correct address of any Eligible Settlement Participant for whom the Settlement Notice is returned as undeliverable and will attempt re-mailings in the event better address information is obtained.[10] *Id.* § 2.10.

---

[10]    Plaintiffs Counsel learned that one of the Opt-in Plaintiffs, Richard Micus, passed away since joining the collective. Plaintiffs' Counsel and the Settlement Administrator will work to ensure that Mr. Micus's payment is paid to his estate. Stewart Decl. ¶ 58.

Eligible Settlement Participants will have 180 days after the initial mailing or subsequent re-mailing of their Settlement Checks to sign and cash the Settlement Check.  *Id.* § 1.1.  If any Eligible Settlement Participants have not cashed their checks within ninety (90) days after mailing, the Settlement Administrator will send reminder notices by U.S. mail, email, and text message to those individuals that inquires whether they received the Settlement Check and reminds them of the check cashing deadline.  *Id.* §§ 1.32; 2.3; 2.9; *id.* at Ex. D.  For a thirty (30)-day period after the close of the check negotiation period, an Eligible Settlement Participant may seek reissuance of a Settlement Check, which the Settlement Administrator shall approve for good cause shown.  *Id.* § 2.11.

No settlement funds will revert to Defendants.  Instead, any portion of the Net Settlement Fund that is unclaimed more than seventy-five (75) days after the close of the Acceptance Period shall be redistributed pro rata to Participating Settlement Members who cashed or otherwise negotiated a Settlement Check, or, if redistribution is impractical on the basis that the amount remaining in the Net Fund is similar to or less than the cost of a second distribution, it shall be donated to Mobilization for Justice, a non-profit legal services organization in New York City, as a *cy pres* recipient.  *Id.* § 3.1(D).

### C.    Allocation Formula

Eligible Settlement Participants will receive a Settlement Amount pursuant to an allocation formula based on the number of weeks they worked in a Covered Job Title during the Relevant Period as set forth in the Settlement Agreement.  *See id*. § 3.4(A).  For tax purposes, forty-five percent (45%) of each Eligible Settlement Participant's Settlement Amount will be

treated as back wages and fifty-five percent (55%) will be treated as interest, liquidated damages, penalties, and other non-wage relief.  *Id.* § 3.4(C)(i).

### D.    Releases

Only individuals who cash their Settlement Checks will release any claims.  Participating Settlement Members will release "the claims alleged in the operative Complaint or that could have been alleged based on the facts alleged, and that accrued during the period that [they] worked for Defendants in a Covered Job Title, relating back to the full extent of the applicable federal, state, or local statute of limitations and continuing through May 31, 2022, including, without limitations, any and all federal, state, or local claims for unpaid overtime wages, unpaid straight time wages, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses."  *Id.* § 4.1.  A description of the release of claims will be included in the Settlement Notice and on the back of each Settlement Check. *Id.* § 4.1; *see id.* at Ex. B (Settlement Notice).  In exchange for receiving any Court-approved Service Award, Named Plaintiffs will also agree to a general release of claims.  *See id.* § 4.2.

### E.    Service Awards

In recognition of the services they rendered to the collective in obtaining the benefits of the settlement, as well as the risks they took in doing so, Plaintiffs seek service awards for Named Plaintiffs Mikityuk, Tallungan, and Honey in amounts of $10,000 each; for Opt-in Deponent Esquibel in the amount of $2,500; and to Opt-in Declarants Gutierrez, McTighe, Northern, and Tabiri in the amount of $1,000 each.  *Id.* §§ 1.18, 1.20, 1.21, 1.33, 3.3.

### F.    Settlement Administration

After soliciting and reviewing bids from four wage and hour settlement administrators, Plaintiffs' Counsel selected Analytics Consulting, LLC as the administrator, and Defendants' Counsel consented to the selection.  Stewart Decl. ¶ 59; Ex. 1 (Settlement Agreement) ¶ 1.35.

Analytics Consulting, LLC provided a not-to-exceed bid of $4,750 to administer the settlement. Stewart Decl. ¶ 60.

### G.   Attorneys' Fees and Costs

Subject to Court approval, the Settlement Agreement provides for one-third of the Gross Settlement Amount as attorneys' fees, or $108,333.33, plus reimbursement of up to $24,441 in actual out-of-pocket costs. Ex. 1 (Settlement Agreement) § 3.2(A).

## III.   ARGUMENT

### A.   A One-Step Approval Process Is Standard for FLSA Settlements.

Courts routinely employ a one-step approval process for FLSA settlements that do not include Rule 23 classes. *See, e.g.*, *Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2021 U.S. Dist. LEXIS 71243, at *16 (S.D.N.Y. Apr. 12, 2021); *Stock v. Xerox Corp.*, 516 F. Supp. 3d 308, 312-13 (W.D.N.Y. 2021); *Weston v. TechSol, LLC*, No. 17 Civ. 141, 2018 U.S. Dist. LEXIS 166574, at *2 (E.D.N.Y. Sept. 26, 2018) (granting a motion for settlement approval and the plaintiffs' motion for attorneys' fees, as well as simultaneously "approv[ing] the proposed Notice and Claim Form, and authoriz[ing] distribution to the settlement collective").[11] This is because opt-in settlements do not implicate the same due process concerns as Rule 23 class actions. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304 (E.D.N.Y. 2015). Unlike in Rule 23 class actions, "under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *Id.* (quoting *Viafara v. MCIZ Corp.*,

---

[11]   *See also Knox v. Jones Grp.*, No. 15 Civ. 1738, 2017 U.S. Dist. LEXIS 146049, at *3-6 (S.D. Ind. Aug. 31, 2017); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 U.S. Dist. LEXIS 87928, at *2-3 (D. Mass. June 8, 2017); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 Civ. 10447, 2016 U.S. Dist. LEXIS 165560, at *4 (N.D. Ill. Nov. 29, 2016); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, , 2014 U.S. Dist. LEXIS 106042, at *6-10 (D. Conn. July 31, 2014); *Medley v. Am. Cancer Soc'y*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010).

