# Exhibit 1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Anatoliy Mikityuk, Mitch Tallungan, and Wade Honey (collectively, "Named Plaintiffs"), individually and on behalf of the collective of 35 additional individuals participating in this action as Opt-In Plaintiffs (collectively with Named Plaintiffs, "Plaintiffs"), and Defendants Cision US Inc., Cision Ltd., Falcon Social Inc., and Falcon.io US, Inc. ("Defendants") (together with Named Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, Named Plaintiffs filed claims in a putative class and collective action lawsuit captioned as *Mikityuk et al. v. Cision US Inc. et al.*, Case No. 21 Civ. 510 (S.D.N.Y.); the Court granted the Named Plaintiffs' motion for conditional certification of a collective action, *see* ECF No. 48; the Court granted Plaintiffs' motion to amend the complaint (*see* ECF No. 172), which asserts claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the Illinois Wage Payment and Collection Act ("IWPCA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment & Collection Law ("MWPCL"), *see* ECF No. 174 (Third Amended Complaint) (collectively, the "Claims");

**WHEREAS,** Plaintiffs' Claims allege unpaid overtime under the FLSA and New York, Illinois, and Maryland law based on alleged off-the-clock overtime work and/or misclassification, with Plaintiffs further alleging claims for straight time pay under those state laws, as well as claims under New York law for allegedly incorrect wage disclosure notices and wage payment statements;

**WHEREAS,** the Parties engaged in significant discovery, including depositions, document productions, document review, extensive meet and confers, and discovery motion practice; and

**WHEREAS**, on May 2, 2022, following pre-litigation discussions, more than a year of hotly contested litigation, and lengthy settlement discussions conducted at arms'-length between counsel, the Parties reached an accord resulting in this Agreement; and

**WHEREAS**, without admitting or conceding any liability or damages, Defendants have agreed to settle the Claims the Named Plaintiffs and Opt-In Plaintiffs alleged, or which could have been alleged, in the Third Amended Complaint, on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation; and

**WHEREAS**, Plaintiffs' Counsel has analyzed and evaluated the merits of the Claims, the available remedies, and the benefit this Agreement confers on Plaintiffs, and based upon Plaintiffs' Counsel's analysis and evaluation of a number of factors, including extensive information obtained in discovery, and recognizing the substantial risks of litigation, including the possibility that the Claims, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interest of the Plaintiffs.

The signed document can be validated at https://app.vinesign.com/Verify

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Claims on behalf of the Plaintiffs on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** "Acceptance Period" means the one hundred eighty (180)-day period after issuance that an Eligible Settlement Participant has to sign and negotiate a Settlement Check.

**1.2** "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.3** "Approval Date" means the date on which the Approval Motion is granted.

**1.4** "Approval Motion" means a motion for Court approval of the collective action settlement, service awards to the Named Plaintiffs and others, and attorneys' fees and costs.

**1.5** "Complaint" means the Third Amended Class and Collective Action Complaint that was filed in the Lawsuit, *Mikityuk v. Cision US Inc.*, Case No. 21 Civ. 510 (S.D.N.Y.), ECF No. 174.

**1.6** "Consent to Join Form" means a consent to join form filed on the docket in *Mikityuk v. Cision US Inc.*, Case No. 21 Civ. 510 (S.D.N.Y.).

**1.7** "Court" means the United States District Court for the Southern District of New York.

**1.8** "Covered Job Title" means Account Executive, Account Executive (EX), Account Executive (SAAS), Account Executive – Falcon.io, Account Executive (NE), Account Executive II (SAAS), Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative, Sales Associate, Sales Development Representative, Sales Development Representative – Falcon.io, Sales Development Representative – TrendKite, Sales Development Representative TrendKite (NE), Sales Development Representative II (NE), Senior Account Executive 1 (NE), Senior Account Executive 2 (NE), Senior Sales Development Representative, Sales Executive, Midmarket Sales Executive, Sales Representative, and Senior Sales Representative.

**1.9** "Defendants" means Cision US Inc., Cision Ltd., Falcon Social Inc., and Falcon.io US Inc.

2

**1.10** "Defendants' Counsel" means ArentFox Schiff LLP.

**1.11** "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (i) thirty-one (31) days following the Court's Order Granting Approval of the Settlement, if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any and all appeals are resolved.

**1.12** "Eligible Settlement Participant" means the 38 individuals who filed consent to join forms to join this matter, including the Named Plaintiffs and Opt-in Plaintiffs, who have not withdrawn or been dismissed.

**1.13** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.14** "Gross Settlement Amount" means Three Hundred and Twenty Five Thousand Dollars and Zero Cents ($325,000.00), which is the maximum amount that Defendants have agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Eligible Settlement Participants; the cost of settlement administration; and any Court-approved Service Awards. The Gross Settlement Amount shall cover no more than 3,000 workweeks worked by Plaintiffs. Should the number of workweeks worked increase above 3,000 by more than five (5) percent, the Gross Settlement Amount will increase by a proportionate additional amount based on the number of additional workweeks worked beyond 3,150 workweeks.

