```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ANATOLIY MIKITYUK, et al.,                                       :
                                                                 :
                             Plaintiffs,                         :
                                                                 :         21-cv-510 (LJL)
                 -v-                                             :
                                                                 :         OPINION AND ORDER
CISION US INC., et al.,                                          :
                                                                 :
                             Defendants.                         :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/29/2022

LEWIS J. LIMAN, United States District Judge:

Plaintiffs move, unopposed, for approval of a collective action settlement agreement, service awards, attorneys' fees, and costs. *See* Dkt. No. 191. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiffs are former sales representatives ("SRs") of defendants Cision US Inc., Cision Ltd. (together with Cision US Inc., "Cision"), and/or Falcon Social, Inc. ("Falcon" and together with Cision, "Defendants"). Dkt. No. 174 ¶ 1. Cision is a provider of public relations ("PR") software and related professional services, *id.* ¶ 2, and Falcon is a social media management platform that was acquired by Cision in January 2019, *id.* ¶¶ 5–6. In brief, Plaintiffs allege that Defendants "failed to pay [SRs] compensation for all hours worked, including straight time compensation for hours under 40 and proper overtime compensation for hours worked over 40 in a workweek," *id.* ¶ 185, and failed to keep accurate records of the hours that SRs worked, *id.* ¶ 187. Plaintiffs allege that Defendants' "unlawful conduct has been pursuant to a corporate policy or practice of minimizing labor costs by violating the [Fair Labor Standards Act

1

("FLSA")] and state wage and hour laws." *Id.* ¶ 188.  Plaintiffs bring claims on behalf of themselves and a FLSA collective for Defendants' willful and intentional failure to pay Plaintiffs and other similarly situated SRs the overtime wages to which they were entitled under the FLSA, *id.* ¶¶ 246–261, and on behalf of various Plaintiffs and putative classes made up of people who have worked for Defendants as SRs in different states for Defendants' violations of those states' labor laws related to overtime and straight-time compensation and provision of wage notices, *see id.* ¶¶ 262–269 (New York class bringing claim for violation of New York Labor Law's ("NYLL") overtime provisions); *id.* ¶¶ 270–276 (New York class bringing claim for violation of NYLL straight-time provisions); *id.* ¶¶ 277–279 (New York class bringing claim for failure to provide accurate wage statements, as required by NYLL); *id.* ¶¶ 280–282 (New York class bringing claim for failure to provide wage notice that complies with NYLL); *id.* ¶¶ 283–292 (Illinois class bringing claim for violation of Illinois Wage Laws' overtime provisions); *id.* ¶¶ 293–298 (Illinois class bringing claim for violation of Illinois Wage Laws' straight-time provisions); *id.* ¶¶ 299–306 (Maryland class bringing claim for violation of the Maryland Wage and Hour Law's overtime provisions); *id.* ¶¶ 307–311 (Maryland class bringing claim for violation of the Maryland Wage Payment and Collection Law's timely payment provisions).  Defendants deny that they violated the law.  *See generally* Dkt. No. 181.

Anatoliy Mikityuk ("Mikityuk"), Mitch Tallungan ("Tallungan"), and Michael Esquibel ("Esquibel") filed this action against Cision on behalf of themselves and all others similarly situated on January 20, 2021.  Dkt. No. 1.  Mikityuk, Tallungan, and Esquibel thereafter sought approval of a court-authorized notice pursuant to FLSA, 29 U.S.C. § 216(b), and filed a first amended complaint.  *See* Dkt. Nos. 12, 20.  On May 4, 2021, the Court granted the request for court-authorized notice under Section 216(b), Dkt. No. 48, and, on June 11, 2021, it approved a

revised form of notice and consent to be mailed to potential opt-in Plaintiffs, Dkt. No. 64. Eventually thirty-five opt-in Plaintiffs joined the FLSA collective action. *See* Dkt. Nos. 84–85, 93–98, 99–101, 103–05, 107–09, 112–14, 116, 122–25, 131–33, 136–42, 160, 182–83.