No. 12 Civ. 7452, 2014 U.S. Dist. LEXIS 60695, at *7 (S.D.N.Y. May 1, 2014)); *accord McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA . . . ."). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23.").

### B.    The Settlement Is Fair and Should Be Approved.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). Courts regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See id.*; *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, at *19 (S.D.N.Y. Oct. 5, 2012). Where the proposed settlement reflects a reasonable compromise over contested issues, it should be approved. *See Lynn's Food Stores*, 679 F.2d at 1354. In general, "FLSA settlements . . . [that] are reached as a result of contested litigation to resolve bona fide disputes" should be approved. *Beckman*, 293 F.R.D. 293 F.R.D. at 476; *see also Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 U.S. Dist. LEXIS 115984, at *16 (S.D.N.Y. Aug. 16, 2011).

The Settlement in this case meets the standard for approval.[12] <u>First</u>, the settlement is the result of contested litigation, reached after significant motion practice and extensive discovery,

---

[12]    In addition to the reasons for approval articulated *infra*, the settlement complies with the Second Circuit's guidance in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The settlement has been subject to this Court's judicial review and approval, and it does not contain any of the types of provisions that the Second Circuit found objectionable in *Cheeks*,

and was resolved through arm's-length negotiations between counsel. *See* Stewart Decl. ¶ 61; *see also, e.g.*, *Quow v. Accurate Mech. Inc.*, No. 15 Civ. 9852, 2018 U.S. Dist. LEXIS 114524, at *2, *8 (S.D.N.Y. July 10, 2018) (finding procedural fairness requirement satisfied where settlement was "the product of arms'-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery, conducted with the aid of this Court").

        Second, the Gross Settlement Amount of $325,000 for thirty-eight individuals is substantial, especially in light of the considerable risks Plaintiffs faced. Stewart Decl. ¶ 62. In comparison, Plaintiffs' Counsel estimates that the Eligible Settlement Members' lost wages come to $515,382.22, calculating overtime at time and a half of the regular rate (including the value of commissions), and assuming Eligible Settlement Members worked five uncompensated overtime hours per week. *Id.* ¶ 63. A gross recovery of 63% of unpaid wages is well within the range of recoveries found to be reasonable in this district. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement that amounted to 38% of estimated case value). The net recovery – after deductions for attorneys' fees, litigation costs, settlement administration, and service awards – representing 30% of unpaid wages, is also reasonable. Stewart Decl. ¶ 64; *see, e.g.*, *Aguilar v. N & A Prods.*, No. 19 Civ. 1703, 2019 U.S. Dist. LEXIS 185030 (S.D.N.Y. Oct. 24, 2019) (finding settlement amount reasonable that constituted 7% of estimated potential recovery where claims faced significant risk, including risk of proving hours worked);[13] *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050, at *4 (S.D.N.Y. Mar. 8, 2016) (approving FLSA settlement where net recovery was approximately

---

such as overly restrictive confidentiality provisions, overbroad releases, or excessive attorneys' fees. *See id.* at 206-07.

[13]    An agreement revised to address an overbroad release provision, with the same settlement amount was later approved. *See Aguilar* v. *N & A Prods.*, No. 19 Civ. 1703, 2019 U.S. Dist. LEXIS 222761, at *3 (S.D.N.Y. Dec. 30, 2019).

25% of damages); *Beckert v. Rubinov*, No. 15 Civ. 1951, 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (approving FLSA settlement where net recovery was approximately 25% of damages).  The average net Eligible Settlement Participant award, $3,973.04 (after deductions for fees, costs, service awards, and settlement administration), is also a strong recovery compared with other cases involving salespeople in this District.  Stewart Decl. ¶ 65; *see, e.g.*, *Martignago v. Merrill Lynch & Co.*, No. 11 Civ. 3923, 2013 U.S. Dist. LEXIS 205935, at *3, *13, *20,*29 (S.D.N.Y. Oct. 3, 2013) (approving settlement of sales support professionals' off-the-clock claims where average gross award was approximately $2,768.62 and average net award was approximately $2,053.22); *Morris*, 859 F. Supp. 2d at 615, 624 (approving settlement of marketing representatives' off-the-clock claims where average gross award was approximately $1,345 per person); *Oleniak v. Time Warner Cable*, No. 12 Civ. 3971, 2013 U.S. Dist. LEXIS 207945, at *10 (S.D.N.Y. Dec. 17, 2013) (approving settlement of customer service representatives' off-the-clock claims where average gross award was approximately $1,473 and average net award was approximately $775.85).