**1.15** "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Participant as shown in Defendants' records.

**1.16** "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile and/or home telephone number for an Eligible Settlement Participant contained in Defendants' records and readily available to Defendants.

**1.17** "Litigation" or the "Lawsuit" or the "Action" means *Mikityuk v. Cision US Inc.*, Case No. 21 Civ. 510 (S.D.N.Y.).

**1.18** "Named Plaintiffs" means Anatoliy Mikityuk, Mitch Tallungan, and Wade Honey.

**1.19** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiffs' Counsel's attorneys' fees and costs; and (iii) Service Awards to Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants.

3

**1.20** "Opt-in Declarants" means Jordan Gutierrez, Matthew McTighe, Eliyyas Northern, and Kane Tabiri.

**1.21** "Opt-in Deponent" means Michael Esquibel.

**1.22** "Opt-in Plaintiffs" means Kevin Barnett, Grant Bursey, Troy Byam, Aleah Cook, James DeVor, Michael Esquibel, Gabrielle Grant, Jordan Gutierrez, Aaron Hawkins, Adam Hearn, Matthew Henehan, Rachel Hill, John Kerstein, Kera Kiernan, Rory Kirwan, Steven Labahn, Michael Lingren, John Lindstrom, Michelle Lopez, Andrea Mandarino, Briana Marcantoni, Matthew McTighe, Richard Micus, Eliyyas Northern, Kyle Ortman, Paul Rakhman, Tara Robinson, Jaimie Sagoskin, Lawrence Sampleton, Sydney Sharlin, Kane Tabiri, Nathan Taljaard, Matthew Tatum, Thaddeus Williams, and Samantha Wokosin.

**1.23** "Order Granting Approval of Settlement" or "Approval Order" means an order entered by the Court, which gives final approval to the Settlement and this Agreement and enters final judgment.

**1.24** "Parties" collectively means the Named Plaintiffs and Defendants.

**1.25** "Participating Settlement Members" means each Eligible Settlement Participant who timely signs and cashes a Settlement Check.

**1.26** "Plaintiffs" means the Named Plaintiffs and Opt-in Plaintiffs.

**1.27** "Plaintiffs' Counsel" means Outten & Golden LLP.

**1.28** "Eligible Settlement Participant List" means a list, in electronic form, of Eligible Settlement Participants' names, Last Known Addresses, Last Known Telephone Numbers, Social Security Numbers, and dates of employment in a Covered Job Title.

**1.29** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.30** "Releasees" means Defendants and their respective current and former affiliates, parents, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns.

**1.31** "Relevant Period" means the period of each Eligible Settlement Participant's employment with Defendants in a Covered Job Title that is eligible for payment pursuant to this Agreement. The Relevant Period covers the period: (1) from October 1, 2014 to the date this Agreement is executed for Eligible Settlement Participants who worked in a

4

Covered Job Title in New York; (2) from October 1, 2017 to the date this Agreement is executed for Eligible Settlement Participants who worked in a Covered Job Title in Illinois or Maryland; (3) from the date that is 3 years plus 116 days before an Eligible Participant submitted a Consent to Join Form for Eligible Settlement Participants who worked in a covered job title in any other state.

**1.32** "Reminder Postcard" means the agreed-to postcard, which provides the information stated in Section 2.9, sent to all Eligible Settlement Participants who have not cashed their checks within ninety (90) days after the Settlement Notices and Settlement Checks are mailed.

**1.33** "Service Award Recipients" means Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants.

**1.34** "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.35** "Settlement Administrator" means Analytics Consulting, LLC, the entity selected by Plaintiffs' Counsel through a competitive bidding process, with Defendants' Counsel's consent, to administer the Settlement.

**1.36** "Settlement Amount" or "Settlement Amounts" means each Eligible Settlement Participant's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.37** "Settlement Check" means the check issued to each Eligible Settlement Participant for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.38** "Settlement Notice" means the documents entitled Notice of Settlement to be approved by the Court in a form substantially similar to **Exhibit B**, attached hereto.

## 2.   APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT PARTICIPANTS

**2.1** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of Plaintiffs' claims in the Litigation.

**2.2** Plaintiffs' Counsel shall engage the Settlement Administrator to administer the settlement, subject to Defendants' approval.