On July 16, 2021, the Court so ordered a joint stipulation providing that Cision consented to the filing of a second amended complaint and that Esquibal would be an opt-in Plaintiff rather than a named Plaintiff, Dkt. No. 80; on July 19, Mikituk, Tallungan, and Wade Honey ("Honey") (together, the "Named Plaintiffs") filed the second amended complaint, Dkt. No. 88. On November 29, 2021, over the objection of Cision, the Court permitted Plaintiffs to amend their complaint once again. Dkt. No. 172. The third amended complaint—the operative complaint in this action, and the complaint from which the allegations previously discussed are drawn—added Falcon as a defendant. Dkt. No. 174.

Between the filing of the first and fourth complaints, the parties actively litigated this case. They submitted full rounds of briefing on motions: to approve court-authorized notice, *see* Dkt. Nos. 12–14, 38–39, 43–44, 46–47; for reconsideration of the Court's prior decision, *see* Dkt. Nos. 50–52, 60–61; to approve a revised notice and consent form, *see* Dkt. Nos. 57–59, 63; for attorneys' fees associated responding to certain of these motions, *see* Dkt. Nos. 63, 67–68; in connection with discovery disputes, including to compel production of documents and a deposition, *see* Dkt. Nos. 78, 80, 87, 89, 117, 121, 152, 155, 163–64, 166–67; and to file a third amended complaint, *see* Dkt. Nos. 147–49, 161–62, 169–71.

On May 4, 2022, the parties submitted a joint letter to inform the Court that they reached a settlement in principle of the claims in the action. Dkt. No. 186. On June 9, 2022, Plaintiffs submitted their unopposed motion for approval of the collective action settlement and for service awards, attorneys' fees, and costs. Dkt. No. 191. The proposed settlement initially provided to

the Court was signed by each of the Named Plaintiffs and by the Defendants, but it was not signed by the opt-in Plaintiffs. On June 14, 2022, the Court issued an Order soliciting the parties' views on whether the Court should require, before granting final approval of the settlement agreement, either the agreement to be submitted with the signatures of the Named Plaintiffs and the opt-in Plaintiffs or the opt-in Plaintiffs to be given notice of the settlement and an opportunity to be heard by the Court. Dkt. No. 194. In response, Plaintiffs submitted a letter to the Court expressing the view that the most efficient approach would be to have Plaintiffs' counsel contact the opt-in Plaintiffs to confirm their consent to the settlement and then file a declaration attesting to the steps taken. Dkt. No. 195. The Court thereafter set a date for a hearing on the motion for approval and directed Plaintiffs, in advance of that date, to "submit to the Court a revised settlement agreement containing signatures reflecting the agreement of each of the named plaintiffs and opt-in plaintiffs to the terms of the settlement agreement." Dkt. No. 196.

The Court held a hearing on the motion for approval on July 25, 2022. In advance of that hearing, and pursuant to the Court's directive, Plaintiffs submitted a settlement agreement and release (the "Settlement Agreement") executed by the Named Plaintiffs and each of the opt-in Plaintiffs.[1] Dkt. No. 198-1.

Under the Settlement Agreement, Defendants agreed to pay $325,000.00, "which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Participants, any Court-approved Service Awards as more fully set forth herein, the Settlement Administrator's fees and costs, and any claim for Plaintiffs' Counsel's fees and costs." Dkt. No. 198-1 § 3.1(A).

---

[1] In the cover letter accompanying their submission of the Settlement Agreement, Plaintiffs noted that one of the opt-in Plaintiffs is deceased, and his heir executed the Settlement Agreement on his behalf. Dkt. No. 198.

4

Under its terms, Eligible Settlement Participants—defined as "the 38 individuals who filed consent to join forms to join this matter, including the Named Plaintiffs and Opt-in Plaintiffs, who have not been withdrawn or been dismissed," *id.* § 1.12—would receive an amount to be determined by a formula by which the individual would be given credit for each workweek worked in a covered job title during the relevant time period. *See id.* § 3.4(A). Pursuant to the Settlement Agreement, a Plaintiff's endorsement of a settlement check "constitute[s] a full and final release of that Plaintiff's Claims" as "alleged in the operative Complaint or that could have been alleged based on the facts alleged" during the relevant time period that the Plaintiff worked in a covered job title. *Id.* § 4.1. The agreement also contains an additional broad release in favor of the Defendants from the Named Plaintiffs for "all possible" claims and actions "of any kind or nature" from any time before the signature of the Settlement Agreement. *Id.* § 4.2.