Third, Plaintiffs faced risks in maintaining collective certification through trial, and, at trial, establishing liability and damages on a collective basis.  Cision likely would have argued that differences in timekeeping instructions among managers and locations, and differences in the recording of and payment of overtime to individual collective members, would warrant decertification of the collective.  Stewart Decl. ¶ 66.  For example, during the course of discovery, Defendants produced discovery showing that certain collective members recorded and were compensated for at least some hours worked above 40 in a workweek.  *Id*. ¶ 67.[14]  While

---

[14]    Based on interviews with collective members, these collective members were not compensated for all overtime hours worked.  *Id*. ¶ 68.  In addition, when Cision paid overtime, it

Plaintiffs contend that these differences would not be sufficient to defeat conditional

certification, defendants have prevailed on such arguments.[15] *See, e.g.*, *Campbell v. City of Los*

*Angeles*, 903 F.3d 1090, 1104, 1120-21 (9th Cir. 2018) (affirming decertification in an off-the-

clock case where district court considered, *inter alia*, evidence that claims were "tied to discrete

worksites and supervises" and presence of individualized defenses); *Thind v. Healthfirst Mgmt.*

*Servs., LLC*, No. 14 Civ. 9539, 2016 U.S. Dist. LEXIS 170503, at *7 (S.D.N.Y. Dec. 9, 2016)

(decertifying FLSA collective where some collective members were explicitly told to work off-

the-clock while others were not and case involved disparate defenses); *DeSilva v. N. Shore-Long*

*Island Jewish Health System,* 27 F. Supp. 3d 313, 325 (E.D.N.Y. 2014) (decertifying off-the-

clock collective action where, *inter alia*, "plaintiffs will have to demonstrate that each individual

manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work

without proper compensation" (citation and internal quotations omitted)); *Zivali v. AT & T*

*Mobility, LLC*, 784 F. Supp. 2d 456, 469 (S.D.N.Y. 2011) (decertifying off-the-clock collective

action).  Cision likely also would have argued for decertification on the grounds that at least

some collective members were classified as exempt from overtime while others were classified

as non-exempt.  Stewart Decl. ¶ 70; *cf. DeSilva*, 27 F. Supp. 3d at 326 (explaining that plaintiffs

faced risk in maintaining the collective because defendants intended to argue that some

collective members were exempt).  In addition, even if Plaintiffs prevailed in maintaining the

---

used an incorrect regular rate, that did not include the value of commissions, in calculating the
overtime rate.  *Id.* ¶ 69.

[15]    Plaintiffs believe they would have prevailed in maintaining the collective following the
Second Circuit's decision in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020),
which held that FLSA plaintiffs need only show that "they share one or more similar questions of
law or fact material to the disposition of their FLSA claims" to meet their "similarly situated"
showing.  *Id.* at 521.  However, Plaintiffs faced litigation risk because the decision issued only
recently, in 2020, and there are limited off-the-clock cases interpreting it to date.

collective, the fact-intensive nature of Plaintiffs' off-the-clock claims involves risk at trial. *See, e.g.*, *Morris*, 859 F. Supp. 2d at 620 ("[T]he fact-intensive nature of Plaintiffs' off-the-clock claim presents risk. The proposed settlement eliminates this uncertainty.").

Fourth, the proposed allocation of the settlement is also reasonable. It reflects a proportion of damages owed to each Eligible Settlement Participant based on the number of weeks they worked for Defendants within the relevant statutory periods, which is a reasonable approximation of each person's damages. Ex. 1 (Settlement Agreement) § 3.4(A) (allocation plan); *see, e.g.*, *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *8-*9, *26 (S.D.N.Y. May 23, 2014) (approving an allocation formula based in part on number of workweeks class members were employed during the class period); *Alli v. Bos. Mkt. Corp.*, No. 10 Civ. 4, 2011 U.S. Dist. LEXIS 143303, at *10 (D. Conn. Dec. 8, 2011) ("The Parties have agreed to a settlement that compensates individuals based on weeks worked during the relevant time periods. This is a fair and reasonable provision . . . .").

The Court should also approve the proposed Settlement Notice. *See* Ex. B (Settlement Notice) to Ex. 1 (Settlement Agreement). The proposed Settlement Notice sufficiently informs Eligible Settlement Participants of the allocation formula, the monetary amount to which they are entitled under the Settlement, the scope and mechanism of the release of claims, the time they have to cash their Settlement Checks, the request for attorneys' fees, costs, service awards, and settlement administration costs, and the other terms of the Settlement Agreement. *See, e.g.*, *Weston*, 2018 U.S. Dist. LEXIS 166574, at *24-25 (approving FLSA notice that informed recipients of the allegations; the total settlement amount, including "the amount being paid for attorneys' fees and expenses, the cost of administration, and the service awards to the named plaintiffs"; the allocation formula; and other relevant terms); *Bozak*, 2014 U.S. Dist. LEXIS

106042, at *9 (approving FLSA notice providing notice of settlement terms and options facing collective).

### C.   The Service Awards Should Be Approved as Fair and Reasonable.

Plaintiffs request approval of Service Awards of $10,000.00 each for Named Plaintiffs Mikityuk, Tallungan, and Honey, $2,500 for Opt-in Deponent Esquibel, and $1,000 each for Opt-in Declarants Gutierrez, McTighe, Northern, and Tabiri.  These Service Awards are reasonable in light of the significant contributions these individuals made to advance the prosecution and resolution of the lawsuit on behalf of the rest of the Eligible Settlement Participants.

Service awards are appropriate because "plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Aros v. United Rentals, Inc.*, No. 10 Civ. 73, 2012 U.S. Dist. LEXIS 104429, at *8 (D. Conn. July 26, 2012).  This is especially true in employment litigation.  *See Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005))); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).  Even though Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants were no longer employed by Cision when they brought the case, they faced the risk of being "blacklisted" by Cision and future employers.  *See, e.g.*, *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *42 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . face potential

21

risks of being blacklisted as 'problem' employees."); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) (recognizing that where the named plaintiff is a "past employee whose . . . recommendation may be at risk by reason of having prosecuted the suit," the individual "lends his or her name and efforts to the prosecution of litigation at some personal peril"); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."); *Guippone v. BH S & B Holdings*, *LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."). This is particularly true in the technology sales field, a tightly-knit industry where sales representatives and managers change companies frequently, connections with former colleagues and managers are very important, and sales representatives rightly fear blackballing from former and potential future employers. Stewart Decl. ¶ 71.