**2.3** The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice and reminder postcards to Eligible Settlement Participants; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement

5

Amounts to be paid to Eligible Settlement Participants; copying Plaintiffs' Counsel and Defendants' Counsel on material correspondence and promptly notifying Plaintiffs' Counsel and Defendants' Counsel of any material requests or communications made by any Party and referring any privileged and/or confidential communications to Plaintiffs' Counsel; ascertaining current address and addressee information for each Settlement Notice returned as undeliverable and the mailing of the Settlement Notice; responding to inquiries of Plaintiffs, Plaintiffs' Counsel, and Defendants' Counsel consistent with the Administrator's duties specified herein; maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications, and attempted written or electronic communications with Plaintiffs; timely responding to communications from the Parties, Plaintiffs' Counsel or Defendants' Counsel; creating, monitoring, and maintaining a dedicated email address until 60 days after the last check negotiation deadline to receive and respond to Plaintiff inquiries relating to issues such as checks or requests for reissuance, and referring to Plaintiffs' Counsel all inquiries by the collective members which the settlement administrator cannot resolve and/or which involve matters not within the settlement administrator's duties; retaining and providing a copy of Settlement Checks signed by the Participating Settlement Members to Plaintiffs' Counsel and Defendants' Counsel; and such other tasks the Parties mutually agree or as specified herein.

2.4   The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement, except to the extent necessary to protect against disclosure of confidential attorney-client communications. The Settlement Administrator will provide weekly reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice, the claims administration process, and distribution of the Settlement Checks.

2.5   Defendants agree to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available and necessary to calculate the Settlement Amounts, and assist the Settlement Administrator in locating Eligible Settlement Participants.

2.6   Plaintiffs' Counsel shall use their best efforts to file a Motion for Approval of Collective Action Settlement, Service Awards, and Attorneys' Fees and Costs ("Approval Motion") within ten (10) days after the execution of this Agreement.  The Approval Motion shall include: (i) a proposed Approval Order; (ii) the proposed Settlement Notice; and (iii) an executed version of this Agreement.  The proposed Approval Order and Settlement Notice are attached hereto as **Exhibits A** and **B**, respectively.  Among other things, the Approval Motion will ask the Court to: (i) issue and enter the proposed Approval Order approving the Settlement as fair, adequate, and reasonable; (ii) approve the proposed Settlement Notice to be sent to the Eligible Settlement Participants; (iii) incorporate the terms of the Settlement; (iv) enter judgment dismissing the case without prejudice, with leave to reinstate on or before one hundred eighty (180) days after the first Settlement Notices are sent pursuant to the terms of the Settlement, and deemed with prejudice without further order of the Court if no such motion to reinstate is filed within that time; and (vi) retain jurisdiction to enforce this Agreement.  Plaintiffs'

Counsel will provide Defendants' Counsel with a courtesy draft at least three (3) days prior to filing.  Defendants' Counsel will provide any comments within two (2) business days, which Plaintiffs' Counsel shall consider in good faith.  After Plaintiffs' filed their Approval Motion, Defendants may file a joinder or statement of non-opposition, to the extent Plaintiffs' motion is consistent with this Agreement.

2.7   Within seven (7) days of the Approval Date, Defendants shall provide the Settlement Administrator with the Eligible Settlement Participant List. Additionally, Plaintiffs' counsel will provide copies of the Consent to Join Forms for Eligible Settlement Participants, to allow the Settlement Administrator to calculate eligible workweeks.

2.8   Plaintiffs' Counsel shall also provide the Settlement Administrator with any updated contact information for Eligible Settlement Participants based on Plaintiffs' Counsel's existing records.  Plaintiffs' Counsel shall provide this updated list to the Settlement Administrator within seven (7) days of the Approval Date.

2.9   Settlement Notices, along with Settlement Checks, will be mailed via First Class U.S. Mail to Eligible Settlement Participants by the Settlement Administrator within twenty-one (21) days of the Effective Date.  The Settlement Administrator will also send email and text messages notices seven (7) days later to Eligible Collective Members informing them of the Settlement Check and Settlement Notice mailings.  *See* **Exhibit C**.  Ninety (90) days after the Settlement Checks are mailed, the Settlement Administrator shall send a reminder by First Class U.S. Mail, email, and text message to the Eligible Settlement Participants who have not cashed their checks that inquires whether they received their Settlement Check and reminds them of the expiration of the Acceptance Period.  *See* **Exhibit D**.  At the same time (and at other times, upon request of Plaintiffs' Counsel), the Settlement Administrator will provide a list of Eligible Settlement Participants who have not yet cashed their check.  In the event an Eligible Settlement Participant reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check.

2.10  The Settlement Administrator will take all reasonable steps to obtain the correct contact information for any Eligible Settlement Participant for whom a Settlement Notice and Settlement Check is returned by the U.S. Postal Service as undeliverable, including up to two skip traces, and shall attempt a re-mailing to any Eligible Settlement Participant for whom it obtains a more recent address.  The Settlement Administrator will notify the Parties of any Settlement Notice and Settlement Check sent to a Plaintiff that is returned as undeliverable after the first mailing, as well as any such Settlement Notice and Settlement Check returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

2.11  If within thirty (30) days after the close of the Acceptance Period an Eligible Settlement Participant reports a lost or destroyed check, and informs the Settlement Administrator that she or he did not receive a check or otherwise requests reissuance of her or his Settlement Check, the Settlement Administrator shall approve the reissuance of a

7

Settlement Check to such Eligible Settlement Participant (or the Parties shall agree) on a case-by-case basis for good cause shown.