The Settlement Agreement also provides that certain sums will be requested by Plaintiffs in their approval motion. First, "Plaintiffs' Counsel will ask the Court to approve payment of up to one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees, plus reimbursement of up to $24,441 in reasonable out-of-pocket costs and expenses from the Gross Settlement Amount," *id.* § 3.2(A), but specifies that "[t]he substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement" and that "[a]ny money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund,"[2] *id.* § 3.2(B). Second, "Plaintiff will request service awards in the following amounts to be paid from the Gross Settlement Amount:" (1) up to $10,000.00 to

---

[2] The "Net Settlement Fund" is "the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiffs' Counsel's attorneys' fees and costs; and (iii) Service Awards to Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants." *Id.* § 1.19.

Named Plaintiffs; (2) up to $2,500.00 to the opt-in who was deposed; and (3) up to $1,000.00 to the opt-in who submitted a declaration. *Id.* § 3.3(A). The service awards are in addition to what each recipient would otherwise recover from the Net Settlement Fund. *Id.* § 3.3(B).

After the hearing, and in response to inquiries raised by the Court, Plaintiffs submitted a supplemental letter providing additional information regarding the Settlement Agreement's release provision concerning the Named Plaintiffs and the travel costs incurred in connection with deposition preparation and defense. Dkt. No. 199. The letter stated that "the parties agreed to amend the Settlement Agreement to make the general release executed by the Named Plaintiffs mutual" and "plan to file an addendum to the agreement shortly." *Id.* at 1. The letter also provided additional detail about costs amounting to $4,092.26 for travel expenses. *Id.* at 1–2. On July 29, 2022, Plaintiffs filed an addendum to the Settlement Agreement that clarified that the general release provision for the Named Plaintiff is mutual. Dkt. No. 200.

## DISCUSSION

"[U]nder statute and well-settled law in this Circuit, 'stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect.'" *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791 (S.D.N.Y. 2020) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). Thus, in a FLSA case, "before a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). Because a party who has not opted in to a FLSA collective action can bring suit at a later date, "FLSA collective actions do not implicate the same due process concerns as [Federal Rule of Civil Procedure] 23 actions," and thus, "the standard for approval of a[] FLSA settlement is lower than for a class action under Rule 23." *Viafara v. MCIZ Corp.*,

6

2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014). In a FLSA case, "[t]he ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Mosquera v. Masada Auto Sales, Ltd.*, 2011 WL 282327 (E.D.N.Y. Jan. 25, 2011)). Courts generally will look to the "adversarial nature of a litigated FLSA case" and will "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Viafara*, 2014 WL 1777438, at *8 (citing *Lynn's Food Stores*, 679 F.2d 1350, 1353 n.8, 1353–54 (11th Cir. 1982)). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

I. **The Settlement Agreement**

The Court evaluates the fairness of the Settlement Agreement by considering the totality of the circumstances and applying the factors set forth in *Wolinsky* and adopted by Second Circuit in *Fisher*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp 2d at 335).

Applying those factors, the settlement is fair. The parties have agreed to settle for $325,000, of which Plaintiffs will receive at least approximately $187,475, inclusive of service

7

awards.[3]  Counsel for Plaintiffs has estimated that the lost wages at issue in this case total $515,382.22, and that the net recovery of each Plaintiff "after deductions for attorneys' fees, litigation costs, settlement administration, and service awards" represents 30% of those unpaid wages.  Dkt. No. 193 ¶ 64; *see also id.* ¶ 63.  The way the Settlement Agreement is structured ensures that each Plaintiff's recovery will be tied to the number of weeks that that Plaintiff worked, making the agreement fair individually as well as collectively.  This level of recovery is in line with the relative amounts that other courts have found to be fair and reasonable.  *See Aguilar v. N & A Productions Inc.*, 2019 WL 5449061, at *1–2 (S.D.N.Y. Oct. 24, 2019) (concluding that settlement amount was fair and reasonable even though plaintiff would be receiving only $26,666.67 where estimated potential recovery was approximately $570,000 and where there were "substantial legal and factual disputes" regarding the plaintiff's claims); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (explaining that amount that the plaintiff would receive under the settlement—roughly 25% of the maximum possible recovery—supported approval of the settlement, especially in light of the view that the "maximum possible recovery is far from inevitable, should this case proceed to trial").