Service awards serve the important purpose of compensating plaintiffs for the "time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes*, 2011 U.S. Dist. LEXIS 115984, at *24; *see also Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.").

Service awards are commonly awarded to those who serve a class's and/or collective's interests. *See, e.g.*, *Reyes*, 2011 U.S. Dist. LEXIS 115984, at *24; *Frank*, 228 F.R.D. at 187. In examining the reasonableness of a requested incentive award, courts consider: the "existence of

special circumstances," including (1) any personal risk incurred by the plaintiffs; (2) the "time and effort expended by [the plaintiffs] in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise)"; (3) any other burdens carried by the plaintiffs; and (4) the ultimate recovery in vindicating statutory rights. *Roberts*, 979 F. Supp. at 200. A consideration of these factors under the circumstances of this case supports approval of the requested service awards.

First, Plaintiffs, Opt-in Deponent, and Opt-in Declarants each undertook substantial direct and indirect risk. They assumed the "potential risks of being blacklisted as 'problem' employees." *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *42. The risks Plaintiffs took in this case were real. The case was covered by media outlets, including Bloomberg News and Business Insider, that are read by colleagues in the sales industry.[16] Stewart Decl. ¶ 72. In the wake of these articles, former colleagues contacted several of the Named Plaintiffs about the lawsuit. Stewart Decl. ¶ 73. During the litigation, Cision issued third-party subpoenas to several individuals identified by the Named Plaintiffs and Opt-In Deponent in discovery responses, including friends and former colleagues. *Id.* ¶ 74. This was embarrassing and risked reputational harm to Named Plaintiffs and Opt-in Deponent in their business relationships with former colleagues. *Id.* ¶ 75. Making these fears more salient, during the investigation and notice phases of this case, Plaintiffs' Counsel spoke to several other Sales Representatives who confirmed that they experienced the practices addressed by the lawsuit but declined to step

---

[16]    *See* Kathleen Dailey, *Cision Facing Sales Employee Class Suit for Unpaid Overtime*, Bloomberg Law (Jan. 21, 2021, 12:49 PM), https://news.bloomberglaw.com/daily-labor-report/cision-facing-sales-employee-class-suit-for-unpaid-overtime; Sean Czarnecki, *Public Relations Tech Giant Cision Faces a Collective Action Lawsuit over Overtime Pay*, Business Insider (May 17, 2021, 11:01 AM), https://www.businessinsider.com/cision-faces-collective-action-lawsuit-alleging-unpaid-overtime-2021-5.

forward because they feared retaliation and feared that their reputations would be tarnished by participating in the matter.  *Id.* ¶ 76.

Second, Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants spent a significant amount of time and effort pursuing this litigation on behalf of the Eligible Settlement Participants.  All assisted Plaintiffs' Counsel in investigating the claims and approving the pre-litigation letter to Cision.  *Id.* ¶ 77.  All answered questions about Cision's policies and practices and provided insight and feedback on case strategy throughout the litigation.  *Id.* ¶ 78.  Named Plaintiffs and Opt-in Deponent reviewed and approved the complaints.  *Id.* ¶ 79.  Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants all spent significant time providing Plaintiffs' Counsel with information necessary for Plaintiffs' 216(b) Motion, and preparing supporting declarations.  *Id.* ¶ 80; *see also* ECF Nos. 14-1 to 14-8.  Named Plaintiffs and Opt-in Deponent Esquibel were deposed by Cision and spent significant time with Plaintiffs' Counsel reviewing documents and preparing for depositions.  Stewart Decl. ¶ 81.  Named Plaintiffs responded to two sets of discovery requests and searched for and produced documents, *id.* ¶ 82, while Opt-in Deponent and Opt-in Declarants all responded to written discovery and either collected and sent their documents to Plaintiffs' Counsel, or began collecting documents to send to Plaintiffs' Counsel for production,[17] *id.* ¶ 83.  Named Plaintiffs consulted extensively with Plaintiffs' Counsel regarding settlement strategy, provided settlement authority, and reviewed and executed the Settlement Agreement.  *Id.* ¶ 84.  Courts award service awards in cases where plaintiffs perform similar tasks.  *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *15 (S.D.N.Y. May 7, 2015) (approving a service award in light of the

---

[17]    The Parties settled before Plaintiffs' Counsel served responses on behalf of several Opt-in Declarants.  *See supra* n. 8.

"efforts [the plaintiff] made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *Frank*, 228 F.R.D. at 187 (recognizing the important role that the plaintiff played in "serv[ing] as plaintiff counsel's primary source of information concerning the claims," reviewing documents, and "respond[ing] to his counsel's questions").

Third, and similarly, Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. *See* Stewart Decl. ¶ 85. Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants participated in an extensive pre-suit investigation and provided information, documents, and testimony in the form of depositions and declarations crucial to establishing their claims and the claims of the putative collective, and to establishing conditional certification, which resulted in notice of the lawsuit being sent to Eligible Settlement Participants.

Fourth, the actions of the Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants have resulted in substantial benefit to the class, leading to an overall gross recovery of $325,000, which represents a substantial recovery compared to the Eligible Settlement Participants' estimated lost wages. *Id.* ¶ 86.

Courts in this circuit have approved service awards for similar activities in employment cases. *See, e.g.*, *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 U.S. Dist. LEXIS 110300, at *17 (E.D.N.Y. Aug. 6, 2012) (granting service awards in recognition of "the risks that the named Plaintiffs and opt-ins faced by participating in a lawsuit . . . and the efforts they made on behalf of the class, including producing documents, responding to interrogatories, and preparing for and having their depositions taken"); *DeLeon*, 2015 U.S. Dist. LEXIS 65261, at *15; *Ceka v.*

25

*PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 U.S. Dist. LEXIS 168169, at *4, *22-24 (S.D.N.Y.