**2.12**  In the event that the Court fails to approve this Agreement, except as to the provisions on attorneys' fees and Service Awards in Sections 3.2 and 3.3, the Parties jointly agree to: (a) attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement and/or (b) seek reconsideration or appellate review of the decision denying approval of the Agreement.  In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties cannot adequately renegotiate the settlement, the Litigation will proceed as if no settlement had been attempted.  In that event, nothing in the Settlement or negotiations leading up to the settlement may be used for any purpose in the litigation.

**3.    SETTLEMENT TERMS**

**3.1  Settlement Payments.**

(A)    Defendants agree to pay Three Hundred and Twenty Five Thousand Dollars and Zero Cents ($325,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Participants, any Court-approved Service Awards as more fully set forth herein, the Settlement Administrator's fees and costs, and any claim for Plaintiffs' Counsel's fees and costs.

(B)    Defendants shall transmit the Gross Settlement Amount to the Settlement Administrator, who will deposit such funds into the QSF, within fourteen (14) days of the issuance of an Approval Order.

(C)    Within fourteen (14) days of the Effective Date, the Settlement Administrator will distribute the money in the QSF by making the following payments:

i.    Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

ii.    Paying the Court-approved Service Awards as described in Section 3.3.

iii.    Paying the costs of the Settlement Administrator as awarded or approved by the Court.

iv.    Issuing checks to Eligible Settlement Participants for their Settlement Amounts, as described in Section 3.4.

(D)    Any portion of the Net Settlement Fund that is unclaimed more than seventy-five (75) days after the close of the Acceptance Period shall be redistributed pro rata to Participating Collective Members and Participating Class Members who cashed or

otherwise negotiated a Settlement Check, or, if redistribution is impractical on the basis that the amount remaining in the Net Fund is similar to or less than the cost of a second distribution, it shall be donated to Mobilization for Justice, a non-profit legal services organization in New York City, as a *cy pres* recipient.

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     In their Approval Motion, Plaintiffs' Counsel will ask the Court to approve payment of up to one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees, plus reimbursement of up to $24,441 in reasonable out-of-pocket costs and expenses from the Gross Settlement Amount.  These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs related to the Litigation, other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement.  Defendants will not oppose such request in accordance with this Agreement.

(B)     The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3   Service Awards.**

(A)     In their Approval Motion, Plaintiffs will request service awards in the following amounts to be paid from the Gross Settlement Amount: (1) up to Ten Thousand Dollars and Zero Cents ($10,000.00) to Named Plaintiffs; (2) up to Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) to Opt-in Deponent; and (3) up to One Thousand Dollars and Zero Cents each to Opt-in Declarants.  Defendants will not oppose these requests in accordance with this Agreement.

(B)     These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, each Service Award Recipient's recovery from the Net Settlement Fund as an Eligible Settlement Participant. The substance of the Service Award Recipients' application for a Service Award is not part of this Agreement, and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  Any Service Award money not

9

approved by the Court shall become part of the Net Settlement Fund.

**3.4   Distribution of Payments to Eligible Settlement Participants from the Net Settlement Fund.**

(A)   Eligible Settlement Participants.  Payments to Eligible Settlement Participants will be made from the Net Settlement Fund. The estimated Settlement Amount for each Eligible Settlement Participant will be determined by the Settlement Administrator pursuant to the following formula:

    i.   Each Eligible Settlement Participant will receive 1 point for each workweek worked in a Covered Job Title during the Relevant Period.

    ii.   To calculate the proportionate share of the Net Settlement Fund for each Eligible Settlement Participant, the Settlement Administrator shall:

        a)   Add all points for all Eligible Settlement Participants together to obtain the "Denominator";

        b)   Divide the number of points for each Eligible Settlement Participant by the Denominator to obtain each Eligible Settlement Participant's "Portion of the Net Settlement Fund"; and

        c)   Multiply each Eligible Settlement Participant's Portion of the Net Settlement Fund by the amount of the Net Settlement Fund to determine each Eligible Settlement Participant's Net Settlement Amount.

(B)   The Settlement Administrator's calculations regarding the Eligible Settlement Participants' Settlement Amounts from the Net Settlement Fund will be final and binding.