The settlement of this action will also enable the parties to avoid additional expenses in establishing their claims and defenses, including avoiding the litigation risks faced by Plaintiffs. Though discovery was well underway by the time the parties reached a settlement, the record

---

[3] The Court has calculated this figure in two ways: First, by multiplying the average amount Plaintiffs' counsel represents each Plaintiff will receive—$3,973.04—by the number of Plaintiffs—thirty-eight—and adding to that sum $30,000 for the service awards for the three Named Plaintiffs, $2,500 for the service award for the opt-in deponent, and $4,000 for the service awards for the four opt-in declarants.  The resulting total is $187,475.52.  Second, by adding the requested attorneys' fee of $108,333.33—one-third of $325,000—to the requested costs of counsel of $24,441 and of the settlement administration cost of $4,750 and deducting this total amount—$137,524.33—from $325,000.  The resulting total is $187,475.67.  The Court assumes the fifteen-cent difference is the result of using averages in its calculations.

indicates that significant additional discovery and related work would have been necessary to litigate the case to summary judgment or trial.  In her declaration, Plaintiffs' counsel explains that, "[b]y the time the Parties reached a settlement in principle, . . . Defendants had produced only 6,248 documents, a far smaller production compared with other cases of similar complexity and size" in her experience.  Dkt. No. 193 ¶ 52.  She also explains that, by the time the parties settled, counsel for Plaintiffs were reviewing and preparing for production over 226,000 documents and were gathering information from certain opt-in Plaintiffs to prepare discovery responses.  *Id.* ¶¶ 36–37.

Plaintiffs also argue that, if this case proceeded, Cision would likely make arguments that may have warranted decertification, including "that differences in timekeeping instructions among managers and locations, and differences in the recording of and payment of overtime to individual collective members, would warrant decertification of the collective" and "that at least some collective members were classified as exempt from overtime while others were classified as non-exempt."  Dkt. No. 192 at 18, 20.  The Court agrees that there is value is avoiding such a risk, particularly given the costs savings associated with proceeding as a collective where—as here—the individual claims may be prohibitively low in value such that individual litigation would be infeasible.  *See Garrett v. Urban Outfitters, Inc.*, 17-cv-7826-KHP, ECF No. 56 at 10 (Mar. 13, 2019) (finding second *Wolinsky* factor to be "clearly met" where "costs of litigating would far exceed the potential recovery of the individual plaintiffs, and the outcomes would remain uncertain").  And the Court further agrees that this risk is real and not speculative in light of the limited caselaw interpreting the Second Circuit's decision in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020), in the context of "off-the-clock" work, *see* Dkt. No. 192 at 19 & n.15, and in light of Plaintiffs' counsel's statement that "Defendants produced discovery

9

showing that certain collective members recorded and were compensated for at least some"—though not all—"hours worked above 40 in a workweek," Dkt. No. 193 ¶ 67. *See Rojas v. Three Decker Rest., Ltd.*, 2020 WL 3182773, at *1 (S.D.N.Y. June 15, 2020) (explaining that litigation risks counseled in favor of approving settlement where "Defendants took the position, *with evidence*, that Plaintiff earned more than the applicable minimum wage" (emphasis added)); *Camacho v. Midtown Center Auto Repair, Inc.*, 2020 WL 1082466 (S.D.N.Y. Mar. 5, 2020) (approving settlement where "the parties persuasively have demonstrated that there were serious litigation risks Plaintiff faced from defenses that could have mooted his claims and reduced his overall discovery"). The Court is further persuaded by the arguments made at the fairness hearing with respect to the litigation risks associated with relying on testimony of individuals to support the Plaintiffs' claims—including that such testimony could be challenged, discounted by the jury, or contradicted by other testimony, and that fading memories could make it difficult to obtain reliable testimony—and associated with difficulties of proving the number of hours Plaintiffs worked.

       The Settlement Agreement is also the product of arm's-length bargaining between highly experienced counsel, and there is no evidence to suggest that there has been any fraud or collusion. As previously described, this case—which has been ongoing for over a year and a half—has been hard fought, with numerous rounds of briefing on a wide array of issues. The "experience and expertise" of Plaintiffs' counsel, Outten & Golden LLP, in the area of employment law has been repeatedly recognized by courts in this District. *See, e.g.*, *Garrett*, 17-cv-7826-KHP, ECF No. 56 at 10 ("The Court has previously recognized the experience and expertise of the Outten & Golden LLP firm in the area of employment law, which was demonstrated again in this action."); *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *9 (Sept.