Dec. 2, 2014) (approving service award of $10,000 to class representative who assisted in the

"investigation and prosecution of the claims by providing detailed factual information regarding

the Class Members' job duties, the hours that they worked, the wages . . . paid, and other

information relevant to their claims," and who was "closely involved in settlement

negotiations"); *Sukhnandan v. Royal Health Care of Long Island, LLC*, No. 12 Civ. 4216, 2014

U.S. Dist. LEXIS 105596, at *45-46 (S.D.N.Y. July 31, 2014) (approving $10,000 service

awards to four named plaintiffs based on their time spent and risks taken in bringing, litigating

and settling the lawsuit).

     Moreover, the requested $10,000 payments to Named Plaintiffs, $2,500 payment to Opt-

in Deponent, and $1,000 payments to Opt-in Declarants are reasonable and within the range of

service payments that courts in this circuit routinely approve.  *See, e.g.*, *Contreras v. Rosann*

*Landscape Corp.*, No. 17 Civ. 6453, 2021 U.S. Dist. LEXIS 54115, at *6 (S.D.N.Y. Mar. 19,

2021) (approving service awards of $15,000 each for class representatives and between $3,000 to

$7,500 to certain opt-in plaintiffs); *Deas v. Alba Carting & Demolition Inc.*, No. 17 Civ. 3947,

2021 U.S. Dist. LEXIS 38803, at *9-10 (S.D.N.Y. Mar. 2, 2021) (approving service award of

$15,000 to the named plaintiff and between $5,000 and $7,500 to certain opt-in plaintiffs);

*Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740, 2018 U.S. Dist. LEXIS 60772, at *8 (S.D.N.Y.

Apr. 9, 2018) (approving $15,000 service awards for named plaintiffs "who participated in

multiple rounds of discovery and/or depositions," $10,000 service awards to named plaintiffs

"who participated in one round of discovery and were deposed," and $2,500 service awards to all

other opt-in deponents); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825, 2013

U.S. Dist. LEXIS 47637, at *19-20 (S.D.N.Y. Apr. 2, 2013) (approving $10,000 service awards

to named plaintiffs and of $500 each to certain opt-in plaintiffs who faced risks "by participating in a lawsuit against their current or former employer" and "produc[ed] documents, respond[ed] to interrogatories, and prepar[ed] for and [had] their depositions taken"); *Ceka*, 2014 U.S. Dist. LEXIS 168169, at *4 (approving service award of $10,000 to class representatives); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *46 (approving $10,000 service awards to four named plaintiffs); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *19-20 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 in wage and hour class and collective action); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 100668, at *4 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 to two named plaintiffs and awards of $7,000 to $12,000 each to three named plaintiffs and seven opt-in plaintiffs in wage and hour class action); *Lovaglio v. W & E Hosp. Inc.*, No. 10 Civ. 7351, 2012 U.S. Dist. LEXIS 94077, at *9 (S.D.N.Y. July 5, 2012) (approving service awards of $10,000 to class representatives in wage and hour action); *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *43 (granting service awards of $10,000 and $15,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel").

The requested Service Awards amount to 11.23% of the total recovery, which is a reasonable percentage. *See Reyes*, 2011 U.S. Dist. LEXIS 115984, at *24 (approving awards of $15,000 to three class representatives and $5,000 to a fourth class representative, totaling approximately 16.67% of the total recovery); *Parker*, 2010 U.S. Dist. LEXIS 12762 at *6 (finding that awarding 11% of recovery as service awards is reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards").

27

## IV.    THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEYS' FEES AND COSTS AS FAIR AND REASONABLE

### A.    The Court Should Award Attorneys' Fees as a Percentage of the Fund

Plaintiffs are prevailing parties entitled to recover fees and costs expended in litigating this FLSA collective action.  29 U.S.C. § 216(b).  Because Plaintiffs' Counsel's efforts have conferred a significant benefit on Eligible Settlement Participants, Plaintiffs request that the Court grant one-third of the $325,000 Gross Settlement Fund, or $108,333.33, in attorneys' fees and $24,441 in costs, as provided in Section 3.1(A) of the Agreement.  Ex. 1 (Settlement Agreement), ¶ 3.2(A).  The requested fee is far less than the $1,369,212.00 in lodestar that Plaintiffs' Counsel expended to prosecute these claims.  *Id.* ¶ 87.

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 121-22 (2d Cir. 2005); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *26; *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *28.  The percentage-of-the-fund method is preferred in the Second Circuit in common fund settlements like this one.[18]  *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3rd Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (internal quotation marks and citation omitted)).  The common fund approach is especially appropriate in cases based on fee

---

[18]    Recovery of fees based on the percentage-of-the-fund method "permits litigants or lawyers who recover a common fund for the benefit of persons other than themselves to obtain reasonable attorney's fees out of the fund, thus spreading the cost of the litigation to its beneficiaries."  *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) ("Under the percentage method, the fee is a reasonable percentage of the total value of the settlement fund created for the class.").

shifting statutes when, as is true here, the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988); *accord Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994); *see* Ex. 1 (Settlement Agreement) §§ 4.1, 4.2 (releasing statutory claims to fees).

The percentage-of-the-fund method in common fund cases is preferred as a matter of policy because it promotes judicial economy. Specifically, the percentage-of-the-fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (explaining that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002)); *accord In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("[U]sing the [percentage of the fund] method in a common fund case enhances efficiency . . . ."). Where attorneys' fees are a percentage of the settlement, there is a strong disincentive for attorneys to "run up their hours." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 583, 2002 U.S. Dist. LEXIS 10732, at *3 (S.D.N.Y. June 17, 2002)).

Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *See In re Thirteen Appeals*, 56 F.3d at 307 ("[T]he [percentage of the fund] method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." (quoting *Camden I*

*Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991))); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *74 (noting that the "percentage method . . . benefits both litigants and the judicial system" in that it "avoids the wasteful and burdensome process – to both counsel and the courts – of preparing and evaluating fee petitions").

### B.    Analysis of the Market for Legal Services Supports Plaintiffs' Request

The percentage-of-the-fund method is consistent with market practice because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see Sewell*, 2012 U.S. Dist. LEXIS 53556, at *29 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys"); *see also Kirchoff v. Flynn*, 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'").

Here, Plaintiffs' Counsel undertook the representation on a purely contingent basis. Stewart Decl. ¶ 88.  Plaintiffs' Counsel executed a fee arrangement with the Plaintiffs that entitled Plaintiffs' Counsel to one-third of any recovery, or lodestar, whichever is higher.  *Id.* ¶ 89.  "Thus, the Court knows what private plaintiffs 'would have negotiated with their lawyers, had bargaining occurred at the outset of the case' . . . because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek." *Castillo v. Noodles & Co.*, No. 16 Civ. 3036, 2016 U.S. Dist. LEXIS 178977, at *9 (N.D. Ill. Dec. 23, 2016) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).  Because the

Plaintiffs negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs*, 2016 U.S. Dist. LEXIS 165560, at *11.

### C.    Plaintiffs' Requested Fee Award Is Reasonable

Courts in the Second Circuit regularly find fee requests of one-third of the common fund or settlement amount to be reasonable. *See, e.g.*, *Solis v. Orthonet LLC*, No. 19 Civ. 4678, 2021 U.S. Dist. LEXIS 122512, at *5 (S.D.N.Y. June 30, 2021) ("Here, the percentage requested, 33%, is in line with what other judges have awarded in this district . . . ."); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12. Civ. 3203, 2018 U.S. Dist. LEXIS 170192, at *12 (E.D.N.Y. Sept. 28, 2018) ("[C]ourts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds substantially larger than this one." (alteration added and internal quotation marks and citation omitted)); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 179 (E.D.N.Y. 2012) (finding plaintiffs' counsel's request for one-third of the fund "well within the range accepted by courts in this Circuit" (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002))); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D., 41, 60 (E.D.N.Y. 2010) ("[T]he Court finds that attorney's fees of one third of the settlement fund . . . are reasonable."); *Beckman*, 293 F.R.D. at 477 (stating that plaintiffs' counsel's request for one-third of the fund was "consistent with the norms of class litigation in this circuit" (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008))).  Plaintiffs' Counsel's request is particularly reasonable because one-third of the Gross Settlement Amount is significantly less than Counsel's lodestar. *Santos v. Yellowstone Props.*, 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *13 (S.D.N.Y. May 10, 2016) (fee request of one-third fund reasonable where request was significantly less than lodestar); *Caprile v. Harabel Inc.*, No. 14 Civ. 6386, 2015 U.S. Dist. LEXIS 127332, at *6 (S.D.N.Y. Sep. 16, 2015) (request for fee of one third reasonable where it

was "consistent with the plaintiff's contingency-fee arrangement with counsel" and was

"considerably less than the lodestar").  Courts, including Courts within this Circuit, frequently

approve Plaintiffs' Counsel's request for fees in the amount of one-third of the fund, plus

reimbursement of costs.  *See, e.g.*, *Blum v. Merrill Lynch & Co.*, Nos. 15 Civ. 1636, 15 Civ.

2960, 2016 U.S. Dist. LEXIS 197385, at *6 (S.D.N.Y. May 4, 2016) (approving O&G's fees of

$4,666,666, or one-third of fund, in attorneys' fees, plus $80,362.37 in reasonable out-of-pocket

costs, as provided for in settlement agreement); *Clem v. KeyBank, N.A.*, No. 13 Civ. 789, 2014

U.S. Dist. LEXIS 87174, at *22 (S.D.N.Y. June 20, 2014) (approving O&G's fees of

$1,166,666.67, or "33% of the settlement fund").  Further, that this lodestar figure does not

account for the additional time Plaintiffs' Counsel will expend on this case going forward in

connection with implementing and monitoring the settlement renders it "even more reasonable."

*Beckman*, 293 F.R.D. at 482.

Moreover, Plaintiffs' Counsel's request for one-third of the settlement fund as attorneys'

fees and additional costs and litigation expenses is reasonable in light of the significant benefit

their efforts conferred on the collective.  The Settlement Agreement provides that Defendant will

pay a Gross Settlement Amount of $325,000.  Ex. 1 (Settlement Agreement) §§ 1.14.  By

Plaintiffs' Counsel's estimation, the $325,000 guaranteed settlement amount represents a

substantial percentage of the collective's lost wages.  *See* Section III.B, *supra*.  This recovery is

significant in light of the risk that litigation may have yielded little or no recovery at all.

### D.      Plaintiffs' Counsel's Actual Lodestar Far Exceeds Their Request.

Plaintiffs' requested fee is also reasonable because the actual lodestar far exceeds the

requested fee.  There is a "strong" presumption that the lodestar, which is calculated by

multiplying the number of hours expended on the litigation by hourly rates, is reasonable.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (quoting *City of Burlington v. Dague*,

505 U.S. 557, 562 (1992)); *see Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

(lodestar calculation creates a "presumptively reasonable fee" (quoting *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182,

183 (2d Cir. 2008))).  In evaluating the lodestar, "the hours documented by counsel need not be

exhaustively scrutinized by the district court."[19]  *Goldberger v. Integrated Res.*, 209 F.3d 43, 50

(2d Cir. 2000).  Rather, "the reasonableness of the claimed lodestar can be tested by the court's

familiarity with the case." *Id*.