(C)   Defendants' Payroll Tax Responsibility and Tax Characterization of Payments.

    i.   For tax purposes, 45% of the payment to each Participating Settlement Member pursuant to this Agreement shall be treated as back wages and 55% of such payment shall be treated as interest, liquidated damages, penalties, and other non-wage relief.  In the event that the Court does not approve this allocation, the Parties agree to amend this Agreement to reflect a 50/50 breakdown.

    ii.   Payments treated as back wages shall be made net of all applicable employee-side taxes or other deductions required by law, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's

name and Social Security number on an IRS Form W-2. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards, and issuing IRS Forms W-2 and Forms 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

iii.    The Settlement Administrator shall calculate and Defendants shall pay to the Settlement Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Participating Settlement Members for wages. Defendants shall pay any Employer Payroll Taxes. The Settlement Administrator shall provide the estimated amount of such payroll tax amount to Defendants' Counsel within seven (7) days after it receives a copy of the Approval Order. The Settlement Administrator shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns, and issuing any required tax forms to the Participating Settlement Members for these payments.

iv.    The employee portion of all applicable taxes will be the sole responsibility of the individual Participating Settlement Member receiving a Settlement Check or Service Award. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiffs. The Settlement Notice will advise Participating Settlement Members to seek their own tax advice. Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

Payment of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Plaintiffs' Counsel will receive a Form 1099 for this Payment. Payment of Service Awards pursuant to Section 3.3 will be reported as deemed appropriate by the Settlement Administrator.

**4.      RELEASE OF CLAIMS**

**4.1**   All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

> **FINAL RELEASE OF CLAIMS:**
>
> I hereby waive, release, and forever discharge Cision US Inc., Cision Ltd., Falcon Social Inc., and Falcon.io US, Inc., ("Defendants") and their respective current and former affiliates, parents, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns, for the claims alleged in the operative Complaint or that could have been alleged based on the facts alleged, and that accrued during the period that I worked for Defendants in a Covered Job Title, relating back to the full extent of the applicable federal, state, or local statute of limitations and continuing through [date of the execution of the settlement agreement], including, without limitations, any and all federal, state, or local claims for unpaid overtime wages, unpaid straight time wages, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

The Settlement Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.  In addition to the Settlement having been approved by the Court and Named Plaintiffs having executed this Agreement, a Plaintiff's signed endorsement on a Settlement Check shall constitute a full and final release of that Plaintiff's Claims as provided in the above Final Release of Claims and this Agreement.

**4.2**   In addition to the release in Section 4.1, in exchange for the Service Award consideration payable by Defendants to Named Plaintiffs under this Agreement, Named Plaintiffs, on behalf of themselves and, if any, their spouses, heirs, executors, testators, assigns, representatives, and agents, freely relinquish, release, and waive all possible claims, actions, causes of action, complaints, rights, charges, obligations, liabilities, judgments, suits, debts, attorneys' fees, costs, sums of money, wages, bonuses, benefits of any type, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, contracts, promises, executions and demands, whatsoever in law or in equity, of any kind or nature, known or unknown, against the Releasees, which may have arisen from the beginning of time through the date of their signatures on this Agreement.

**4.3**   This Agreement is a compromise of Plaintiffs' Claims.  It is not, and shall not ever, be treated as an admission of liability or the violation of any rights, law, statute, regulation, duty, or contract, as to Plaintiffs or any other person by Defendants, including their affiliates, parents, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns.  Defendants specifically disclaim any liability to Plaintiffs, or to any other person for any alleged violation of the rights of Plaintiffs, or for any alleged violation of any law, statute,

12

regulation, duty, or contract whatsoever, on the part of Defendants, including their affiliates, parents, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns.

**4.4** The Parties agree that any liability for the wages and other amounts at issue with Plaintiffs' Claims are the subject of a good faith dispute.

## 5.   PARTIES' AUTHORITY

The Parties hereby represent that the signatory executing this Agreement on behalf of such Party is fully authorized to execute this Agreement on behalf of such Party and to bind such Party hereto to the terms and conditions hereof.

## 6.   MUTUAL COOPERATION

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7.   NOTICES

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs:

Melissa L. Stewart
Eliana J. Theodorou
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000
mstewart@outtengolden.com
etheodorou@outtengolden.com

Hannah Cole-Chu
Outten & Golden LLP
601 Massachusetts Avenue, Suite 200W
Washington, D.C. 20001
(202) 847-4400
hcolechu@outtengolden.com

To Defendants:

Linda M. Jackson
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006
(202)-775-5785
linda.jackson@afslaw.com

## 8.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

8.1   Further Acts. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.2   Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties regarding this subject matter shall be deemed merged into this Agreement.

8.3   Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendants, their affiliates, parents, subsidiaries, predecessors, successors, employees, and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

8.4   Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

8.5   Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

8.6   Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

14

**8.7**   Governing Law. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**8.8**   Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**8.9**   Waivers and Modifications to Be in Writing. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**8.10**   Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**8.11**   Facsimile and Electronic Signatures.  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  An electronic signature transmitted via an electronic signature platform such as DocuSign shall be effective and binding.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**8.12**   Signatories. This Agreement is valid and binding if signed by Defendants' authorized representative and any one of the Named Plaintiffs.