11, 2015) (appointing Outten & Golden LLP as class counsel and explaining that it "routinely represent[s] plaintiffs in employment litigation in this District and have appeared in many major FLSA and state labor law cases" and listing cases). From its experience with Plaintiffs' counsel in this case, the Court agrees that they have ably and knowledgably represented the Plaintiffs in this action. Although perhaps less relevant for the purposes of ensuring that a settlement is fair and reasonable—an inquiry made in light of "FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees," *Cheeks*, 796 F.3d at 207—Defendants are also represented by a firm with substantial litigation experience and regular appearances before courts in this District.

Moreover, the other terms of the agreement are fair. The Settlement Agreement contains releases for most of the Plaintiffs that are limited to the specific factual allegations and claims that are the subject of this lawsuit. Such releases are permissible in FLSA settlement agreements. *See Rojas*, 2020 WL 3182773, at *1 (approving FLSA settlement where "[t]he release in the settlement is limited to the claims at issue in this action"); *Arango v. Scotts Company, LLC*, 2019 WL 117466, at *4 (S.D.N.Y. Jan. 7, 2019) (concluding that proposed settlement's release provision was too broad where the provision would release defendants from claims "that are not reasonable related to claims . . . in the Action" (internal quotation marks omitted)). While the releases for the Named Plaintiffs are broader, they are also mutual. *See* Dkt. No. 200-1. "[S]ome courts in this District have approved a general release when (1) it is mutual; and (2) the employer and employee have ceased their employment relationship." *Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020). This Court is one such court; in approving a general mutual release in *Strauss*, the Court explained that "[s]uch a broad mutual general release operates as a walk away provision: it permits each side to terminate their

relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *Id.* None of the Named Plaintiffs—those subject to the general mutual release—still work for Defendants. *See* Dkt. No. 88 (referring to the end dates of the employment of the Named Plaintiffs—Mikityuk, Honey, and Tallangun); Dkt. No. 192 at 21 ("Named Plaintiffs, Opt-in Deponent, and Opt-in Declarants were no longer employed by Cision when they brought the case . . ."). A general mutual release will "ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015). Moreover, the general release is only as to Named Plaintiffs, and courts in this District have found broad releases to be acceptable in such situations. *See Ray v. 1650 Broadway Assocs. Inc.*, 2020 WL 5796203, at *3 (S.D.N.Y. Sept. 29, 2020) (preliminarily approving proposed settlement with broad general release and finding such a release reasonable because it was "consideration for the receipt of Named Plaintiff's Service Awards"); *cf. Bondi v. DeFalco*, 2020 WL 3476006, at *6 (S.D.N.Y. May 13, 2020) (explaining that "[broad] releases are deemed acceptable where they serve as consideration for service awards for Class Representatives" (internal quotation marks omitted)). The Court finds the release provisions fair and reasonable.

The Settlement Agreement also provides for service awards of up to $10,000 for the Named Plaintiffs, $2,500 for the opt-in deponent, and $1,000 for the opt-in declarants. "Service awards . . . serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (finding service awards of $7,500 and $5,000 to be reasonable for plaintiffs in settlement of class action and FLSA collective action). "In examining the reasonableness of

service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." *Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

The Plaintiffs seeking service awards all incurred personal risks in speaking out against allegedly unlawful employment practices and being "blacklisted" in the profession. As Plaintiff's counsel explained in her declaration, "[f]ear of retaliation and blacklisting is particularly true in the technology sales field, a tightly-knit industry where sale representatives and managers change companies frequently, connections with former colleagues and managers are very important, and sales representatives rightly fear blackballing from former and potential future employers." Dkt. No. 193 ¶ 71. This action was publicized by news outlets—leading to former colleagues contacting some of the Named Plaintiffs—and third-party subpoenas were issued to individuals identified by the Named Plaintiffs and the opt-in deponent, making the risk of exposure to those actively participating in the action particularly acute. *Id.* ¶¶ 72–73.