Here, Plaintiffs' request for attorneys' fees is only approximately 8% of Plaintiffs'

Counsel's actual lodestar incurred in litigating and settling this matter, which supports the

reasonableness of the request.

Plaintiffs' lodestar also reflects a reasonable number of hours at a reasonable hourly rate,

based on the demands of the case.  This was a hard fought, and complex litigation.  Plaintiffs'

claims have been hotly contested every step of the way.  *See* Section I.B, *supra*.  Because of

Defendants' "vigorous approach to litigating this case" and decision not to accept earlier

invitations to mediate, Plaintiffs' Counsel committed significant time to this matter.  *Torres v.*

*Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890, at *16 (S.D.N.Y.

Aug. 6, 2012) (concluding that "Plaintiffs' proposed hours are reasonable" where "the work

performed by Plaintiffs was due to Defendants' choice of litigation tactics"), *aff'd*, 519 F. App'x

1 (2d Cir. 2013); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 224 (S.D.N.Y. 2011)

(finding time expended by plaintiff's counsel reasonable where defendants declined to discuss

settlement until late stage of the litigation); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F.

---

[19]    Although a detailed review is not necessary, Plaintiffs submit the time entries as Exhibit
2 to the Stewart Decl., and a summary chart is available at Stewart Decl. ¶ 91.

Supp. 2d 470, 478 (S.D.N.Y. 2009) (refusing to reduce fees where "opposing counsel wage[d] a tenacious defense which expand[ed] the time required to pursue even straightforward claims"); *see* Section I.B *supra*.  In addition, Plaintiffs' Counsel has exercised billing discretion by removing the time of all attorneys and support staff who billed less than twenty hours to the case, as well as numerous time entries for internal meetings and administrative tasks, totaling 516 hours of time or $93,878.50 in lodestar.  Stewart Decl. ¶ 90.

The hourly rates Plaintiffs' Counsel used in calculating their lodestar are also reasonable. In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Other factors relating to the determination of reasonable hourly rates were enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "'undesirability'" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

These considerations all weigh in favor of adopting Plaintiffs' Counsel's customary rates. The rates that Plaintiffs' Counsel used to calculate their lodestar are the rates they typically charge to paying clients and are consistent with prevailing rates.  Stewart Decl. ¶ 91.  These customary rates are the best evidence of what the market will bear, as compared to a "rate

34

devised by the court" because "[l]awyers do not come from cookie cutters"; rather, "[c]lients are willing to pay more, per hour, for . . . better lawyers."  *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) ("[T]he range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear.").  Here, Plaintiffs' Counsel have extensive experience in employment law and litigating class and collective wage and hour actions, which was on display throughout this action.  Stewart Decl. ¶ 92.  Plaintiffs' Counsel's hourly clients (including those in this district) regularly accept and pay these hourly rates, or higher.  *Id.* ¶ 93.  Courts regularly approve Plaintiffs' Counsel's rates in other cases.  *Id.* ¶ 94. Here the effective blended hourly rate requested by Plaintiffs' Counsel is significantly below these rates.  Plaintiffs' Counsel's total lodestar divided by the total hours worked on the case yields an effective hourly rate of $408.66 (including hours and lodestar cut).  Stewart Decl. ¶ 95.

Relatedly, Plaintiffs' Counsel accepted significant risk by representing the collective on a contingency basis over a lengthy period. *Id.* ¶ 96.  This representation precluded other endeavors (including hourly matters) and created significant risk of non-payment with any payment contingent upon achieving a good result.  *Id.* ¶ 97.

###    E.    Plaintiffs Are Entitled to Reimbursement of Costs

Plaintiffs request reimbursement of $24,441 in out-of-pocket litigation expenses from the Gross Settlement Amount.  *Id.* ¶ 98.  Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *33 (S.D.N.Y. Jan. 14, 2014)

(approving reimbursement of $57,729.06 in litigation expenses); *Diaz v. E. Locating Serv.*, No.

10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, at *21 (S.D.N.Y. Nov. 29, 2010) ("Courts

typically allow counsel to recover their reasonable out-of-pocket expenses."). Here, Plaintiffs'

expenses were incidental and necessary to counsel's representation. Stewart Decl. ¶ 99.

Plaintiffs' costs include: the filing fee; a *pro hac vice* fee for Hannah Cole-Chu, one of the

attorneys principally responsible for prosecuting this matter; notice administration fees; fees for

computerized research (Westlaw/Lexis);[20] fees for document review and management

software;[21] deposition transcript fees; SDNY court hearing transcript fees; service of process fees

incurred in connection with attempting to serve the Complaint on Cision Ltd., before

Defendants' Counsel agreed to accept service; printing, copying, and scanning fees associated

with printing documents for service on Defendants, in preparation for use at depositions, and

scanning of hard-copy client documents for production in discovery;[22] FedEx fees associated

with service of documents, transportation of documents for depositions, and shipment of hard

copies of client documents for production in discovery; and travel costs, meals, and lodging

---

[20]     Plaintiffs' Counsel's uses client codes when conducting legal research to track work
billed by client. Stewart Decl. ¶ 101. Plaintiffs' Counsel's accounting department receives a
firm-wide bill broken down by client code, and applies a firm-wide negotiated discount across
the bill. Stewart Decl. ¶ 102. Computerized research amounts included in Ex. 3 are based on
Plaintiffs' Counsel's accounting department's actual records and invoices. Stewart Decl. ¶ 103.
[21]     Plaintiffs' Counsel's document management software bills Plaintiffs' Counsel based on
the actual number of documents stored per matter. Stewart Decl. ¶ 104. The amounts included
for document management in Ex. 3 are based on Plaintiffs' Counsel's accounting department's
records and invoices. Stewart Decl. ¶ 105.
[22]     Plaintiffs' Counsel's records indicate that Plaintiffs' Counsel printed 899 pages and
photocopied two pages, at 15 cents per page, for a total of $135.15. Stewart Decl. ¶ 106. This
rate is reasonable and should be approved. *See M.H. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923,
2021 U.S. Dist. LEXIS 190419, at *86 (S.D.N.Y. Oct. 1, 2021) (Liman, J.) (finding 20 cents per
page to be reasonable printing cost, in contested fee application). Plaintiffs' Counsel's records
also indicate that Plaintiff's Counsel scanned 2,810 pages, at cost of 10 cents per page, for a total
of $28.10. Stewart Decl. ¶ 107.

associated with Plaintiffs' Counsel's travel for depositions.[23]   Stewart Decl. ¶ 100; Ex. 3 (Cost

Summary).  These costs are reasonable and should be approved.  *See, e.g.*, *Beebe v. V&J Nat'l*

*Enters., LLC*, No. 17 Civ. 6075, 2020 U.S. Dist. LEXIS 96059, at *27 (W.D.N.Y. June 1, 2020)

(approving reimbursement of filing fees, travel to depositions, transcription fees, mailing costs,

research charges, and process service fees); *Morris*, 859 F. Supp. 2d at 624 (approving

reimbursement of "filing fees, telephone charges, postage, transportation, working meals,

photocopies, and electronic research" as "reasonable" and "incidental and necessary to the

representation of the Class"); *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695, 2007 U.S.

Dist. LEXIS 85554, at *33-34 (S.D.N.Y. Nov. 7, 2007) (approving reimbursement of, *inter alia*,

"photocopying of documents . . . court filing fees, deposition transcripts, fees for service of

subpoenas to witnesses, on-line research, creation of a document database, messenger service,

postage and next day delivery, long distance and facsimile expenses, transportation, travel and

other expenses" out of common fund because expenses were "customary" and "directly related

to the prosecution of this Action").

## V.    REDISTRIBUTION TO PROPOSED *CY PRES* DESIGNEE MFJ LEGAL SERVICES IS APPROPRIATE.

The Court should approve the Parties' agreement to donate any residual, unclaimed funds

remaining more than seventy-five days after the close of the Acceptance Period to MFJ Legal

Services.  *See* Ex. 1 (Settlement Agreement) ¶ 3.1(D).  "A *cy pres* donation is appropriate,

where, residual class funds remain after class members were provided with an opportunity to

deposit and claim their distribution."  *Sewell*, 2013 U.S. Dist. LEXIS 47526, at *3-6 (internal

---

[23]    Plaintiffs' Counsel travelled for deposition preparation and defense for Named Plaintiff depositions, so that Counsel and client could be together in-person, given the importance of named plaintiff depositions in class and collective action like this one, even though defense counsel took the depositions remotely.  Stewart Decl. ¶ 108.  Plaintiffs' Counsel handled deposition preparation and defense for Opt-in Deponent Esquibel for remotely.  *Id.* ¶ 109.

quotation marks and citations omitted).  Courts approve *cy pres* recipients whose purpose mirrors

the "objectives underlying the lawsuit, the interest of the class members, and those similarly

situated."  *Id.* (citing cases supporting this proposition).  Organizations that perform functions

"directly related to the enforcement of wage and hour laws" are appropriate *cy pres* recipients in

wage and hour cases.  *Id.* (collecting cases).  MFJ Legal Services is an appropriate *cy pres*

recipient, here, because, through its Workplace Justice Unit, it focuses on providing legal help to

individuals who have experienced wage theft, job discrimination, or exploitation at work.  *See*

Workplace Justice, Mobilization for Justice, https://mobilizationforjustice.org/projects/

workplace-justice-project/ (last visited May 31, 2022); *see also Louzau v. FedEx Package Sys.*,

No. 05 Civ. 538, 2017 U.S. Dist. LEXIS 64930, at *31 (N.D. Ind. Apr. 28, 2017) (approving

MFJ as the *cy pres* recipient in MDL settlement of FedEx driver's misclassification as

independent contractor case).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an

order: (1) approving the $325,000 Settlement as fair, adequate, and reasonable, as set forth in the

Settlement Agreement; (2) approving the proposed Settlement Notice and directing its

distribution; (3) approving Service Awards to Named Plaintiffs, Opt-in Deponent, and Opt-in

Declarant; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys'

fees and plus reimbursement of $24,411 in reasonable costs and litigation expenses; (5)

approving the fees and costs of the third-party Settlement Administrator; (6) incorporating the

terms of the Settlement Agreement; (7) dismissing this case with prejudice, with leave to

reinstate if necessary to enforce the terms of the Settlement; and (8) retaining jurisdiction to enforce the Settlement Agreement.

Dated: June 9, 2022                                    Respectfully submitted,

_/s/ Melissa L. Stewart_
Melissa L. Stewart
Eliana J. Theodorou
OUTTEN & GOLDEN LLP
685 Third Ave 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mstewart@outtengolden.com
etheodorou@outtengolden.com
dstromberg@outtengolden.com

Hannah Cole-Chu (_pro hac vice_)
Daniel S. Stromberg
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Suite 200W
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: hcolechu@outtengolden.com

_Attorneys for Plaintiffs_