**WE AGREE TO THESE TERMS, VOLUNTARILY AND WITH A FULL UNDERSTANDING.**

DATED: _____ 5/31/2022 | 6:22:55 AM PDT     **CISION US INC.**

By: Prasant Gondipalli
    ─────────────────────────────
    70EE0904B551413...

Name and Title: Prasant Gondipalli
                ─────────────────────────────
                Cfo


DATED: _____ 5/31/2022 | 6:22:55 AM PDT     **CISION LTD.**

By: Prasant Gondipalli
    ─────────────────────────────
    70EE0004B551413...

Name and Title: Prasant Gondipalli          Cfo
                ─────────────────────────────


DATED: _____ 5/31/2022 | 6:22:55 AM PDT     **FALCON SOCIAL INC.**

By: Prasant Gondipalli
    ─────────────────────────────
    70EE0004B5S1413...

Name and Title: Prasant Gondipalli
                ─────────────────────────────
                Cfo


DATED: _____ 5/31/2022 | 6:22:55 AM PDT     **FALCON.IO US, INC.**

By: Prasant Gondipalli
    ─────────────────────────────
    70EE0904B551413...

Name and Title: Prasant Gondipalli
                ─────────────────────────────
                Cfo

DATED: <u>05/26/2022</u>   **ANATOLIY MIKITYUK**

_____

DATED: _____   **MITCH TALLUNGAN**

_____

DATED: _____   **WADE HONEY**

_____

DATED: _____          **ANATOLIY MIKITYUK**

_____

DATED: 05/26/2022          **MITCH TALLUNGAN**
       _____

_____

DATED: _____          **WADE HONEY**

_____

17

DATED: _____     **ANATOLIY MIKITYUK**

_____

DATED: _____     **MITCH TALLUNGAN**

_____

DATED: 05/26/2022     **WADE HONEY**
_____

_____

17

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ANATOLIY MIKITYUK, MITCH TALLUNGAN, and WADE HONEY, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>       -v-<br><br>CISION US INC., CISION LTD., FALCON SOCIAL INC., and FALCON.IO US, INC.,<br><br>            Defendants. | **21-cv-510 (LJL)** |

### [PROPOSED] ORDER APPROVING SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

This matter comes before the Court on Plaintiffs' Unopposed Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs ("Motion"). Having considered Plaintiffs' Motion and supporting Memorandum and exhibits, the Court hereby GRANTS Plaintiffs' Motion and ORDERS as follows:

1.     The Court finds that the Parties' Settlement in this Fair Labor Standards Act action is a fair, reasonable, and adequate resolution of a bona fide dispute. The Parties' Settlement is approved, and the terms of the Parties' Agreement are incorporated herein.

2.     The Parties' agreed form of Settlement Notice, and the plan for its distribution, is approved.

3.     The Service Awards of $10,000 each to Plaintiffs Anatoliy Mikityuk, Mitch Tallungan, and Wade Honey; $2,500 to Plaintiff Michael Esquibel; and $1,000 each to Plaintiffs Jordan Gutierrez, Matthew McTighe, Eliyyas Northern, Kane Tabiri, are approved.

4.      Plaintiffs' Counsel's request for attorneys' fees of one-third of the Gross

Settlement Amount ($108,333.33) plus up to $_____ in costs and expenses is granted.

5.      This action is dismissed with prejudice, with leave to reinstate if necessary to

enforce the terms of the Settlement.

6.      The Court will retain jurisdiction to enforce the Agreement.


Dated: _____, 2022        _____
                                          The Honorable Lewis J. Liman
                                          United States District Judge

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANATOLIY MIKITYUK, MITCH TALLUNGAN, and WADE HONEY, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br>    -v-<br><br>CISION US INC., CISION LTD., FALCON SOCIAL INC., and FALCON.IO US, INC.,<br><br>        Defendants. | 21-cv-510 (LJL)<br><br>**<u>OFFICIAL COURT NOTICE OF SETTLEMENT</u>** |

**You are receiving this notice because you previously submitted a consent to join this case and are entitled to a payment from a settlement in the case.**

**A settlement check payable to you is enclosed.  Please read this Notice before signing and cashing the check.**

The last day to cash the settlement check is **[insert date that is 180 days from mailing]**.  After that date, the check will be void, and you will no longer be eligible for a payment.

*A federal court authorized this Notice – it is not a solicitation from a lawyer.*

- This Notice is directed to individuals who were employed by Cision US Inc., Cision Ltd., Falcon Social Inc., and/or Falcon.io US, Inc. ("Cision") as Sales Representatives, previously opted in to this lawsuit by filing a consent to join the action, and have not withdrawn or been dismissed from the lawsuit.