The Named Plaintiffs, opt-in deponent (who was previously a named plaintiff), and opt-in declarants also contributed significantly to the litigation. All of them assisted Plaintiffs' counsel in investigating and prosecuting the claims in this suit by: (1) answering questions about Cision's policies and practices; (2) approving the pre-litigation letter to Cision; (3) providing counsel with information necessary for Plaintiffs' 216(b) motion and preparing supporting declaration; and (4) responding to discovery requests or beginning the process of responding. *Id.* ¶¶ 77–78, 80, 82–83. In addition, the Named Plaintiffs and opt-in deponent reviewed and approved the complaints, were deposed by Cision, and spent significant time with Plaintiffs' counsel in preparation for those depositions. *Id.* ¶¶ 79, 81. The Named Plaintiffs also provided documents

about Cision's practices during the investigation of the claims, participated in pre-litigation discussions about potential settlement, consulted with counsel about settlement strategy and authorized settlement actions, and provided ongoing information during discovery to inform Plaintiffs' discovery requests and counsel's meet-and-confers.  Dkt. No. 199.

As a result of the efforts of the Plaintiffs seeking the service awards, Plaintiffs will each recover thousands of dollars in vindication of their statutory rights under the FLSA.  The Court finds these terms to be fair and reasonable and will award the requested sums.  Courts in this District have awarded similar or higher sums for named plaintiffs that have contributed meaningfully to the action.  *See, e.g.*, *Manley v. Midan Rest. Inc.*, 2017 WL 1155916, at *13 (S.D.N.Y. Mar. 27, 2017) (awarding $15,000 to named plaintiff in FLSA collective action who initiated action, appeared for depositions, and assisted counsel's investigation and prosecution of the claims through participation in discovery and mediation); *Ceka v. PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding $10,000 to FLSA class representative where representative incurred risks and assisted investigation and prosecution of the claims); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) (finding reasonable service awards of $10,000 to each named plaintiff where those plaintiffs "provided counsel with relevant documents, informed putative Class Members of the lawsuit and encouraged them to participate, appeared for depositions, assisted counsel in preparing for mediation and settlement discussions, and reviewed and commented on the terms of the settlement"); *Zorrilla v. Carlson Rests. Inc.*, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018) (approving service payments of $15,000 to named plaintiffs "who participated in multiple rounds of discovery and/or depositions;" $10,000 to named plaintiffs "who participated in one round of discovery and were deposed;" and $2,500 for opt-in plaintiffs who were deposed).

The Court will also approve the proposed settlement notice and the process for issuing that notice, which states the material terms of the Settlement Agreement and how those relate to their recovery under the agreement. Since the motion for approval was first made, each of the Plaintiffs received a copy of the Settlement Agreement and signed it, indicating their understanding of, and agreement to, the terms of the settlement. No Plaintiff appeared at the fairness hearing. Arguably, the notice is no longer necessary. All the same, it does provide valuable information and in an accurate manner. The notice sets forth the allocation formula, the amount each Plaintiff will receive, the time period in which the Plaintiff must cash the settlement check, what the Plaintiff is releasing by signing and cashing the settlement check, and the requests for costs and fees made by the attorneys, settlement administrator, and Plaintiffs seeking service awards. Dkt. No. 193-1, Ex. B. The notice also explains that "Cision will not take any adverse action" against the Plaintiffs "whether or not she or he accepts a settlement payment." *Id.* at 3. The notice will be mailed, and the settlement administrator will provide email and text messages seven days after the mailing of the notices. *See* Dkt. No. 193-1 Exs. B, C. The process for providing notice to Plaintiffs also provides for a reminder notice to be sent if checks remain uncashed within ninety days after mailing, giving Plaintiffs ample opportunity to cash the checks before the acceptance period has run. Dkt. No. 193-1 Ex. D. The notice—and the process for distributing it—fairly apprises Plaintiffs of their rights and obligations under the Settlement Agreement.

## II.     Attorneys' Fees and Costs

"Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Fisher*, 948 F.3d at 603 (quoting *Sand v. Greenberg*, 2010 WL 69359 at

\*3 (S.D.N.Y. Jan 7, 2010)).  Plaintiffs' counsel request one-third of the total recovery in attorneys' fees, plus $24,441.05 in costs.  In support, counsel has provided detailed time records, Dkt. No. 193-2, and information about the attorneys and support staff who worked on this case, Dkt. No. 193.