- This lawsuit was brought by former Sales Representatives who claim that Cision failed to pay them and other Sales Representatives properly for overtime hours they worked. Cision denies these allegations and asserts that Sales Representatives were paid correctly. Nevertheless, Named Plaintiffs and Cision have agreed to settle this case on behalf of the Named Plaintiffs and Opt-in Plaintiffs to avoid continued litigation.  The Court approved this settlement but has not ruled on Named Plaintiffs' claims or Defendants' defenses.

- **A settlement check for \$[AMOUNT], representing your share of the settlement, is enclosed**.  This amount is determined by the allocation formula created by the settlement

2

and based on the number of weeks worked as a Sales Representative in New York between October 1, 2014 and [date of execution]; in Illinois or Maryland between October 1, 2017 and [date of execution]; and/or in another state three years prior to the filing of your Consent to Join, plus applicable tolling, through [date of execution].  Based on Cision's records, your number of eligible workweeks as a Sales Representative during these periods is [insert].

• Cision will not take any adverse action against any eligible Sales Representatives whether or not she or he accepts a settlement payment.

**<u>This notice contains important information that affects your rights.</u>**
**<u>Please read it carefully.</u>**

**BASIC INFORMATION**

| 1.  Why did I receive this notice and what is this case about? |
| --- |

You are receiving this notice because you previously joined *Mikityuk v. Cision US Inc.*, Case No. 21 Civ. 510, in the United States District Court for the Southern District of New York as a named or opt-in plaintiff.  This Notice explains the terms of the settlement, your rights, and what claims are being released by people covered by the settlement.

The lawsuit alleges that Cision failed to pay Sales Representatives fully for overtime under the federal Fair Labor Standards Act ("FLSA") and/or under the laws of New York, Illinois, or Maryland, depending on where the Sales Representative worked.  It further alleges failure to pay all straight time wages under the laws of New York, Illinois, and Maryland, as well as inaccurate wage notices and wage statements under New York law with respect to Sales Representatives who worked in New York.  Cision denies these allegations and maintains that Sales Representatives were paid correctly.  The parties have entered into this settlement to avoid continued litigation.  The Third Amended Complaint contains the detailed allegations.  Please contact Plaintiffs' counsel to obtain a copy of the Third Amended Complaint.

"Sales Representative" includes the following job titles: Account Executive, Account Executive (EX), Account Executive (SAAS), Account Executive – Falcon.io, Account Executive (NE), Account Executive II (SAAS), Associate Account Executive, Associate Account Executive (SAAS), Business Development Associate, Business Development Executive, Business Development Manager, Business Development Representative, Business Development Specialist, Inside New Business Development Representative, Sales Associate, Sales Development Representative, Sales Development Representative – Falcon.io, Sales Development Representative – TrendKite, Sales Development Representative TrendKite (NE), Sales Development Representative II (NE), Senior Account Executive 1 (NE), Senior Account Executive 2 (NE), Senior Sales Development Representative, Sales Executive, Midmarket Sales Executive, Sales Representative, and Senior Sales Representative.

| 2.  What is a collective action? |
|---|

In a "collective action," which is brought under the FLSA, one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims. By previously completing and returning a consent to join form, you joined the case and became part of the "Collective." In a collective action, the Named Plaintiffs asks the court to resolve the issues for everyone in the collective, including the FLSA and state law claims.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 3.  What does the Settlement provide? |
|---|

Cision has agreed to pay the maximum amount of $325,000 into a settlement fund, a portion of which has been allocated among the 38 current and former Sales Representatives who opted into the lawsuit and qualify for a settlement payment based upon the number of weeks worked as a Sales Representative in New York between October 1, 2014 and [date of execution]; in Illinois or Maryland between October 1, 2017 and [date of execution]; and/or in another state three years prior to the filing of your Consent to Join, plus applicable tolling, through [date of execution].

The settlement fund will also cover: (1) Court-approved service awards of: $10,000 each to three Named Plaintiffs, $2,500 to one Opt-in Plaintiff who was deposed; and $1,000 each to four Opt-In Declarants who provided testimony in support of collective certification, all for their service in the litigation and in obtaining this settlement; Plaintiffs' attorneys' fees and costs approved by the Court, as described in greater detail below; and (3) the Settlement Administrator's fees and costs, not to exceed $[insert].

| 4.  How much is my payment and how was it calculated? |
|---|

Based on the allocation formula that has been approved by the Court, you are receiving a gross settlement payment for $_____, 45% of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and 55% of which will be reported on IRS Form 1099.

*Plaintiffs' Counsel and Defendants do not make any representations concerning the tax consequences of this settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.*

The allocation formula takes into account the number of weeks worked as a Sales Representative in New York between October 1, 2014 and [date of execution]; in Illinois or Maryland between October 1, 2017 and [date of execution]; and/or in another state three years prior to the filing of your Consent to Join, plus applicable tolling, through [date of execution]. The Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 8 below.

4

## HOW YOU GET A PAYMENT

| **5.  How do I get my payment?** |
| --- |

A check is enclosed.  All you have to do is sign and cash the settlement check.

| **6.  What am I giving by accepting the settlement check?** |
| --- |

By signing and cashing your settlement check, you will waive, release, and forever discharge Defendants Cision US Inc., Cision Ltd., Falcon Social Inc., and Falcon.io US, Inc., and their respective current and former affiliates, parents, subsidiaries and other related entities, as well as their current and former employees, members, partners, principals, shareholders, officers, directors, attorneys, agents, insurers, reinsurers, predecessors, successors, and assigns, for the claims alleged in the operative Complaint or that could have been alleged based on the facts alleged, and that accrued during the period that you worked for Defendants in a Covered Job Title, relating back to the full extent of the applicable federal, state, or local statute of limitations and continuing through [date of the execution of the settlement agreement], including, without limitations, any and all federal, state, or local claims for unpaid overtime wages, unpaid straight time wages, notice and recordkeeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

## THE LAWYERS REPRESENTING YOU

| **7.  How will the lawyers be paid?** |
| --- |

The Court has approved payment to Plaintiffs' Counsel of one-third of the settlement fund for attorneys' fees.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating and finalizing the settlement.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs.

## FOR MORE INFORMATION

| **8.  Are there more details about the Settlement?** |
| --- |

This Notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a written request to:

Cision Overtime Settlement
c/o [SETTLEMENT ADMINISTRATOR]
[ADDRESS LINE ONE]
[ADDRESS LINE TWO]

Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

## 9. How do I get more information?

If you have other questions about the settlement, you can contact the Settlement Administrator, or Plaintiffs' Counsel at the addresses and/or telephone numbers below:

Melissa L. Stewart
Eliana J. Theodorou
Outten & Golden LLP
685 Third Ave 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: CisionOTCase@outtengolden.com

Hannah Cole-Chu
Outten & Golden LLP
601 Massachusetts Ave NW, Suite 200W
Washington, DC 20001
Telephone: (202) 847-4400
Email: CisionOTCase@outtengolden.com

DATED: _____, 2022

# Exhibit C

<u>Text Message Notification</u>

You should have recently received a mailed Settlement Notice, including a settlement check, relating to the Cision overtime case that you previously joined. To participate in the settlement, you must cash or deposit the settlement check prior to [insert date that is 180 days from mailing]. If you did not receive or no longer have the Settlement Notice and settlement check, contact the Settlement Administrator to request another Notice and check at [administrator email]. For questions about your legal rights, contact Outten & Golden LLP at **(XXX) XXX-XXXX** or CisionOTCase@outtengolden.com.

<u>Email Notification</u>

<u>Subject</u>: Cision Overtime Case - Settlement Notice and Settlement Check

<u>Body</u>: You should have recently received a mailed Settlement Notice, including a settlement check, relating to the Cision overtime case that you previously joined. To participate in the settlement, you must cash or deposit the settlement check prior to [insert date that is 180 days from mailing]. If you did not receive or no longer have the Settlement Notice and settlement check, contact the Settlement Administrator to request another Notice and check at [administrator email]. For questions about your legal rights, contact Outten & Golden LLP at **(XXX) XXX-XXXX** or CisionOTCase@outtengolden.com.

8

# Exhibit D

Postcard

## IMPORTANT REMINDER REGARDING
## CISION OVERTIME SETTLEMENT

Recently you should have received a Settlement Notice advising that you are eligible to participate in the settlement of the collective action for unpaid overtime against Cision, with a settlement check enclosed.  Our records reflect that you have not cashed the check.

**IMPORTANT DEADLINE: in order to participate in the settlement, you must cash your check on or before [INSERT DATE 180 DAYS FROM MAILING**]. If you did not receive or no longer have the Notice and settlement check, you should contact the Settlement Administrator to request another check.

If you have any questions about the Notice, the case, or your legal rights, you should contact Outten & Golden LLP at **(XXX) XXX-XXXX** or CisionOTcase@outtengolden.com.

Text Message Notification

Our records reflect that you have not cashed the Settlement Check previously sent to you in settlement of the unpaid overtime case against Cision. The deadline to cash the check is [insert date that is 180 days from mailing]. If you did not receive or no longer have the settlement check, contact the Settlement Administrator to request another check at [administrator email]. For questions about your legal rights, contact Outten & Golden LLP at **(XXX) XXX-XXXX** or CisionOTcase@outtengolden.com.

Email Notification

Subject: Cision Overtime Case - Settlement Check Reminder

Body: Our records reflect that you have not cashed the Settlement Check previously sent to you in settlement of the unpaid overtime case against Cision. The deadline to cash the check is [insert date that is 180 days from mailing]. If you did not receive or no longer have the Settlement Notice and settlement check, contact the Settlement Administrator to request another Notice and check at [administrator email]. For questions about your legal rights, contact Outten & Golden LLP at **(XXX) XXX-XXXX** or CisionOTcase@outtengolden.com.