District courts in this Circuit typically approve fee requests between 30% and 33% of the settlement.  *See Huggins v. Chestnut Holdings Inc.*, 2022 WL 44748, at \*3 (S.D.N.Y. Jan. 5, 2022); *Strauss*, 2020 WL 4041511, at \*9 n.1; *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at \*2 (S.D.N.Y. March 10, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 [percent]."); *Palacio v. E\*TRADE Fin. Corp.*, 2012 WL 2384419, at \*6 (S.D.N.Y. June 22, 2012) ("[T]he percentage of recovery method . . . is consistent with the 'trend in this Circuit.'") (quoting *McDaniel v. Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *Bondi*, 2020 WL 2476006, at \*9 (explaining that "one-third of the gross settlement sum . . . is appropriate as courts in the Second Circuit routinely award attorney's fees in FLSA"); *see also Lara v. Air Sea Shipping & Moving Co.*, 2019 WL 6117588 (S.D.N.Y. Nov 18, 2019) (approving fee award that represented 33% of net settlement amount); *Martinez v. SJG Foods LLC*, 2017 WL 4676828 (S.D.N.Y. Oct. 16, 2017) (same).

Though other courts have approved the percentage requested by Plaintiffs' counsel, that fact alone is insufficient; "courts cannot determine the reasonableness of attorney's fees in the context of FLSA settlement agreements without first evaluating 'the time and labor expended by counsel.'"  *Strauss*, 2020 WL 4041511, at \*9; *see also Bondi*, 2020 WL 2476006, at \*6 ("Even where attorneys' fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" (quoting *Wolinsky*, 900 F. Supp. 2d at 336)).  The information submitted by Plaintiffs' counsel is "sufficient for the Court to recognize

the reasonableness of the award of fees and costs." *Id.*  The records show that, after removing entries from attorneys and support staff who billed under twenty hours on this case and certain time entries reflecting internal meetings, Plaintiffs' counsel and support staff spent over 3,000 hours on this case and would have charged fees of over $1.3 million in the absence of a contingency-fee arrangement.  Dkt. No. 193 ¶ 87.[4]  While the hourly rates of some of the attorneys and paralegals are quite high at $700 to $800 and $285, respectively—especially in light of other rates that have been awarded by this Court—the settlement fee sought is much lower than the billing records could support even if those rates were cut in half.  The billing records indicate that counsel paid careful attention to this case over the course of more than two years, corresponding with potential plaintiffs and witnesses; internally discussing case strategy, including venue options, tolling issues, and ethics considerations; drafting various pleadings, letters, and briefs; researching issues as they arose; preparing for and defending depositions; and planning and engaging in settlement discussions.  Dkt. No. 193-2.  The Court personally observed the diligence of counsel during the time that this case was litigated.  The Court is satisfied by these records that the requested fee of one-third of the settlement amount—or $108,333.33—is reasonable and appropriate.

An attorney's fee award may also include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  These "costs" may include photocopying, travel, telephone costs, *id.*, as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015

---

[4] Plaintiffs' counsel declares that the fee arrangement entered into with the Plaintiffs "entitled Plaintiffs' Counsel to one-third of any recovery, or lodestar, whichever is higher." *Id.* ¶ 89. Plaintiffs' counsel has selected the former option.

WL 4557147 (S.D.N.Y. July 28, 2015). The costs requested by Plaintiffs' counsel constitute such "reasonable out-of-pocket expenses," *LeBlanc-Sternberg*, 143 F.3d at 763; they include mailing expenses, transcript fees, and fees associated with computerized research. *See* Dkt. No. 193-3. At the fairness hearing, the Court requested additional detail about costs recorded as "Attorney Travel, Meals, and Lodging for Named Plaintiff Depositions," *id.*, and counsel provided a breakdown of expenses associated with that line item, Dkt. No. 199 at 1–2. After reviewing this additional submission, the Court is satisfied that these costs—as the other costs submitted by Plaintiffs' counsel—are reasonable and of the sort that would ordinarily be charged to clients in litigation such as this.

## CONCLUSION

The motion for approval of the Settlement Agreement is GRANTED. The Court will retain jurisdiction to resolve any disputes that arise in connection with the agreement.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: July 29, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge